**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:18-cv-01516-CFC |
| | : | |
| KEY COMMERCIAL FINANCE LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S ANSWERING BRIEF**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Joelle E. Polesky (ID No. 3694)
STRADLEY RONON STEVENS & YOUNG, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah S. Skeans,*
*Executrix of the Estate of Frank E. Pavlis*

OF COUNSEL:

William E. Mahoney, Jr. (admitted *pro hac vice*)
Spencer R. Short (admitted *pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

Dated: December 4, 2018

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...............................1

SUMMARY OF THE ARGUMENT ..........................................................................2

COUNTERSTATEMENT OF FACTS AS ALLEGED............................................2

ARGUMENT ...............................................................................................................7

I.      STANDARD OF REVIEW ...............................................................................8

II.     PLAINTIFF SUFFICIENTLY ALLEGED FACTS TOLLING
        APPLICABLE STATUTES OF LIMITATION...............................................9

        A.      Plaintiff Is Not "Burdened" With "Proving" That The Limitations
                Period Was Tolled.............................................................................10

        B.      Plaintiff Has Alleged Voluminous Facts In Support of Tolling ...........13

III.    PLAINTIFF ASSERTS HIS CLAIMS WITH THE REQUISITE
        PARTICULARITY.........................................................................................16

        A.      The Doctrines of "De Facto" Corporation and "Corporation By
                Estoppel" Do Not Apply ...................................................................16

        B.      Plaintiff's Complaint Spells Out Defendants' Fraud At Length And
                In Detail ...........................................................................................18

IV.     PLAINTIFF STATES A VIABLE, PLAUSIBLE CLAIM FOR UNJUST
        ENRICHMENT ...............................................................................................19

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................8

*Ausikaitis on behalf of Masimo Corporation v. Kiani,*
   962 F. Supp.2d 661 (D. Del. 2013) .........................................................................11

*Barefoot Architect, Inc. v. Bunge,*
   632 F.3d 822 (3d Cir. 2011)........................................................................... 9-10, 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................8

*Big Valley Assocs. v. DiAntonio,*
   Civ. A. No. 94C-05-089, 1995 WL 339072 (Del. Super. Ct. May 10, 1995) ........17

*Blanyar v. Genova Prods. Inc.,*
   861 F.3d 426 (3d Cir. 2017).......................................................................................8

*Boerger v. Heiman,*
   965 A.2d 671 (Del. 2009) .........................................................................................13

*Burnett v. N.Y. Cent. R.R. Co.,*
   380 U.S. 424 (1965).................................................................................................10

*Crouse v. Cyclops Indus.,*
   745 A.2d 606 (Pa. 2000) ..........................................................................................11

*Everwine v. Nemours Found.,*
   No. 05-3004, 2006 WL 891060 (E.D. Pa. Apr. 4, 2006).........................................11

*Fried v. JP Morgan Chase & Co.,*
   850 F.3d 590 (3d Cir. 2017).......................................................................................8

*Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.,*
   653 F.3d 225 (3d Cir. 2011)......................................................................................16

*In re Appleseed's Intermediate Holdings, LLC,*
   470 B.R. 289 (D. Del. 2012) ...................................................................................8-9

*In re Mushroom Transportation Co.,*
   382 F.3d 325 (3d Cir. 2004)......................................................................................14

*Island Insteel Systems, Inc. v. Waters,*
   296 F.3d 200 (3d Cir. 2002)......................................................................................10

*J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*,
    C.A. No. 83C-NO-98, 1988 WL 32012 (Del. Super. Ct. Mar. 30, 1988)...............................14

*Korac v. QxC Communications, Inc.*,
    286 F.R.D. 263 (D. Del. 2012) ...........................................................................................16

*Leber Assocs., LLC v. Entertainment Group Fund, Inc.*,
    No. 00-3759, 2003 WL 21750211 (S.D.N.Y. July 29, 2003)...........................................17-18

*LVI Group Invs, LLC v. NCM Group Holdings, LLC*,
    No. 12067, 2018 WL 1559936 (Del. Ch. Mar. 28, 2018).....................................................20

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3d Cir. 2003)................................................................................................16

*Mulrooney v. Corporation Service Co.*,
    No. 12–163, 2013 WL 1246769 (D. Del. Mar. 27, 2013) ...................................................12

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*,
    760 F.3d 297 (3d Cir. 2014)................................................................................................8

*Novipax Holdings LLC v. Sealed Air Corporation*,
    N17C–03–1682, 2017 WL 5713307 (Del. Super. Ct. Nov. 28, 2017) ...................................20

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)................................................................................................8

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)............................................................................2, 9, 11-14

*TL of Fla., Inc. v. Terex Corporation*,
    54 F. Supp.3d 320 (D. Del. 2014)......................................................................................11

*Tyson Foods Consol. S'holder Litig.*,
    919 A.2d 563 (Del. Ch. 2007) ...........................................................................................11

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    860 A.2d 312 (Del. 2004) ...........................................................................................11, 13

*Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*,
    894 F.3d 509 (3d Cir. 2018)................................................................................................8

## STATUTES

6 *Del. C.* § 18–201(a)......................................................................................................18

## RULES

Federal Rule of Civil Procedure 8 ...............................................................................13

Federal Rule of Civil Procedure 9(b)...............................................................1, 7, 16

Federal Rule of Civil Procedure 12(b)(6) ...............................................1, 7-9, 12-13

