# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS,<br><br>*Plaintiff*,<br><br>v.<br><br>KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC,<br><br>*Defendants*. | C.A. No. 1:18-cv-01516-CFC |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (No. 3963)
James G. McMillan, III (No. 3979)
5803 Kennett Pike, Suite C
Wilmington, Delaware  19807
Phone:  (302) 257-2011
Fax:  (302) 257-2019
Email:   tk@hfk.law
            jm@hfk.law

Dated:  December 11, 2018                    *Counsel for Defendants*

## **TABLE OF CONTENTS**

                                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

REPLY STATEMENT .........................................................................................................1

LEGAL ARGUMENT ..........................................................................................................3

    I.     PLAINTIFF HAS PLED HERSELF OUT OF COURT, AND HER COMPLAINT DOES NOT PROVIDE SUPPORT FOR TOLLING ANY CLAIMS ................................................................................................3

    II.    PLAINTIFF HAS NOT SATISFIED RULE 9(b), OR EVEN RULE 12(b)(6) ................................................................................................6

    III.   PLAINTIFF CANNOT JUMP TO DISCOVERY TO FIND CLAIMS .........................9

CONCLUSION ..................................................................................................................10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9-10

*Big Valley Assocs. v. DiAntonio*,
1995 WL 339072 (Del. Super. Ct. May 10, 1995) .......... 9

*Brown v. Coupe*,
2017 U.S. Dist. LEXIS 44110 (D. Del. Mar. 27, 2017) .......... 10

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......... 6-7

*Fried v. JP Morgan Chases & Co.*,
850 F.3d 590 (3d Cir. 2017) .......... 3

*In re Fruehauf Trailer Corp.*,
250 B.R. 168 (D. Del. 2000) .......... 6

*Goodrich v. E.F. Hutton Grp., Inc.*,
542 A.2d 1200 (Del. Ch. 1988) .......... 7

*In re Great Atl. & Pac. Tea Co. Sec. Litig.*,
103 F. App'x 465 (3d Cir. 2004) .......... 6-7

*Harco Nat. Ins. Co. v. Green Farms, Inc.*,
1989 WL 110537 (Del. Ch. Sept. 19, 1989) .......... 5

*Korac v. QxC Communications, Inc.*,
286 F.R.D. 263 (D. Del. 2012) .......... 6

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009) .......... 7

*Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*,
2003 WL 21750211 (S.D.N.Y. July 29, 2003) .......... 9

*Lyxell v. Vautrin*,
604 F.2d 18 (5th Cir. 1979) .......... 7

*Sanchez v. AFA Foods, Inc.*,
2012 Bankr. LEXIS 5764 (D. Del. Bankr. Dec. 14, 2012) .......... 10

*Smith v. Pallman*,
    420 Fed. App'x 208 (3d Cir. 2011) ................................................................................... 10

*Spine Care Del., LLC v. State Farm Mut. Auto Ins. Co.*,
    2018 U.S. Dist. LEXIS 47841 (D. Del. Mar. 23, 2018) ..................................................... 10

*StrikeForce Technologies Inc. v. Phonefactor, Inc.*,
    2013 U.S. Dist. LEXIS 162113 (D. Del. Nov. 14, 2013) ................................................... 10

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014) ............................................................................................... 8

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................... *passim*

6 *Del. C.* § 18-201(a) ............................................................................................... 9

Defendants[1] KCF, Key Properties, Equity Pros, and Mobile Agency, by and through their undersigned counsel, hereby submit this Reply Brief in further support of their Motion to Dismiss the Complaint. For the reasons stated herein as well as in the Opening Brief, the Motion to Dismiss should be granted and the Complaint dismissed.

## REPLY STATEMENT

While Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss ("Answering Brief" or "Ans. Br.") tries to paint Defendants' Opening Brief as a "study in contradictions," Defendants remain puzzled by a number of issues in Plaintiff's pleadings. While Plaintiff seems to have an acute, albeit unexplained, knowledge of exactly what documents and information were and were not shared with Mr. Pavlis by Mr. Billingsley (*see* Ans. Br. at 5), where there are documents, those documents must be fraudulent. *See id*. In fact, this default conclusory allegation appears to be lobbed wherever there is a document that does not fit within Plaintiff's selective narrative. *See, e.g., id.* at 6 (characterizing "Private Placement Memorandum" and "Subscription Agreement" as "fake and/or fraudulent"); 15 (characterizing "Funding Agreement"—drafted by Snell & Wilmer—as "fraudulent").

