IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBOARAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, <br><br> Plaintiff, <br><br> v. <br><br> KEY COMMERCIAL FINANCE LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, <br><br> Defendants. | Civil Action No. 18-1516-CFC |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this investment fraud action is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Key Commercial Finance LLC ("KCF"), Key Commercial Finance Properties, LLC ("Key Properties"), Equity Pros, LLC ("Equity Pros"), and Mobile Agency, LLC ("Mobile Agency") (collectively, "defendants"). (D.I. 22) For the following reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART defendants' motion to dismiss.[1]

---

[1] The briefing for the pending motion is as follows: defendants' opening brief in support of their motion to dismiss (D.I. 23), plaintiff's answering brief (D.I. 24), and defendants' reply brief (D.I. 25).

## II. BACKGROUND

### a. The Parties

Deborah S. Skeans ("Ms. Skeans" or "plaintiff") is the executrix of the Estate of Frank E. Pavlis and is a citizen and resident of Pennsylvania. (D.I. 1 at ¶ 14) Plaintiff's decedent, Frank E. Pavlis ("Mr. Pavlis") passed away on August 24, 2018, at the age of 101. (*Id.* at ¶¶ 11, 21) KCF is a limited liability company formed under the laws of Delaware, with its principal place of business in Brewster, New York. (*Id.* at ¶ 15) Key Properties is a limited liability company formed under the laws of Delaware, with its principal place of business in Brewster, New York. (*Id.* at ¶ 16) Equity Pros is a limited liability company formed under the laws of Connecticut, with its principal place of business in Brewster, New York. (*Id.* at ¶ 17) Mobile Agency is a limited liability company formed under the laws of Delaware, with its principal place of business in Brewster, New York. (*Id.* at ¶ 18) Key Properties, Equity Pros, and Mobile Agency, are subsidiaries of KCF. (*Id.* at ¶¶ 16-18)

### b. Procedural History

On October 1, 2018, plaintiff originally filed this action. (D.I. 1) On the same date, plaintiff filed motions for a temporary restraining order, a preliminary injunction, and expedited discovery. (D.I. 3; D.I. 4; D.I. 6) On October 2, 2018, Judge Connolly denied plaintiff's motion for a temporary restraining order, concluding there was an insufficient showing of irreparable harm. (D.I. 12) On October 10, 2018, plaintiff withdrew the motion for a preliminary injunction and the motion for expedited discovery. (D.I. 17) On November 20, 2018, defendants filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 22)

### c. Facts[2]

This action arises from the issuance of certain promissory notes to Mr. Pavlis in 2014. Plaintiff alleges that the notes, purportedly issued by KCF, should be declared void *ab initio* because: (1) KCF was not a legal entity at the time of their issuance; and (2) the notes were fraudulently executed. (D.I. 1 at ¶¶ 94-107) Plaintiff has asserted five claims against the defendants: declaratory judgment in Count I, common law fraud in Count II, fraudulent concealment in Count III, conversion in Count IV, and unjust enrichment in Count V. The relief demanded by plaintiff includes an injunction, declaratory judgment, restitution, general and punitive damages.

At the time of his death, Mr. Pavlis was 101 years old. (*Id.* at ¶ 21) In or around January 2014, Justin Billingsley ("Mr. Billingsley") solicited Mr. Pavlis to invest in Allwest.[3] (*Id.* at ¶ 76) Mr. Pavlis allegedly invested the sum of seven million dollars in Allwest. (*Id.* at ¶¶ 77, 79) Mr. Billingsley forwarded Mr. Pavlis' investment funds to Allwest and orchestrated the wholesale transfer of this investment from Allwest to KCF, an entity that Mr. Billingsley controlled. (*Id.* at ¶¶ 2, 75, 82, 85) KCF used Mr. Pavlis' investment to provide funding to Allwest for various projects between 2014 and 2018. (*Id.* at ¶ 83) Mr. Pavlis was not made aware of the transfer to KCF and never received documentation reflecting his investment in Allwest. (*Id.* at ¶¶ 85-86)

