# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, <br><br> *Plaintiff*, <br><br> v. <br><br> KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 1:18-cv-01516-CFC |

## DEFENDANTS' OBJECTIONS
## TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (No. 3963)
James G. McMillan, III (No. 3979)
5803 Kennett Pike, Suite C
Wilmington, Delaware 19807
Phone: (302) 257-2011
Fax: (302) 257-2019
Email:   tk@hfk.law
             jm@hfk.law

Dated:  August 27, 2019          *Counsel for Defendants*

Defendants Key Commercial Finance, LLC ("KCF"), Key Commercial Finance Properties, LLC ("Key Properties"), Equity Pros, LLC ("Equity Pros"), and Mobile Agency, LLC ("Mobile Agency") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit these objections to the Magistrate's Report and Recommendation (the "Report") (D.I. 27) issued on August 13, 2019, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 72(b)(2) and the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013 (the "Standing Order").  Defendants respectfully request that the Court reject the Report's recommendation and grant the Motion to Dismiss, in its entirety, in favor of Defendants.[1]

## PRELIMINARY STATEMENT

The Complaint (D.I. 1) filed by Plaintiff Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis ("Plaintiff"), should be dismissed.  As explained in Defendants' Opening Brief in Support of Their Motion to Dismiss (D.I. 23) and in Defendants' Reply Brief in Support of Their Motion to Dismiss (D.I. 25) (both of which are incorporated herein by reference), Plaintiff's Complaint falls short in pleading any actionable claims.

First, Plaintiff has pled herself out of Court based on applicable statutes of limitations.  To the degree that Plaintiff has any claim—and she does not—such claim should have been pursued within the statute of limitations.  Critically missing from the pleadings is any reason why, if Plaintiff maintains that a fraud was actually perpetrated (and it was not), the statute of limitations on the claims should be tolled.

Second, even if the Court were to overlook the statute of limitations defenses, the Complaint cannot survive scrutiny under Fed. R. Civ. P. 9(b).  Given the fraud-based nature of all

---

[1] Defendants do not raise objections to the Report's recommendation that dismissal be granted with respect to Count IV, the conversion claim.  *See* D.I. 27 at 13.

of the claims, Rule 9(b) requires that the claims be pled with particularity. As pled now, the claims are nothing more than a broad-based smear of Mr. Justin Billingsley, a non-party to this case, and Defendants. Plaintiff cannot plead the who, what, where, when, or how of the alleged fraud.

Fed. R. Civ. P. 72(b)(3) provides that "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Considering the arguments *de novo*, the Court should reject the recommended disposition and grant the Motion to Dismiss.

## ARGUMENT

**1. Statutes of Limitations Bar Plaintiff's Claims.**

  **a. The Fraud Claims Accrued Over Four Years Ago.**

This Court can and should consider a statute of limitations defense at the pleading stage. *See Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 2017 WL 4684325, at *1 (D. Del. Oct. 18, 2017) (dismissing investor complaint for fraud brought beyond the statute of limitations), *appeal dismissed*, 2018 WL 2273661 (3d Cir. Apr. 25, 2018). The Complaint was filed on October 1, 2018. *See* D.I. 1. While the Report accepts that the statute of limitations for common law fraud is either three years (under Delaware law) or two years (under Pennsylvania law) (*see* D.I. 27 at 6-7), the Report rejects the argument that accrual of the fraud claim occurred more than four years ago. *See id.* at 8.

