## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. 1:18-cv-01516-CFC-SRF |
| KEY COMMERCIAL FINANCE LLC, | : | |
| KEY COMMERCIAL FINANCE | : | |
| PROPERTIES, LLC, EQUITY PROS, LLC, | : | |
| and MOBILE AGENCY, LLC, | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS
### TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

<blockquote>

Joelle E. Polesky (ID No. 3694)
STRADLEY RONON STEVENS & YOUNG, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah S. Skeans,*
*Executrix of the Estate of Frank E. Pavlis*

</blockquote>

OF COUNSEL:

William E. Mahoney, Jr. (admitted *pro hac vice*)
Spencer R. Short (admitted *pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

Dated: September 10, 2019

Plaintiff, Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis, responds to Defendants' Objections to Magistrate Judge's Report and Recommendations ("Objections") (D.I. 28) issued by Magistrate Judge Sherry R. Fallon on August 13, 2019 ("Report") (D.I. 27).  For the reasons set forth below, Plaintiff respectfully requests that the Court accept and adopt the Report in its entirety.

## PRELIMINARY STATEMENT

In yet another attempt to avoid having to answer for their actions, Defendants have filed baseless objections to the Report, essentially arguing the Report got *everything* wrong. Defendants' objections are premised on a willful misreading of the Complaint and pleading standards that do not exist.  Put simply, Defendants assert their objections only by ignoring whole swaths of the Complaint's allegations and by reinterpreting Plaintiff's allegations in a manner most favorable to Defendants, rather than accepting as true the allegations plead.  When viewed through the appropriate standard, as the Report does, the Complaint alleges facts sufficient to support Plaintiff's declaratory judgment, fraud and fraudulent concealment, and unjust enrichment claims.

It bears noting as well that a pillar of the Defendants' Motion to Dismiss – that there is no harm here because payment on the Notes at issue is not yet due – has crumbled.  For all of their blithe posturing that Key Commercial Finance, LLC ("KCF") and its agent, Justin Billingsley, are honest actors and the Notes at issue are legitimate and binding, Defendants are now confronted with an inconvenient truth.  The Note purportedly issued to Mr. Pavlis on September 1, 2014, has come due, and KCF has not paid a penny of the $3,000,000 plus interest that is owing on the Note.  Plainly, KFC has no intention of honoring any obligations it purports to have made.  The Court should accept the Report and allow Plaintiff to proceed with her claims.

## ARGUMENT

### I.   Plaintiff's Claims are Not Barred by Any Statutes of Limitation

Defendants first object to the Report's conclusion that Plaintiffs' claims are not time-barred.  Magistrate Judge Fallon properly found that Defendants' argument that Plaintiffs' claims accrued in May 2014, "when Mr. Pavlis made the seven million dollar investment at issue," lacks any legal support.  (Report at 8.)  Defendants base their objection on a fabrication – literally.  Defendants argue that because Mr. Pavlis "signed" Note Purchase Agreements in 2014, he acknowledged his investment was being made in KCF rather than in Allwest.  (Objections ("Obj.")  at 3.)  As a result, Defendants argue, any applicable statute of limitations began to run at that time.[1]

However, the Complaint alleges Mr. Pavlis never knowingly signed these Note Purchase Agreements, never received the Note Purchase Agreements or Notes that KCF purports to have

---

[1] Defendants repeatedly argue that because the Note Purchase Agreements purport to bear Mr. Pavlis' signature, he must have known he was investing in KCF.  This argument ignores the Complaint's allegations that Mr. Pavlis never knowingly signed the Note Purchase Agreements and those purported agreements bear the hallmarks of after-the-fact fabrications.  (*See, e.g.*, Complaint at ¶¶ 87-100, 108, 143.)

Furthermore, Defendants ignore that Plaintiff is entitled to plead in the alternative, which both the procedural rules and case law recognize.  *See e.g.,* Fed. R. Civ. P. 8(a) (requiring a claim for relief to include "a demand for the relief sought, which may include relief in the alternative or different types of relief"); *see also* Fed. R. Civ. P. 8(d)(2); *Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 189 (3d Cir. 1999) *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, 868 F. Supp.2d 333, 340 (D. Del. 2012).

