**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, <br><br> *Plaintiff*, <br><br> v. <br><br> KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, <br><br> *Defendants.* | C.A. No. 1:18-cv-01516-CFC |

## ANSWER TO VERIFIED COMPLAINT

Defendants, Key Commercial Finance, LLC ("KCF"), Key Commercial Finance Properties, LLC ("Key Properties"), Equity Pros, LLC ("Equity Pros"), and Mobile Agency, LLC ("Mobile Agency") (collectively, "Defendants"), by and through their undersigned counsel, submit this answer to the numbered paragraphs of the Verified Complaint (the "Complaint") (D.I. 1) filed by Plaintiff Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis ("Plaintiff").

The first page of the Complaint, which is not a numbered paragraph, contains Plaintiff's characterization of the litigation and contains legal conclusions, all of which are denied.

1.      Denied, except admitted that non-party Justin Billingsley ("Mr. Billingsley") and Frank E. Pavlis ("Mr. Pavlis") were members of the same religious community.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Mr. Pavlis was in his late nineties in 2013 and 2014.

2.      Denied.

3.      Denied.

4.      Denied, except admitted that KCF issued two convertible promissory notes (the "Notes") to Mr. Pavlis and that the Notes were accompanied by Note Purchase Agreements. Defendants refer to the Notes and Note Purchase Agreements for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

5.      Denied, except admitted that KCF filed a certificate of formation with the Delaware Secretary of State in December 2014.

6.      This paragraph states conclusions of law to which no responsive pleading is required.  To the extent an answer is required, the allegations of this paragraph are denied, except admitted that the Notes and Note Purchase Agreements were signed by KCF's Executive Vice President.  Defendants refer to the Notes and Note Purchase Agreements for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.  The allegations of footnote 1 to this paragraph are denied.

7.      Denied, except admitted that one of the Notes had a five-year term.  Defendants refer to the Notes for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

8.      Denied.

9.      Denied, except admitted that Key Properties, Equity Pros, and Mobile Agency are subsidiaries of KCF.

10.     Denied, except admitted that certificates of formation for Key Properties, Equity Pros, and Mobile Agency were filed with the Delaware Secretary of State in 2016.

11.     Denied, except admitted on information and belief that Mr. Pavlis died on August 24, 2018.

12.     Denied.

13.     Denied.

14.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted on information and belief that Mr. Pavlis died on August 24, 2018, and admitted that Mr. Pavlis was a resident of Allentown, Pennsylvania.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     This paragraph states conclusions of law to which no responsive pleading is required.  To the extent an answer is required, the allegations of this paragraph are denied.

20.     This paragraph states conclusions of law to which no responsive pleading is required.  To the extent an answer is required, the allegations of this paragraph are denied.

21.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted that Mr. Pavlis was a resident of Allentown, Pennsylvania.

22.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

23.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

24.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

25.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted on information and belief that Mr. Pavlis had amassed a sizeable estate.

26.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted that Mr. Pavlis was introduced to Mr. Billingsley by Deborah Skeans and her husband, Darbin Skeans, in 2012, and that Mr. Billingsley and Mr. Pavlis were members of the same religious community.  By way of further answer, Deborah and Darbin Skeans, who are also members of the same religious community as Mr. Billingsley and Mr. Pavlis, repeatedly insisted—over a period of over one year—that Mr. Billingsley meet with Mr. Pavlis because the Skeanses wanted Mr. Billingsley to persuade Mr. Pavlis to invest in their personal business ventures—specifically (1) a $500,000 investment in a real estate transaction for the private school attended by the Skeanses' grandchildren, and (2) a more than $4 million investment in the Skeanses' senior assisted living facility business. Ultimately, Mr. Pavlis did invest more than $4.5 million with the Skeanses.  The Skeanses were present at most or all of Mr. Billingsley's meetings with Mr. Pavlis.  The Skeanses ultimately turned against Mr. Billingsley and KCF because Mr. Billingsley decided not to partner with the Skeanses.  The Skeanses made it impossible for Mr. Pavlis to get a return on his investment in KCF because they publicly defamed Mr. Billingsley and KCF and interfered with KCF's prospective business relations.

