## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBORAH S. SKEANS, Executrix of the　　:
ESTATE OF FRANK E. PAVLIS,　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　C.A. No. 1:18-cv-01516-CFC
KEY COMMERCIAL FINANCE LLC,　　　　:
KEY COMMERCIAL FINANCE　　　　　　:
PROPERTIES, LLC, EQUITY PROS, LLC,　:
and MOBILE AGENCY, LLC,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
JUSTIN BILLINGSLEY and KEY　　　　　:
COMMERCIAL FINANCE, LLC,　　　　　　:
　　　　　　　　Third -Party Plaintiffs　　:
　　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
DEBORAH S. SKEANS and DARBIN　　　　:
SKEANS,　　　　　　　　　　　　　　　:
　　　　　　　　Third-Party Defendants　　:

## THIRD-PARTY DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF MOTION TO DISMISS

OF COUNSEL:

William E. Mahoney, Jr. (admitted *pro hac vice*)
Spencer R. Short (admitted *pro hac vice)*
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120


Dated: December 4, 2019

Joelle E. Polesky (ID No. 3694)
STRADLEY RONON STEVENS &
YOUNG, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Third-Party Defendants,*
*Deborah S. Skeans and Darbin Skeans*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...................1

SUMMARY OF THE ARGUMENT .............................................................2

STATEMENT OF FACTS AS ALLEGED....................................................3

ARGUMENT ...................................................................................................4

I.      STANDARD OF REVIEW .................................................................4

II.     THE THIRD-PARTY CLAIMS ARE MISJOINED UNDER RULE 14.........................4

III.    UNDER DELAWARE'S CHOICE OF LAW RULES, NEW YORK
        LAW APPLIES TO THIRD PARTY PLAINITFFS' CLAIMS .......................6

IV.     BILLINGSLEY'S DEFAMATION AND INJURIOUS FALSEHOOD
        CLAIMS ARE TIME-BARRED .........................................................9

V.      THE THIRD-PARTY COMPLAINT'S DEFAMATION CLAIM FAILS
        AS A MATTER OF LAW.................................................................10

        A.      The Publication Upon Which the Claim Is Based Does Not
                Attribute Any Allegedly Defamatory Statement to the Skeanses.........................11

        B.      The Defamation Claim fails to Satisfy the "Of and Concerning"
                Requirement.....................................................................12

        C.      The Statement Regarding Mr. Pavlis' Memory Loss Is Incapable of
                Defamatory Meaning, When Viewed in Light of the Article as a
                Whole...............................................................................13

        D.      The Statement Regarding Mr. Pavlis' Memory Loss And Any
                Attendant Implication that Billingsley Took Advantage is Opinion,
                Not Fact............................................................................15

        E.      The Article Contains Nothing Defamatory about KCF .......................17

VI.     THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM FOR
        INJURIOUS FALSEHOOD ...............................................................18

VII.    UNDER NEW YORK LAW, A CLAIM FOR "FALSE
        LIGHT/INVASION OF PRIVACY" DOES NOT EXIST....................19

VIII.   THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM FOR
        TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
        ADVANTAGE ...................................................................................19

CONCLUSION................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Agar v. Judy*,
   151 A.3d 456 (Del. Ch. 2017)...................................................................17

*Aoki v. Benihana, Inc.*,
   839 F. Supp.2d 759 (D. Del. 2012)......................................................4, 7-8

*Armstrong v. Simon and Shuster, Inc.*,
   85 N.Y. 2d 373 (1995)............................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................4

*BCRE 230 Riverside LLC v. Fuchs*,
   59 A.D.3d 282 (N.Y. App. Div. 2009) ....................................................18

*Chanduck v. Klessig*,
   2009 WL 2762167 (N.D.N.Y. Aug. 27, 2009) ........................................16

*Church of Scientology Int'l v. Time Warner*,
   932 F. Supp. 589 (S.D.N.Y. 1996) .........................................................14

*Clark v. New York Tel. Co.*,
   384 N.Y.S.2d 562 (N.Y. App. Div. 1976) ..............................................10

*Donastorg v. Daily News Publishing Co., Inc.*,
   2015 WL 5399263 (D.V.I. 2015)............................................................17

*Federal Deposit Ins. Corp. v. Bathgate*,
   27 F.3d 850 (3d. Cir. 1994)......................................................................5

*Fuqua Homes, Inc. v. Beattie*,
   388 F.3d 618 (8th Cir. 2004) ...................................................................8

*Grieve v. Barclay's Capital Securities, Ltd.*,
   1999 WL1680654 (NY Sup. Ct., Sept. 10, 1999)....................................13

*Grieve v. Barclays Capital Securities Ltd.*,
   1999 WL 1680654 (N.Y. Sup. Ct. Sept. 10, 1999)..................................12

*Herbert v. Lando*,
   781 F.2d 298 (2d Cir.), cert. denied, 476 U.S. 1182 (1986) ...................14

*Johnson v. Warner Brothers Entertainment, Inc.*,
   2017 WL 588714 (D. Del. Feb. 14, 2017) ...........................................8-10

