# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBORAH S. SKEANS, Executrix of :
the ESTATE OF FRANK E. PAVLIS, :
       Plaintiff,        :
                          :

    v.                    :
                          :

KEY COMMERCIAL FINANCE   :   C.A. No. 1:18-cv-01516-CFC
LLC, KEY COMMERCIAL         :
FINANCE PROPERTIES, LLC,   :
EQUITY PROS, LLC,         :
and MOBILE AGENCY, LLC,    :
       Defendants.     :
                          :

JUSTIN BILLINGSLEY and KEY  :
COMMERCIAL FINANCE, LLC,  :
     Third -Party Plaintiffs    :
                          :

    v.                    :
                          :

DEBORAH S. SKEANS and     :
DARBIN                      :
SKEANS,                :
       Third-Party Defendants

## THIRD-PARTY DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF MOTION TO DISMISS (REVISED)

OF COUNSEL:                 Joelle E. Polesky (ID No. 3694)
William E. Mahoney, Jr. (*pro hac vice*)   STRADLEY RONON STEVENS
Spencer R. Short (*pro hac vice*)      & YOUNG, LLP
Stradley Ronon Stevens & Young LLP   1000 N. West Street, Suite 1200
2005 Market Street, Suite 2600      Wilmington, DE 19801
Philadelphia, PA 19103           Tel: (302) 295-4856
Tel: (215) 564-8059             Fax: (302) 295-4801
Fax: (215) 564-8120             Email: jpolesky@stradley.com
                          *Attorneys for Third-Party*
December 6, 2019              *Defendants*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.........................1

SUMMARY OF THE ARGUMENT ...........................................................2

STATEMENT OF FACTS AS ALLEGED.....................................................2

ARGUMENT ........................................................................................3

I.     STANDARD OF REVIEW ..............................................................3

II.    THE THIRD-PARTY CLAIMS ARE MISJOINED UNDER
       RULE 14 ..................................................................................4

III.   NEW YORK LAW APPLIES TO THIRD-PARTY
       PLAINITFFS' CLAIMS................................................................6

IV.    MR. BILLINGSLEY'S DEFAMATION AND INJURIOUS
       FALSEHOOD CLAIMS ARE TIME-BARRED .........................................8

V.     THE TPC'S DEFAMATION CLAIM FAILS AS A MATTER
       OF LAW ...................................................................................10

       A.     The Publication Does Not Attribute Any Allegedly
              Defamatory Statement to the Skeanses .................................10

       B.     The Defamation Claim Fails to Satisfy the "Of and
              Concerning" Requirement.................................................12

       C.     The Statement Regarding Mr. Pavlis' Memory Loss Is
              Incapable of Defamatory Meaning, When Viewed in
              Light of the Article as a Whole ...........................................13

       D.     The Statement Regarding Mr. Pavlis' Memory Loss And
              Any Attendant Implication that Mr. Billingsley Took
              Advantage is Opinion, Not Fact.........................................15

       E.     The Article Contains Nothing Defamatory about KCF .....................17

VI.    TPC FAILS TO STATE A CLAIM FOR INJURIOUS
       FALSEHOOD...............................................................................18

VII.   UNDER NEW YORK LAW, A CLAIM FOR "FALSE
       LIGHT/INVASION OF PRIVACY" DOES NOT EXIST ...........................19

VIII.   THE TPC FAILS TO STATE A CLAIM FOR TORTIOUS
        INTERFERENCE WITH PROSPECTIVE ECONOMIC
        ADVANTAGE ............................................................................................ 19

CONCLUSION .................................................................................................... 211

# TABLE OF AUTHORITIES

## CASES

*Agar v. Judy*,
    151 A.3d 456 (Del. Ch. 2017) ...........................................................17

*Aoki v. Benihana, Inc.*,
    839 F. Supp.2d 759 (D. Del. 2012)...........................................3-4, 7-8

*Armstrong v. Simon and Shuster, Inc.*,
    85 N.Y. 2d 373 (1995) .....................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................3

