# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, <br><br> *Plaintiff,* <br><br> v. <br><br> KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, <br><br> *Defendants.* <br><br> JUSTIN BILLINGSLEY and KEY COMMERCIAL FINANCE, LLC, <br><br> *Third-Party Plaintiffs,* <br><br> v. <br><br> DEBORAH S. SKEANS and DARBIN SKEANS, <br><br> *Third-Party Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  C.A. No. 1:18-cv-01516-CFC |

## THIRD-PARTY PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (No. 3963)
James G. McMillan, III (No. 3979)
5803 Kennett Pike, Suite C
Wilmington, Delaware  19807
Phone:  (302) 257-2011
Fax:  (302) 257-2019
Email:  tk@hfk.law / jm@hfk.law

Dated:  December 18, 2019

*Counsel for Defendants and Third-Party Plaintiffs*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ........................2

SUMMARY OF ARGUMENT ..................................................................3

STATEMENT OF FACTS ........................................................................3

LEGAL ARGUMENT .............................................................................6

I.  STANDARD OF REVIEW....................................................................6

II.  THE THIRD-PARTY CLAIMS ARE PROPERLY JOINED........................7

III.  THE THIRD-PARTY CLAIMS ARE TIMELY UNDER THE
APPLICABLE TWO-YEAR CONNECTICUT STATUTE OF
LIMITATIONS...................................................................................9

IV.  THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR
DEFAMATION ...............................................................................11

  A.  The Publication Attributes Defamatory Statements to the Skeanses................11

  B.  The Skeanses' Defamatory Statements Identified Billingsley and
KCF............................................................................................13

  C.  The Statement Regarding Mr. Pavlis' Alleged Memory Loss Has
Defamatory Meaning When Viewed in Light of the Article as a
Whole .........................................................................................14

  D.  The Statement Regarding Mr. Pavlis' Alleged Memory Loss Is Not
Excused as Lay Opinion ..................................................................15

  E.  The Skeanses' Defamatory Statements Applied to Both Billingsley
and KCF......................................................................................17

V.  THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR
INJURIOUS FALSEHOOD................................................................18

VI.    THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR FALSE LIGHT/INVASION OF PRIVACY ............................................................... 19

VII.   THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ............................................................................... 211

CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aoki v. Benihana Inc.*,
    839 F. Supp. 2d 759 (D. Del. 2012) ................................................................9

*Armstrong v. Simon & Schuster, Inc.*,
    649 N.E.2d 825 (N.Y. Ct. App. 1995)..........................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................7

*Cweklinsky v. Mobil Chem. Co.*,
    837 A.2d 759 (Conn. 2004) .........................................................................11

*DeMoss v. News-Journal Co.*,
    408 A.2d 944 (Del. 1979).............................................................................10

*Federal Deposit Ins. Corp. v. Bathgate*,
    27 F.3d 850 (3d Cir. 1994) ...........................................................................8

*Fuqua Homes, Inc. v. Beattie*,
    388 F.3d 618 (8th Cir. 2004) ........................................................................9

*Gerrish v. Hammick*,
    2018 Conn. Super. LEXIS 549 (Conn. Super. Ct. Mar. 12, 2018) ...............16

*Gleason v. Smolinski*,
    88 A.3d 589 (Conn. App. Ct. 2014) ............................................................17

*Goodrich v. Waterbury Republican-Am., Inc.*,
    448 A.2d 1317 (Conn. 1982).................................................................16, 19

*Gristede's Foods Inc. v. Poospatuck (Unkechaune) Nation*,
    2009 U.S. Dist. LEXIS 111675 (E.D.N.Y. Dec. 1, 2009).................12, 14, 16

*Harry A. Finman & Son, Inc. v. Connecticut Truck & Trailer Serv. Co.*,
    363 A.2d 86 (Conn. 1975) ..............................................................................21

*Johnson v. Warner Brothers Entertainment, Inc.*,
    2017 U.S. Dist. LEXIS 20290 (D. Del. Feb. 14, 2017)...............................10

*Jonap v. Silver*,
    474 A.2d 800 (Conn. App. Ct. 1984) ....................................................19, 20

*Lester v. Powers*,
    596 A.2d 65 (Me. 1991) ...............................................................................17

*Mod Stack LLC v. Aculab, Inc.*,
    2019 U.S. Dist. LEXIS 129145 (D. Del. Aug. 2, 2019) ................................7