## OTHER AUTHORITIES

8 Fletcher Cyc. Corp. § 3909 (2018) ...........................................................................18

8 Fletcher Cyc. Corp. § 3910 (2001) ...........................................................................18

8 Fletcher Cyc. Corp. § 3917 (2018) ...........................................................................18

18A Am. Jur. 2d Corporations § 210 (2018) ..............................................................18

## PRELIMINARY STATEMENT

Defendants' brief is a study in contradiction.  Plaintiff's claims are untimely, they assert, but also unripe.  (Defs. Br. (D.I. 23) at 6-7, 15, 17.)  No fraud occurred, they argue, and yet the nonagenarian Frank Pavlis should have known immediately that Defendant Key Commercial Finance, LLC ("KCF") had defrauded him.  (*Id.* at 1, 8.)  It is a fine line they seek to traverse, requesting that this Court not simply ignore Plaintiff's detailed, and damning, allegations but overrule them, dismissing this case before discovery can reveal any still-hidden secrets of Defendants' "business" activities.

Not only has Plaintiff averred a detailed, if not exhaustive, body of allegations encompassing all of the essential elements of her claims, she has alleged specific and substantial facts detailing why those claims are not untimely.  Plaintiff's Complaint is timely filed under either Delaware or Pennsylvania law and meets the particularity and plausibility requirements under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Dismissal would be improper.  To the extent Defendants have identified an actual infirmity in Plaintiff's pleading—Plaintiff has found none—any such defect can easily be cured by amendment.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action against Defendants, KCF and its three subsidiaries, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC (collectively, "Defendants"), on October 1, 2018.  Contemporaneous with the filing of the Verified Complaint (D.I. 1, "Compl."), Plaintiff sought a temporary restraining order (D.I. 3), preliminary injunction (D.I. 4), and expedited discovery (D.I. 6) to prevent Defendants from squandering the $7 million that Mr. Pavlis invested in Defendants' schemes.  Based on a telephonic conference with the parties, the Court denied the motion for a temporary restraining order.  (D.I. 12.)  Plaintiff

withdrew the motions for a preliminary injunction and the motion for expedited discovery.  (D.I. 17.)  On November 20, 2018, Defendants filed their Motion to Dismiss the Complaint.  (D.I. 23.)

## SUMMARY OF THE ARGUMENT

1.      Defendants' assertion of a statute of limitations defense in its motion to dismiss is premature because Plaintiff has not "pleaded [her]self out of court."  *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

2.      The Complaint is timely because it adequately alleges facts supporting the tolling of the applicable statute of limitations.  Plaintiff has proffered facts supporting that Mr. Pavlis' injuries were inherently unknowable and fraudulently concealed by Defendants through Justin Billingsley, acting as Mr. Pavlis' fiduciary, trusted financial advisor, and confidante.

3.      The Complaint includes the required level of particularity, providing sufficient facts to put Defendants on notice of each of the claims alleged.

4.      Plaintiff has stated a viable claim for unjust enrichment, despite any contractual relationship between KCF and Mr. Pavlis, because the remaining Defendants, KCF's subsidiaries, have no contractual relationship with Mr. Pavlis and any contract arises out of Defendants' fraudulent scheme.

## COUNTERSTATEMENT OF FACTS AS ALLEGED

This action[1] arises out of a fraudulent scheme—and its equally fraudulent concealment— perpetrated against Frank Pavlis who, at the time, was a nonagenarian widower, with no children,

---

[1] The Complaint seeks a Declaratory Judgment (Count I) that certain promissory notes between Mr. Pavlis and the Defendants are void, as well as restitution and damages, including, but not limited to, the $7,000,000 Mr. Pavlis lost through his investments with Defendants, based on Defendants' Common Law Fraud (Count II), Fraudulent Concealment (Count III), Conversion (Count IV), and Unjust Enrichment (Count V).  (Compl. at ¶¶ 137-79.)

2

residing in a senior care facility.[2]  (Compl. at ¶¶ 14, 21.)  Mr. Pavlis enjoyed a successful career

as an engineer and, through his modest lifestyle, amassed a sizable estate.  (*Id.* at ¶¶ 22-24.)  For

a  number of reasons, including his advanced age, Mr. Pavlis was in need of advice on financial

management.  In response, those close to Mr. Pavlis introduced him to Billingsley in 2012.  (*Id.*

at ¶ 26.)  Billingsley took advantage of his shared religious fellowship, as well as his influence

(and Mr. Pavlis' reliance), to solicit "investments" in a series of companies in which Billingsley

had substantial financial interests.  (*Id.* at ¶ 27.)

      Almost immediately upon meeting Mr. Pavlis, Billingsley manipulated him into investing

at least $2,000,000 in a social media start-up, Mobile Corp.  (*Id.* at ¶¶ 53-74.)  Billingsley

provided no documentation for this purported investment, though Mr. Pavlis was in possession

of two handwritten notes that confirm Billingsley's position of trust and influence.  One note

stated that, should anyone "have questions," regarding the investments, they should "call Justin

Billingsley," and provided Billingsley's phone number.  (*Id.* at ¶ 58.)  By placing himself

between Mr. Pavlis and his investments, and by leveraging his fiduciary or fiduciary-like

influence, Billingsley was able to shield Mr. Pavlis from any information that might have warned

him of the ever-escalating fraud.  (*Id.* at ¶¶ 57, 157.)  Another note in Mr. Pavlis' possession

revealed that Mr. Pavlis documented his investments as "Real Estate Investments," suggesting he

was unaware that he was actually investing in a social media company. (*Id.* at ¶ 58.)