Additionally, the Answering Brief adds brand new allegations, most likely seeking to patch holes in the pleadings. For example, Plaintiff claims that "Mr. Pavlis supported this litigation …" (Ans. Br. at n.2), even though he passed away two months before it was filed. Additionally, non-party Mr. Billingsley is now identified as a "fiduciary" or as having "fiduciary-like influence" (Ans. Br. at 3), even though the Complaint does not use these terms. In other instances, Plaintiff's allegations have outright morphed into new allegations. For example, while Plaintiff identified in

---

[1] Capitalized terms not otherwise herein defined shall have the same meanings ascribed to them in Defendants' Opening Brief in Support of Their Motion to Dismiss (the "Opening Brief").

the Complaint the root of the alleged scheme as "Billingsley conspir[ing] with a third party, Allwest …" (Complt. at ¶ 2), now in the Answering Brief, it is KCF that allegedly schemed with Allwest. *See* Ans. Br. at 9 ("… it is unknown at this point when KCF either schemed with Allwest to divert the money to its accounts and/or received the money intended for Allwest.").

Despite all these curiosities, the dispositive factor that comes through is that Plaintiff has pled herself out of Court. Plaintiff cannot explain how Mr. Pavlis' signing of the Note Purchase Agreements (attached as Exs. C and E to the Complaint)—which plainly shows the investment of funds into KCF by Mr. Pavlis in 2014—is not dispositive of the statute of limitations issue. Both Note Purchase Agreements are dated more than three years before the filing of the Complaint in this matter, evidencing that Mr. Pavlis had knowledge and was on notice of the KCF investment. *See* Ex. C (dated "8-21-14") and Ex. E. (dated "11-21-14"). Plaintiff's claims are time barred, and no amount of tolling will save her claims. *See* discussion, *infra*, at Section I.

Second, while Plaintiff's brief tones down the invective from the Complaint, it still falls well short of pleading fraud with specificity under Rule 9(b), or even satisfying the requirements under Rule 12(b)(6). With respect to Rule 9(b), heightened particularity means pleading something beyond conclusory allegations, not simply repeating the term "fraud" without substantive backing. Even if Plaintiff had met the requirements of Rule 9(b), her allegations do not state a claim for relief under Rule 12(b)(6) and must be dismissed as a matter of law. *See* discussion, *infra*, at Section II.

Despite these fatal flaws, Plaintiff asks the Court to ignore them and allow her move forward to conduct a fishing expedition in discovery to come up with new claims. *See* Ans. Br. at 1 ("It is a fine line they seek to traverse, requesting that this Court not simply ignore Plaintiff's detailed, and damning, allegations but overrule them, ***dismissing this case before discovery can***

2

*reveal any still-hidden secrets of Defendants' 'business' activities.*") (emphasis added).  This Court has never permitted parties to skip over pleading requirements so that it can look for claims in discovery.  *See* discussion, *infra*, at Section III.  Plaintiff knows that she does not have a claim.

For all of the reasons stated herein as well as in the Opening Brief, the Motion to Dismiss should be granted.

## LEGAL ARGUMENT

**I. PLAINTIFF HAS PLED HERSELF OUT OF COURT, AND HER COMPLAINT DOES NOT PROVIDE SUPPORT FOR TOLLING ANY CLAIMS.**

Plaintiff acknowledges that Third Circuit authority "permits statute of limitation defense to be raised in a 12(b)(6) motion …." Ans. Br. at 8 (citing *Fried v. JP Morgan Chases & Co.*, 850 F.3d 590 (3d Cir. 2017).  Where Plaintiff loses the thread, however, is in not acknowledging that the signed Note Purchase Agreements, agreements which were signed and dated by Mr. Pavlis more than three years before the filing of the Complaint, act as a bar to the claims in the Complaint. The bar could not be more "apparent on the face of the complaint." *Fried*, 850 F.3d at 604.

Plaintiff admits that Mr. Pavlis made an investment in Allwest by May 2014.  *See* Complt. at ¶ 81.  According to Plaintiff, the fraud occurred when Allwest allegedly transferred the investment to KCF without Mr. Pavlis' notice or approval. *See, e.g.*, Ans. Br. at 9 ("But it remains unclear when the claim accrued because it is unknown at this point when KCF either schemed with Allwest to divert the money to its accounts and/or received the money intended for Allwest.").[2]  If the alleged fraud was the transfer of the money from Allwest, then Pavlis' knowledge of an investment in KCF would be enough to trigger the running of the statute of limitations.  Thus, his

---

[2] Again, as previously noted, the Complaint alleges that it was non-party Billingsley, not KCF, that allegedly transferred the funds to KCF.  *See* Complt. at ¶ 2.  The Answering Brief alleges that it was KCF, not Billingsley.  *See* Ans. Br. at 9.