In exchange for his seven million dollar investment, Mr. Pavlis received two convertible promissory notes issued in September and November 2014 in the amounts of three million

---

[2] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[3] Mr. Billingsley and Allwest are not parties to this action.

dollars and four million dollars respectively. (*Id.* at ¶¶ 87-93) These promissory notes were accompanied by Note Purchase Agreements[4] purporting to memorialize Mr. Pavlis' investments in KCF. (*Id.* at ¶¶ 87, 89, 93) Plaintiff alleges that despite representations in the notes and accompanying Note Purchase Agreements that KCF was a valid corporate entity in good standing, KCF had not been formed and did not have a corporate existence prior to December of 2014. (*Id.* at ¶ 94) Moreover, Mr. Pavlis' signature on each of the Note Purchase Agreements appears on its own pre-printed signature page without any identifying language relating it to a specific document. (*Id.* at ¶¶ 98-99) Plaintiff generally suggests that due to Mr. Pavlis' advanced age at the time the notes issued, Mr. Pavlis was readily manipulated and defrauded of his investment.

In 2016, plaintiff, acting in her capacity as Mr. Pavlis' Power of Attorney, requested that Mr. Billingsley provide her with information relating to Mr. Pavlis' real estate investments. (*Id.* at ¶ 109) On November 11, 2016, Mr. Billingsley provided plaintiff with a copy of the September note. (*Id.* at ¶ 110) In late 2017, plaintiff requested additional information about KCF from Mr. Billingsley. (*Id.* at ¶ 111) In or around February 2018, Mr. Billingsley produced a copy of the November note. (*Id.* at ¶ 112) On June 29, 2018, Mr. Billingsley produced additional documents, including a KCF Confidential Private Placement Memorandum ("PPM") dated August 1, 2014, and a subscription agreement (the "Subscription Agreement") dated August 18, 2014. (*Id.* at ¶¶ 114-115) The PPM did not mention convertible promissory notes and instead related to class A shares totaling one million dollars. (*Id.* at ¶¶ 116-117) The Subscription Agreement similarly related to class A shares totaling one million dollars. (*Id.* at ¶¶

---

[4] The complaint states that the promissory notes were issued with accompanying "Note Purchase Agreements." Paragraph 108 of the complaint refers to these agreements as "Note Subscription Agreements." (D.I. 1 at ¶¶ 89-91, 93-96, 108)

4

117-118) Plaintiff alleges that the PPM and Subscription Agreement are fabrications intended to falsely depict Mr. Pavlis' investment in KCF. (*Id.* at ¶ 122) On June 29, 2018, Mr. Billingsley also provided plaintiff's counsel with three joint venture agreements (the "Joint Venture Agreements") between KCF and each of its three subsidiaries. (*Id.* at ¶ 123) Plaintiff alleges that the Joint Venture Agreements are fraudulent. (*Id.*) The Joint Venture Agreements provide that KCF:

> may, at its sole discretion, contribute funds to SUBSIDIARY for the purpose of ensuring that SUBSIDIARY is able to meet its operating expense obligations; provided, however, that under no circumstances shall such fund transfers be construed as a loan from PARENT to SUBSIDIARY.

(*Id.* at ¶ 127; *see also* D.I. 1, Ex. I) On July 13, 2018, Mr. Billingsley produced a funding agreement (the "Funding Agreement") between KCF and Allwest, which was dated September 20, 2016. (D.I. 1 at ¶¶ 130-131) Plaintiff alleges that the Funding Agreement is "a post-hoc attempt by KCF, through Billingsley, to create a veneer of legitimacy" to the transfer of Mr. Pavlis' funds from Allwest to KCF. (*Id.* at ¶ 136)

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### a. Statutes of Limitations

Defendants argue that Counts I, II, and V are time-barred.[5] (D.I. 23 at 6-9) Defendants note that Mr. Pavlis allegedly made the investments at issue in May 2014 and the action was not filed until October 2018. (*Id.* at 6) Under Delaware law, the statute of limitations period for common law fraud is three years and, under Pennsylvania law, the statute of limitations period is