The Report incorrectly states, "Defendants' argument is grounded upon the causes of action accruing in May of 2014, when Mr. Pavlis made his seven million dollar investment in issue." To the contrary, Defendants argued in their Motion to Dismiss Reply Brief (D.I. 25 at 3):

> According to Plaintiff, the fraud occurred when Allwest allegedly transferred the investment to KCF without Mr. Pavlis' notice or

> approval. *See, e.g.*, Ans. Br. [D.I. 24] at 9 ("But it remains unclear when the claim accrued because it is unknown at this point when KCF either schemed with Allwest to divert the money to its accounts and/or received the money intended for Allwest."). If the alleged fraud was the transfer of the money from Allwest, then Pavlis' knowledge of an investment in KCF would be enough to trigger the running of the statute of limitations. Thus, his signing of the Note Purchase Agreements on "8-21-14" and "11-21-14"—again, more than three years before the filing of the Complaint—means that the alleged fraud and other claims are barred.

While the date of accrual of the claim could have been May 2014 (when Mr. Pavlis made his investment in Allwest), Defendants pointed out that the Note Purchase Agreements (attached as Exs. C and E [D.I. 1-1] to the Complaint), signed by Mr. Pavlis respectively in August and November 2014, show an acknowledgment of an investment being made in KCF ***four years before*** the filing of the Complaint. *See* D.I. 1-1 at 20, 40. It is Plaintiff, not Defendants, who chose the accrual date for the fraud as "***when*** KCF either schemed with Allwest to divert the money to its accounts and/or received the money intended for Allwest." D.I. 24 at 9. In light of the Note Purchase Agreements, the bar could not be more "apparent on the face of the complaint." *Fried v. JP Morgan Chases & Co.*, 850 F.3d 590, 604 (3d Cir. 2017).[2]

### b. Plaintiff Has Not Pled a Basis for Tolling.

Next, the Report, citing *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 518–19 (D. Del. 2009) (which was cited in Defendants' Opening Brief, D.I. 23 at 7), finds that Plaintiff has pled that the fraud and unjust enrichment claims were tolled. *See* D.I. 27 at 8. Specifically, the Report states that the Complaint alleges that the injuries were "inherently unknowable." *Id. See also id.* at 9 ("The complaint avers that Mr. Billingsley repeatedly assured

---

[2] The same arguments apply to the unjust enrichment claim. Defendants argued that Plaintiff's claim would be untimely under either the Delaware three-year statute of limitations or the Pennsylvania four-year statute of limitation for unjust enrichment claims. Applying the Delaware borrowing statute (10 *Del. C.* § 8121), the shorter of the two statutes of limitation would apply. *See* D.I. 25 at 6-7.

3

Mr. Pavlis that his investment in Allwest was performing well, effectively shielding him from knowing of the transfer to KCF.").

But such a finding—that the alleged injuries were "inherently unknowable"—is undercut by the fact that Mr. Pavlis signed the Note Purchase Agreements. The argument that Mr. Pavlis was "effectively shield[ed] … from knowing of the transfer to KCF" is belied by the fact that Mr. Pavlis knew from at least "8-21-14" and "11-21-14"—the dates accompanying his signatures on the Note Purchase Agreements—that he had made an investment in KCF. The idea that "it would be practically impossible for [plaintiff] to discover the existence of the cause of action" (D.I. 27 at 9 (quoting *Gregorovich*, 602 F. Supp. 2d at 518 n.7)) (alteration in Report)—which is premised on an investment in KCF—is unsupportable when the Note Purchase Agreements on their face evidence an investment in KCF.

Turning to the fraudulent concealment claim, the Report states "[t]he complaint alleges that KCF issued two convertible promissory notes in an alleged effort to 'legitimize' the transfer of Mr. Pavlis' seven million dollar investment from Allwest to KCF." D.I. 27 at 9. The allegations cited in the Report are wholly conclusory. The Notes referenced and attached to the Complaint show no indicia of being fraudulent, and nothing in the Complaint supports such a conclusion. *See* D.I. 1 at ¶¶ 87-88, 92. Additionally, the Notes were associated with the Note Purchase Agreements—signed by Mr. Pavlis himself. The Complaint does not allege that Mr. Pavlis (1) disclaimed his signature on any document, (2) disclaimed his investment in KCF, or (3) otherwise claimed that he had been defrauded in any way by Mr. Billingsley. In fact, at best, the Complaint can only argue that the signatures could not have been his signatures. *See* D.I. 1 at ¶¶ 98-99. Fed. R. Civ. P. 9(b) requires more than just a conclusory allegation. Even under Fed. R. Civ. P. 12(b)(6), a complaint must do more than simply provide "labels and conclusions" or "a