To the extent Mr. Pavlis did sign the Note Purchase Agreements and KCF did issue the Notes to Mr. Pavlis, the Notes were void *ab initio* because KCF lacked the legal capacity to enter into any valid contracts, entitling Plaintiff to the declaratory judgment sought in Count I of the Complaint. (Comp. at ¶¶ 137-150.)  Alternatively, Plaintiff alleges that Mr. Pavlis never agreed to invest any funds in KCF, and the Notes, Note Purchase Agreements, and all other documents Mr. Billingsley provided to Plaintiff were fraudulently created, entitling Plaintiff to the relief she seeks in her fraud and fraudulent concealment claims. (*Id.* ¶¶ 151-165.)

issued, and never authorized the transfer or re-direction of his Allwest investment to KCF or any other entity.  (Complaint ("Comp.") at ¶¶ 85, 96, 108, 114, 129, 143-144, 174.)  Moreover, the Complaint alleges the Notes and Note Purchase Agreements were fabricated much later as part of Defendants' fraudulent scheme to prevent Mr. Pavlis and Plaintiff from discovering KCF's misappropriation of the Allwest investment funds.  (*Id.* ¶¶ 6 n.1, 11, 85, 97-100, 107-122, 130-136.)

The Report also confirmed that the Complaint alleges facts sufficient to support each of the three exceptions that would toll the limitations period – "inherently unknowable" injuries, fraudulent concealment and equitable tolling.  Defendants' objections to each of these findings are unavailing.

The Report correctly notes the Complaint avers that Defendants' agent, Mr. Billingsley, repeatedly assured Mr. Pavlis that his Allwest investment was performing well, shielding him from any knowledge that Mr. Billingsley had surreptitiously transferred those investment funds KCF.  (Report at 8-9.)  The Complaint also alleges that Mr. Pavlis was unaware his investment in Allwest had been re-directed to KCF, and that Mr. Billingsley repeatedly assured Mr. Pavlis his Allwest investment was performing well and "he had nothing to worry about."  (Comp. at ¶ 85.)  Thus, the Report properly found that it would have been practically impossible for Mr. Pavlis to discover the existence of a cause of action, such that the statutes of limitations on Plaintiffs' fraud and unjust enrichment claims were tolled.  (Report at 9).

Defendants object to this finding, arguing that Mr. Pavlis "knew from at least '8-21-14' and '11-21-14' – the dates accompanying his signatures on the Note Purchase Agreements – that he had made an investment in KFC."  (Obj. at 4.)  Defendants do not cite any support for this proposition.   To the contrary, Plaintiff alleges that the Note Purchase Agreements were

themselves fraudulent documents that Mr. Pavlis never saw and never knowingly signed. (Comp. at ¶¶ 3, 95-99, 106.)  Indeed, Plaintiff specifically alleged that KCF never provided Mr. Pavlis with either the Notes, the Note Purchase Agreements, or "any other documents relating to any purported investments in KCF." (*Id.* at ¶ 108.)

Defendants also object to the Report's finding that the Complaint contains allegations sufficient to toll Plaintiff's claims on the basis of fraudulent concealment.  Here again, Defendants assert that the Notes and Note Purchase Agreements were legitimate, and that the Notes "show no indicia of being fraudulent, and nothing in the complaint supports such a conclusion." (Obj. at 4.)  Defendants turn a blind eye to the allegations that these documents were fabricated, that Mr. Pavlis never saw or knowingly signed them, that he never invested any money in KCF, and that Mr. Pavlis was unaware his funds had been diverted to KCF, because Mr. Billingsley fraudulently reassured him that his Allwest investment was secure and performing well. (Comp. at ¶¶ 82, 85-87, 95-99, 107-108, 114-122.)  The Complaint also details the Defendants' years' long scheme to conceal KCF's misappropriation of Mr. Pavlis' investment funds.  Under the heading, "KCF and Billingsley Fabricate Documents to Hide Their Scheme," the Complaint describes the additional documents that Mr. Billingsley, as Defendants' agent, fabricated to "create a veneer of legitimacy to obscure his highly-lucrative defrauding of Mr. Pavlis." (*Id.* at ¶¶ 108-136.)