27.     Denied, except admitted that Mr. Billingsley and Mr. Pavlis shared a common faith.

28.     Denied, except admitted that Mr. Pavlis invested money with Defendants and that at the time of his death he had not received a return on his investments.  The allegations of footnote 2 to the first sentence of this paragraph are denied, except admitted that Mr. Pavlis invested in

Mobile Corp., that Mr. Billingsley received salary payments from Mobile Corp., and that Mobile Corp. is now defunct.

29.     Denied.

30.     Denied, except admitted that Mr. Billingsley met Mr. Pavlis in 2012.

31.     Denied, except admitted that Mr. Billingsley had an equity interest in LoanGo Corporation, an entity created by Jeffrey Peterson and John Keith Ayers, and denied that Mr. Billingsley had any formal or informal control position in LoanGo or that he had any access to LoanGo's bank accounts.

32.     Denied.  By way of further answer, LoanGo's investors were neither naïve nor financially unsophisticated and invested only a small portion of their wealth.  Each LoanGo investor was given a private placement memorandum and was contacted, vetted, and given full disclosure by LoanGo's broker-dealer, Gilford Securities Incorporated, a Wall Street firm of 30 years' standing.

33.     The first, third and fourth sentences of this paragraph are admitted.  The second and fifth sentences of this paragraph are denied, except admitted that Mr. Billingsley was a vice president and stockholder of LoanGo and owned equal shares of the company.

34.     The first sentence of this paragraph is denied, except admitted that LoanGo issued promissory notes.  The second and third sentences of this paragraph are admitted.  By way of further answer, Mr. Billingsley was not required to register as a securities salesperson or dealer because LoanGo engaged a Wall Street broker-dealer, Gilford Securities Incorporated, to act as the exclusive placement agent for a private offering of promissory notes, and to solicit investments. Billingsley, Peterson, and Ayers did not solicit investments.

35.     Denied.   By way of further answer, all LoanGo investors received more-than-adequate documentation prepared by a securities attorney, Gary Agron, Esq., the risk level was disclosed, and investors only invested a small fraction of their wealth.

36.     Denied.

37.     Denied.

38.     Admitted.

39.     Denied, except admitted that the Securities Division of the Arizona Corporation Commission filed a regulatory action against Peterson, Ayers, Billingsley, and their spouses.

40.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

41.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

42.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

43.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

44.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.  By way of further answer, Mr. Billingsley was

not involved in LoanGo's business decisions and only acted at the direction of Peterson and Ayers. By way of further answer, the Commission's opinion is on appeal in the Arizona courts.

45.     The first sentence of this paragraph refers to a document that speaks for itself. Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents. The second sentence of this paragraph is denied, except admitted that Mr. Billingsley met Mr. Pavlis in 2012.

46.     Denied.

47.     Denied.

48.     Denied, except admitted that Mobile Corp. was formed in early 2013. By way of further answer, Mobil Corp. was formed to create a mobile employment platform for micro-jobbing and freelancer work. Mr. Billingsley was head of Mobile Corp.'s New York office. Mr. Billingsley admits that he served as Mobile Corp.'s President.

49.     Because Jeffrey Peterson and Michael Silberman (Mobile Corp.'s Chief Financial Officer) dealt directly with Mr. Pavlis, and because Mr. Billingsley did not have a role in controlling Mobile Corp. and did not have access to its bank accounts, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted that investors wired funds to Wilson Sonsini, Mobile Corp.'s securities counsel.

50.     Denied.

51.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except admitted that Jeffrey Peterson was Mobile Corp.'s

chairman and CEO, and admitted that Mr. Billingsley received salary payments from Mobile Corp. Denied that Mr. Billingsley solicited any investments and denied that he received commissions.

52.     Because Jeffrey Peterson and Michael Silberman (Mobile Corp.'s Chief Financial Officer) dealt directly with Mr. Pavlis, and because Mr. Billingsley did not control Mobile Corp., have access to its bank accounts, or ever was a member of the Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

53.     The allegations of the first sentence of this paragraph are denied.  Because Jeffrey Peterson and Michael Silberman (Mobile Corp.'s Chief Financial Officer) dealt directly with Mr. Pavlis, and because Mr. Billingsley did not control Mobile Corp. or have access to its bank accounts, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

54.     Denied.

55.     The first sentence of this paragraph is denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

56.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

57.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph.   The remaining allegations of this paragraph are denied.

58.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph.  The allegations of the second sentence of

8

this paragraph are admitted.  The remaining allegations of this paragraph are denied, except admitted that funds were going to Mobile Corp.