*Kane v. Orange County Publications*,
    232 A.D.2d 526 (N.Y. App. Div. 1996) ................................................................19

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)................................................................................13

*L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*,
    125 A.D.2d 371 (N.Y. App. Div. 1986) ................................................................18

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)................................................................................13

*Matthews v. Malkus*,
    377 F.Supp.2d 350 (S.D.N.Y. 2005)....................................................................19

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New
    Jersey*,
    760 F.3d 297 (3d Cir. 2014)..................................................................................4

*Paine, Weber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner & Smith,
    Inc.*,
    564 F. Supp. 1358 (D. Del. 1983)..........................................................................5

*Pendergrass v. ChoicePoint, Inc.*,
    2008 WL 5188782 (E.D. Pa. Dec. 10, 2008) ........................................................8

*Perez v. Violence Intervention Program*,
    984 N.Y.S.2d 348 (N.Y. App. Div. 2014) ............................................................18

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................................4

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002)..................................................................................9

*Scialdone v. Derosa*,
    48 N.Y.S.3d 471 (N.Y. App. Div. 2017) ..............................................................16

*se. Gristede's Foods Inc. v. Poospatuck (Unkechaune) Nation*,
    2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ............................................. 11-13, 16

*Slozer v. Slattery*,
    2015 WL 7282971 (Pa. Super. Ct. 2015)............................................................17

*Sys. Operations, Inc. v. Scientific Games Dev. Corp.*,
    555 F.2d 1131 (3d Cir.1977)................................................................................8

*Tellabs, Inc., v. Makor Issues and Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................................4

*Teneriello v. Travelers Cos.*,
    641 N.Y.S. 2d 482 (N.Y. App. Div. 1996) ...........................................................10

*Thome v. Alexander & Louisa Calder Found.*,
    70 A.D. 3d 88 (1st Dept. 2009) ............................................................................19

## STATUTES

Del. C. § 8119 .............................................................................................................10

10 Del. C. § 8121 .........................................................................................................9

## RULES

Fed. R. Civ. P. 14 (a)(1) ...........................................................................................4-5

Federal Rules of Civil Procedure Rule 14 .............................................................2, 4-6

N.Y.C.P.L.R. 215(3) ...................................................................................................10

Rule 12(b)(6) ................................................................................................................4

Rule 14(a) .....................................................................................................................5

Rule 21 .........................................................................................................................5

## PRELIMINARY STATEMENT

Deborah and Darbin Skeans, Third-Party Defendants, respectfully request that this Court dismiss the Third-Party Complaint filed against them by Key Commercial Finance, LLC (KCF"), a defendant in the underlying action, and Justin Billingsley, a complete stranger to this litigation. The Third-Party Complaint, which is a multistate defamation action, is based entirely upon a single, allegedly defamatory statement contained in an article published by the *Arizona Republic* in mid-December 2017. According to the Third-Party Complaint, the article "quoted" Ms. Skeans as claiming that Frank Pavlis (whose Estate commenced the underlying action) "suffered from 'memory loss' when he invested in KCF," thereby creating the impression that Mr. Billingsley was "a scam artist" who took unfair advantage of Mr. Pavlis. (Third-Party Compl. at ¶ 8.)

Tellingly, the article itself was not attached as an exhibit to the Third-party Complaint. It is attached hereto as Exhibit "1". Even a cursory review of the article reveals that *it attributes no comments about Mr. Pavlis memory or his alleged investment in KCF to Ms. Skeans.* How Third-Party Plaintiffs could assert the exact opposite is puzzling. However, given that each of their claims is based upon this demonstratively false allegation, this Court should dismiss each of those claims with prejudice.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action against Defendants, KCF and its three subsidiaries, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC (collectively, "Underlying Defendants"), on October 1, 2018. (D.I. 1). On November 20, 2018, the Underlying Defendants filed their Motion to Dismiss the Complaint. (D.I. 23.) On September 24, 2019, this Court denied the Motion to Dismiss Plaintiff's claims for declaratory judgment, common law fraud, fraudulent concealment, and unjust enrichment. (D.I. 30). Defendants

submitted their Answer to Plaintiff's Complaint on October 8, 2019.  (D.I. 31).  On October 22, 2019, KCF and Mr. Billingsley—a non-party to the underlying action—filed a Third-Party Complaint (D.I. 35).  The Skenases now file their Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

1.      The Third-Party claims are misjoined under Rule 14 of the Federal Rules of Civil Procedure and should be dismissed, as they are not dependent or derivative of the claims asserted in the underlying action.  Relatedly, Mr. Billingsley should be dropped from this suit as he is not a Defendant in the underlying action.

2.      Mr. Billinglsey defamation and related claims are time-barred under applicable New York law, and should be dismissed.

3.      The Third-Party Complaint fails to state a claim for defamation and injurious falsehood because, among other reasons, the article upon which the claims are based does not attribute any false statement of fact to the Skeanses, and the unattributed statement relating to Mr. Pavlis' memory loss is incapable of having defamatory meaning when viewed in the context of the article as a whole.  Moreover, any (unwritten and unattributed) implication that Mr. Billingsley was a "scam artist" constitutes non-actionable opinion.