*Chanduck v. Klessig*,
    2009 WL 2762167 (N.D.N.Y. Aug. 27, 2009)...................................15

*Clark v. New York Tel. Co.*,
    384 N.Y.S.2d 562 (N.Y. App. Div. 1976)............................................9

*Federal Deposit Ins. Corp. v. Bathgate*,
    27 F.3d 850 (3d. Cir. 1994) ................................................................5

*Fuqua Homes, Inc. v. Beattie*,
    388 F.3d 618 (8th Cir. 2004) ..............................................................8

*Grieve v. Barclay's Capital Securities, Ltd.*,
    1999 WL1680654 (NY Sup. Ct., Sept. 10, 1999) .............................13

*Grieve v. Barclays Capital Securities Ltd.*,
    1999 WL 1680654 (N.Y. Sup. Ct. Sept. 10, 1999) ...........................11

*Gristede's Foods Inc. v. Poospatuck (Unkechaune) Nation*,
    2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ...................... 10-11, 13, 16

*Johnson v. Warner Brothers Entertainment, Inc.*,
    2017 WL 588714 (D. Del. Feb. 14, 2017)............................................9

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) .............................................................12

*L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*,
   125 A.D.2d 371 (N.Y. App. Div. 1986) ............................................................18

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) .............................................................................13

*Matthews v. Malkus*,
   377 F.Supp.2d 350 (S.D.N.Y. 2005) ................................................................19

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const.*
   *Corp. of New Jersey*,
   760 F.3d 297 (3d Cir. 2014) ...............................................................................3

*Paine, Weber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner*
   *& Smith, Inc.*,
   564 F. Supp. 1358 (D. Del. 1983)........................................................................5

*Pendergrass v. ChoicePoint, Inc.*,
   2008 WL 5188782 (E.D. Pa. Dec. 10, 2008)........................................................8

*Perez v. Violence Intervention Program*,
   984 N.Y.S.2d 348 (N.Y. App. Div. 2014)........................................................18

*Scialdone v. Derosa*,
   48 N.Y.S.3d 471 (N.Y. App. Div. 2017)..................................................... 16-17

*Sys. Operations, Inc. v. Scientific Games Dev. Corp.*,
   555 F.2d 1131 (3d Cir.1977) .............................................................................7

*Tellabs, Inc., v. Makor Issues and Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................4

*Thome v. Alexander & Louisa Calder Found.*,
   70 A.D. 3d 88 (1st Dept. 2009) .......................................................................19

## STATUTES

10 *Del. C.* § 8119 ........................................................................................................9

10 *Del. C.* § 8121 ........................................................................................................9

## <span style="font-variant: small-caps;">Rules</span>

Fed. R. Civ. P. 14 ...............................................................................2, 4, 5

Fed. R. Civ. P. 12(b)(6)..............................................................................3

Fed. R. Civ. P. 21 ........................................................................................4

N.Y.C.P.L.R. 215(3) ...................................................................................9

## PRELIMINARY STATEMENT

Deborah and Darbin Skeans, Third-Party Defendants, respectfully request that this Court dismiss the Third-Party Complaint ("TPC") filed against them by Key Commercial Finance, LLC (KCF"), a defendant in the underlying action, and Justin Billingsley, a complete stranger to this litigation.  The Third-Party Complaint is based entirely upon a single, allegedly defamatory statement contained in an article published in mid-December 2017.  According to the TPC, the article "quoted" Ms. Skeans as claiming that Frank Pavlis (whose Estate commenced the underlying action) "suffered from 'memory loss' when he invested in KCF," thereby creating the impression that Mr. Billingsley was "a scam artist" who took unfair advantage of Mr. Pavlis.  (TPC at ¶ 8.)