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358 (D. Del. 1983) ...........................................................8

*Ramada Inns v. Dow Jones & Co.*,
    543 A.2d 313 (Del. Super. Ct. 1987).....................................................15, 18

*Shearin v. E.F. Hutton Grp., Inc.*,
    652 A.2d 578 (Del. Ch. 1994) .....................................................................10

*Time Was Garage, LLC v. Giant Steps, Inc.*,
    2011 Conn. Super. LEXIS 978 (Conn. Super. Ct. Apr. 29, 2011)...............18

*Umland v. Planco Fin. Servs.*,
    542 F.3d 59 (3d Cir. 2008) ............................................................................7

*Warner v. Dembinski*,
    2003 Conn. Super. LEXIS 1103 (Conn. Super. Ct. Apr. 4, 2003)...............21

*Zilaro v. Hychko*,
    2019 Conn. Super. LEXIS 1037 (Conn. Super. Ct. Apr. 22, 2019).............19

## Statutes and Rules

10 *Del. C.* § 8119 .....................................................................................................10

10 *Del. C.* § 8121 ...........................................................................................................10

Conn. Gen. Stat. § 52-597...........................................................................................9

Fed. R. Civ. P. 8(a)(2)...............................................................................................7

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

Fed. R. Civ. P. 14......................................................................................................7

Fed. R. Civ. P. 20......................................................................................................7

## **Other Authorities**

*Restatement (Second) of Torts* § 623A (1977)........................................................18

3 *Restatement (Second), Torts* § 652E.....................................................................19

Third-Party Plaintiff Justin Billingsley ("Billingsley") and Defendant and Third-Party Plaintiff Key Commercial Finance, LLC ("KCF" and, together with Billingsley, "Third-Party Plaintiffs"), by and through their undersigned counsel, submit this Answering Brief in Opposition to the Motion to Dismiss the Third-Party Complaint filed by Third-Party Defendants Deborah S. Skeans, in her individual capacity ("Ms. Skeans"), and her husband Darbin Skeans ("Mr. Skeans"). For the reasons stated herein, the Motion to Dismiss (D.I. 48) must be denied.

## PRELIMINARY STATEMENT

This is an action for defamation and tortious interference with prospective economic advantage against Ms. Skeans and Mr. Skeans (together, the "Skeanses" or "Third-Party Defendants"), who acted to destroy the reputation of KCF and Billingsley in order to advance their own interests. The Skeanses, connected to Billingsley through their shared faith, maliciously painted Billingsley as a conman who took advantage of an elderly, wealthy gentleman to the tune of millions of dollars. Using their faith community and far reaching connections in the close-knit real estate community, the Skeanses were successfully able to smear KCF and Billingsley and destroy Third-Party Plaintiffs' business.

The Third-Party Complaint alleges that in 2014 the late Frank E. Pavlis ("Mr. Pavlis") invested $7 million in KCF in return for two convertible promissory notes. D.I. 35 ¶ 42. It alleges that because of the Skeanses' false and defamatory

statements, including statements to the *Arizona Republic* and *azcentral.com*, published in December 2017, and their interference with prospective economic advantage, Billingsley and KCF were unable to sustain the success of their business, that KCF was unable to repay the $4 million convertible note that was due in September 2019, and that KCF has very little prospect of repaying the additional $3 million convertible promissory note due in November 2020.  D.I. 35 ¶ 11.

The Third-Party Complaint states claims for defamation (Count I), injurious falsehood (Count II), false light/invasion of privacy (Count III), and tortious interference with prospective economic advantage (Count IV).  Because Billingsley and KCF were residents of Connecticut at the time of the injuries, Connecticut law applies, including its two-year statute of limitations for defamation claims.

Accordingly, the Skeanses' Motion to Dismiss the Third-Party Complaint should be denied.

## **STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

The original complaint in this action was filed by Ms. Skeans in her capacity as Executrix of the Estate of Frank E. Pavlis on October 1, 2018.  D.I. 1.  On November 20, 2018, the defendants, KCF and three subsidiaries of KCF, filed their motion to dismiss the original complaint.  D.I. 23.  On September 24, 2019, the Court granted the motion to dismiss the plaintiff's claim for conversion and denied the motion as to the remaining claims for declaratory judgment, common law fraud,

fraudulent concealment, and unjust enrichment.  D.I. 30.  On October 8, 2019, the

defendants filed their Answer to the original complaint.  D.I. 31.  On October 22,

2019, KCF and Billingsley filed their Third-Party Complaint.  D.I. 35.  On December

6, 2019, the Skeanses filed their Motion to Dismiss the Third-Party Complaint.  D.I.