      Around the same time, Billingsley also solicited Mr. Pavlis to invest $1,000,000 in

Allwest Investments, LLC, a California-based limited liability company that purchased,

rehabilitated, and re-sold distressed residential properties.  (*Id.* at ¶ 76.)  Prior to this $1,000,000

investment, Billingsley provided Mr. Pavlis with an "Investor Overview" packet and a

---

   [2] Although Mr. Pavlis supported this litigation, he passed away on August 24, 2018 and
the action is instead brought in his name by his Executrix, Deborah S. Skeans.

Subscription Agreement providing that, in exchange for his investment in Allwest, Mr. Pavlis would receive a promissory note from Allwest.  (*Id.* at ¶¶ 76-77.)  A few weeks later, Billingsley brought Mr. Pavlis to his bank to obtain a cashier's check for $1,000,000 for investment in Allwest. (*Id.* at ¶ 78.)   On May 23, 2014, Mr. Pavlis wrote Allwest yet another check, this time for $6,000,000, once again marked as a "real estate investment."  (*Id.* at ¶ 79.)  That check, a copy of which is attached to the Complaint, was provided to Billingsley and later endorsed by Allwest's president.  (*Id.* at ¶ 80; Exhibit A to Compl.)

At some point, however, Mr. Pavlis' entire $7,000,000 investment was transferred to KCF, an entity controlled by Billingsley.  (*Id.* at ¶¶ 75, 82.)  Mr. Pavlis neither authorized the transfer or re-direction of his Allwest investment to KCF, nor was he made aware of any such transfer.  (*Id.* at ¶ 85.)  In fact, whenever Mr. Pavlis asked Billingsley about his investment, Billingsley assured him that his Allwest investment was performing well and that he had nothing to worry about, with no mention of KCF's windfall.  (*Id.* at ¶¶ 81, 85, 153(a).)

The first time a document referencing KCF was provided to either Mr. Pavlis or his representatives was more than two years after Mr. Pavlis' Allwest investments.   Indeed, in November 2016 and February 2018, respectively, when Mr. Pavlis neared 100 years old and his representatives sought to put his affairs in order, KCF provided, for the first time, two convertible promissory notes purportedly issued to Mr. Pavlis for combined investments of $7,000,000.  (*Id.* at ¶¶ 87, 110, 112.)  The first note, dated September 1, 2014, purports to reflect a $3,000,000 investment by Mr. Pavlis in KCF, with principal and interest at 8% per annum, payable on September 1, 2019—when Mr. Pavlis would have been 102 years old.  (*Id.* at ¶ 88; Exhibit B to Compl.)   A Note Purchase Agreement purports to memorialize this investment. (Compl. at ¶ 89; Exhibit C to Compl.)   A second note, dated November 1, 2014, purports to

4

document a $4,000,000 investment by Mr. Pavlis in KCF, with principal and interest at 8% per annum due on November 1, 2020—when Mr. Pavlis would have been 103 years old.  (Compl. at ¶ 92; Exhibit D to Compl.)   Again, a Note Purchase Agreement purports to memorialize this investment.  (Compl. at ¶ 93; Exhibit E to Compl.)

Upon information and belief, Mr. Pavlis never received or signed these documents.  (*Id.* at ¶ 99.)  Nonetheless, even if the documents were legitimate (they are not), neither the risks associated with these investments, nor Billingsley's own pecuniary gains through his involvement with KCF were disclosed to Mr. Pavlis through these documents.  (*Id.* at ¶¶ 100, 102.)  Furthermore, the multi-year nature of the investments were intended to delay any inquiry into the fraudulent nature of these transactions.  (*Id.* at ¶¶ 158-59.)

Although both notes identify KCF as a Delaware limited liability company and both Note Purchase Agreements represent that KCF was a Delaware corporation in good standing, KCF in fact did not become a legal entity until December 10, 2014, when it formed as a Delaware limited liability company.  (*Id.* at ¶¶ 88, 90, 92, 93, 94.)   KCF, therefore, lacked the legal capacity and form to enter into either the notes or the Note Purchase Agreements.  (*Id.* at ¶ 94.)

Critically, these documents "memorialize" transactions that never happened: Mr. Pavlis did not actually invest in KCF—he wrote checks to Allwest as a "real estate" investment.  (*Id.* at ¶¶ 78, 79, 96.)  Tellingly, the signer on behalf of KCF—Michael Silberman, designated a "Vice President"—explicitly denies any affiliation with KCF.   (*Id.* at ¶ 97; Exhibit F to Compl.) Further, Mr. Pavlis' signature on these documents stands alone on a pre-printed signature page that in no way identifies the underlying document.  (Compl. at ¶¶ 98-99.)

When Plaintiff's representatives contacted Billingsley in an effort to organize and settle Mr. Pavlis' finances, their efforts were frustrated by delays, obfuscations, and outright fraud.

(*Id.* at ¶ 160.)  On September 20, 2016, around the time Plaintiff's representatives first contacted Billingsley, Allwest and KCF ostensibly entered into a post-hoc "Funding Agreement" purporting to memorialize Mr. Pavlis' knowledge of the parties' KCF-enriching side-deal.  (*Id.* at ¶¶ 131-32, 153 (e), 161; Exhibit J to Compl.)  Included in that Funding Agreement is a section concerning a "KCF investor"—unquestionably Mr. Pavlis—disclaiming Allwest's liability to Mr. Pavlis and baselessly asserting Mr. Pavlis' knowledge of the transaction.  (*Id.* at ¶ 133-34.) Mr. Pavlis was not a party to the "Funding Agreement."  (*Id.*)  This document was not provided to Mr. Pavlis at the time it was signed, but rather provided to his representatives in July 2018. (*Id.* at ¶ 130.)