3

signing of the Note Purchase Agreements on "8-21-14" and "11-21-14"—again, more than three years before the filing of the Complaint—means that the alleged fraud and other claims are barred.

Plaintiff hangs her defense to this inconvenient truth on her allegations that the Note Purchase Agreements must not have been "knowingly sign[ed]" by Mr. Pavlis. *See* Complt. at ¶ 143. This is by definition a conclusory allegation. What does this allegation even mean? How did Mr. Pavlis not "knowingly sign" the Note Purchase Agreements? The Complaint does not explain this. Plaintiff certainly does not dispute that this is his signature. And to the degree that Plaintiff is trying to rely on some challenge to Mr. Pavlis' capacity as a "nonagenarian" (*see* Ans. Br. at 1, 2, n.12) that too falls decidedly short. Plaintiff does not—and cannot—allege that Mr. Pavlis lacked capacity. Plaintiff has only alleged that she was the representative of Mr. Pavlis' estate, not a guardian. Plaintiff has not countered this argument raised in the Opening Brief. *See* Op. Br. at 8).

Plaintiff next tries to call the Note Purchase Agreement into doubt by arguing that "the signature page for each documents stand alone, on separate pages that make no reference whatsoever to KCF, the Note Purchase Agreement, or any other identifying information." Complt. at ¶ 98. However, the signature pages integrate fully with the Note Purchase Agreements, identifying Mr. Pavlis as an "Investor" which so happens to be the counterparty to KCF on the agreements. *See* Exs. C and E. Just because a signature page stands alone does not mean that such a page is fraudulent. In fact, if this were the standard, then many transactions in the commercial and corporate arena would be subject to fraud challenges by virtue of their signature pages. Nothing about the documents or their signature pages appear out of the ordinary.

Because the Note Purchase Agreements appear to be facially valid—showing that Mr. Pavlis had knowledge that he was making an investment into KCF as of August 21, 2014—

Plaintiff cannot skate past the statute of limitations defenses. Nor does tolling have any impact. While Plaintiff discusses at length the "discovery rule" (*see* Ans. Br. at 11), this is inapplicable where Pavlis was aware of the transfer of the funds from Allwest into KCF. If Mr. Pavlis had knowledge as of August 21, 2014, that he was investing in KCF, then he was on notice, and tolling would not preserve Plaintiff's claims. Moreover, any alleged efforts by Billingsley or others to conceal the truth is also inapplicable to the Court's analysis.

With respect to the arguments that Mr. Billingsley was a fiduciary and that the statute should be tolled on that basis, Mr. Billingsley is not a party to this action. Plaintiff has not alleged that the corporate veil should be pierced or that KCF and Billingsley are one and the same. In fact, even if Plaintiff were to attempt to argue alter ego liability, "persuading a Delaware Court to disregard the corporate entity is a difficult task." *Harco Nat. Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, *4 (Del. Ch. Sept. 19, 1989). Plaintiff did not undertake that challenge in her Complaint. Furthermore, Plaintiff did not once use the term "fiduciary" with respect to Mr. Billingsley in her Complaint. Even if she were able to successfully allege that Billingsley was a fiduciary of Mr. Pavlis, this does not overcome the fact that Mr. Pavlis signed a document which clearly stated that he had "full legal capacity, power and authority" to execute and perform (*see* Exs. C and E at § 3(a)), and that he had "knowledge and experience in financial and business matters that such Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment and is able to bear the economic risk of such investment for an indefinite period of time" *See id.* at § 3(b). Again, such allegations do not toll the claims.

Finally, Plaintiff claims that "Defendants seek to impose" a "Hobson's choice" by claiming that "Plaintiff's claims are simultaneously too late and too early." Ans. Br. at 11. *See also id.* at 1 ("Plaintiff's claims are untimely, they assert, but also unripe."). Defendants do no such thing.

5

Plaintiff has premised her fraud claim on the argument that a transfer of funds should never have been made from Allwest to KCF. Defendants argue that a claim based on such an allegation is untimely. Payment under the promissory notes—which is a separate issue altogether—is not due until, at the earliest, September 1, 2019. Plaintiff's conflation of these separate issues makes no sense.

For all the reasons stated herein as well as in the Opening Brief, Plaintiff's claims are time barred.