---

[5] Under the Delaware borrowing statute, "[w]here a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the action arose, for bringing an action upon such cause of action." Del. Code Ann. tit. 10, § 8121. Defendants argue that this statute applies, such that the shorter statute of limitations applies to each of these Counts. (D.I. 23 at 6-7)

6

two years.[6] *See* Del. Code Ann. tit. 10, § 8106; 42 Pa. Stat. and Cons. Stat. Ann. § 5524(7). Therefore, defendants conclude plaintiff's common law fraud claim should be dismissed. (D.I. 23 at 6) Defendants contend that plaintiff's declaratory judgment claim is premised in fraud and is similarly barred by the statute of limitations. (*Id.* at 7 n.3) Furthermore, defendants aver that plaintiff's unjust enrichment claim is time-barred because Delaware law recognizes a three-year statute of limitations and Pennsylvania law recognizes a four-year statute of limitations. (*Id.* at 7) *See also Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 336 n.11 (D. Del. 2017); 42 Pa. Stat. and Cons. Stat. Ann. § 5525.

"Under Delaware law, the statute of limitations begins running from the time the cause of action accrues. Generally, 'ignorance of the cause of action will not toll the statute [of limitations], absent concealment or fraud, or unless the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act.'" *TL of Florida, Inc. v. Terex Corporation*, 54 F. Supp. 3d 320, 326 (D. Del. 2014) (internal citation omitted) (quoting *Boerger v. Heiman*, 965 A.2d 671, 674 (Del. 2009)); *see also In re Tyson Foods, Inc.*, 919 A.2d 563, 584-85 (Del. Ch. 2007). "Each of these doctrines permits tolling of the limitations period where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them." *Krahmer v. Christie's Inc.*, 903 A.2d 773, 781 (Del. Ch. 2006). Under the discovery rule, the statute of limitations is tolled when the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). If the discovery rule is applicable, the statute of limitations will begin to run "upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on

---

[6] The court makes no recommendation at this time on choice of law.

inquiry which, if pursued, would lead to the discovery of such facts." *Id.* A claim of fraudulent concealment requires an "affirmative misrepresentation" by the defendant and will toll the statute of limitations only until "the plaintiff discovers his rights or could have discovered his rights by the exercise of reasonable diligence." *Estate of Miller ex rel. Miller v. Hudson*, 528 F. App'x 238, 240 (3d Cir. 2013) (internal quotation marks omitted).

Defendants argue that the plaintiff has "plead[ed] herself out of court" because the applicable statutes of limitation have run on plaintiff's equitable claims. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Defendants' argument is grounded upon the causes of action accruing in May of 2014, when Mr. Pavlis made the seven million dollar investment in issue. Defendants cite no legal authority in support of their selection of the date of accrual. Moreover, defendants acknowledge the three exceptions which would operate to toll the limitations period in the instant case. (D.I. 23 at 7-9) *See Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 518-19 (D. Del. 2009) (recognizing three doctrines that may toll the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling). Reading the complaint in the light most favorable to the plaintiff, there are averments of facts to support each of the three exceptions even if, *arguendo*, the claims accrued in May of 2014. Moreover, defendants' argument that the claims are time-barred is contradicted by their subsequent assertion that the complaint fails to state a claim for fraud or unjust enrichment because the promissory notes have not yet become due and plaintiff has prematurely sued for damages. (D.I. 23 at 14)

The well-pleaded factual allegations support the application of the doctrine of inherently unknowable injuries. Plaintiff alleges that by May of 2014, Mr. Pavlis was under the reasonable belief that he had invested seven million dollars in Allwest based on Mr. Billingsley's

representations. (D.I. 1 at ¶ 81) The complaint avers that Mr. Billingsley repeatedly assured Mr. Pavlis that his investment in Allwest was performing well, effectively shielding him from knowing of the transfer to KCF. (*Id.* at ¶¶ 57, 85) Therefore, construing the well-pleaded facts in the light most favorable to plaintiff, "it would be practically impossible for [plaintiff] to discover the existence of a cause of action." *Gregorovich*, 602 F. Supp. 2d at 518 n.7 (citing *In re Tyson Foods, Inc.*, 919 A.2d at 584).