4

formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

With respect to the finding that the Complaint "sets forth factual allegations that support equitable tolling" (D.I. 27 at 9), the only allegations that the Report cites are that "Mr. Pavlis relied on [Mr.] Billingsley," that Mr. Billingsley "knew of the transfer," and that he "did not make Mr. Pavlis aware of it." *Id.* However, there was no "wrong" in the alleged transfer and the Complaint shows Mr. Billingsley did make Mr. Pavlis aware of it no later than August 2014.

Moreover, Mr. Billingsley is not a party to this action. Plaintiff has not alleged that the corporate veil should be pierced or that KCF should be liable for the alleged actions of Mr. Billingsley. In fact, even if Plaintiff were to attempt to argue alter ego liability, "persuading a Delaware Court to disregard the corporate entity is a difficult task." *Harco Nat. Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, *4 (Del. Ch. Sept. 19, 1989). Plaintiff did not undertake that challenge in her Complaint. The claim that Mr. Billingsley is an agent is at best a conclusory allegation.

Furthermore, equitable tolling requires a fiduciary relationship. *See Gregorvich*, 602 F. Supp. 2d at 519 n.9 (cited by D.I. 27 at 9-10). Plaintiff did not once use the term "fiduciary" with respect to Mr. Billingsley in her Complaint. Even if she were able to successfully allege that Mr. Billingsley was a fiduciary of Mr. Pavlis, this does not overcome the fact that Mr. Pavlis signed documents that clearly stated that he had "full legal capacity, power and authority" to execute and perform under the agreements (*see* Exs. C and E at § 3(a), D.I. 1-1 at 15, 35), and that he had "knowledge and experience in financial and business matters that such Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such

5

investment and is able to bear the economic risk of such investment for an indefinite period of time" *See id.* at § 3(b).

### c. Defendants' Motion to Dismiss Argument Does Not Contradict Itself.

The Report further states that Defendants' argument that the Complaint is time-barred "is contradicted by their subsequent assertion that the complaint fails to state a claim for fraud or unjust enrichment because the promissory notes have not yet become due…." D.I. 27 at 8. The Report misconstrues the argument. The fact is that neither of the Notes is now due. Plaintiff, however, is attempting to sidestep the plain language of the Notes through a factually unsupported fraud claim in order to call the Notes early. Plaintiff needs more than conclusory allegations of fraud to do this.

### 2. Plaintiff Has Failed to Satisfy Rule 9(b).

This Court held in *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 (D. Del. 2000), that the goal of Rule 9(b) is to "inject[] precision and some measure of substantiation into [plaintiff's] allegations of fraud." Without this precision being injected, Defendants face a hodgepodge of loosely pled allegations, all of which have a number of pernicious effects, including harming Defendants' reputations. The Third Circuit has made clear that Rule 9(b) requires the "who, what, where, when, and how" of a claim sounding in fraud. *See In re Great Atl. & Pac. Tea Co. Sec. Litig.*, 103 F. App'x 465, 469-70 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997) (holding that plaintiff cannot simply claim "fraud" without stating the "who, what, where, when, and how").