As the Report correctly concludes, the Plaintiff has plead that Defendants prevented Mr. Pavlis " 'from gaining knowledge of material facts or led the plaintiff away from the truth.' " (Report  at 9 (*quoting Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp.2d 511, 518 n.8).)  Plainly, the Complaint alleges the Defendants, through Mr. Billingsley, fraudulently concealed

from Mr. Pavlis and the Plaintiff the facts necessary to put them on notice of the truth, thus tolling the statutes of limitations.

Finally, the Report correctly finds the Complaint supports equitable tolling.  (Report at 9.)  Defendants object to this finding, asserting there was nothing "wrong" in Mr. Billingsley's fraudulent transfer of Mr. Pavlis' Allwest investment to KCF and that, in any event, Mr. Billingsley made Mr. Pavlis aware of the transfer no later than August 2014.  (Obj. at 5.)  As noted above, the entire Complaint is based upon Defendants' fraudulent diversion of Mr. Pavlis' investment funds from Allwest, the intended beneficiary, to KCF, an entity over which Mr. Billingsley had sole control and in which Mr. Pavlis never agreed to invest.

Defendants also contend Mr. Billingsley was neither an agent of Defendants nor a fiduciary of Mr. Pavlis.  (*Id.*)  However, the Complaint specifically alleges that Mr. Billingsley exercised sole control over KCF.  (Comp. at ¶¶ 2, 76.)  Moreover, the exhibits to the Complaint demonstrate that Mr. Billingsley was an officer and authorized signatory for each of the Defendants.  For example, the signature pages for each of the Joint Venture Agreements between KCF and its three Defendant subsidiaries identifies Mr. Billingsley as the "authorized signor" on behalf of KCF and each KCF subsidiary.  (*Id.,* Ex. I.)  Similarly, the signature page of the purported Funding Agreement between KCF and Allwest identifies Mr. Billingsley as KCF's President.  (*Id.*, Ex. J, p.8.).  It is indisputable that  Mr. Billingsley was the agent of each Defendant.

The Complaint also alleges that Mr. Billingsley acted in a fiduciary capacity vis-à-vis Mr. Pavlis.  He was a "trusted advisor and confidante," upon whom the 97 year old Mr. Pavlis relied "to handle the details of his investments, authorizing Billingsley to deal directly with others regarding those transactions."  (Comp. ¶ 57.)  The Report properly concluded that Plaintiff

alleged that Mr. Pavlis reasonably relied upon Mr. Billingsley in a fiduciary capacity – and Mr. Billingsley abused that relationship by orchestrating the transfer of Mr. Pavlis' investment funds without properly informing him of the transfer, much less the risks associated with that transfer – sufficient to toll the statutes of limitations on equitable tolling grounds.[2]  (Report at 9-10.)

## II.   Plaintiff Adequately Plead the Elements of Her Fraud Claims

Defendants next object to Magistrate Judge Fallon's finding that Plaintiff adequately alleged the elements of her fraud claims under the pleading standard required by Rule 9(b). Specifically, the Report found that the Complaint sets forth the  "who, what, where, when, how and why" of the fraud perpetrated by the Defendants on Mr. Pavlis, identifying the allegations of the Complaint that satisfy each of these elements.  (Report at 10-12.)

In response, Defendants attempt to deconstruct the Complaint so as to strip it of its essential and detailed  narrative – that the Defendants (through their agent, Mr. Billingsley) defrauded Mr. Pavlis by surreptitiously misappropriating his $7,000,000 investment in Allwest and re-directing those funds to KCF and its Defendant subsidiaries, all the while keeping Mr. Pavlis in the dark about KCF and repeatedly assuring him his Allwest investment was secure and performing well.  (Comp. at ¶¶ 2-12, 75-136.)   These arguments – based upon Defendants' reimagining of the Complaint's allegations – border on the absurd.  For example, Defendants posit the following: "The allegations are that Mr. Pavlis' money went to Allwest, which