59.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

60.     Denied.

61.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

62.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

63.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

64.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

65.     Denied.

66.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

67.     Admitted.

68.     Because Mr. Billingsley did not have a role in controlling Mobile Corp., did not have access to its bank accounts, and never served as a member of Mobile Corp.'s board of directors, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, except denied that Mr. Billingsley made any solicitation or misrepresentation.

69.     Denied.

70.     Denied.

71.     Denied, except that Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Mr. Pavlis never possessed a social media account of any kind.  Admitted that Mr. Pavlis was comfortable with the subject of real estate.  By way of further answer, Mr. Pavlis understood and was excited about Mobile Corp.'s business model, its prestigious board of directors, and high profile investors and advisors, including Howard Dean (former governor of Vermont, former head of the Democratic National Committee, and U.S. Presidential candidate), Dennis Burke (former U.S. Attorney for the District of Arizona), Alan Bersin (former Assistant Secretary of the U.S. Department of Homeland Security), and Marco Lopez (Senior Advisor to Mexican billionaire Carlos Slim).

72.     Denied.

73.     Denied, except admitted that Mr. Billingsley served as President of Mobile Corp. and that he received salary payments for that service.   Denied that Mr. Billingsley solicited investments.

74.     Denied, except admitted that Mr. Billingsley received salary payments from Mobile Corp.

75.     Denied.

76.     Denied, except admitted that Allwest was a California-based company, that it bought distressed residential properties, rehabilitated them, and then re-sold them, and that Mr. Billingsley gave Mr. Pavlis an Allwest Investor Overview booklet and Subscription Agreement.

77.     Denied, except admitted that, on January 28, 2014, Mr. Pavlis signed the Allwest Subscription Agreement.   By way of further answer, Mr. Pavlis later rejected the Allwest investment documents in favor of an investment in KCF, at the urging of Deborah and Darbin Skeans.

78.     The allegations of the first sentence of this paragraph are denied, except that Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Mr. Pavlis wired money from his brokerage account to his banking account.   The allegations of the second and third sentences of this paragraph are admitted, except denied that Mr. Pavlis invested in Allwest.   The allegations of the fourth sentence of this paragraph are denied, except admitted that Mr. Billingsley arranged to have the check deposited.   By way of further answer, when Mr. Pavlis advised his brokers that he wanted to liquidate certain assets to make the investment in KCF, Mr. Pavlis' brokers from Glenmede traveled to Allentown to meet Mr. Pavlis to discuss the investment in KCF with Mr. Pavlis and to verify Mr. Pavlis' capacity, soundness of mind, and understanding of the investment in KCF.   The result of this meeting was the wiring of

$6 million by Glenmede to Mr. Pavlis' banker. Similar precautions were taken by Mr. Pavlis' banker: after Mr. Billingsley explained the investment to Mr. Pavlis' banker, Mr. Pavlis' banker met privately with Mr. Pavlis to confirm Mr. Pavlis' capacity, will, and intent, after which he approved the transaction.

79.     Denied, except admitted that Mr. Pavlis wrote a personal check dated May 23, 2014, for $6 million, payable to Allwest Investments. By way of further answer, Allwest had an agreement with KCF under which Allwest was the operating entity in a business consisting of the building and remodeling of over 50 homes in California, Atlanta, and Chicago. Although Mr. Pavlis made payments to Allwest, his investment was based on an agreement with KCF.

80.     The allegations of the first two sentences of this paragraph are admitted. The third, parenthetical sentence refers to documents that speak for themselves. Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

81.     Denied. By way of further answer, Mr. Pavlis understood that he was investing in KCF, and that his investment was to be used to fund Allwest's real estate development business.

82.     Denied, except admitted that $7 million was transferred from Allwest to KCF. By way of further answer, about two years after Mr. Pavlis made his investment, Gary Miller, the principal of Allwest, wished to retire. Beginning at that time and over a period of about one-and-a-half years, $7 million was transferred to KCF from Allwest.

83.     The allegations of this paragraph and those of footnote 3 to the first sentence of this paragraph are denied. By way of further answer, there was no loan relationship between KCF and Allwest.