4.      The Third-Party Complaint's claim for "false light/invasion of privacy"  should be dismissed, as New York law does not recognize such claims.

5.      The Third-Party Complaint fails to state a claim for tortious interference with prospective economic advantage because (i) the article does not attribute any defamatory statement to Ms. Skeans, and (ii) the business relationships that allegedly were impacted by the article did not exist until over a year after the article was published.

## STATEMENT OF FACTS AS ALLEGED

The Third-Party Complaint alleges that in September 2017, the "Skeanses flew to Arizona to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*, to discuss Mr. Billingsley." (Third-Party Compl. (D.I. 35) at ¶ 45.) During that meeting, the Skeanses allegedly made "a number of false and defamatory allegations, including that Mr. Pavlis had suffered from 'memory loss for over a decade' including during the time that he invested in KCF." (*Id.*) The Third-Party Complaint alleges that "in an article published on December 14, 2017, in the *Arizona Republic* and on its website, *azcentral.com*, Ms. Skeans was quoted as making defamatory statements about Mr. Billingsley and KCF. (*Id.* at ¶ 8.) Specifically, in an effort to paint Mr. Billingsley as a scam artist, Ms. Skeans claimed that Mr. Pavlis suffered from 'memory loss" when he invested in KCF." (*Id.*) The Third-Party Complaint contends that this statement was false and defamatory, as it implied that "Mr. Billingsley and KCF had taken unfair advantage of Mr. Pavlis." (*Id.*)

The Third-Party Complaint further alleges that as a result of the Skeanses' false and defamatory statements as contained in the article, Mr. Billingsley and KCF "were unable to build on the success of RentalProClub.com," a platform that KCF developed and which "went live" in the last quarter of 2018. (*Id.* at ¶¶ 3, 11.) The complaint states that "prospective investors and strategic partners walked away" from RentalProClub.com. (*Id.* at ¶¶ 10-11.) As a result, "KCF was unable to repay a $4,000,000 convertible promissory note issued to Mr. Pavlis that matured on September 29, 2019 and has very little prospect of repaying the additional $3,000,000 convertible promissory note due in 2020." (*Id.* at ¶ 11.)

The Third-Party Complaint asserts four causes of action: Defamation (Count I); Injurious Falsehood (Count II); False Light/Invasion of Privacy (Court III); and Tortious Interference with Prospective Economic Advantage (Count IV).

3

# ARGUMENT

## I.    STANDARD OF REVIEW

Under Rule 12(b)(6), "[a] court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (citing *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008)). "'When there are well ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Aoki v. Benihana, Inc.*, 839 F. Supp.2d 759 763 (D. Del. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 668 (2009)). "Such a determination is a context-specific task requiring the court 'to draw on its judicial experience and common sense.'" *Id.*   Finally, a court "may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *Id.* (citing *Tellabs, Inc., v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    THE THIRD-PARTY CLAIMS ARE MISJOINED UNDER RULE 14

As a preliminary matter, the Third-Party Complaint is procedurally improper under Rule 14 of the Federal Rules of Civil Procedure and should be dismissed.  Rule 14, which addresses third-party practice, states that only a "*defending party* may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. . . ." Fed. R. Civ. P. 14 (a)(1) (emphasis added).  The plain language of Rule 14 makes clear that only a defendant in the underlying action may assert a third-party complaint against non-parties.

Mr. Billingsley is not a defendant in the underlying action.  Under Rule 14, he has no right to insert himself as a plaintiff in the Third-Party Complaint.  He should be dropped as a

party from this action pursuant to Rule 21.[1]  And while KCF is a defendant in the underlying action, its claims are misjoined as well and should be dismissed.

Rule 14 allows a defendant to bring a third-party complaint only against "a nonparty *who is or may be liable to it for all or part of the claim against it*. . . ."  Fed. R. Civ. P. 14 (a)(1) (emphasis added).  A third-party complaint is insufficient where a defendant/third-party plaintiff fails to allege that a third-party defendant is liable for all or part of the claim against defendant.  As the Court of Appeals for the Third Circuit has confirmed,

> A third-party claim may be asserted under Rule 14(a) only when the third-party's liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant. If the claim is separate or independent from the main action, joinder will be denied.

*Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d. Cir. 1994) (quoting C.A. Wright, A. Miller, M.K. Kane, *Federal Practice and Procedure*, Vol. 6 § 1446, at 355-558 (1990)).

If a third-party claim is not derivative of the third-party plaintiff's liability to the underlying plaintiff, the third-party complaint should be dismissed. *See id.; see also Paine, Weber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1370 (D. Del. 1983) (dismissing third-party complaint under Rule 14(a) because defendant failed to allege that the third-party was liable for all or any part of plaintiff's claims against defendant).

Similarly, the Third-Party Complaint here does not allege that the Skeanses are liable over to KCF for any claims asserted against it in the underlying complaint.[2]  Nor could it. The underlying action arises out of a fraudulent scheme—and its equally fraudulent

---

[1] Rule 21 of the Federal Rules of Civil Procedure states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

[2] Indeed, the Third-Party Complaint does not reference the underlying action or the claims asserted therein at all.

concealment—perpetrated against Mr. Pavlis.   Specifically, the Estate seeks to recover the $7,000,000 that Mr. Billingsley persuaded Mr. Pavlis to invest in Alllwest Investments, LLC, in 2014, which funds were subsequently transferred to or appropriated by KCF, an entity controlled by Mr. Billingsley, without Mr. Pavlis knowledge or consent. (*See generally* Compl. (D.I. 1) at ¶¶ 75-179.)