Tellingly, the article was not attached to the TPC.  It is attached hereto as Exhibit "1."  The article *attributes no comments about Mr. Pavlis' memory or his alleged investment in KCF to Ms. Skeans*.  Given that each of the claims is based upon this demonstrably false allegation, this Court should dismiss the TPC with prejudice.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action against underlying Defendants on October 1, 2018.  (D.I. 1).  On November 20, 2018, the Underlying Defendants filed their Motion to Dismiss the Complaint.  (D.I. 23.)  On September 24, 2019, this Court

denied the Motion to Dismiss Plaintiff's claims for declaratory judgment, common law fraud, fraudulent concealment, and unjust enrichment.  (D.I. 30).  Defendants filed their Answer on October 8, 2019.  (D.I. 31).  On October 22, 2019, KCF and Mr. Billingsley—a non-party to the underlying action—filed the TPC. (D.I. 35).  The Skeanses now file their Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

1.    The Third-Party claims are misjoined under Rule 14 of the Federal Rules of Civil Procedure.

2.    The TPC fails to state any actionable claims and should be dismissed.

## STATEMENT OF FACTS AS ALLEGED

The TPC alleges that in September 2017, the "Skeanses flew to Arizona to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*, to discuss Mr. Billingsley."  (TPC at ¶ 45.)  During that meeting, the Skeanses allegedly made "a number of false and defamatory allegations, including that Mr. Pavlis had suffered from 'memory loss for over a decade' including during the time that he invested in KCF."  (*Id.*)  The TPC alleges that "in an article published on December 14, 2017, in the *Arizona Republic* and on its website, *azcentral.com*, Ms. Skeans was quoted as making defamatory statements about Mr. Billingsley and KCF."  (*Id.* at ¶ 8.)  Specifically, in an effort to paint Mr. Billingsley as a scam artist, Ms. Skeans claimed that Mr. Pavlis suffered from

2

'memory loss" when he invested in KCF." (*Id.*)   The TPC contends that this statement was false and defamatory, as it implied that "Mr. Billingsley and KCF had taken unfair advantage of Mr. Pavlis." (*Id.*)

The TPC further alleges that as a result of the Skeanses' statements as contained in the article, Mr. Billingsley and KCF "were unable to build on the success of RentalProClub.com," a platform that KCF developed and which "went live" in the last quarter of 2018. (*Id.* at ¶¶ 3, 11.)   The TPC states that "prospective investors and strategic partners walked away" from RentalProClub.com. (*Id.* at ¶¶ 10-11.)

## **ARGUMENT**

## I.   **STANDARD OF REVIEW**

Under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.   *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).   " 'When there are well ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Aoki v. Benihana, Inc.*, 839 F. Supp.2d 759 763 (D. Del. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 668 (2009)).   "Such a determination is a context-specific task requiring the court 'to draw on its judicial experience and common sense.'" *Id.*   Finally, a court "may

3

consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *Id.* (citing *Tellabs, Inc., v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## II.   THE THIRD-PARTY CLAIMS ARE MISJOINED UNDER RULE 14

The TPC is improper under Rule 14 of the Federal Rules of Civil Procedure and should be dismissed.  Rule 14 states that only a "*defending party* may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. . . ." Fed. R. Civ. P. 14 (a)(1) (emphasis added).  The plain language of Rule 14 makes clear that only a defendant in the underlying action may assert a third-party complaint against non-parties.  Mr. Billingsley is not a defendant in the underlying action.  Under Rule 14, he has no right to insert himself as a plaintiff in the TPC.  He should be dropped from this action pursuant to Rule 21.[1]

KCF is a defendant in the underlying action, but its claims are misjoined as well and should be dismissed.   Rule 14 allows a defendant to bring a third-party complaint only against "a nonparty **who is or may be liable to it for all or part of the claim against it**. . . ."  *Id.* (emphasis added).  A third-party complaint

---

[1]  Rule 21 of the Federal Rules of Civil Procedure states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

is insufficient where a defendant/third-party plaintiff fails to allege that a third-party defendant is liable for all or part of the claim against defendant. *Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d. Cir. 1994).

If a third-party claim is not derivative of the third-party plaintiff's liability to the underlying plaintiff, the third-party complaint should be dismissed. *See id.; see also Paine, Weber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1370 (D. Del. 1983) (dismissing third-party complaint under Rule 14(a) because defendant failed to allege that the third-party was liable for all or any part of plaintiff's claims against defendant).