49.  This is Third-Party Plaintiffs' Answering Brief in Opposition to the Skeanses'

Motion to Dismiss the Third-Party Complaint.

## SUMMARY OF ARGUMENT

1.     The third-party claims are properly joined under Rules 14 and 20 of the

Federal Rules of Civil Procedure.

2.     The third-party claims are timely under the applicable two-year

Connecticut statute of limitations.

3.     The Third-Party Complaint states a claim for defamation.

4.     The Third-Party Complaint states a claim for injurious falsehood.

5.     The Third-Party Complaint states a claim for false light/invasion of

privacy.

6.     The Third-Party Complaint states a claim for tortious interference with

prospective economic advantage.

## STATEMENT OF FACTS

Billingsley was introduced to the Skeanses in 2013 as someone who could

help them with their finances.  D.I. 35 ¶ 18.  After spending time with the Skeanses,

the Skeanses introduced Billingsley to Mr. Pavlis, hoping that Mr. Pavlis would agree to fund a proposed joint business venture between them and Billingsley.[1] However, to the Skeanses' chagrin, Mr. Pavlis ultimately decided to invest with Billingsley and KCF alone.  *Id.* ¶ 29.

After consulting with his brokers, his banker, and his estate attorney, Mr. Pavlis invested a total of $7 million in KCF, to be used in a business involving the building and remodeling of over 50 homes in California, Atlanta, and Chicago.  *Id.* ¶¶ 39-41.

In September and November 2014, KCF issued two convertible promissory notes (the "Notes") to Mr. Pavlis in the amounts of $3 million and $4 million.  *Id.* ¶ 42.  Mr. Pavlis signed the Notes and also signed corresponding Note Purchase Agreements with KCF.  *Id.*

Although Mr. Pavlis initially invested in KCF's real estate business, he later agreed that KCF would continue to further its goal of developing a digital platform and related tools, which ultimately became RealtyProClub.com, RentalProClub.com, BuyEveryHome.com, NoUglyHomes.com, and The HUB.  *Id.* ¶ 44.  KCF and its subsidiaries developed those platforms and tools, but were unable

---

[1] *Id.* ¶ 19.  Although the Skeanses claim that they had no interest in a business opportunity with Billingsley, the Skeanses flew out to California with him for the exclusive purpose of meeting with one of his biggest real estate partners for consideration of a joint venture with Billingsley.  D.I. 35 ¶ 27.

to sell them because of the Skeanses' interference and the untrue and defamatory statements made by them.  *Id.*

In the first quarter of 2017, Billingsley, through KCF, worked tirelessly to build a two-sided single family residential buying and selling ecosystem.  *Id.* ¶ 2. Billingsley believed that this new model with its digital platforms would be a way to upset the residential real estate market.  *Id.*  All platforms were on track and doing well.  *Id.*

In September 2017, the Skeanses, resentful of Billingsley's and KCF's success without them, flew to Arizona to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*.  *Id.* ¶ 45.  The Skeanses made a number of false and defamatory allegations, including that Mr. Pavlis had suffered from "memory loss" for over a decade, including during the time he invested in KCF.  *Id.* Their intent was clear:  to make Billingsley and KCF appear to be scam artists who had preyed upon an elderly man.  *Id.*  Ironically, at the same time that the Skeanses were attempting to portray Mr. Pavlis as not having capacity to make such investments, the Skeanses themselves were seeking to have Mr. Pavlis invest in their businesses.  *Id.*

The *Arizona Republic* and *azcentral.com* printed an article by Craig Harris on December 14, 2017, quoting Ms. Skeans by name and repeating the Skeanses' false and defamatory allegations against Billingsley.  *Id.*

The impact of the Skeanses' statements was felt by Billingsley and KCF.  *Id.*
¶ 49.  With the article available on the Internet, the Skeanses' comments were
published to the world, leading to a number of prospective business partners
determining that they would not do business with either Billingsley or KCF.  *Id.*

In addition, to protect their interests in their own real estate business and its
traditional business model, the Skeanses interfered with Billingsley's and KCF's
prospective business relations with third parties, including prospective investors in
KCF and RentalProClub.com.  *Id.* ¶ 10.