Up until this point, neither Mr. Pavlis nor his representatives had reason to suspect fraud. Indeed, it was not until late 2017, when Plaintiff was contacted by the media about Mr. Pavlis' investment in Mobile Corp., that Plaintiff became concerned that Mr. Pavlis' funds might be at risk.  (*Id.* at ¶ 111.)  Plaintiff's requests for additional information and documents were repeatedly met with delays or objections. (*Id.* at ¶ 162.)

In June 2018, Billingsley produced several documents to Mr. Pavlis' representatives purporting to memorialize Mr. Pavlis' investments.  These are believed to be fake and/or fraudulent.  (*Id.* at ¶ 163.)  These documents included a KCF "Private Placement Memorandum" (dated August 1, 2014) and "Subscription Agreement" (dated August 18, 2014) which do not seem to have any relationship to Mr. Pavlis' investments.  (*Id.* at ¶¶ 115-18, Exhibits G and H to Compl.)  Moreover, the signature page to the Subscription Agreement identifies a different document—an "Investor Questionnaire" which has never been produced—and differs in substance from the Notes and Note Purchase Agreements, purportedly executed just a few weeks later.  (*Id.* at ¶¶ 119-21; Exhibit H to Compl.)

6

Also among the documents produced by Billingsley are three Joint Venture Agreements between KCF and the subsidiary Defendants, Key Commercial Finance Properties LLC, Mobile Agency LLC, and Equity Pros, LLC. (*Id.* at ¶¶ 123-26; Exhibit I to Compl.) These Joint Venture Agreements each pre-date the formation of the corresponding subsidiary. (Compl. at ¶¶ 124-26.) More importantly, they purport to permit KCF, "at its sole discretion," to unilaterally provide the subsidiaries with funds with no corresponding obligation of repayment. (*Id.* at ¶¶ 127-28.) On information and belief, KCF has done just that with Mr. Pavlis' funds. (*Id.* at ¶¶ 169.) Such action is contrary to Mr. Pavlis' intentions at the time he made the investment in Allwest and occurred without his knowledge or consent. (*Id.* at ¶¶ 169, 175-76.)

## ARGUMENT

Defendants assert three arguments. First, they assert that the statute of limitations has run on Plaintiff's legal and equitable claims. (Defs. Br. at 6-7.) Second, they assert that Plaintiff has failed to allege the fraud and fraud-related claims with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b). (*Id.* at 9, 12.) Third, they assert that Plaintiff's allegations cannot "'raise a claim of entitlement to relief'" and thus must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 15-16.) As discussed more fully below, these arguments are unavailing.

Although Mr. Pavlis' original investment occurred in 2014, he has pleaded sufficient facts to toll any applicable statute of limitations. Moreover, those well-pleaded facts also describe Defendants' fraudulent and tortious actions in granular detail, providing names, dates, and attaching copies of the documents used to perpetrate—and perpetuate—their fraud. Finally, to the extent Defendants' seek to dismiss Plaintiff's claims for unjust enrichment because it relates to purported "promissory notes," they do not address (i) the fact that the unjust enrichment claim also applies to the subsidiaries of KCF, which are *not* parties to those notes,

and (ii) Delaware law permits contract-related unjust enrichment claims where, as here, the underlying contract is procured through fraud.

## I.    STANDARD OF REVIEW

Under Rule 12(b)(6), "[a] court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  In order to survive a motion to dismiss, a complaint must contain sufficient allegations to show that the claim is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility requires only enough factual support, accepted as true, for the court to draw "the reasonable inference" of liability. *Id.*  Indeed, while it need not be probable that the defendant is liable, the complaint does need to demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A 12(b)(6) motion should be denied if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 527 (3d Cir. 2018) (quoting *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017)).

Although the Third Circuit permits statute of limitation defenses to be raised in a 12(b)(6) motion, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017).  The Third Circuit recognizes that, ordinarily, statute of limitation defenses present fact questions to be decided by a jury. *Id.*  Therefore, "where more information is needed to establish the applicability of the affirmative defense, resolution of the issue in a pre-answer motion to dismiss is premature*." In re Appleseed's Intermediate Holdings, LLC*, 470

B.R. 289, 302 (D. Del. 2012).  "It would be unfair to require Plaintiff to plead facts sufficient to account for every affirmative defense and exception thereto in the Complaint."  *Id.*

## II.     PLAINTIFF SUFFICIENTLY ALLEGED FACTS TOLLING APPLICABLE STATUTES OF LIMITATION

Defendants assert that the Court should dismiss the Complaint because Defendants' initial fraud occurred in May 2014, four-and-half years before Plaintiff filed suit. (Defs. Br. at 6.) The issue of accrual is not so simple, however.  Plaintiff does not dispute that Mr. Pavlis "made the $7 million investment at issue in this action" in "May 2014," when he wrote, and sent, a check to Allwest Investments.  But it remains unclear when the claim accrued because it is unknown at this point when KCF either schemed with Allwest to divert the money to its accounts and/or received the money intended for Allwest.  Under Third Circuit law, when a complaint "does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal."  *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011); *see also Schmidt*, 770 F.3d at 251. As a preliminary observation, therefore, Defendants cannot argue that the claims are untimely because the Complaint does not allege when the statute of limitation accrued.