## II. PLAINTIFF HAS NOT SATISFIED RULE 9(b), OR EVEN RULE 12(b)(6).

Plaintiff cites *Korac v. QxC Communications, Inc.*, 286 F.R.D. 263 (D. Del. 2012), for the proposition that the "who, what when, where, and how" standard under Rule 9(b) does not "exist." Ans. Br. at 16. Specifically, Plaintiff quotes *Korac*, stating, "Rule 9(b)'s 'heightened particularity standard does not require a complaint to list date, place or time in the pleading.'" *Id. Korac* actually states: "This heightened particularity standard does not require a complaint to list date, place or time in the pleading **when the purpose of Rule 9(b) to serve notice to Defendants is met by sufficient alternative specifics of the alleged misconduct.**" 286 F.R.D. at 265 (emphasis added). Plaintiff, remarkably, left the emphasized, yet critical, portion out.

As this Court noted in *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 (D. Del. 2000), the goal of Rule 9(b) is to "inject[] precision and some measure of substantiation into their allegations of fraud." Without this precision injected, Defendants face a hodgepodge of loosely pled allegations, all of which have a number of pernicious effects, including harming Defendants' reputations. Regardless of Plaintiff's argument that the "who, what, where, when, and how" is not required, Third Circuit authority still makes clear that this is required. *See In re Great Atl. & Pac. Tea Co. Sec. Litig.*, 103 F. App'x 465, 469-70 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997), for proposition that plaintiff cannot simply

claim "fraud" without stating the "who, what, where, when, and how"). Defendants rely on the arguments in their Opening Brief which remain unrebutted.

With Plaintiff's allegations concerning the Three Subsidiaries now re-cast by her Answering Brief as not fraud or fraudulent concealment claims, but as claims for "conversion and unjust enrichment" (Ans. Br. at 16-17), Plaintiff tries to sidestep her failure to plead the elements of a fraud claim. However, this is not what the Complaint says: instead, Plaintiff accused the Three Subsidiaries of fraud and fraudulent concealment.[3] But even if Plaintiff were only seeking to allege conversion and unjust enrichment, these still fail. For example, Plaintiff's conversion claim, as now refined, appears to be a claim for conversion of money, which Delaware law does not permit. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889-890 (Del. Ch. 2009) (granting motion to dismiss for failure to state a claim because "conversion claim does not fall into the narrow exception to the general rule prohibiting claims for the conversion of money"). *See id.* ("Thus, 'an action for conversion of money will lie only where there is an "obligation to return the identical money" delivered by the plaintiff to the defendant.'") (quoting *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) and *Lyxell v. Vautrin*, 604 F.2d 18, 21 (5th Cir. 1979)).

Turning to the unjust enrichment claim, Plaintiff argues in her Answering Brief that:

> KCF's subsidiaries are liable for unjust enrichment because, "to the extent that Mr. Pavlis' funds are in the possession of KCF's subsidiaries, that possession is not contemplated by any contract (to the extent any of the various contracts produced by Defendants are deemed valid) to which Mr. Pavlis is a party, nor was it the intention

---

[3] Plaintiff argues that "Defendant misconstrues Plaintiff's argument about the formation of [the Three Subsidiaries] as suggestive of 'fraud,' their formation does not provide a basis for the Complaint's fraud or fraudulent concealment claims." Ans. Br. at 16-17. But Plaintiff's Common Law Fraud Count (Count II) and Fraudulent Concealment Count (Count III) are aimed at "Defendants" collectively. *See* Complt. at ¶¶ 151, 156.

7

>of Mr. Pavlis that these entities benefit from the investment in Allwest."

Ans. Br. at n.9 (quoting Complt. at ¶ 175). This, however, is incorrect. In reviewing the exhibits to the Complaint, nothing in the Note Purchase Agreements—signed by Mr. Pavlis—restricted KCF from using any funds invested in KCF for investment in the Three Subsidiaries. In fact, to the contrary, the Note Purchase Agreements at Sections 1(d) specifically state, "*Use of Proceeds.* The proceeds of the sale and issuance of the Notes shall be used for general corporate purposes." Exs. C and E at § 1(d). Given these contractual provisions, Defendants do not see how Plaintiff expects that she can state a claim for unjust enrichment.

Focusing on the allegations directed towards KCF, again, the elements of fraud are not satisfied by the allegations concerning a transfer of funds from Allwest to KCF. Mr. Pavlis' signatures on the Note Purchase Agreements show that he agreed to those transfers. And if such transfer was improper, why didn't Plaintiff sue Allwest? In any event, Plaintiff cannot point to any allegations in the Complaint of "(1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) causally related damages to the plaintiff." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014). Without these elements being pled, Plaintiff cannot satisfy Rule 9(b) or Rule 12(b)(6).[4]

Next, Plaintiff challenges Defendants' *de facto* corporation as well as the corporation by estoppel analysis. *See* Ans. Br. at 17-18. Plaintiff argues that "[i]n order to be recognized as a *de*

---

[4] Defendants are aware that Ms. Skeans has previously used allegations of fraud to attack another person that formerly served as Mr. Pavlis' representative. Because this appears to be her *modus operandi* with respect to her handling of Mr. Pavlis' affairs, the necessity to plead fraud with particularity is all the more pertinent.