Plaintiff has also pleaded sufficient facts to support tolling based upon fraudulent concealment. Plaintiff alleges that Mr. Billingsley orchestrated the transfer of Mr. Pavlis' seven million dollar investment to KCF. (D.I. 1 at ¶ 82) However, Mr. Pavlis was not made aware of the transfer of his investment funds to KCF and was reassured as to his investment in Allwest. (*Id.* at ¶¶ 85-86) The complaint alleges that KCF issued two convertible promissory notes in an alleged effort to "legitimize" the transfer of Mr. Pavlis' seven million dollar investment from Allwest to KCF. (*Id.* at ¶ 87) Plaintiff has pleaded facts that defendants "prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth." *Gregorovich*, 602 F. Supp. 2d at 518 n.8 (citing *In re Tyson Foods, Inc.*, 919 A.2d at 585).

Furthermore, the complaint sets forth factual allegations that support equitable tolling. Plaintiff alleges that "Mr. Pavlis relied on Billingsley as more than a trusted advisor; he looked to him to handle the details of his investments, authorizing Billingsley to deal directly with others regarding those transactions." (D.I. 1 at ¶ 57) Plaintiff alleges that Mr. Billingsley knew of the transfer of investment funds from Allwest to KCF by virtue of his participation in orchestrating the transfer, but did not make Mr. Pavlis aware of it. (*Id.* at ¶¶ 82-86) Consequently, plaintiff has pleaded facts that plaintiff "reasonably relied upon the competence and good faith of a fiduciary . . . [who] knew or had reason to know of the facts constituting the

wrong." *Gregorovich*, 602 F. Supp. 2d at 519 n.9 (citing *In re Tyson Foods, Inc.*, 919 A.2d at 585) (internal quotation marks omitted)).

Therefore, the court recommends that the defendants' motion to dismiss plaintiff's declaratory judgment, common law fraud, and unjust enrichment claims as time-barred be denied.

### b. Sufficiency of the Pleadings

Defendants argue that plaintiff's claims should be dismissed because plaintiff fails to meet the heightened pleading standard required by Rule 9(b).[7] (D.I. 23 at 12-15) Plaintiff does not dispute that the complaint sounds in fraud and Rule 9(b) applies to her claims, but argues that she has sufficiently pleaded her claims under this heightened pleading standard. (D.I. 24 at 16-20) When a party alleges fraud, Fed. R. Civ. P. 9(b) applies and "[a] plaintiff can satisfy the Rule's particularity requirement with allegations of the date, time, or place of the fraud at issue." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 472 (E.D. Pa. 2009) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

In the complaint, plaintiff has plausibly pleaded "the who, what, where, when, how and why" of her fraud claims. Specifically, plaintiff has identified Mr. Billingsley, on behalf of KCF, and KCF as parties that provided allegedly false and misleading statements. (D.I. 1 at ¶¶ 2, 75-86) With respect to the "what" of the fraud claims, plaintiff alleges that Mr. Billingsley, on behalf of KCF, represented that his funds were investments in Allwest, "when in reality his funds were going to KCF." (*Id.* at ¶¶ 76-82, 153) Furthermore, plaintiff alleges that defendants issued fraudulent promissory notes when KCF was not yet a legal entity, and created a fraudulent

---

[7] Defendants contend that plaintiff alleges a conspiracy between KCF and Allwest, a non-party, but provides no factual allegations regarding the elements of a conspiracy. (D.I. 23 at 15) Conspiracy is not among plaintiff's pleaded counts in her complaint. (D.I. 1)