The Report states that the "what" of the fraud claims was satisfied by the allegations that "Mr. Billingsley, on behalf of KCF, represented that [Mr. Pavlis'] funds were investments in Allwest, 'when in reality his funds were going to KCF.'" D.I. 27 at 10. But this finding is

6

contradicted by the fact that Mr. Pavlis' signature is on two Note Purchase Agreements, showing that he did have knowledge that his investments were going to KCF. The Report also states that the "what" was further satisfied by virtue of the fact that KCF was not yet legally formed at the time the promissory notes were signed. *Id.* Even if KCF had not been formed, Plaintiff would be estopped from attempting to avoid Mr. Pavlis' obligations under the doctrine of corporation by estoppel or de facto corporation. *See DEA & Associates, LLC v. McCall*, 2007 WL 117487, at *2 (Conn. Super. Ct. Jan. 12, 2007)[3] ("Generally, one who has dealt with either a de facto or a de jure corporation is estopped to deny its corporate existence.") (quoting *Clark-Franklin-Kingston Press, Inc. v. Romano*, 529 A.2d 240, 244 (Conn. App. Ct. 1987), *cert. denied*, 531 A.2d 935 (Conn. 1987), and applying principle to LLC); *Leber Associates, LLC v. Entm't Grp. Fund, Inc.*, 2003 WL 21750211, at *8-*12 (S.D.N.Y. July 29, 2003) (examining Delaware law and estopping party from disclaiming existence of Delaware LLC).

While Plaintiff would have the failure to incorporate an entity as dispositive proof that it cannot conduct business—and hence a fraud—this is not the law. In *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 Del. Ch. LEXIS 127, at *26 n.62 (Del. Ch. Sept. 2, 2008), the Court stated that there are "questions about when exactly an LLC comes into existence under Delaware law" and noted that while § 18-201(b) of the LLC Act (6 *Del. C.* § 18-101, *et seq.*) states that an LLC is formed at the time of the filing of a certificate of formation, § 18-201(d) allows members to enter into an LLC agreement before the filing of the certificate.

Moreover, despite the difference between dates on various agreements and dates of formation, Plaintiff cannot explain why the pre-formation activities could not have been ratified.

---

[3] Connecticut law is applicable to one of the Three Subsidiaries—Equity Pros—because as alleged in the Complaint, it was formed under the laws of the State of Connecticut.

7

*See Chantz Enters., L.L.C. v. JHL Brighton Design/Décor Center, LLC*, 2010 Del. Super. LEXIS 266, at *5-6 (Del. Super. Ct. June 30, 2010) (noting that action taken while LLC's certificate of formation was cancelled could be ratified).

With respect to the analysis under Rule 9(b), the Court cannot simply accept the conclusory allegations of fraud, just as it cannot accept the failure to state with particularity what role each of the individual Defendants played in the alleged fraud. The failure to plead this is fatal to the Complaint. Moreover, with respect to three of the Defendants—Key Properties, Equity Pros, and Mobil Agency (the "Three Subsidiaries")—Plaintiff provides no allegations other than a conclusory statement that KCF "funneled Mr. Pavlis' funds [to the Three Subsidiaries] with no corresponding obligation to repay those funds" (D.I. 1 at ¶ 9), and that these entities were allegedly formed after the dates of their alleged joint venture agreements with KCF. *See id.* at ¶¶ 124-126. "As to common law fraud, the elements of that claim in Delaware are: (1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) causally related damages to the plaintiff." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014). None of these elements is satisfied with respect to any of the Three Subsidiaries: at best, Plaintiff alleges that *Billingsley and KCF* prepared false documents (the joint venture agreements), not that the Three Subsidiaries engaged in fraudulent conduct. *See* D.I. 1 at ¶ 123.

The Report found that, with respect to the "what" of the fraud claims, that despite an investment in Allwest, "in reality his funds were going to KCF." D.I. 27 at 10. However, the Complaint also alleges that "KCF principally used Mr. Pavlis' money to provide funding to

8

Allwest for various projects between 2014 and 2018." D.I. 1 at ¶ 83. The allegations are that Mr. Pavlis' money went to Allwest, which transferred it to KCF, which used it to fund Allwest, begging the question, how is this a fraud? An even more important question is whether a fraud claim can be stated simply because a company that has funds invested in it uses the funds for an undisclosed purpose. Given that Plaintiff has not alleged that there was any limitation on Allwest's or KCF's use of the investment funds, Plaintiff's claim of fraud falls short.