---

[2] Defendants yet again purport to rely on the Note Purchase Agreements as evidence that Mr. Pavlis knowingly signed and understood the representations contained therein and that Mr. Pavlis made a knowing "investment" in KCF, thereby rendering irrelevant any finding that Mr. Billingsley was Mr. Pavlis' fiduciary.  (Obj. at 5.)   Defendants continue to ignore that the Complaint alleges the Note Purchase Agreements were after-the-fact fabrications that Mr. Pavlis never saw and never knowingly signed.  (Comp. at ¶¶ 95-100, 106, 143.)  They also ignore the allegations that even if Mr. Pavlis had authorized the transfer of his investment funds to KCF, Mr. Billingsley never disclosed any of the Notes' unfavorable terms, thus preying upon Mr. Pavlis' trust and faith that he placed in Mr. Billingsley.  (Id. at ¶¶ 100-107.)

transferred it to KCF, which used it to fund Allwest, begging the question, how is this fraud?" (Obj. at 9.)   The answer lies in the *actual* allegations of the Complaint, which among other things detail how Mr. Billingsley, on behalf of KCF, misappropriated Mr. Pavlis' Allwest investment funds and used them for KCF's sole benefit, while at the same time scheming to hide this illicit activity from Mr. Pavlis and Plaintiff.   It is difficult to envision a more compelling and thorough recitation of Defendants' fraudulent scheme (and subsequent efforts to conceal that scheme) than that set forth in the Complaint.

Moreover, while "date, place and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled 'sufficiently to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'"   *TL of Florida, Inc. v. Terex Corporation*, 54 F. Supp.3d 320, 325 (D. Del. 2014) (*quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).   There is no doubt the Complaint adequately identifies the precise misconduct with which the Defendants are charged.

Defendants raise several collateral issues that are equally unavailing.  Defendants contend that Plaintiff's allegations relating to KCF's purported issuance of the Notes before it was a legally formed entity are somehow unimportant because "[e]ven if KCF had not been formed, Plaintiff would be estopped from attempting to avoid Mr. Pavlis' obligations under the doctrine of corporation by estoppel or de facto corporation."  (Obj. at 7.)   As Magistrate Judge Fallon observed, such merits-based and fact-sensitive arguments are improper at the motion to dismiss stage.  (Report at 12.)

Defendants also argue that the Complaint fails to state each Defendant's role in the fraud. (Obj. at 8.)  This argument ignores the Complaint's detailed allegations that KCF, through Mr. Billingsley, misappropriated the investment Mr. Pavlis made in Allwest and converted that investment to KCF's sole control.   (Comp. ¶¶ 2-12, 75-136.)   Defendants also ignore the allegations that KCF subsequently purported to enter into joint venture agreements with the Defendant subsidiaries to funnel KCF assets – "which consist principally (if not exclusively) of Mr. Pavlis' ill-gotten investment funds" – to subsidiaries that did not even exist at the time the alleged joint venture agreements were signed, and have no obligation to repay KCF or pledge any other collateral to secure KCF's transfer of funds.  (*Id.* ¶¶ 123-129.)

It bears noting that the "purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claims against them, not to test the factual allegations of the claim."  *TL of Florida,* 54 F. Supp.3d at 325.  The Defendants should have no doubt as to the conduct for which they must answer.  The Report correctly held that Plaintiff sufficiently alleged her fraud-based claims.

### 3.      The Complaint States a Claim for Unjust Enrichment

Finally, Defendants object to the Report's finding that Plaintiff has properly pleaded a claim for unjust enrichment.  Arguing that unjust enrichment can "only be pled in the absence of a valid contract," Defendants contend that the Complaint fails to plead that the Note Purchase Agreements were fraudulent.  (Obj. at 10.)  However, as noted above, the Complaint specifically alleges that the Note Purchase Agreements were fraudulent and Mr. Pavlis never knowingly signed them.   Plaintiff also argues in the alternative that to the extent the Note Purchase Agreements were, in fact, prepared and signed in 2014, they are void *ab initio* because KCF did not exist as a legal entity, much in the same way that the Notes KCF purportedly issued are void

*ab initio.*  (Comp. at ¶¶ 138-150.)  Finally, Defendants do not dispute that Plaintiff had no contractual agreements with the subsidiary.  Thus, the Report correctly held that Plaintiffs have alleged a cause of action for unjust enrichment against those Defendants as well.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court accept and adopt Magistrate Judge Fallon's Report and Recommendation and deny Defendants' Motion to Dismiss Counts I, II, III, and IV of the Complaint.

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah S. Skeans,*
*Executrix of the Estate of Frank E. Pavlis*

Dated: September 10, 2019

9