84.     Denied.

85.     Denied.  By way of further answer, Mr. Pavlis initially invested in KCF's real estate business.  Mr. Pavlis later agreed that KCF would continue to further its goal of developing a digital platform and related tools, which ultimately became RealtyProClub.com, RentalProClub.com, and BuyEveryHome.com.  KCF and its subsidiaries developed those platforms and tools, but were unable to sell them because of the interference of and the untrue and defamatory statements made by Deborah and Darbin Skeans.

86.     Denied.

87.     Denied, except admitted that KCF issued two convertible promissory notes to Mr. Pavlis, the combined nominal face value of which was $7 million.

88.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

89.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

90.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

91.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

92.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

93.     This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

94.     Denied, except admitted that KCF filed a certificate of formation with the Delaware Secretary of State on December 10, 2014.

95.     Denied.

96.     Denied.

97.     The first and third sentences of this paragraph refer to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.  The allegations of the second sentence of this paragraph are denied.  The allegations of footnote 4 to the second sentence of this paragraph are denied, except admitted that Michael Silberman was the Chief Financial Officer of Mobile Corp.

98.     This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

99.     This paragraph refers to documents that speaks for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

100.    Denied.

101.    Denied.

102.    Denied.

103.    This paragraph refers to documents that speaks for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.  Denied that the terms of the Notes were unfavorable to Mr. Pavlis.

104.    This paragraph refers to documents that speaks for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

105.    Denied, except admitted that Mr. Pavlis invested $7 million in exchange for promissory notes convertible into stock.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied, except admitted that Plaintiff requested information from Mr. Billingsley in 2016 and Mr. Billingsley provided documents to Plaintiff in response to her request.

110.    Denied, except admitted that, on or about November 11, 2016, Mr. Billingsley provided Plaintiff with a copy of the September 1, 2014 Note reflecting Mr. Pavlis' $3 million investment.

111.    Defendants are without knowledge or belief sufficient to admit or deny the allegations of this paragraph, except admitted that Plaintiff sought additional information about Mobile Corp. and KCF.  By way of further answer, Defendants assert that Plaintiff failed to provide Mr. Billingsley with adequate documentation of her role as representative of Mr. Pavlis' estate.

15

112.    The first two sentences of this paragraph are denied, except admitted that Mr. Billingsley provided Plaintiff with a copy of the second, $4 million KCF Note in or around February 2018.  The allegations of footnote 5 to the second sentence of this paragraph are admitted. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of this paragraph.

113.    Denied, except admitted that Mr. Billingsley advised Plaintiff's counsel that Mr. Pavlis' investments were legitimate and properly documented.

114.    Denied, except admitted that Mr. Billingsley produced additional documents to Plaintiff on or about June 29, 2018.

115.    Denied, except admitted that Mr. Billingsley produced the two documents and that Mr. Pavlis signed the Subscription Agreement.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

116.    This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

117.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

118.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

119.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

120.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.  Denied that the document is an "after-the-fact fabrication."  The allegations of footnote 6 to the second sentence of this paragraph are denied.

121.    This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

122.    Denied.

123.    This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.  The remaining allegations of this paragraph are denied, except admitted that Mr. Billingsley provided copies of the Joint Venture Agreements to Plaintiff's counsel on or about June 29, 2018.

124.    The first sentence of this paragraph refers to a document that speaks for itself. Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.  The second sentence of this paragraph is denied, except admitted that the certificate of formation of Key Commercial Finance Properties LLC was filed with the Delaware Secretary of State on December 12, 2016.

125.    The first sentence of this paragraph refers to a document that speaks for itself. Defendants refer to the document for its true and complete contents and deny any characterization

17

of the document that is inconsistent with its true and complete contents.  The second sentence of this paragraph is denied, except admitted that the certificate of formation of Mobile Agency LLC was filed with the Delaware Secretary of State on November 7, 2016.

126.    The first sentence of this paragraph refers to a document that speaks for itself. Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.  The second sentence of this paragraph is denied, except admitted that the certificate of formation of Equity Pros, LLC was filed with the Delaware Secretary of State on September 11, 2015.

127.    This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

128.    This paragraph refers to documents that speak for themselves.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

129.    Denied.

130.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.  The remaining allegations of this paragraph are denied, except admitted that, on or about July 13, 2018, Mr. Billingsley produced a copy of the Funding Agreement between KCF and Allwest.