By contrast, the claims asserted in the Third-Party Complaint arise out of an allegedly defamatory statement published in the New Republic article in December 2017, and the damages that it seeks purportedly arise out of the publication of that article on the internet.  The third-party claims are in no way dependent upon or connected to the state's claims against KCF for its wrongful conduct in connection with investments that Mr. Pavlis made in 2014.  Given that the Third-Party Complaint does not allege or suggest in any way that the Skeanses are liable over to KCF for the underlying claims asserted against it, the Third-Partly Complaint should be dismissed as improperly joined under Rule 14.

## III.   UNDER DELAWARE'S CHOICE OF LAW RULES, NEW YORK LAW APPLIES TO THIRD PARTY PLAINITFFS' CLAIMS

At its core, the Third-Party Complaint is a multistate defamation case.  It alleges that in September 2017, the Skeanses (who are Pennsylvania residents) travelled to Arizona to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*." (Third Party Compl. at ¶¶ 14-15, 45.)  At that meeting, the Skeanses allegedly made false statements to Mr. Harris, "including that Mr. Pavlis suffered from 'memory loss' for over a decade, including during the time he invested in KCF." (*Id.* at ¶ 45.)  The *Arizona Republic* and *azcentral.com.* subsequently published an article by Mr. Harris in December 2017.  (*Id.* at ¶ 48.)  The Third-Party Complaint goes on to allege that "[w]ith the article by Mr. Harris available on the Internet, the Skeanses' comments were published to the world . . . ." (*Id.* at ¶ 49.)  As a result, a number

6

of prospective business partners determined that they would not do business with either Mr. Billingsley, a resident of New York, or KCF, a limited liability company organized under the laws of Delaware "with its principal place of business in New York."  (*Id.* at ¶ 12-13, 49.) KCF's members are all residents of New York as well.  (*Id.* at ¶ 13.)

Thus, there are four jurisdictions whose laws potentially apply when analyzing the legal sufficiency of the claims asserted in the Third-Party Complaint:  Pennsylvania, Arizona, Delaware, and New York.  As set forth below, a choice of law analysis under Delaware rules compels application of New York law to the claims at issue.

In *Aoki v. Benihana, Inc.*, 839 F. Supp.2d 759 (D. Del. 2012), this Court laid out the choice of law analysis applicable to tort claims filed in federal court in Delaware as follows:

> "The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.  The Delaware state courts follow the conflicts of law provisions in the Restatement (Second) of Conflicts" ("Restatement").
>
> The claims for defamation and injurious falsehood sound in tort.  "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 145.
>
> \*        \*        \*        \*
>
> "The rights and liabilities that arise from defamatory matter in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement § 150(1). ***The state where the injured party is domiciled (for natural persons) or has its principal place of business (for corporations or other legal persons, collectively "residence") will usually be the state of most significant relationship for claims of defamation by an aggregate communication that was published in that state.***  Restatement § 150(2),(3). "The choice-of-law rules involving injurious falsehood

7

> are the same as those involving defamation.'" *Sys. Operations, Inc.*
> *v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir.1977)
> (footnote omitted).

(Emphasis added) (citations omitted); *see also Johnson v. Warner Brothers Entertainment, Inc.*, 2017 WL 588714 at *3 (D. Del. Feb. 14, 2017) (noting that in a defamation case, there is a presumption that the local law of the state of the plaintiff's domicile applies, unless with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and the parties.)

The *Aoki* court went on to note that "aggregate communications" are those that are published simultaneously in two or more states. *Id.* at 765. The court also observed that a "'typical Internet publication, where access is generally available to anyone at any time' is considered an aggregate communication." *See id. (*quoting *Pendergrass v. ChoicePoint, Inc.*, 2008 WL 5188782, at *3 (E.D. Pa. Dec. 10, 2008)). "When there is widespread dissemination of allegedly defamatory matter, such as via the internet, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Id.* (*quoting Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004)) (citation omitted). The court continued:

> "This is because 'defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors, and business associates in the place of one's residence.'" To overcome the presumption established under Restatement Section 150, there must be sufficiently significant considerations."

*Id.* at 765 (quoting *Fuqua Homes*, 388 F.3d at 622).

Here, the claims asserted in the Third-Party Complaint are based entirely on the article published on the *Arizona Republic*'s website on December 14, 2017, and the injuries that

Mr. Billingsley and KCF allegedly sustained as a result of its publication "to the world."[3] (Third-Party Compl. at ¶¶ 48-49.)  Given that Mr. Billingsley and KCF are both residents of New York, the presumption is that New York law applies to their third-party claims under the relevant analysis articulated by the *Aiko* and *Johnson* courts.