The TPC does not allege that the Skeanses are liable over to KCF for any claims asserted against it in the underlying complaint. Nor could it. The underlying action arises out of a fraudulent scheme perpetrated against Mr. Pavlis. Specifically, the Estate seeks to recover the $7,000,000 that Mr. Billingsley persuaded Mr. Pavlis to invest in Alllwest Investments, LLC, in 2014, which funds were subsequently transferred to or appropriated by KCF, an entity controlled by Mr. Billingsley, without Mr. Pavlis' knowledge or consent. (*See generally* Compl. (D.I. 1) at ¶¶ 75-179.)

By contrast, the claims asserted in the TPC arise out of a statement published in the *New Republic* article in December 2017. The TPC claims are not dependent upon the Estate's claims against KCF for its wrongful conduct in

connection with investments that Mr. Pavlis made in 2014.  Given that the TPC does not allege that the Skanses are liable over to KCF for the underlying claims asserted against it, the TPC should be dismissed.

## III.   NEW YORK LAW APPLIES TO THIRD PARTY PLAINTIFFS' CLAIMS

At its core, the TPC is a multistate defamation case.  It alleges that in September 2017, the Skanses (Pennsylvania residents) travelled to Arizona to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*. (TPC at ¶¶ 14-15, 45.)   The Skanses allegedly made false statements to Mr. Harris, "including that Mr. Pavlis suffered from 'memory loss' for over a decade, including during the time he invested in KCF."   (*Id.* at ¶ 45.)   The *Arizona Republic* and *azcentral.com*. subsequently published an article by Mr. Harris in December 2017.  (*Id.* at ¶ 48.)  The TPC goes on to allege that "[w]ith the article by Mr. Harris available on the Internet, the Skanses' comments were published to the world . . . ."  (*Id.* at ¶ 49.)   As a result, a number of prospective business partners allegedly declined to do business with either Mr. Billingsley, a resident of New York, or KCF, a limited liability company organized under the laws of Delaware "with its principal place of business in New York."  (*Id.* at ¶ 12-13, 49.) KCF's members are all residents of New York as well.  (*Id.* at ¶ 13.)

6

There are four jurisdictions whose laws potentially apply here: Pennsylvania, Arizona, Delaware, and New York. A choice of law analysis under Delaware rules compels application of New York law.

In *Aoki v. Benihana, Inc.*, 839 F. Supp.2d 759 (D. Del. 2012), this Court laid out the choice of law analysis applicable to tort claims filed in federal court in Delaware as follows:

> "The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. The Delaware state courts follow the conflicts of law provisions in the Restatement (Second) of Conflicts" ("Restatement").

> The claims for defamation and injurious falsehood sound in tort. "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 145.

> \*       \*       \*       \*

> "The rights and liabilities that arise from defamatory matter in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement § 150(1). ***The state where the injured party is domiciled (for natural persons) or has its principal place of business (for corporations or other legal persons, collectively "residence") will usually be the state of most significant relationship for claims of defamation by an aggregate communication that was published in that state.*** Restatement § 150(2),(3). "The choice-of-law rules involving injurious falsehood are the same as those involving defamation.'" *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir.1977) (footnote omitted).

7

(emphasis added) (citations omitted).

The *Aoki* court went on to note that "aggregate communications" are those that are published simultaneously in two or more states. *Id.* at 765. The court also observed that a " 'typical Internet publication, where access is generally available to anyone at any time' is considered an aggregate communication." *See id.* (quoting *Pendergrass v. ChoicePoint, Inc.*, 2008 WL 5188782, at *3 (E.D. Pa. Dec. 10, 2008)). "When there is widespread dissemination of allegedly defamatory matter, such as via the internet, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Id.* (*quoting Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004)) (citation omitted).

Here, the claims asserted in the TPC are based on the article and the injuries that Mr. Billingsley and KCF allegedly sustained as a result of its publication "to the world." (TPC at ¶¶ 48-49.) Given that Mr. Billingsley and KCF are both residents of New York, the presumption is that New York law applies to their claims under the *Aiko* court analysis.