As a result of the Skeanses' false and defamatory statements and interference,
Billingsley and KCF were unable to build on the initial success of
RentalProClub.com.  *Id.* ¶ 11.  Prospective investors and strategic partners walked
away.  *Id.*  Because of the Skeanses' bad acts, KCF was unable to repay the $4
million convertible promissory note issued to Mr. Pavlis that matured on September
29, 2019, and has very little prospect of repaying the additional $3 million
convertible promissory note due in November 2020.  *Id.*

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW.

To state a claim upon which relief can be granted, a complaint must contain
"a short and plain statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2).  "Detailed factual allegations are not required, but

the complaint must set forth sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mod Stack LLC v. Aculab, Inc.*, 2019 U.S. Dist. LEXIS 129145, at *4 (D. Del. Aug. 2, 2019) (denying motion to dismiss) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Id.* (citing *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008)).

## II.   <u>THE THIRD-PARTY CLAIMS ARE PROPERLY JOINED.</u>

As a proper third-party plaintiff under Rule 14, KCF had the right under Rule 20 (which encapsulates the Court's liberal joinder rule) to join an additional third-party plaintiff, Billingsley, prior to the close of pleadings. The Skeanses argue that although KCF is named as a defendant in the original complaint, it is misjoined as a third-party plaintiff because the Third-Party Complaint does not allege that the Skeanses are "liable for all or part of the claim" against KCF. D.I. 49 p. 11 of 27 (citing *Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994)).

However, the original complaint seeks to recover money from KCF that the late Mr. Pavlis invested in KCF. Because of the injuries inflicted on Billingsley and

KCF by the Skeanses' defamatory statements and tortious interference, KCF is unable to repay the convertible promissory notes it issued to Mr. Pavlis in 2014. Therefore, the Skeanses are liable for all or part of the claims asserted in the original complaint, and the Skeanses are properly joined as third-party defendants under Rule 14.

Billingsley is properly joined as a third-party plaintiff under Rule 20, which provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Here, Billingsley asserts a right to relief arising out of the same occurrences of defamation and tortious interference by the Skeanses, and questions of law and fact regarding defamation and tortious interference common to Billingsley and KCF will arise in connection with the third-party action. *Cf. Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983) (cited at D.I. 49 p. 11 of 27) (dismissing third-party complaint where allegations against two unrelated parties based on different acts did not arise from the same transaction).

Accordingly, Third-Party Defendants' motion to dismiss the Third-Party Complaint for misjoinder of parties should be denied.

## III.   THE THIRD-PARTY CLAIMS ARE TIMELY UNDER THE APPLICABLE TWO-YEAR CONNECTICUT STATUTE OF LIMITATIONS.

The article containing the Skeanses' defamatory statements appeared in the *Arizona Republic* and online at *azcentral.com* on December 14, 2017.  D.I. 35 ¶¶ 8, 48.  The article states (correctly) that Billingsley "lives" in Danbury, Connecticut.  D.I. 49-2 p. 6 of 8.   Under Delaware choice-of-law rules, "the most important consideration in choosing the applicable law is the residence of the party allegedly defamed."  *Aoki v. Benihana Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012) (citing *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004)).   Under Connecticut General Statutes § 52-597, a plaintiff has ***two years*** to file a slander or libel claim.  "No action for libel or slander shall be brought but within two years from the date of the act complained of."  Conn. Gen. Stat. § 52-597.  The Third-Party Complaint was filed on October 22, 2019, less than two years after the act complained of.

Third-Party Defendants argue "[g]iven that Mr. Billingsley and KCF are both residents of New York, the presumption is that New York law applies."  D.I. 49 at p. 14 of 27.  However, Billingsley and KCF were not residents of New York at the time of the defamatory statements; they were residents of Connecticut.[2]  In *Johnson*

---

[2]   As alleged in the Third-Party Complaint, KCF is a Delaware limited liability company with its current principal place of business in New York, and Billingsley is currently a resident of New York.  D.I. 35 ¶¶ 12-13.  However, as of December

*v. Warner Brothers Entertainment, Inc.*, 2017 U.S. Dist. LEXIS 20290, at *10 (D. Del. Feb. 14, 2017), the Court applied Pennsylvania law to the plaintiff's defamation claim because Pennsylvania was "undisputedly Plaintiff's domicile, and was his domicile at the time the defamatory statements were made." The relevant domicile is the plaintiff's domicile at the time of the injury, and not at the time of filing the complaint. Third-Party Plaintiffs' domicile at the relevant time was Connecticut.