But even if Plaintiff's causes of action accrued in May 2014, dismissal is improper. Whether this Court applies Delaware law (3 year limitation) or Pennsylvania law (2 year limitation),[3] Plaintiff has alleged sufficient facts to toll any statute of limitations until November

_____

[3] Defendants suggest that either Delaware or Pennsylvania law may apply because KCF is a Delaware entity and Mr. Pavlis lived in Pennsylvania.  As explained herein, Plaintiff's claims survive under either state's applicable statute of limitations.  In addition, the statutes of limitation applicable to Plaintiff's claims for conversion and unjust enrichment are three years in Delaware and two years (conversion) and four years (unjust enrichment) in Pennsylvania. Defendants do not address when these claims accrued but, because they did not accrue at the time of the original fraud but rather at the unknown dates when Defendants actually received Plaintiff's funds—in the case of KCF, from Allwest Investments, and in the case of KCF's

2017, at the earliest.  Support for tolling is available in Defendants' own brief, where they concede (i) that the return on Mr. Pavlis' investment is "not even due at this time," meaning his injury was inherently unknowable, and (ii) that Plaintiff did not come into possession of *any* of the relevant transactional documents until sometime "starting in 2016."  (Defs. Br. at 8, 17.) Together, these concessions explain why Mr. Pavlis did not suspect Defendants' fraud "during the first two years" after his purported "Real Estate Investment" was made.  Plaintiff's claims are thus timely.

### A.   Plaintiff Is Not "Burdened" With "Proving" That The Limitations Period Was Tolled

Defendants seek to evade Plaintiff's well-founded allegations by arguing her claims are untimely.  As a matter of policy, " '[s]tatutes of limitations are primarily designed to assure fairness to defendants,' " operating under " 'the theory . . . that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " *Island Insteel Systems, Inc. v. Waters*, 296 F.3d 200, 215–16 (3d Cir. 2002) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965)).  But fairness and justice do not inure *solely* to the benefit of defendants, and Delaware law recognizes three circumstances in which a limitations period may be tolled:

> First, under the doctrine of inherently unknowable injuries, the statute of limitations will not run "where it would be practically impossible for a plaintiff to discover the existence of a cause of action." Second, under the doctrine of fraudulent concealment, tolling is appropriate "when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth." Third, under the doctrine of equitable tolling, the statute will not run "while a

---

subsidiaries, from KCF—their statute of limitations arguments are inapplicable and inapposite. *See Barefoot Architect, Inc.*, 632 F.3d at 835.

> plaintiff has reasonably relied upon the competence and good faith of a
> fiduciary."

*Ausikaitis on behalf of Masimo Corporation v. Kiani,* 962 F. Supp.2d 661, 674 (D. Del. 2013)

(quoting *Tyson Foods Consol. S'holder Litig.*, 919 A.2d 563, 584–85 (Del. Ch. 2007)).   Where

one of these exceptions exists, the statute of limitations begins to run only "upon the discovery of

facts 'constituting the basis of the cause of action or the existence of facts sufficient to put a

person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the

discovery' of such facts."   *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del.

2004); *see also TL of Fla., Inc. v. Terex Corporation*, 54 F. Supp.3d 320, 328 (D. Del. 2014)

(under Delaware's "discovery rule," the "statute of limitations will begin to run 'upon the

discovery of facts constituting the basis of the cause of action or the existence of facts sufficient

to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to

the discovery of such facts' ").[4]

The discovery rule is intended to prevent the precise "Hobson's choice" that Defendants

seek to impose here, when they argue that Plaintiff's claims are simultaneously too late and too

early.   Defendants seek to:

> on the one hand, suggest that one could not maintain a cause of action unless and
> until one could show both a wrongful act and an injury flowing from that act and,
> on the other hand, to suggest that the time for bringing that action could begin and
> terminate before the individual could be able in any manner to establish the
> claim's existence.

---

[4] Pennsylvania and Delaware law are essentially identical, though Pennsylvania does not require knowingly fraudulent concealment in order to trigger tolling.  *See Everwine v. Nemours Found.*, No. 05-3004, 2006 WL 891060, at *3 (E.D. Pa. Apr. 4, 2006); *see also Schmidt*, 770 F.3d at 251 (under Pennsylvania law, " '[t]he discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct' ") (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)).

*Mulrooney v. Corporation Service Co.,* No. 12–163, 2013 WL 1246769, at *13 (D. Del. Mar. 27, 2013).  Plaintiff has proffered facts supporting each of the three available exceptions and has alleged, with documentary support, that Mr. Pavlis did not have reason for concern regarding his investments until November 2017 at the earliest, when his representative, Deborah Skeans, was alerted by the media to a separate potential fraudulent scheme involving Billingsley.  (Compl. at ¶¶ 110-12.)

Defendants ask this Court to look past Plaintiff's pleadings and rule, as a matter of fact or law (they do not say which), that Plaintiff's claims have expired.  Rather than identifying any facts that suggest Mr. Pavlis *should have known* about the fraud against him, Defendants erroneously assert that Plaintiff must—at this preliminary stage—meet its "burden to prove that the statute (or analogous statute) of limitation has been tolled."  (Defs. Br. at 8-9.)  But the Third Circuit has expressly rejected any such requirements, holding that courts "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.  Under binding Third Circuit precedent, although a court may entertain a statute of limitations argument in a motion to dismiss, such motions may only be granted where a plaintiff "plead[s] himself out of court."  *Id.* at 252

In *Schmidt v. Skolas,* the Third Circuit reversed a district court's grant of a Rule 12(b)(6) motion, holding that dismissal is improper where it is "not evident on the face of the complaint and documents properly considered at the motion to dismiss stage whether the discovery rule saves [the plaintiff's] claims."  *Id.*  Moreover, a plaintiff's pleading need not "affirmatively show that he exercised 'reasonable diligence' with respect to discovering his injury," because such a standard "effectively required [plaintiff] to plead around an affirmative defense in his complaint,

12

which is inconsistent with Rules 8 and 12(b)(6) and with [the Third Circuit's] decision in *Barefoot Architect*." *Id.* at 252.