*facto* corporation, and thus possess capacity to contract, there must be evidence that a 'good-faith attempt to comply with the requirements of Del. Code Ann. tit. 6 § 18-201(a)' was made 'at the time of the [relevant] agreement.'" *Id.* (quoting *Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*, 2003 WL 21750211 (S.D.N.Y. July 29, 2003). Plaintiff premises this argument on nothing other than her say-so. In fact, *Leber* (relying on Delaware case law) makes clear that there is "'no bright line for determining when or under what circumstances a [*de facto*] corporate status attaches.'" 2003 WL 21750211, at *10 (quoting *Big Valley Assocs. v. DiAntonio*, 1995 WL 339072, at *2 (Del. Super. Ct. May 10, 1995)). Plaintiff's pointing to dates of filing a certificate of formation versus dates in certain operative instruments does not make the point. Moreover, with respect to the corporation by estoppel, Plaintiff again throws in her allegations of "fraud" to try to avoid the result of a future estoppel. *See* Ans. Br. at 18. Conclusory assertions of fraud do not satisfy any pleading requirements.

Despite these arguments, the point that should not be lost at this juncture is that simply because the effective dates of certain agreements pre-date the dates of formation listed by the Secretary of State, this does not equate to a prima facie case of fraud, and certainly does not present dispositive proof that such an entity cannot conduct business. Again, Defendants rely on the arguments raised in their Opening Brief.

### III.  PLAINTIFF CANNOT JUMP TO DISCOVERY TO FIND CLAIMS.

Finally, Plaintiff tipped her hand in her Answering Brief when she stated that she did not want this case to be dismissed "before discovery can reveal any still-hidden secrets of Defendants' 'business' activities." Ans. Br. at 1. Plaintiff has admitted that she is looking to engage in a fishing expedition to make her claims.

The U.S. Supreme Court has made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

9

doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A party does not get to use the tools of discovery until she states a claim. In *StrikeForce Technologies Inc. v. Phonefactor, Inc.*, 2013 U.S. Dist. LEXIS 162113, at *15 (D. Del. Nov. 14, 2013), plaintiff StrikeForce argued that it needed discovery to plead alter ego liability. The Court ruled:

> StrikeForce's argument undermines the purpose of the well-pled complaint requirement. This requirement "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."
>
> Here, StrikeForce knocks without suggesting fraud or injustice, nor alleging any facts supporting either element. Consequentially, its alter ego theory is inadequate when measured against the requirements of Rule 12(b)(6).

*Id.* (quoting *Iqbal*, 556 U.S. at 678-79). *See also Smith v. Pallman*, 420 Fed. App'x 208 (3d Cir. 2011) (finding party's contention that "the District Court should have permitted her to engage in discovery fails. Discovery is not required prior to dismissal"); *Spine Care Del., LLC v. State Farm Mut. Auto Ins. Co.*, 2018 U.S. Dist. LEXIS 47841, at *9 (D. Del. Mar. 23, 2018) ("We cannot rely on discovery to state claim which must be pled under Rule 8."); *Brown v. Coupe*, 2017 U.S. Dist. LEXIS 44110, at *8 (D. Del. Mar. 27, 2017) ("Nor is Plaintiff entitled to discovery in order to overcome a motion to dismiss."); *Sanchez v. AFA Foods, Inc.*, 2012 Bankr. LEXIS 5764, at *12 (D. Del. Bankr. Dec. 14, 2012) ("The law is clear that [plaintiff] should not be permitted to take discovery until she properly pleads a cause of action.").

## **CONCLUSION**

For the reasons stated above as well as in the Opening Brief, Defendants respectfully request that the Court grant the Motion to Dismiss in favor of Defendants.

| | |
|---|---|
| Dated:  December 11, 2018 | **HALLORAN FARKAS + KITTILA LLP**<br><br>*/s/ Theodore A. Kittila*<br>Theodore A. Kittila (No. 3963)<br>James G. McMillan, III (No. 3979)<br>5803 Kennett Pike, Suite C<br>Wilmington, Delaware  19807<br>Phone:  (302) 257-2011<br>Fax:  (302) 257-2019<br>Email:    tk@hfk.law<br>              jm@hfk.law<br><br>*Counsel for Defendants* |