Funding Agreement in efforts to legitimize the transfer of Mr. Pavlis' funds from Allwest to KCF. (*Id.* at ¶¶ 94-107, 135-136, 153) Moreover, plaintiff alleges that KCF executed the Joint Venture Agreements to funnel Mr. Pavlis' funds to its subsidiaries which had no obligation to repay these funds. (*Id.* at ¶¶ 123-128) As to "where" these allegedly false and misleading statements were made, plaintiff alleges that such statements were made through Mr. Billingsley's solicitations, promissory notes, and the Funding Agreement. (*Id.* at ¶¶ 75-77, 87-93, 110-112, 130-134, 153) Plaintiff alleges that these allegedly misleading statements began on or around January 28, 2014 and continued through July 13, 2018, when plaintiff received the Funding Agreement. (*Id.* at ¶¶ 76-81, 87-93, 130-131, 153)

The complaint alleges that Mr. Billingsley and defendants did not disclose their individual interests in the investments being recommended to Mr. Pavlis, and misrepresented which entity would receive Mr. Pavlis' funds in order to persuade Mr. Pavlis to invest in Allwest. (*Id.* at ¶¶ 2, 75-77, 79-82) Finally, plaintiff alleges that as a result of defendants' misrepresentations and to Mr. Pavlis' detriment, Mr. Pavlis invested seven million dollars in Allwest and failed to receive any return on his investment despite the profits generated by KCF, Allwest, and Mr. Billingsley. (*Id.* at ¶¶ 2, 75-84)

Defendants argue that plaintiff alleges that Mr. Billingsley engaged in fraudulent conduct, but provides no factual allegations regarding defendants' actionable conduct. (D.I. 23 at 12) Although defendants attempt to divorce the actions of Mr. Billingsley from their own actions, plaintiff alleges that Mr. Billingsley acted on behalf of KCF, which he controlled.[8] (D.I.

---

[8] Plaintiff characterizes Mr. Billingsley as defendants' agent, who worked on behalf of KCF and had a "fiduciary or fiduciary-like influence" over Mr. Pavlis. (D.I. 24 at 13-14 & n.7) Defendants argue that Mr. Billingsley is not a party to this action, was not referred to as a fiduciary in the complaint, and plaintiff has not alleged that the corporate veil should be pierced. (D.I. 25 at 5) However, defendants do not contest plaintiff's assertion that Mr. Billingsley was

11

1 at ¶¶ 2, 75) Plaintiff alleges that defendants, through Mr. Billingsley, misrepresented that Mr. Pavlis was investing in Allwest. (*Id.* at ¶¶ 2, 75, 82-86, 153) Plaintiff further alleges that KCF issued notes to Mr. Pavlis and proffered fraudulent Note Purchase Agreements in an attempt to legitimize its transfer of funds from Allwest to KCF. (*Id.* at ¶¶ 94-107) Moreover, plaintiff alleges that defendants created and executed the Joint Venture Agreements, through which KCF funneled Mr. Pavlis' funds to its subsidiaries so that there was no attached obligation to repay the funds. (*Id.* at ¶¶ 123-128) Therefore, plaintiff has adequately pleaded claims against defendants.

Furthermore, defendants argue that although plaintiff alleges that the Joint Venture Agreements are fraudulent, plaintiff would be estopped from avoiding Mr. Pavlis' obligations under the doctrine of corporation by estoppel or de facto corporation.[9] (D.I. 23 at 13-14) The court declines to consider defendants' arguments on the merits in a Rule 12(b)(6) motion to dismiss. At this stage in the proceedings, the court accepts as true all well-pleaded factual allegations contained within the complaint and analyzes the sufficiency of the pleadings. *See Umland*, 542 F.3d at 64. At this stage in the litigation, all the court can decide is whether the complaint states facially plausible claims. Whether or not such claims are factually supportable is a question for resolution at a later stage of the litigation.

Accepting the well-pleaded facts as true for the purposes of the instant motion to dismiss, plaintiff has plausibly pleaded claims sounding in fraud and misrepresentation against defendants under the heightened pleading standard of Rule 9. Therefore, the court recommends denying defendants' motion to dismiss plaintiff's claims.