The Report also refers to the use of "fraudulent promissory notes" and a "fraudulent Funding Agreement in efforts to legitimize the transfer…" as part of the "what" of the alleged fraud. D.I. 27 at 10-11. Plaintiff does not allege in what way these documents were fraudulent in themselves, apart from the allegedly fraudulent transfer. Again, the use of the term "fraudulent" is a conclusory label. Given the fact that the Note Purchase Agreements are in the name of KCF, not Allwest; these could not have been intended to "cover up" the transfer of Mr. Pavlis' funds from Allwest to KCF.

The Report found that the "where" of fraud claims was pled "through Mr. Billingsley's solicitations, promissory notes, and the Funding Agreement." D.I. 27 at 11. Respectfully, that does not state the "where." That merely restates the "what" discussed above and adds nothing to the analysis.

As to the "when" of the fraud claims, the Report found that the alleged fraud "began on or around January 28, 2014 and continued through July 13, 2018…." D.I. 27 at 11. However, a four-and-one-half year period is not a "particularized allegation."

The Report also found that the Complaint "alleges that Mr. Billingsley and defendants did not disclose their individual interests in the investments being recommended…." D.I. 27 at 11 (citing D.I. 1 ¶¶ 2, 75-77, 79-82). The Complaint does not allege any such thing. It alleges only

9

that Mr. Billingsley controlled KCF, not that he failed to disclose that alleged fact. D.I. 1 ¶¶ 2, 75.

As to Mr. Pavlis' alleged injury, the Report found that the complaint alleged that he "failed to receive any return on his investment…." D.I. 27 at 11 (citing D.I. 1 ¶¶ 2, 75-84). But the Complaint also alleges that Mr. Pavlis received two promissory notes due September 1, 2019 and November 1, 2020. D.I. 1 ¶¶ 88, 92. There is no allegation that he was promised a return sooner.

### 3. The Unjust Enrichment Claim Does Not Meet the Rule 9(b) Standard.

The same deficiencies that apply to Plaintiff's other fraud claims apply to her unjust enrichment claim. Moreover, unjust enrichment can only be pled in the absence of a valid contract. Plaintiff has not adequately pled that the Note Purchase Agreements are void for fraudulent inducement. *Cf. Novipax Hldgs. LLC v. Sealed Air Corp.*, 2017 WL 5713307, at *15 (Del. Super. Ct. Nov. 28, 2017) (cited by Plaintiff at D.I. 24 pg. 20) ("[a] claim for unjust enrichment may thus proceed under the theory that no valid contract exists"). The Report found that "[b]ecause plaintiff has alleged that the contracts arose from wrongdoing, her unjust enrichment claim is not barred." D.I. 27 at 14. However, Plaintiff did not adequately allege that the contracts arose from fraud. The unjust enrichment claim should be dismissed.

### CERTIFICATION PURSUANT TO PARAGRAPH 5 OF STANDING ORDER

These objections do not raise new legal/factual arguments, or where the objections do, the new arguments are identified and good cause is described for failing to previously raise the new legal/factual arguments before the Magistrate Judge.

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court reject the Magistrate Judge's recommendation and grant the Motion to Dismiss in favor of Defendants.

| | |
|---|---|
| Dated:  August 27, 2019 | **HALLORAN FARKAS + KITTILA LLP** |
| | |
| | */s/ Theodore A. Kittila*<br>Theodore A. Kittila (No. 3963)<br>James G. McMillan, III (No. 3979)<br>5803 Kennett Pike, Suite C<br>Wilmington, Delaware  19807<br>Phone:  (302) 257-2011<br>Fax:  (302) 257-2019<br>Email:    tk@hfk.law<br>               jm@hfk.law |
| | |
| | *Counsel for Defendants* |