131.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

18

132.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

133.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

134.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

135.    This paragraph refers to a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

136.    Denied.

## COUNT I

## DECLARATORY JUDGMENT

137.    Defendants incorporate their answers to the preceding paragraphs as if set forth in their entirety herein.

138.    This paragraph states conclusions of law to which no responsive pleading is required.  To the extent an answer is required, denied.

139.    Admitted.

140.    Denied, except admitted that Allwest did not repay the note.

141.    Denied, except admitted that, on May 23, 2014, Mr. Pavlis wrote a personal check in the amount of $6 million payable to Allwest.  Defendants refer to the document for its true and

complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

142.    Denied, except admitted that KCF issued two notes to Mr. Pavlis that Mr. Pavlis purchased pursuant to corresponding Note Purchase Agreements.

143.    The first sentence of this paragraph refers to a document that speaks for itself. Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.   The allegations of the second sentence of this paragraph are denied.

144.    Denied, except admitted that the checks were made payable to Allwest.

145.    Denied, except admitted that KCF's certificate of formation was filed with the Delaware Secretary of State on December 10, 2014.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied, except admitted that the notes issued by KCF were signed by Michael Silberman.

150.    Denied that Plaintiff is entitled to any relief.

## COUNT II

## COMMON LAW FRAUD

151.    Defendants incorporate their answers to the preceding paragraphs as if set forth in their entirety herein.

152.    Denied.

153.    Denied, except admitted that money was transferred from Allwest to KCF.

154.     Denied.

## COUNT III

## FRAUDULENT CONCEALMENT

155.     Defendants incorporate their answers to the preceding paragraphs as if set forth in their entirety herein.

156.     Denied.

157.     Denied.

158.     Denied.

159.     Denied, except admitted that Mr. Pavlis invested and that the promissory notes were due to be repaid in 2019 and 2020.

160.     Denied.

161.     Denied, except admitted that Allwest and KCF entered into a Funding Agreement. The Funding Agreement is a document that speaks for itself.  Defendants refer to the document for its true and complete contents and deny any characterization of the document that is inconsistent with its true and complete contents.

162.     Denied.

163.     Denied, except admitted that Mr. Billingsley produced certain documents in June 2018.  Defendants refer to the documents for their true and complete contents and deny any characterization of the documents that is inconsistent with their true and complete contents.

164.     Denied.

165.     Denied.

**COUNT IV**

**CONVERSION**

166.    Defendants incorporate their answers to the preceding paragraphs as if set forth in their entirety herein.

167.    Denied.

168.    Denied, except admitted that funds were transferred from Allwest to KCF.

169.    Denied, except admitted that KCF transferred funds to its subsidiaries.

170.    Denied.

171.    Denied.

**COUNT V**

**UNJUST ENRICHMENT**

172.    Defendants incorporate their answers to the preceding paragraphs as if set forth in their entirety herein.

173.    Denied.

174.    Denied, except admitted that Mr. Pavlis invested $7 million in KCF and that funds were transferred from Allwest to KCF.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied, except admitted that Mr. Pavlis did not have any contractual relationship with KCF's subsidiaries.

179.    Denied.

## <u>AFFIRMATIVE DEFENSES</u>

1.       The Complaint fails to state a claim on which relief can be granted.

2.       Plaintiff's claims are barred by the doctrine of laches and the applicable statute of limitations.

3.       Defendants are entitled to setoff of any alleged damages against damages caused by Deborah Skeans and others to Defendants' business through interference with prospective business relations and defamation.

WHEREFORE, Defendants respectfully request that the Court enter an order:

A.       Granting judgment in favor of Defendants and against Plaintiff, and denying Plaintiff the relief sought in the Complaint;

B.       Awarding Defendants their reasonable attorneys' fees and costs incurred in this action, to the extent permitted by law; and

C.       Granting such other and additional relief as the Court finds just and equitable.

Dated:  October 8, 2019                          HALLORAN FARKAS + KITTILA LLP

                                                 */s/ James G. McMillan, III*
                                                 Theodore A. Kittila (No. 3963)
                                                 James G. McMillan, III (No. 3979)
                                                 5803 Kennett Pike, Suite C
                                                 Wilmington, Delaware  19807
                                                 Phone:  (302) 257-2011
                                                 Fax:  (302) 257-2019
                                                 Email:   tk@hfk.law
                                                          jm@hfk.law

                                                 *Counsel for Defendants*

23