## IV.   Mr. Billingsley's Defamation and Injurious Falsehood Claims Are Time-Barred[4]

In evaluating whether any of the claims asserted in the Third-Party Complaint are time-barred, this Court must apply Delaware's "borrowing statute." *Johnson*, 2017 WL 588714 at * 3.  The Delaware borrowing statute provides as follows:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing a an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of [Delaware], the time limited by the law of [Delaware] shall apply.

10 Del. C. § 8121.

"To determine where a cause of action arises for purposes of the borrowing statute, Delaware's choice of law rule asks which state has the most significant relationship to the claims and to the parties." *Johnson*, 2017 WL 588714 at *3.  As noted above, the most important consideration for defamation claims is the residence of the party allegedly defamed,

---

[3] The Third-Party Complaint states that "the *Arizona Republic* and *azcentral.com* printed an article by Craig Harris on December 14, 2019 . . . ." (Id. at ¶48.)  This is a typographical error, as the referenced article published by the *Arizona Republic* on its website was dated December 14, 2017.

[4] The Third Circuit also permits statute of limitation defenses to be raised in a 12(b)(6) motion when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).  When the time bar is apparent on the face of a complaint, the Court should grant such a motion to dismiss. *Id.*

9

and it is presumed that the local law of that state. *See id.* Billinglsey is a resident of New York. Under the borrowing statute, then, the Court must apply the shorter of Delaware or New York's statute of limitations.

In Delaware, the statute of limitations for defamation and injurious falsehood claims is two years. *See* 10 Del. C. § 8119. Under New York law, the statute of limitations on defamation claims is one year. *See* N.Y.C.P.L.R. 215(3). Thus, New York's shorter one-year statute of limitation applies to Mr. Billingsley's defamation and injurious falsehood claims.

Moreover, the one-year statute begins to run on the date the allegedly defamatory statement is published. A cause of action for either defamation or injurious falsehood accrues when the alleged defamatory statement is published, not when it is discovered. *See Clark v. New York Tel. Co.*, 384 N.Y.S.2d 562, 563 (N.Y. App. Div. 1976) (one-year statute of limitation applies to defamation and injurious falsehood claims, and the statute for both claims begins to run on the date of publication); *see also Teneriello v. Travelers Cos.*, 641 N.Y.S. 2d 482, 482 (N.Y. App. Div. 1996) (dismissing defamation claim that was commenced more than one year from the date of publication, holding that the action accrued when the statements were originally published, not upon plaintiff's discovery of the statements two years later).

The Arizona Republic article that is at the heart of the Third-Party Complaint was published on December 14, 2017. The Third-Party Complaint was not filed until October 22, 2019, almost two years later. Mr. Billingsley's claims for defamation and injurious falsehood are time-barred under applicable New York law.

## V.   The Third-Party Complaint's Defamation Claim Fails As a Matter of Law

In order to state a claim for defamation under New York law, a plaintiff must allege (i) a false and defamatory statement of fact, (ii) concerning the plaintiff, (iii) published by the defendant without privilege or authorization to a third party, (iv) constituting fault as judged

10

by, at a minimum, a negligence standard, and (v) causing special harm or constituting defamation *per se*. *Gristede's Foods Inc. v. Poospatuck (Unkechaune) Nation*, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009). The Third-Party Plaintiffs' defamation claim fails to satisfy several of these elements. As a result, it should be dismissed with prejudice.

### A.    The Publication Upon Which the Claim Is Based Does Not Attribute Any Allegedly Defamatory Statement to the Skeanses

The defamation claim – like each of the claims asserted in the Third-Party Complaint – is based upon a single statement in the *Arizona Republic* article allegedly attributed to Ms. Skeans. The Third-Party Complaint alleges as follows:

> However, in an article published on December 14, 2017, in the Arizona Republic and on its website, azcetnral.*com,* Ms. Skeans was quoted as making false and defamatory statements about Mr. Billingsley and KCF. Specifically, in an effort to paint Mr. Billinglsey as a scam artist, Ms. Skeans claimed the Mr. Pavlis suffered from "memory loss" when he invested in KCF.

(Third Party Compl. at ¶ 8.) If the Third-Party Complaint is to be believed, then, the article actually *quoted* Ms. Skeans as saying that Mr. Pavlis suffered from memory loss when he invested in KCF.

This is demonstrably untrue. The article never quotes Ms. Skeans as saying anything about Mr. Pavlis memory loss, or his alleged investment in KCF. Indeed, the article *never* attributes the statement about Mr. Pavlis' memory loss to anyone, much less Ms. Skeans. Rather the article states as follows: "Family and friends of the Pennsylvania millionaire, who just turned 101, said he's had memory loss for at least a decade, including during the time he heavily invested in Mobile." This statement is not attributed to Ms. Skeans, or to any individual. Indeed, it is unfathomable that the Third-Party Complaint could allege that Ms. Skeans "was quoted" as making this statement when the article contains no such quote by her.