## IV.   MR. BILLINGSLEY'S DEFAMATION AND INJURIOUS FALSEHOOD CLAIMS ARE TIME-BARRED

In evaluating whether any of the claims asserted in the TPC are time-barred, this Court must apply Delaware's "borrowing statute." *Johnson v. Warner*

*Brothers Entertainment, Inc.*, 2017 WL 588714 at \*3 (D. Del. Feb. 14, 2017).  The

statute provides, in relevant part:

> Where a cause of action arises outside of this State, an action cannot
> be brought in a court of this State to enforce such cause of action after
> the expiration of whichever is shorter, the time limited by the law of
> this State, or the time limited by the law of the state or country where
> the cause of action arose, for bringing a an action upon such cause of
> action.

10 *Del. C.* § 8121.

      "To determine where a cause of action arises for purposes of the

borrowing statute, Delaware's choice of law rule asks which state has the most

significant relationship to the claims and to the parties."  *Johnson*, 2017 WL

588714 at \*3.  As noted above, the most important consideration for defamation

claims is the residence of the party allegedly defamed.  *See id.*  Mr. Billinglsey is a

resident of New York.  Under the borrowing statute, the Court must apply the

shorter of Delaware or New York's statute of limitations.

      In Delaware, the statute of limitations for defamation and injurious

falsehood claims is two years.  *See* 10 *Del. C.* § 8119.  In New York, the statute of

limitations is one year.  *See* N.Y.C.P.L.R. 215(3).  New York's shorter one-year

statute of limitation applies to Mr. Billingsley's claims.

      Moreover, the one-year statute begins to run on the date the allegedly

defamatory statement is published.  *See Clark v. New York Tel. Co*., 384 N.Y.S.2d

562, 563 (N.Y. App. Div. 1976) (one-year statute of limitation applies to

defamation and injurious falsehood claims, and the statute for both claims begins
to run on the date of publication)

The *Arizona Republic* article was published on December 14, 2017.
The TPC was not filed until October 22, 2019, almost two years later.   Mr.
Billingsley's claims for defamation and injurious falsehood are time-barred under
applicable New York law.

## V.    THE TPC'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW

To state a claim for defamation under New York law, a plaintiff must
allege (i) a false and defamatory statement of fact, (ii) concerning the plaintiff,
(iii)  published by the defendant without privilege or authorization to a third party,
(iv) constituting fault as judged by, at a minimum, a negligence standard, and
(v) causing special harm or constituting defamation *per se*.  *Gristede's Foods Inc.
v. Poospatuck (Unkechaune) Nation*, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1,
2009).   The TPC's defamation claim fails to satisfy these elements.

### A.    The Publication Does Not Attribute Any Allegedly Defamatory Statement to the Skeanses

The defamation claim is based upon a single statement in the article
allegedly attributed to Ms. Skeans.   The TPC alleges:

> However, in an article published on December 14, 2017, in the
> Arizona Republic and on its website, azcetnral.*com,* Ms. Skeans was
> quoted as making false and defamatory statements about Mr.
> Billingsley and KCF.   Specifically, in an effort to paint Mr.

Billinglsey as a scam artist, Ms. Skeans claimed the Mr. Pavlis suffered from "memory loss" when he invested in KCF.

(TPC at ¶ 8.)  If the TPC is to be believed, the article *quoted* Ms. Skeans as saying that Mr. Pavlis suffered from memory loss when he invested in KCF.

This is untrue. The article never quotes Ms. Skeans as saying anything about Mr. Pavlis' memory loss, or his alleged investment in KCF.   Rather, the article states: "Family and friends of the Pennsylvania millionaire, who just turned 101, said he's had memory loss for at least a decade, including during the time he heavily invested in Mobile."  This statement is not attributed to Ms. Skeans, or to any individual.