Under Delaware's borrowing statute, 10 *Del. C.* § 8121, "the Court must apply the shorter of Delaware's and the other state's statute of limitations." *Johnson*, 2017 U.S. Dist. LEXIS 20290, at *8. Delaware's two-year limitations period for actions for personal injury, 10 *Del. C.* § 8119, applies to actions for defamation. *See DeMoss v. News-Journal Co.*, 408 A.2d 944, 945 (Del. 1979) (holding that two-year statute applies to claims for libel); *see also Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 584 (Del. Ch. 1994) (applying two-year personal injury statute to claims for slander). As both Delaware and Connecticut apply a two-year statute of limitations to defamation claims, and because the Third-Party Complaint was filed within two years of the defamatory statements, Third-Party Plaintiffs' claims are not time-barred.

---

14, 2017, when the article was published, Billingsley was a resident of Connecticut and KCF's principal place of business was in Connecticut.

Accordingly, Third-Party Defendants' motion to dismiss the Third-Party Complaint as untimely should be denied.

## IV.   THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR DEFAMATION.

Under Connecticut law, "[t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763-64 (Conn. 2004). The Third-Party Complaint states a claim for defamation under applicable Connecticut law. The Skeanses published defamatory statements in the *Arizona Republic* and *azcentral.com* on December 14, 2017, and thereafter. Their defamatory statements identified both Billingsley and KCF and were published to readers of the *Arizona Republic* and *azcentral.com*. Billingsley's and KCF's reputations suffered injury as a result of the Skeanses' defamatory statements, leading to KCF's inability to repay its obligations to Mr. Pavlis.

### A.   The Publication Attributes Defamatory Statements to the Skeanses.

The Skeanses argue that New York law on defamation requires that the defendant "*must make the statement* or authorize its republication or

11

recommunication."   D.I. 49 at p. 17 of 27 (quoting *Gristede's Foods Inc. v. Poospatuck (Unkechaune) Nation*, 2009 WL 4547792, at \*8 (E.D.N.Y. Dec. 1, 2009)) (emphasis added by Third-Party Defendants).   Even assuming that such a requirement exists under applicable Connecticut law, it is a *reasonable inference*, based on the allegations of the Third-Party Complaint and reading the article as a whole, that the Skeanses made the defamatory statements.   The article states:

> Billingsley and Pavlis were introduced by mutual friends after Pavlis had lost money in financial scams.   Billingsley was supposed to make sure Pavlis wouldn't get ripped off again, said Debby Skeans, who has Pavlis' power of attorney.

D.I. 49-2 p. 6 of 8.   It also states:

> Family and friends of the Pennsylvania millionaire, who just turned 101, said he's had memory loss for at least a decade, including during the time he heavily invested in Mobile.

*Id.* at p. 4 of 8.   The only "[f]amily and friends" of Mr. Pavlis mentioned in the article is "Debby Skeans."   The Third-Party Complaint alleges that the Skeanses flew to Arizona in September 2017 "to meet with Craig Harris, a reporter from the *Arizona Republic* and *azcentral.com*, to discuss Mr. Billingsley." D.I. 35 ¶ 45.   It alleges that the Skeanses "made a number of false and defamatory allegations, including that Mr. Pavlis had suffered from 'memory loss' for over a decade, including during the time he invested in KCF."   *Id.*

**B.      The Skeanses' Defamatory Statements Identified Billingsley and KCF.**

The Skeanses argue that New York law on defamation requires a plaintiff to "advance colorable claims of having been identified and described by the defamatory comment."  D.I. 49 p. 18 of 27.  Again, even assuming that such a requirement exists under Connecticut law, Billingsley and KCF are identified and described in the article and are clearly linked to the defamatory statements by implication.