Although federal rules control Plaintiff's pleading requirements, the Delaware Supreme Court has applied similar logic in similar contexts.[5] In *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, the Delaware Supreme Court reversed a Court of Chancery determination that, "as a matter of law," the plaintiff "was on inquiry notice of its claims more than three years before it filed." *Wal-Mart Stores*, 860 A.2d at 319–20.  The Court of Chancery rejected plaintiff's "contention that its claims were 'inherently unknowable' " based on a " 'barrage of relevant information' that (it held) was available" to put the plaintiff on notice. *Id.*  In reversing, the Delaware Supreme Court held that, where "pleaded facts create a reasonable inference" that a plaintiff's injuries "were inherently unknowable" or "create a reasonable inference that [plaintiff] was blamelessly ignorant of the 'wrongful acts,' " a motion to dismiss must be denied because it "is not a proper procedural vehicle to resolve conflicting inferences of fact." *Id.* at 321.[6]

## B.    Plaintiff Has Alleged Voluminous Facts In Support of Tolling

Dismissal is not appropriate here because the allegations of the Complaint clearly support tolling.   Indeed, Plaintiff has not "pleaded [her]self out of court."   On the contrary, the Complaint's detailed factual allegations overwhelmingly confirm that Mr. Pavlis' injuries were inherently unknowable, that he was blamelessly ignorant of Defendants' fraudulent scheme due to Billingsley's fiduciary or fiduciary-like influence over him, and that Defendants, again

---

[5] For unknown reasons, Defendants cite mostly Delaware state court decisions in support of their argument that statute of limitations defense is properly asserted in a motion to dismiss. (Defs. Br. at 6.)

[6] Indeed, Delaware courts place the onus on the party seeking to invoke a statute of limitations defense to "conclusively demonstrate" that a plaintiff was on inquiry notice of his/her injury.  *Wal-Mart Stores,*, 860 A.2d at 320.  Such evidence has been characterized as a "red flag" by the Delaware Supreme Court.  *Boerger v. Heiman*, 965 A.2d 671, 675 (Del. 2009).

through their agent Billingsley, actively concealed their fraud from him.[7]  As described in the

Complaint:

> Mr. Pavlis relied on Billingsley as more than a trusted advisor; he looked to him
> to handle the details of his investments, authorizing Billingsley to deal directly
> with others regarding those transactions. By taking on this role of trusted advisor
> and confidante, Billingsley was able to shield Mr. Pavlis from any information
> that might have warned him of the on-going fraud.

(Compl. at ¶ 57.)  Defendants acknowledge the fiduciary relationship between KCF's agent,

Billingsley, and Mr. Pavlis, noting that he was "introduced . . . to Mr. Pavlis in order to assist

[him] with certain investments."  (Defs. Br. at 10 n. 4);  *see also Schmidt*, 770 F.3d at 253

(" '[T]he existence of a fiduciary relationship is relevant to a discovery rule analysis precisely

because it entails such a presumptive level of trust in the fiduciary by the principal that it may

take a "smoking gun" to excite searching inquiry on the principal's part into its fiduciary's

behavior' ") (quoting *In re Mushroom Transportation Co.*, 382 F.3d 325, 343 (3d Cir. 2004)).

Similarly, Plaintiff pleads ample facts illustrating the ways in which KCF, through its

agent Billingsley, kept Mr. Pavlis in the dark regarding his investments.  (*See* Compl. at ¶ 72

("Billingsley provided Mr. Pavlis with no documentation related to his September 2014

investments, further suggesting that he actively misled Mr. Pavlis about the nature of his

investments."), ¶ 86 ("Billingsley has [n]ever provided Mr. Pavlis with any documentation

reflecting his investments in Allwest – no promissory notes, no Subscription Agreement relating

---

[7] To the extent Defendants may contest this characterization, the facts suggest that
Billingsley worked on behalf of KCF, furthering KCF's interests,  including arranging transfer of
Mr. Pavlis' funds into KCF's possession.  Similarly, to the extent Defendants seek to uphold the
promissory notes purportedly signed by Mr. Pavlis, Billingsley would have been responsible for
soliciting and securing Mr. Pavlis' signature on behalf of KCF, serving as an agent with the
power to bind the LLC he represents and acting in its interest*.  See, e.g., J.E. Rhoads & Sons,
Inc. v. Ammeraal, Inc.*, C.A. No. 83C-NO-98, 1988 WL 32012, at *4 (Del. Super. Ct. Mar. 30,
1988).

to Mr. Pavlis' $6,000,000 investment, and certainly no document indicating that his Allwest investment was being rerouted to KCF, an entity that he had never heard of and which did not even exist at the time."), ¶ 102 ("In 'selling' Mr. Pavlis these notes, Billingsley provided no private placement memoranda or other documentation that would normally accompany high-risk investments like KCF.").)

Plaintiff's allegations regarding the scheme through which Defendants actively, and fraudulently, concealed their deception are equally well-developed.  As stated in the Complaint, "when Mr. Pavlis' representatives began to inquire into his investments in 2016, Defendants engaged in a pattern of deception intended to obscure the fraudulent nature of their scheme." (*Id.* at ¶ 160.)   This pattern included, but was not limited to, the following specific instances of affirmative concealment:

- "On September 20, 2016, shortly after Mr. Pavlis' representatives first contacted Billingsley, Allwest and KCF entered into a fraudulent "Funding Agreement" purporting to memorialize Mr. Pavlis' knowledge of the underlying nature of their relationship."  (Compl. at ¶ 161.)