---

defendants' agent. (D.I. 25) The precise nature of Mr. Billingsley's and KCF's relationship is not properly determined on a motion to dismiss. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 n.11 (D. Del. 2012).

[9] Defendants also suggest that plaintiff's claim is not yet ripe because the Note Purchase Agreements are not mature, but cite no legal authority in support of this assertion. (D.I. 23 at 14)

### c. Count IV: Conversion

Defendants argue that plaintiff fails to state a claim of conversion. (D.I. 25 at 7) Specifically, defendants aver that, under Delaware law, claims for conversion of money are prohibited. (*Id.*) *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889-890 (Del. Ch. 2009). "Generally, an action in conversion will not lie to enforce a claim for the payment of money." *Kuroda*, 971 A.2d at 890 (citing *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, 1995 WL 694397, at *16 (Del. Ch. Nov. 21, 1995); *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988)). A claim for conversion of money is allowed "only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally. Thus, an action for conversion of money will lie only where there is an obligation to return the identical money delivered by the plaintiff to the defendant." *Id.* (internal quotation marks omitted) (citing *Goodrich*, 542 A.2d at 1203).

Here, plaintiff has not pleaded that defendants have an obligation to return Mr. Pavlis' identical investment funds.[10] (D.I. 1 at ¶¶ 166-171) Therefore, the court recommends granting defendants' motion to dismiss Count IV.

---

[10] Plaintiff concedes this point, as her answering brief presents no argument on this issue. (D.I. 24) *See Terrell v. Delaware State University*, C.A. No. 09-464-GMS, 2010 WL 2952221, at *3 n.1 (D. Del. July 23, 2010); *Abbott Labs. v. Roxane Labs., Inc.*, C.A. No. 12-457-RGA-CJB, 2013 WL 2322770, at *20 (D. Del. May 28, 2013).

#### d. Count V: Unjust Enrichment

Defendants argue that plaintiff cannot state a claim for unjust enrichment because the parties have a contractual relationship. (D.I. 23 at 16) "A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim." *Pulieri v. Boardwalk Properties, LLC*, 2015 WL 691449, at *13 n.113 (Del. Ch. Feb. 18, 2015) (quoting *Kuroda*, 971 A.2d at 891). However, when a plaintiff alleges that "'it is the [contract], itself, that is the unjust enrichment,' the existence of the contract does not bar the unjust enrichment claim." *LVI Group Investments, LLC v. NCM Group Holdings, LLC*, 2018 WL 1559936, at *16 (Del. Ch. Mar. 28, 2018) (quoting *McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008)). "In other words, '[t]he contract itself is not necessarily the measure of [the] plaintiff's right where the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake and the [defendant] has been unjustly enriched by the benefits flowing from the contract.'" *Id.* (quoting *McPadden*, 964 A.2d at 1276).

Here, plaintiff's unjust enrichment claim is premised on an alleged fraudulent transfer of Mr. Pavlis' investment funds and the contracts, such as the Note Purchase Agreements, that were executed to allegedly cover up and legitimize this transfer. Because plaintiff has alleged that the contracts arose from wrongdoing, her unjust enrichment claim is not barred. Furthermore, the Note Purchase Agreements were allegedly executed by KCF and Mr. Pavlis. (D.I. 1 at ¶ 94) Key Properties, Equity Pros, and Mobile Agency do not have a contractual relationship with plaintiff and are therefore subject to plaintiff's unjust enrichment claim. Even assuming, *arguendo*, that all defendants have a contractual relationship with plaintiff, plaintiff is permitted

to plead unjust enrichment as an alternative cause of action. *See MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012) (citing Fed. R. Civ. P. 8(e)).

Therefore, the court recommends denying defendants' motion to dismiss Count V.

## V.  CONCLUSION

For the foregoing reasons, the court recommends granting-in-part and denying-in-part defendants' motion to dismiss. (C.A. No. 18-1516, D.I. 22)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 13, 2019

Sherry R. Fallon
United States Magistrate Judge