11

Given that the statement as published is not attributed to Ms. Skeans, Mr. Billingsley and KCF's defamation claim fails as a matter of law. "In order to be liable for the publication of a defamatory statement, a defamation defendant (or person authorized to act on behalf of the defendant) *must make the statement* or authorize its republication or recommunication." *Gristede's Foods*, 2009 WL 4547792 at *12 (*citing* 43A N.Y. Jur.2d Defamation and Privacy § 91 (2009) (emphasis added). A defamation claim must be dismissed "where there is nothing in [the publication] itself to indicate that the statement at issue was attributable to" the defendant. *Id.* (granting motion to dismiss defendant's defamation counterclaim where plaintiff did not author the publication and where the plaintiff was not "quoted, cited, or otherwise referenced in connection with the allegedly defamatory statement"); *see also Grieve v. Barclays Capital Securities Ltd.*, 1999 WL 1680654, at *5 (N.Y. Sup. Ct. Sept. 10, 1999) (court dismissed defamation claim based on statements contained in several press publications, where the articles did not "set forth who or what their sources were regarding the reasons for [plaintiff's] departure from employment, and neither article sets forth the precise statements allegedly made by defendants").

The *Arizona Republic* article does not identify Ms. Skeans as making or having any connection to the statement about Mr. Pavlis' memory loss. Having failed to satisfy the "attributable to" requirement, the defamation claim should be dismissed as failing to state a claim under New York law.

**B.     The Defamation Claim fails to Satisfy the "Of and Concerning" Requirement**

In order to withstand a motion to dismiss, a plaintiff must advance colorable claims of having been identified and described by the defamatory comment. *Geisler*, 636 F.2d at 640. This "of and concerning" requirement stands as a significant limitation on the universe of

those who may seek a legal remedy for communications, they think to be false and defamatory and have injured them." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399-400 (2d Cir. 2006).

Here, the is nothing in the statement relating to Mr. Pavlis' memory loss that concerns or implicates Mr. Billingsley or KCF. Neither is mentioned in the statement, and neither is referenced contextually in the paragraphs surrounding the statement. The suggestion that the statement about Mr. Pavlis' memory loss somehow reflects negatively upon Mr. Billingsley or KCF is absurd. There is nothing in the article from which a reasonable reader would infer that Ms. Skeans defamed Mr. Billingsley or KCF by implication or otherwise.

**C.     The Statement Regarding Mr. Pavlis' Memory Loss Is Incapable of Defamatory Meaning, When Viewed in Light of the Article as a Whole**

The defamation claim also fails because when viewed in the context of the entire article, the statement about Mr. Pavlis' memory loss is incapable of being isolated as having defamed Mr. Billingsley or KCF. When evaluating a defamation claim, "[a] threshold issue for the court is whether the statement allegedly causing injury to the plaintiff is 'reasonably susceptible to the defamatory meaning imputed to it.'" *Gristede's Foods*, 2009 WL4547792 at *15 (quoting *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997). "To determine whether a statement is defamatory, the court 'must give the language at issue a fair reading *in the context of the publication as a whole.*'" *Id.*; see also *Grieve v. Barclay's Capital Securities, Ltd.*, 1999 WL1680654, at *5 (NY Sup. Ct., Sept. 10, 1999) (same); *Armstrong v. Simon and Shuster, Inc.*, 85 N.Y. 2d 373, 380 (1995) (same).

This requirement that an allegedly defamatory statement be evaluated in the context of the entire article in which it appears in consistent with New York's "incremental harm doctrine." That doctrine provides that "when unchallenged or nonactionable parts of a particular publication are damaging, another statement, though maliciously false, might be nonactionable

on the grounds that it causes no harm beyond the harm caused by the remainder of the publication.'" *Church of Scientology Int'l v. Time Warner*, 932 F. Supp. 589 (S.D.N.Y. 1996). "The incremental harm doctrine 'thus measures the incremental harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If that harm is determined to be nominal or nonexistent, the statements are dismissed as nonactionable.'" *Church of Scientology*, 932 F. Supp at 593-94 (quoting *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir.), cert. denied, 476 U.S. 1182 (1986)).

When considered in the context of the *New Arizona* article in its entirety, the statement regarding Mr. Pavlis' memory loss is innocuous, and it is not susceptible to defamatory meaning. The lengthy article contains a number of unflattering and suggestive statements about Mr. Billingsley. Indeed, the article presents Mr. Billingsley and his Mobile associates in a decidedly negative light. Put differently, if Mr. Pavlis (or his memory loss) were not mentioned at all in the article, a reasonable reader would still come away thinking that the group of them were, at a minimum, poor and suspect stewards of investor funds.

The article – entitled *Once-high-flying Quepasa chief Jeff Peterson under fire as $9M gone in online startups* – focuses on Mobile, an Arizona start-up company that spent almost $9,000,000 of investor funds in three years with nothing to show for it. The article also presents an unflattering picture of Mr. Billingsley as a businessman. Among other things, the article states that that that "Billingsley was a defendant in an Arizona Corporation Commission case involving LoanGo, co-owned by Billingsley and Peterson. That failed company was designed to provide payday loan services via the internet." The article continues:

> The commission in late October [2017] found that Peterson and LoanGo had sold unregistered securities. *Billingsley was found to have committed fraud as the chief fundraiser.* Though Billingsley denies the commission's findings, it has ordered him, Peterson and

14

a third officer *to repay five elderly investors a combined $250,000 in restitution,* and each faces fines of up to $15,000. "

(Emphasis added.)