"In order to be liable for the publication of a defamatory statement, a defamation defendant (or person authorized to act on behalf of the defendant) *must make the statement* or authorize its republication or recommunication." *Gristede's Foods*, 2009 WL 4547792 at *12 (*citing* 43A N.Y. Jur.2d Defamation and Privacy § 91 (2009)) (emphasis added).  A defamation claim must be dismissed "where there is nothing in [the publication] itself to indicate that the statement at issue was attributable to" the defendant.  *Id.*; *see also Grieve v. Barclays Capital Securities Ltd.*, 1999 WL 1680654, at *5 (N.Y. Sup. Ct. Sept. 10, 1999) (court dismissed defamation claim based on statements contained in several press publications, where the articles did not "set forth who or what their sources were regarding the

11

reasons for [plaintiff's] departure from employment, and neither article sets forth the precise statements allegedly made by defendants").

The article does not identify Ms. Skeans as making or having any connection to the statement about Mr. Pavlis' memory loss.  Having failed to satisfy the "attributable to" requirement, the defamation claim should be dismissed as failing to state a claim under New York law.

**B.    The Defamation Claim Fails to Satisfy the "Of and Concerning" Requirement**

To withstand a motion to dismiss, a plaintiff must advance colorable claims of having been identified and described by the defamatory comment.  *Geisler*, 636 F.2d at 640.  This "of and concerning" requirement "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and have injured them."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399-400 (2d Cir. 2006).

Here, there is nothing in the statement relating to Mr. Pavlis' memory loss that concerns or implicates Mr. Billingsley or KCF.  Neither is mentioned in the statement, and neither is referenced contextually in the paragraphs surrounding the statement.  There is nothing in the article from which a reasonable reader would infer that Ms. Skeans defamed Mr. Billingsley or KCF, by implication or otherwise.

12

## C.   The Statement Regarding Mr. Pavlis' Memory Loss Is Incapable of Defamatory Meaning, When Viewed in Light of the Article as a Whole

The defamation claim also fails because when viewed in the context of the entire article, the statement about Mr. Pavlis' memory loss is incapable of being isolated as having defamed Mr. Billingsley or KCF.  When evaluating a defamation claim, "[a] threshold issue for the court is whether the statement allegedly causing injury to the plaintiff is 'reasonably susceptible to the defamatory meaning imputed to it.' "  *Gristede's Foods*, 2009 WL4547792 at *15 (quoting *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997)).  "To determine whether a statement is defamatory*, the court 'must give the language at issue a fair reading *in the context of the publication as a whole.*'"  *Id.*; *see also Grieve v. Barclay's Capital Securities, Ltd.*, 1999 WL1680654, at *5 (NY Sup. Ct., Sept. 10, 1999) (same); *Armstrong v. Simon and Shuster, Inc.*, 85 N.Y. 2d 373, 380 (1995) (same).

When considered in the context of the *New Arizona* article in its entirety, the statement regarding Mr. Pavlis' memory loss is innocuous, and it is not susceptible to defamatory meaning.  The lengthy article contains a number of unflattering and suggestive statements about Mr. Billingsley.  Indeed, the article presents Mr. Billingsley and his Mobile associates in a decidedly negative light.  Put differently, if Mr. Pavlis (or his memory loss) were not mentioned at all in the

13

article, a reasonable reader would still come away thinking that the group of them were, at a minimum, poor and suspect stewards of investor funds.

The article – entitled *Once-high-flying Quepasa chief Jeff Peterson under fire as $9M gone in online startups* – focuses on Mobile, an Arizona start-up company that spent almost $9,000,000 of investor funds in three years with nothing to show for it.  The article also presents an unflattering picture of Mr. Billingsley as a businessman.  Among other things, the article states that that that "Billingsley was a defendant in an Arizona Corporation Commission case involving LoanGo, co-owned by Billingsley and Peterson.  That failed company was designed to provide payday loan services via the internet."  The article continues:

> The commission in late October [2017] found that Peterson and LoanGo had sold unregistered securities.  *Billingsley was found to have committed fraud as the chief fundraiser.*  Though Billingsley denies the commission's findings, it has ordered him, Peterson and a third officer *to repay five elderly investors a combined $250,000 in restitution,* and each faces fines of up to $15,000.