The article states that Billingsley was paid $269,107 as President of Mobile Corp., that he used company credit cards for "limousine service and sushi dinners" and to make "ATM withdrawals," and that he received a $150,000 loan "that was not repaid" (although it also admits that Billingsley's attorney, Don Bivens, "provided documents that he *claimed* showed Silberman [Mobile Corp.'s chief financial officer] forgave the $150,000 loan on behalf of Mobile").  *Id.* at 5-6 of 8 (emphasis added).  The article quotes "a former SEC enforcement lawyer" as saying that "the financial transfers and spending at Mobile could constitute fraud or theft" and "[w]e are basically talking about stupidity, sneakiness and greed."  *Id.* at 5 of 8.  The article alleges that "[s]hortly after Pavlis' investment, Mobile paid Billingsley $50,000."  *Id.* at 6 of 8.

As to KCF, the article alleges that:

> Pavlis also invested more than $2 million in Key Commercial, an online real-estate investment company that until recently listed its leadership team of Billingsley, Peterson, Silberman and Bivens, a partner at Snell & Wilmer and ex-Arizona Democratic party chairman.   Key also invested in Mobile, records show.

D.I. 49-2 p. 6 of 8.  KCF is thus implicated by the article.

## C.      The Statement Regarding Mr. Pavlis' Alleged Memory Loss Has Defamatory Meaning When Viewed in Light of the Article as a Whole.

The Skeanses argue that the statement regarding Mr. Pavlis' alleged memory loss is "innocuous" and "not susceptible to defamatory meaning" because the article as a whole is "unflattering" and would give a reasonable reader a "negative view" of Billingsley "with or without the statement about Mr. Pavlis' memory."  D.I. 49 pp. 19-20 of 27.  But the fact that the article contains other negative statements about Billingsley and KCF does not change the defamatory character of the Skeanses' statements.

To the contrary, the authorities the Skeanses cite indicate that a statement that is not in itself defamatory may be defamatory in the context of the entire publication. In *Gristede's Foods*, 2009 U.S. Dist. LEXIS 111675, at *51-52, cited by the Skeanses (D.I. 49 p. 19 of 27), the court found that although the defendant "does not specifically state that the Shinnecock defendants supply cigarettes to the black market," "[c]onsidering the context of the entire article, a reader could infer that the Shinnecock defendants supply cigarettes to black market sellers."

14

Similarly, in *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. Ct. App. 1995), also cited by the Skeanses (D.I. 49 p. 19 of 27), the plaintiff, Armstrong, was an attorney who had prepared an affidavit for a client's signature. The alleged defamatory statement was that the client "read [the affidavit] over and had only one problem: the facts weren't true." *Id.* The court concluded "that this sentence, in the context in which it appears, is susceptible of a defamatory meaning: that Armstrong deliberately presented a false affidavit." *Id.*; *see also Ramada Inns v. Dow Jones & Co.*, 543 A.2d 313, 326 (Del. Super. Ct. 1987) ("true facts leading to a false inference are actionable… where the false inference is a result of the defendant's failure to print all the relevant and true facts").

In the context of the entire *Arizona Republic* article, the statement that Mr. Pavlis suffered from memory loss is susceptible of a defamatory meaning: that Billingsley was a "scam artist" who took unfair advantage of Mr. Pavlis.

### D. The Statement Regarding Mr. Pavlis' Alleged Memory Loss Is Not Excused as Lay Opinion.

The Skeanses argue that their statement regarding Mr. Pavlis' alleged memory loss was not "a false statement of fact," but rather "falls squarely within the realm of lay opinion" because it was not "supported by clinical or medical evidence." D.I. 49 pp. 21-22 of 27. However, as alleged in the Third-Party Complaint, in an email to Billingsley's counsel sent on September 30, 2017, shortly after the Skeanses made their defamatory statements about Mr. Pavlis' alleged "memory loss" to the reporter

15

in Arizona, Ms. Skeans wrote, "Be advised that Mr Pavlis was capable of and was making his own investment decisions in 2014"—when he invested in KCF.  D.I. 35 ¶ 9.  That email shows that the statement regarding Mr. Pavlis' alleged memory loss was a false statement of fact.  *Id.*