- "This pattern of deception continued through 2017, as Billingsley repeatedly refused to turn over any documentation of Mr. Pavlis' investments. On numerous occasions, Billingsley delayed providing, or outright refused to provide, necessary information and documentation of Mr. Pavlis' investments." (*Id.* at ¶162.)

- "In June 2018, Billingsley produced several documents purporting to memorialize Mr. Pavlis' investments; these documents are, on information and belief, fake and/or fraudulent and an attempt to create a veneer of legitimacy for Defendants' scheme." (*Id.* at ¶ 163.)

Defendants' assertion that Mr. Pavlis should have been on notice of the fraud perpetrated against him immediately upon signing his $6,000,000 check finds no support in either the facts alleged or the applicable law.

In sum, while Defendants' arguments are mistaken, even if Plaintiff *did* face a burden of proving that the statute of limitations have been tolled, the Complaint supplied ample evidence that each of the three recognized tolling doctrines are applicable to Plaintiff's claims.

## III.   PLAINTIFF ASSERTS HIS CLAIMS WITH THE REQUISITE PARTICULARITY

Defendants also assert that the Complaint is deficient pursuant to Federal Rule of Civil Procedure 9(b) because it lacks particularity.  Although Defendants contend that Plaintiff's fraud allegations "fall[ ] well short of the who, what, when, where, and how required under Rule 9(b)," this Court has previously recognized that no such requirement exists.   *Korac v. QxC Communications, Inc.,* 286 F.R.D. 263, 265 (D. Del. 2012) (Rule 9(b)'s "heightened particularity standard does not require a complaint to list date, place or time in the pleading").

The purpose of Rule 9(b) "is to provide notice, not to test the factual allegations of the claim," *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 414 n. 2 (3d Cir. 2003), "to insure adequate notice so that defendants can intelligently respond," and to allow the defendant "to answer, engage in discovery, and move for summary judgment." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 233 (3d Cir. 2011). Those purposes are more than met by the extensive and exhaustingly-detailed Complaint.

### A.    The Doctrines of "De Facto" Corporation and "Corporation By Estoppel" Do Not Apply

The bulk of Defendants Rule 9(b) argument concerns the corporate status of KCF's subsidiaries.[8]   Defendants misconstrue Plaintiff's argument about the formation of those Delaware LLCs, however: although Plaintiff characterizes the facts surrounding the formation of

---

[8] Defendants do *not* address Plaintiff's allegation that the KCF promissory notes are *void ab initio* because KCF was not a legal entity at the time the promissory notes at issue were purportedly signed and thus lacked *capacity* to enter into any agreements, voiding both Notes.

those entities as suggestive of "fraud," their formation does not provide a basis for the Complaint's fraud or fraudulent concealment claims.   Instead, Plaintiff alleges that KCF's subsidiaries are liable for conversion and unjust enrichment.[9]

Nonetheless, Defendants' suggestion that this Court should simply assume the valid legal status of those subsidiaries misses the mark.  Although Defendants invoke the doctrines of "*de facto* corporation" and "corporation by estoppel," their arguments are contradicted by their own authorities—authorities they mischaracterize.[10]   As explained by the district court in *Leber Assocs., LLC v. Entertainment Group Fund, Inc.,* No. 00-3759, 2003 WL 21750211, (S.D.N.Y. July 29, 2003), cited by Defendants, a *de facto* corporation exists:

> where (1) there is a special act or general law under which such a corporation may lawfully exist, (2) a bona fide attempt to organize under the law and colorable compliance with the statutory requirements, and (3) actual use[ ] or exercise of corporate powers in pursuance of such law and attempted organization.

*Leber Assocs., LLC,* 2003 WL 21750211, at *9–10 (quoting *Big Valley Assocs. v. DiAntonio*, Civ. A. No. 94C-05-089, 1995 WL 339072, *1 (Del. Super. Ct. May 10, 1995)).  In order to be recognized as a *de facto* corporation, and thus possess capacity to contract, there must be

---

[9] KCF's subsidiaries are liable for conversion because KCF has "diverted Mr. Pavlis' funds to [them] . . . through transactions that were not contemplated (and could not be contemplated) at the time Mr. Pavlis invested his funds in Allwest." (Compl. at ¶ 169.) KCF's subsidiaries are liable for unjust enrichment because, "to the extent that Mr. Pavlis' funds are in the possession of KCF's subsidiaries, that possession is not contemplated by any contract (to the extent any of the various contracts produced by Defendants are deemed valid) to which Mr. Pavlis is a party, nor was it the intention of Mr. Pavlis that these entities benefit from his investment in Allwest." (*Id*. at ¶ 175.)  Moreover, "Mr. Pavlis lacked any knowledge that his funds would be used to enrich [KCF's] subsidiaries and did not consent to the transfer of funds to any Defendant," and, "[a]s a result, Defendants' continued possession and dissipation of Mr. Pavlis' funds for their own ends is wrongful, inequitable, and at Mr. Pavlis' expense." (*Id*. at ¶ 176.)

[10] The court did not "estop[ ]" any party from disclaiming existence of an LLC but rather left the issue to the trier of fact.  *Leber Assocs., LLC*, 2003 WL 21750211, at *12.