The article also notes that Mr. Billingsley filed for Chapter 7 bankruptcy protection in 2001 and *owed the IRS at least $440,372* for unpaid fed taxes from 2007 to 2011. Given the article's portrayal of Mr. Billinglsey, it seems likely that a reasonable reader could form a negative view him, with or without the statement about Mr. Pavlis' memory.

The article also suggests that Mr. Billingsley's dealings with Mr. Pavlis were suspect. A fair reading of that portion of the article, entitled "*Keeping Mobile afloat,*" is that (i) Mr. Billingsley persuaded a 97-year-old man to invest $2,000,000 in a failing company (of which Mr. Billingsley was the President) that had little or no cash, and (ii) those investment funds were used, in part, to pay Mr. Billingsley $50,000 and Peterson (indirectly) $500,000. To the extent any reader left the article with a dim view of Mr. Billingsley, it was not because of the comment about Mr. Pavlis memory loss. In the context of the entire article, that single statement – indeed, even an implication that Mr. Billinglsey took advantage of an elderly investor – is not actionable, given the article's overall presentation of Billinglsey.

D.  **The Statement Regarding Mr. Pavlis' Memory Loss And Any Attendant Implication that Mr. Billingsley Took Advantage is Opinion, Not Fact**

Of course, the foregoing arguments all assume that the statement regarding Mr. Pavlis memory loss is a false statement of fact. It is not. Rather, it falls squarely within the realm of lay opinion. Similarly, to the extent this statement, when combined with other statements in the article (again, unattributed to Ms. Skeans), creates the impression that Mr. Billingsley was a "scam artist" or took advantage of Mr. Pavlis, that is opinion as well. As such, neither the (unattributed) statement nor the (unstated and unattributed) implication is actionable.

15

"Statements of opinion are not actionable under New York law, nor under the U.S. Constitution." *Chanduck v. Klessig*, 2009 WL 2762167 at *7 (N.D.N.Y. Aug. 27, 2009). Whether a statement is one of opinion or fact is a question of law. *Gristede's Foods*, 2009 WL 4547792, at *18.   In determining if a statement is an opinion, and thus not actionable as defamation, a court must consider: (1) whether the statement has a precise meaning or is ambiguous; (2) whether the statement is capable of being proven true or false; and (3) whether the statement, when taken in the full context of the communication in which it appears or in the broader social context and surrounding circumstances, indicates to reader that what is being read is likely to be opinion, not fact." *Id.* The dispositive inquiry is whether a reasonable reader could have concluded that the article was conveying facts about the plaintiff." *Id.* (citations omitted.)

First, the statement regarding Mr. Pavlis' memory loss, in the context of the article, would certainly be understood by a reasonable reader to be lay opinion, rather than a clinical diagnosis or a medically established fact.  There is no suggestion in the article that anyone presented this opinion as supported by clinical or medical evidence.  Rather, the statement by Mr. Pavlis' "family and friends" that the then-97-year-old suffered from memory loss would likely be taken as their collective opinion, based upon their interactions with him.[5]

Second, even if someone had stated that Mr. Billingsley was a "scam artist" who took advantage of an elderly man, it would also be perceived as that person's opinion. *See, e.g., Scialdone v. Derosa*, 48 N.Y.S.3d 471, 742 (N.Y. App. Div. 2017) (holding that defendant's

---

[5] Notably, there is a second statement in the article that further confirms that Mr. Pavlis may have suffered from memory loss, and that comes from a quotation by Mr. Pavlis himself. The article states: "Pavlis, now 101, said in a recent telephone interview that he remembered Billingsley visiting him a few years ago in his home and that Billingsley persuaded him to invest, 'but I don't remember how much it was.'"

16

description of plaintiff as "quixotic," "self-absorbed," "narcissistic," "ungrateful," and "delusional," and referring to him as a "paranoid pompous ass" was not defamatory, because "a reasonable reader would have concluded that the statements constituted expressions of opinion"); *see also Slozer v. Slattery*, 2015 WL 7282971, at *12 (Pa. Super. Ct. 2015) (where a defendant described plaintiff as suffering from megalomania, paranoia, and claimed that he was delusional, the court held that defendant's statements were insufficient to form the basis of a defamation claim because "the language used [did] not claim that a professional diagnosis for any mental health issue exist[ed]"); *Donastorg v. Daily News Publishing Co., Inc.*, 2015 WL 5399263, at *15 (D.V.I. 2015) (statements that plaintiff is a "rogue senator" and "an example of one of the most anti-business legislators in recent memory" was statement of opinion, not fact); *Agar v. Judy*, 151 A.3d 456, 481-483 (Del. Ch. 2017) (defendant's statement that plaintiff was a "looter" was an opinion and thus, was not defamatory; the court stated, "while allegation of specific criminal conduct generally cannot be protected as opinion, broad brush-stroked references to unethical conduct, even using terms normally understood to impute criminal acts, may be understood by the reasonable viewer as opinion").