(emphasis added.)   The article also notes that Mr. Billingsley filed for Chapter 7 bankruptcy protection in 2001 and owed the IRS at least $440,372 for unpaid fed taxes from 2007 to 2011.  Given the article's portrayal of Mr. Billinglsey, it seems likely that a reasonable reader would form a negative view him, with or without the statement about Mr. Pavlis' memory.

14

The article further suggests that Mr. Billingsley's dealings with Mr. Pavlis were suspect.  A fair reading of that portion of the article, entitled "*Keeping Mobile afloat*," is that (i) Mr. Billingsley persuaded a 97-year-old man to invest $2,000,000 in a failing company (of which Mr. Billingsley was the President) that had little or no cash, and (ii) those investment funds were used, in part, to pay Mr. Billingsley $50,000. To the extent any reader left the article with a dim view of Mr. Billingsley, it was not because of the comment about Mr. Pavlis' memory loss. That single statement is not actionable, given the article's overall presentation of Billinglsey.

### D.   The Statement Regarding Mr. Pavlis' Memory Loss And Any Attendant Implication that Mr. Billingsley Took Advantage is Opinion, Not Fact

The foregoing arguments assume that the statement regarding Mr. Pavlis' memory loss is a false statement of fact.  It is not.  Rather, it falls squarely within the realm of lay opinion.   Similarly, to the extent this statement, when combined with other statements in the article (again, unattributed to Ms. Skeans), creates the impression that Mr. Billingsley was a "scam artist" or took advantage of Mr. Pavlis, that is opinion as well.

"Statements of opinion are not actionable under New York law, nor under the U.S. Constitution." *Chanduck v. Klessig*, 2009 WL 2762167, at *7 (N.D.N.Y. Aug. 27, 2009).  Whether a statement is one of opinion or fact is a

question of law. *Gristede's Foods*, 2009 WL 4547792, at *18.  In determining if a statement is an opinion, and thus not actionable as defamation, a court must consider:  "(1) whether the statement has a precise meaning or is ambiguous; (2) whether the statement is capable of being proven true or false; and (3) whether the statement, when taken in the 'full context of the communication in which it appears or in the broader social context and surrounding circumstances, indicates to reader that what is being read is likely to be opinion, not fact.' " *Id.* (citation omitted)  The dispositive inquiry is " 'whether a reasonable reader could have concluded that the article [was] conveying facts about the plaintiff.' " *Id.* (citation omitted.)

The statement regarding Mr. Pavlis' memory loss, in the context of the article, would certainly be understood by a reasonable reader to be lay opinion, rather than a clinical diagnosis or a medically established fact.  There is no suggestion in the article that anyone presented this opinion as supported by clinical or medical evidence.  Rather, the statement by Mr. Pavlis' "family and friends" that the then-97-year-old suffered from memory loss would likely be taken as their collective opinion, based upon their interactions with him.

Even if someone had stated that Mr. Billingsley was a "scam artist" who took advantage of an elderly man, it would also be perceived as that person's opinion.  *See, e.g., Scialdone v. Derosa*, 48 N.Y.S.3d 471, 742 (N.Y. App. Div.

2017) (holding that defendant's description of plaintiff as "quixotic," "self-absorbed," "narcissistic," "ungrateful," and "delusional," and referring to him as a "paranoid pompous ass" was not defamatory, because "a reasonable reader would have concluded that the statements constituted expressions of opinion"); *see also Agar v. Judy*, 151 A.3d 456, 481-483 (Del. Ch. 2017) (defendant's statement that plaintiff was a "looter" was an opinion and thus, was not defamatory; the court stated, "while allegation of specific criminal conduct generally cannot be protected as opinion, broad brush-stroked references to unethical conduct, even using terms normally understood to impute criminal acts, may be understood by the reasonable viewer as opinion"). Similarly, any implication that Mr. Billingsley was a "scam artist" is a statement of opinion, rather than one of fact. The implication cannot form the basis of a defamation claim, even if it had appeared in the article.