The Skeanses nonetheless argue that "[w]hether a statement is one of opinion or fact is a question of law."  *Id.* (citing *Gristede's Foods*, 2009 WL 4547792, at *18).   However, under applicable Connecticut law, "[w]here the court cannot reasonably characterize the allegedly libelous words as either fact or opinion because, for example, innuendo is present, this becomes an issue of fact for the jury." *Goodrich v. Waterbury Republican-Am., Inc.*, 448 A.2d 1317, 1322 n.5 (Conn. 1982); *see also Gerrish v. Hammick*, 2018 Conn. Super. LEXIS 549, at *26 n.16 (Conn. Super. Ct. Mar. 12, 2018) ("an ordinary person… could reasonably believe [defendant] was making a factual statement.  Accordingly, it is for the trier of fact to decide whether [defendant] was making a factual statement or stating an opinion").   In this case, innuendo is present and, to the extent the Court cannot reasonably characterize the statements as fact as a matter of law, this presents an issue of fact that cannot be determined on a motion to dismiss.  *Goodrich*, 448 A.2d at 1322 n.5.

The Skeanses also argue that the implied statement "that Mr. Billingsley was a 'scam artist' who took advantage of an elderly man" "would also be perceived as

that person's opinion." D.I. 49 p. 22 of 27. However, a statement of opinion that implies the existence of undisclosed defamatory facts is itself defamatory. "A defamation claim requires a statement—i.e. an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Gleason v. Smolinski*, 88 A.3d 589, 607 (Conn. App. Ct. 2014) (affirming finding that statements were defamatory) (quoting *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)). In this case, the implied statement that Billingsley was a "scam artist" implied undisclosed facts about Billingsley.

### E. The Skeanses' Defamatory Statements Applied to Both Billingsley and KCF.

The Skeanses argue that to the extent their statements were defamatory toward Billingsley, they did not apply to KCF. D.I. 49 pp. 23-24 of 27. However, in the context of the entire article, KCF is painted with the same brush. The article states that Mr. Pavlis invested $2 million in KCF, lists Billingsley as first among its "leadership team," and states that KCF "also invested in Mobile." D.I. 49-2 p. 6 of 8. The statement that Mr. Pavlis suffered from memory loss falsely implies that Billingsley and KCF together took unfair advantage of an elderly man.

Accordingly, the Skeanses' motion to dismiss Third-Party Plaintiffs' claim for defamation should be denied.

## V.  THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR INJURIOUS FALSEHOOD.

While "Connecticut has *not yet* recognized the tort of injurious falsehood" (*Time Was Garage, LLC v. Giant Steps, Inc.*, 2011 Conn. Super. LEXIS 978, at \*23 (Conn. Super. Ct. Apr. 29, 2011) (emphasis added)), the court in *Time Was Garage* recited the elements of the tort of injurious falsehood as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Id.* at \*16-17 (citing *Restatement (Second) of Torts* § 623A, p. 334 (1977)).

In this case, the Skeanses published false statements in the *Arizona Republic* and *azcentral.com* harmful to the interests of KCF and Billingsley and are liable for pecuniary loss resulting to them because they intended for the publication of their statements to result in harm having a pecuniary value to KCF and Billingsley, and because they knew that their statements were false.

To the extent that Connecticut courts recognize the tort of injurious falsehood (as the Delaware courts already do),[3] Third-Party Plaintiffs have stated a claim.

---

[3] *See Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, 543 A.2d 313, 328 (Del. Super. Ct. 1987) (allowing party to pursue tort of injurious falsehood under Delaware law; holding that tort is "widely accepted … at common law").

Accordingly, the Skeanses' motion to dismiss Third-Party Plaintiffs' claim for injurious falsehood should be denied.

## VI.   THE THIRD-PARTY COMPLAINT STATES A CLAIM FOR FALSE LIGHT/INVASION OF PRIVACY.

Under Connecticut law, "a false light invasion of privacy occurs if '(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Goodrich v. Waterbury Republican-American, Inc.*, 448 A.2d 1317, 1330 (Conn. 1982) (quoting 3 Restatement (Second), Torts § 652E); *see Zilaro v. Hychko*, 2019 Conn. Super. LEXIS 1037, at *5 (Conn. Super. Ct. Apr. 22, 2019) (finding that plaintiff stated a claim for "invasion of privacy by false light").