17

evidence that a "good-faith attempt to comply with the requirements of Del Code Ann. tit. 6 § 18–201(a)" was made "at the time of the [relevant] agreement." *Id.* at *10. Defendants provide no such evidence.

Nor are they saved by the doctrine of "corporation by estoppel," under which "a person who contracts or otherwise deals with a body of people as a corporation thereby admits that they are a corporation and is estopped to deny their incorporation[ ] in an action . . . arising out of the contract." *Leber Assocs., LLC*, 2003 WL 21750211, at *11 (quoting 8 Fletcher Cyc. Corp. § 3910 (2001)). Because Mr. Pavlis did not contract with KCF's subsidiaries, the doctrine would be inapplicable to Plaintiff's claims. The doctrine is also inapplicable in instances of fraud, where "the recognition of a pretended corporation is itself brought about by false representations that it is incorporated, or by fraudulent dealings carried on for the very purpose of entrapping the party into the action on which such recognition is based." 8 Fletcher Cyc. Corp. § 3917 (2018).[11] As an example, if an entity that is *not* properly formed under state law holds itself out as a " 'a corporation duly organized, validly existing and in good standing under, and by virtue of, the laws of the State of Delaware,' " estoppel would not apply against those it deceived. (Compl. at ¶ 90 (quoting September 1, 2014 Note Purchase Agreement).)

## B.  Plaintiff's Complaint Spells Out Defendants' Fraud At Length And In Detail

Defendants' assertion that Plaintiff's Complaint consists only of "conclusory" fraud allegations and "provides no further details and facts" is absurd. Among the many highly-particularized allegations contained therein, Plaintiff alleges that, "on or around January 28,

---

[11]  *See also* 8 Fletcher Cyc. Corp. § 3909 (2018) ("one is not estopped to attack the corporation's existence . . . where that person was misled by them into the belief that the corporation actually existed."); *see also* 18A Am. Jur. 2d Corporations § 210 (2018) ("creditors who are induced to deal with an apparent corporation by fraud will not be estopped to deny its corporate existence."); *Leber Assocs.,* 2003 WL 21750211, at *11-12 (citing Fletcher Cyclopedia of Corporations).

2014," and again in May 2014, KCF "misrepresent[ed] . . . that Mr. Pavlis was investing in Allwest Investments when in reality his funds were going to KCF." (Compl. at ¶ 153(a).) In support of this allegation, Plaintiff provided a copy of a check for $6,000,000 written to Allwest, with a memo notation that the money was intended as a "Real Estate Investment"—the business of Allwest, not KCF. (*Id.* at ¶¶ 78-81.) The Complaint alleges that whenever Mr. Pavlis asked Billingsley about his Allwest investment, Billingsley assured him that it was performing well and that he had nothing to worry about, without any mention of KCF. (*Id.* at ¶ 85.) Further, as set forth in the Complaint, when Mr. Pavlis' representatives later asked about this transaction, Defendants engaged in an elaborate cover-up, including an illegitimate side-agreement that purports to memorialize Mr. Pavlis' awareness of the transaction—without ever contacting Mr. Pavlis or including him in the document. (*Id.* at ¶¶ 130-36.) These allegations include all the essential elements of a fraud. It is difficult to imagine more particular allegations.[12]

## IV.  PLAINTIFF STATES A VIABLE, PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT

Defendants ask this Court to dismiss Plaintiff's claim for unjust enrichment based on the existence of a "contract that governs the relationship between the parties that gives rise to the unjust enrichment claim." (Defs. Br. at 16.) This argument fails for two reasons. First, the unjust enrichment claim applies equally to KCF's subsidiaries, who do *not* have a contractual relationship with Mr. Pavlis. Second, "when a plaintiff alleges that 'it is the [contract], itself,

---

[12] Defendants assert, without support, that the fact the "promissory notes" have not come due means Plaintiff's claim is premature. (Defs. Br. at 14, 17.) As noted *supra*, this is a remarkable argument in light of their theory that those same claims are untimely. Defendants are essentially contending that fraud "accrues" at the moment of misrepresentation but does not become ripe until a loss is felt, leaving Mr. Pavlis no period of time in which his claims were both timely and ripe. Such an argument only serves to confirm Plaintiff's allegation that Defendants sought to use long-term investments to take advantage of, and conceal their fraud from, the nonagenarian Mr. Pavlis. (Compl. at ¶ 158.)

that is the unjust enrichment,' the existence of the contract does not bar the unjust enrichment claim." *LVI Group Invs., LLC v. NCM Group Holdings, LLC*, No. 12067, 2018 WL 1559936, at *16 (Del. Ch. Mar. 28, 2018) (internal citation omitted).  A claim for unjust enrichment may therefore stand where, as here, " 'the contract itself is not necessarily the measure of the plaintiff's right where the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake and the defendant has been unjustly enriched by the benefits flowing from the contract.' " *Id.* (internal citation omitted); *see also Novipax Holdings LLC v. Sealed Air Corporation*, N17C–03–1682, 2017 WL 5713307, at *15 (Del. Super. Ct. Nov. 28, 2017) ("The principle claim in this case is for fraud and fraudulent inducement.  Sealed Air argues that this fraudulent inducement renders the APA void. A claim for unjust enrichment may thus proceed under the theory that no valid contract exists.").

## CONCLUSION

Because Plaintiff's claims are timely, particularized, and highly-plausible, this Court should deny Defendants' motion to dismiss.


STRADLEY RONON STEVENS & YOUNG, LLP


*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah S. Skeans,*
*Executrix of the Estate of Frank E. Pavlis*


Dated: December 4, 2018