Similarly, any implication that Mr. Billingsley was a "scam artist" is a statement of opinion, rather than one of fact. As such, the implication cannot form the basis of a defamation claim, even if it had appeared in the article.

### E.    The Article Contains Nothing Defamatory about KCF

Finally, it bears noting that there is nothing negative about KCF in the article. The sole reference in the article to KCF is as follows:

> Pavlis also invested more than $2,000,000 in Key Commercial, an online real estate investment company that until recently listed its leadership team of Billingsley, Peterson, Silberman and Bivens, a partner at Snell & Wilmer and ex-Arizona party chairman.  Key also invested in Mobile, records show.

17

Nowhere does the article indicate when Mr. Pavlis allegedly invested funds in Key Commercial, nor does the article suggest that there was anything suspect about that investment.  Most importantly, there is no suggestion in the article that Ms. Skeans made any statement about KCF.  Thus, KCF has no basis to assert any claim against the Skeans for defamation.

## VI.    THIRD-PARTY PLAINTIFFS FAIL TO STATE A CLAIM FOR INJURIOUS FALSEHOOD

Count II of the Third-Party Complaint purports to set forth a claim for injurious falsehood.   To state a cause of action for injurious falsehood under New York law, a plaintiff must show that a defendant maliciously (i) made false statements, (ii) with the intent to harm plaintiff or recklessly and without regard to their consequences, (iii) that a reasonably prudent person would have or should have anticipated that damage to the plaintiff would result, and (iv) special damages resulted from the statements.  *L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*, 125 A.D.2d 371, 373 (N.Y. App. Div. 1986).  Where a claim for injurious falsehood fails to specify with particularity the alleged falsehood uttered by the person charged with liability, the claim will not be sustained. *See BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283 (N.Y. App. Div. 2009) (affirming trial court's denial of defendant's motion for leave to amend a counterclaim for defamation and injurious falsehood because defendant failed to set forth sufficient facts to sustain counterclaim).

The injurious falsehood claim should be dismissed for the same reasons as set forth above, as defamation and injurious falsehood claims are effectively duplicative when based upon the same facts. *See Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 349 (N.Y. App. Div. 2014).  Specifically, the Third-Party Complaint fails to identify any false statement attributable to the Skeanses.  This failure alone is sufficient to warrant dismissal of the injurious falsehood claim, just as it dooms the defamation claim. *See Fuchs*, 59 A.D.3d at  283 *id.* ("[a]s

with the defamation claim, the proposed injurious falsehood counterclaim fails to specify with particularity the alleged falsehood uttered by plaintiff").

Third-Party Plaintiffs' injurious falsehood claim follows its defamation claim, and it should be dismissed as well.

## VII.     Under New York law, a Claim for "False Light/Invasion of Privacy" Does Not Exist

Count III of the Third-Party Complaint purports to state a claim for "false light/invasion of privacy." "'False light is a subset of injury for the tort of invasion of privacy. *Matthews v. Malkus*, 377 F.Supp.2d 350, 358 (S.D.N.Y. 2005). Neither invasion of privacy nor false light is recognized as a cognizable claim in New York. *See id.* at 358-59; *see also*, *Kane v. Orange County Publications*, 232 A.D.2d 526, 528 (N.Y. App. Div. 1996) (reversing the trial court's denial of defendant's motion to dismiss and holding that false light is not a recognized tort in New York). As a result, Count III should be dismissed.

## VIII.    Third-Party Plaintiffs Fail to State A Claim for Tortious Interference with Prospective Economic Advantage

The final claim in the Third-Party Complaint is also deficient as a matter of law and should be dismissed. The elements of tortious interference with prospective business relationship are (i) the existence of a prospective business relationship between plaintiff and third parties, (ii) defendant *knew* of that relationship and intentionally interfered, (iii) defendant acted *solely* out of malice or used dishonest, unfair, improper, or wrongful means, and (iv) defendant's interference caused injury to the relationship. *See Thome v. Alexander & Louisa Calder Found.*, 70 A.D. 3d 88, 108 (1st Dept. 2009).

Given that this claim is based on the statement in the article, it must fail because there were no actionable statements attributable to the Skeanses. Moreover, while the Third-Party Complaint alleges that "[t]he Skeanses had knowledge of" Mr. Billingsley and KCF's

19

alleged relationships with third parties (Third-Party Compl. at ¶ 73), other allegations make it clear that the Skeanses could not have known about those alleged relationships in September 2017. Indeed, those relationships could not have existed at that time.

According to the Third-Party Complaint, the "prospective relationships" referenced in Count IV were between several potential investors and a KCF-owned entity called RentalProClub.com. (*Id.* at ¶ 10.) However, RentalProClub.com did not go "live" until *the last quarter of 2018*, and when it did, it was "initially successful." (*Id.* at ¶ 83.) It is hard to imagine how the Skeanses could have known about – much less intentionally interfered with – investor relationships that did not exist before RentalProClub.com began operating in late 2018, when they spoke with Mr. Harris more than a year earlier. This claim should be dismissed as well.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Third-Party Complaint with prejudice.

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Third-Party Defendants,*
*Deborah and Darbin Skeans*

Dated: December 4, 2019