### E.  The Article Contains Nothing Defamatory about KCF

Finally, it bears noting that there is nothing negative about KCF in the article. The sole reference in the article to KCF is as follows:

> Pavlis also invested more than $2,000,000 in Key Commercial, an online real estate investment company that until recently listed its leadership team of Billingsley, Peterson, Silberman and Bivens, a partner at Snell & Wilmer and ex-Arizona party chairman. Key also invested in Mobile, records show.

Nowhere does the article suggest that there was anything suspect about that investment. Most importantly, there is no suggestion in the article that Ms. Skeans made any statement about KCF.

## VI.   TPC FAILS TO STATE A CLAIM FOR INJURIOUS FALSEHOOD

Count II of the TPC purports to state a claim for injurious falsehood. Under New York law, a plaintiff must show that a defendant maliciously (i) made false statements, (ii) with the intent to harm plaintiff or recklessly and without regard to their consequences, (iii) that a reasonably prudent person would have or should have anticipated that damage to the plaintiff would result, and (iv) special damages resulted from the statements. *L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co*., 125 A.D.2d 371, 373 (N.Y. App. Div. 1986).

The injurious falsehood claim should be dismissed for the same reasons as set forth above, as defamation and injurious falsehood claims are effectively duplicative when based upon the same facts. *See Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 349 (N.Y. App. Div. 2014). The TPC fails to identify any false statement attributable to the Skeanses. This failure warrants the dismissal of the injurious falsehood claim. *See BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283 (N.Y. App. Div. 2009) ("[a]s with the defamation claim, the proposed injurious falsehood counterclaim fails to specify with particularity the alleged falsehood uttered by plaintiff").

18

## VII.  UNDER NEW YORK LAW, A CLAIM FOR "FALSE LIGHT/INVASION OF PRIVACY" DOES NOT EXIST

Count III of the Third-Party Complaint purports to state a claim for "false light/invasion of privacy." "'False light is a subset of injury for the tort of invasion of privacy.  *Matthews v. Malkus*, 377 F.Supp.2d 350, 358 (S.D.N.Y. 2005).  Neither invasion of privacy nor false light is recognized as a cognizable claim in New York.  *See id.* at 358-59.  As a result, Count III should be dismissed.

## VIII. THE TPC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

The TPC's final claim is also deficient as a matter of law.   The elements of tortious interference with prospective business relationship are: (i) the existence of a prospective business relationship between plaintiff and third parties, (ii) defendant *knew* of that relationship and intentionally interfered, (iii) defendant acted *solely* out of malice or used dishonest, unfair, improper, or wrongful means, and (iv) defendant's interference caused injury to the relationship.  *See Thome v. Alexander & Louisa Calder Found.*, 70 A.D. 3d 88, 108 (1st Dept. 2009).

Given that this claim is based on the statement in the article, it must fail because there were no actionable statements attributable to the Skeanses. Moreover, while the TPC alleges that "[t]he Skeanses had knowledge of" Mr. Billingsley and KCF's alleged relationships with third parties (TPC at ¶ 73), other allegations make it clear that the Skeanses could not have known about those

alleged relationships in September 2017.   Indeed, those relationships could not have existed at that time.

   According to the TPC, the "prospective relationships" referenced in Count IV were between several potential investors and a KCF-owned entity called RentalProClub.com. (*Id.* at ¶ 10.)  However, RentalProClub.com did not go "live" until *the last quarter of 2018*, and when it did, it was "initially successful."  (*Id.* at ¶ 83.)   It is hard to imagine how the Skeanses could have known about – much less intentionally interfered with – investor relationships that did not exist before RentalProClub.com began operating in late 2018, when they spoke with Mr. Harris more than a year earlier.  This claim should be dismissed as well.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the Third-Party
Complaint with prejudice.


STRADLEY RONON
STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Third-Party Defendants,*
*Deborah and Darbin Skeans*


Dated: December 6, 2019

21