In *Jonap v. Silver*, 474 A.2d 800, 806 (Conn. App. Ct. 1984), the appellate court denied the defendant's motion to set aside a jury verdict in favor of the plaintiff on claims for invasion of privacy by false light.  The court found that the jury "could reasonably have found [the defendant's letter] to be highly offensive to a reasonable person because there is sufficient evidence to establish that there was a 'major misrepresentation of his character, history, activities or beliefs.'"  *Id.* (quoting 3 *Restatement (Second), Torts* § 652E, comment c).  The court found that the plaintiff "testified that he was bothered, annoyed, offended and humiliated by the publication of the letter." *Id.*  The court also found that the jury "could reasonably conclude that

19

the defendants knew of the falsity, or at the very least, acted in reckless disregard of it, when they sought publication of the letter over [the plaintiff's] objections." *Id.*

In this case, the Third-Party Complaint alleges that the Skeanses' defamatory statements "placed Mr. Billingsley and KCF in a false light which was highly offensive to a reasonable person:  without any knowledge of the true facts regarding Third-Party Plaintiffs' dealings with Mr. Pavlis, the Skeanses made it appear that both took advantage of an elderly person."  D.I. 35 ¶ 66.  It also alleges that the Skeanses "should have known that the statements were not true or acted in reckless disregard of the truth or falsity of the statements."  D.I. 35 ¶ 68.  As in *Jonap*, the statements involved a major misrepresentation of Billingsley's and KCF's character, history and activities.  Billingsley was bothered, annoyed, offended and humiliated by the publication of the Skeanses' statements.  Ms. Skeanses' September 30, 2017 email stating that "Mr Pavlis was capable of and was making his own investment decisions in 2014" is evidence that the Skeanses knew of the falsity of their statements regarding Mr. Pavlis' alleged memory loss.  D.I. 35 ¶ 9.

In short, the elements of a claim for false light/invasion of privacy under Connecticut law are alleged in the Third-Party Complaint.  Accordingly, the Skeanses' motion to dismiss the claim should be denied.

## VII.   THE   THIRD-PARTY   COMPLAINT   STATES   A   CLAIM   FOR TORTIOUS   INTERFERENCE   WITH   PROSPECTIVE   ECONOMIC ADVANTAGE.

Third-Party Defendants argue that Third-Party Plaintiffs fail to state a claim for tortious interference with prospective economic advantage under New York Law.   D.I. 49 pp. 26-27 of 27.   However, Connecticut law applies because Billingsley and KCF were residents of Connecticut, and not of New York, at the relevant time.   Under Connecticut law, the "essential elements" of a claim for tortious interference with prospective economic advantage are:  "the existence of a contractual or beneficial relationship and that the defendant(s), 'knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss.'"  *Warner v. Dembinski*, 2003 Conn. Super. LEXIS 1103, at *7 (Conn. Super. Ct. Apr. 4, 2003) (quoting *Harry A. Finman & Son, Inc. v. Connecticut Truck & Trailer Serv. Co.*, 363 A.2d 86 (Conn. 1975)).

The Third-Party Complaint alleges that "Mr. Billingsley and KCF had prospective economic relationships with third parties, including Amherst Residential, Sylvan Road Capital, and Pintar Investment Company, that were likely to benefit Mr. Billingsley and KCF."  D.I. 35 ¶ 72.  It alleges that "[t]he Skeanses had knowledge of those relationships."  *Id.* ¶ 73.  It alleges that the Skeanses "intended to disrupt" those relationships, that the relationships were in fact disrupted, and that "Mr. Billingsley and KCF suffered reputational and economic

21

harm caused by the Skeanses' conduct." *Id.* ¶¶ 75-77. Thus, all of the essential elements of a claim for tortious interference with prospective economic advantage under Connecticut law are alleged in the Third-Party Complaint.

Accordingly, the Skeanses' motion to dismiss Third-Party Plaintiffs' claim for tortious interference with prospective economic advantage should be denied.

## CONCLUSION

For the reasons stated above, Third-Party Plaintiffs respectfully request that the Court deny Third-Party Defendants' Motion to Dismiss the Third-Party Complaint.

Dated:  December 18, 2019

HALLORAN FARKAS + KITTILA LLP

*/s/ James G. McMillan, III*
Theodore A. Kittila (No. 3963)
James G. McMillan, III (No. 3979)
5803 Kennett Pike, Suite C
Wilmington, Delaware  19807
Phone:  (302) 257-2011
Fax:  (302) 257-2019
Email:  tk@hfk.law
          jm@hfk.law

*Counsel for Defendants and Third-Party Plaintiffs*