# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, | : : : : |
| Plaintiff, | : : |
| v. | :  C.A. No. 1:18-cv-01516-CFC/SRF |
| | : |
| KEY COMMERCIAL FINANCE LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, | : : : : |
| Defendants. | : : |

## FIRST SET OF REQUESTS FOR
## PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS

Plaintiff Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis ("Mr. Pavlis"), hereby requests that Defendants, Key Commercial Finance LLC, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC (collectively, "Defendants") produce the following documents by making copies available for inspection and photocopying at the office of Plaintiff's counsel in accordance with Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (collectively, "Rules").

## INSTRUCTIONS

1. These document requests are propounded pursuant to the Rules, and shall be answered as required by the Rules.

2. These document requests include all documents in your possession, custody, or control, whether such documents are held by you or your directors, officers, members, owners, agents, employees, attorneys, or accountants.

4291974v.1

3. If any document request is objected to, the reasons for the objection shall be stated with sufficient particularity to enable the Court to determine the propriety of the objection.

4. If you claim any part of a requested document the proper subject of protection pursuant to any privilege, including attorney-client or work product, you shall produce the document, excluding that portion deemed privileged, and shall state the basis on which the privilege is asserted so the Court may consider the claim of privilege. If you withhold the entire document pursuant to a claim of privilege, you shall include a description of the document with sufficient particularity to identify it, including its date, author, recipient(s) or intended recipient(s) and others to whom the document has been disclosed, subject matter, and the basis of the privilege asserted.

5. If any responsive document was, but no longer is, in your possession, custody, or control, state whether it has been lost, destroyed, transferred, or is missing, or has otherwise been disposed of, including the date and circumstances surrounding its disposition.

6. These document requests are deemed continuing, and pursuant to Rule 26(e) of the Federal Rules require production of any additional responsive documents or materials obtained or discovered subsequent to the date on which production is made.

7. The time frame for these document requests is January 1, 2012, to the present day, unless otherwise stated within a specific request.

**DEFINITIONS**

1. "Identify" means when used in reference to (a) a natural person – his or her full name and present or last known business and home address; (b) a company, corporation, association, joint venture, sole proprietorship, firm, partnership or any other business or legal entity not a natural person – its full name now and at the time in question and its principal place

of business now and at the time in question; (c) a document – its character (e.g., letter, memorandum, report, etc.), its title, date, author, addressee, all distributees, and its subject matter; and (d) any other thing – a description with sufficient particularity that such thing may be specified and recognized.

2. The terms "person" or "persons" include not only natural persons, but also public and private corporations, limited liability companies, proprietorships, partnerships, governmental entities, associations, organizations, groups or divisions. The acts and knowledge of a "person" include the acts and knowledge of that person's directors, officers, owners, members, employees, agents, representatives, and/or attorneys.

3. "Document" or "documents" means any papers, writings, things, or records of any type or source of authorship in your possession, custody or control, or of which you have knowledge, wherever located, however produced or reproduced, and whether a draft, original or copy. By way of illustration and not limitation, the term "documents" shall include memoranda of telephone conversations or interviews, minutes, summaries or other records of any meetings, discussions or conferences; as well as other notes, reports, records, data, memoranda, correspondence, e-mails, notebooks, scrapbooks, diaries, minutes, summaries, financial statements, ledgers, magnetic tape or other sound recordings, telegrams, letters, photographs, drawings, plans, studies, manuals, instructions, bids, specifications, graphs, sketches, charts, curves, motion picture film, microfilm, computer printouts, computer records, computer discs, computer tapes, photographs, photograph negatives, photocopies, photostats, descriptions, agreements, contracts, published or unpublished speeches, manuscripts or articles, transcripts, affidavits, depositions, printed matter, publications and any other retrievable intelligence, however recorded, memorialized or preserved. Any original or copy containing thereon or

having attached thereto any alterations, notes, comments, or other material not included in each other original or copy shall be deemed a separate document within the foregoing definition.

4. "Communication" means any and all communications, including verbal, oral, in-person, or telephonic communications, as well as electronic mail, text messages, instant messages, or other digital communications, and any attachments to such electronic mail, text messages, instant messages, or other digital communications.

5. Where the context allows, the terms "and" and "or" shall mean "and/or," the plural of a word shall include the singular, the singular of a word shall include the plural, the past tense of a verb shall include the present, the present tense of a verb shall include the past and the masculine shall include the feminine, so as in all cases to require the broadest response.

6. "Relate to" or "relating to" means, in addition to the customary and usual meaning of these terms, demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, or concerns all or any portion of the matters, facts, and contentions specified in any request.

7. "You" or "your" shall mean the Defendants, individually and collectively, and each of the Defendants' respective present or former officers, directors, members, employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on behalf of any Defendant, including but not limited to Justin Billingsley.

8. "KCF" shall mean Defendant Key Commercial Finance LLC, and any of its present or former officers, directors, members, employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on its behalf, including but not limited to Justin Billingsley.

9. "KCF Properties" shall mean Defendant Key Commercial Finance Properties, LLC, and any of its present or former officers, directors, members, employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on its behalf, including but not limited to Justin Billingsley.

10. "Equity Pros" shall mean Defendant Equity Pros, LLC, and any of its present or former officers, directors, members, employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on its behalf, including but not limited to Justin Billingsley.

11. "Mobile" shall mean Defendant Mobile Agency, LLC, and any of its present or former officers, directors, members, employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on its behalf, including but not limited to Justin Billingsley.

12. "Allwest" shall mean Allwest Investments, LLC, a California limited liability company, and any of its present or former employees, agents, representatives, or attorneys, and/or each person acting or purporting to act on its behalf, including but not limited to Gary Miller.

13. "Promissory Notes" shall mean, respectively, the September 1, 2014 promissory note for $3,000,000 and the November 1, 2014 promissory note for $4,000,000, purportedly issued by KCF to Mr. Pavlis, attached to the Verified Complaint in this action as Exhibits "B" and "D," respectively.

14. "KCF Note Purchase Agreements" shall mean the September 1, 2014 Note Purchase Agreement and the November 1, 2014 Note Purchase Agreement, attached to the Verified Complaint in this action as Exhibits "C" and E," respectively.

15. "KCF Private Placement Memorandum" shall mean the document titled "Confidential Private Placement Memorandum" and dated August 1, 2014, attached to the Verified Complaint in this action as Exhibit "G".

16. "KCF Subscription Agreement" shall mean the document titled "Subscription Agreement of Key Commercial Finance, LLC" with an effective date of August 18, 2014, attached to the Verified Complaint in this action as Exhibit "H".

17. "Funding Agreement" shall mean the document entitled "Funding Agreement" and dated September 20, 2016, attached to the Verified Complaint in this action as Exhibits "J."

## DOCUMENT REQUESTS

REQUEST NO. 1:   All documents evidencing, referring to, or relating to the ownership of KCF and/or any ownership interest that any individual or entity has had or currently has in KCF.

REQUEST NO. 2:   All documents evidencing, referring to, or relating to the creation, formation, organization and/or operation of KCF, including, but not limited to copies of any limited liability company agreement, operating agreement, or other governing document.

REQUEST NO. 3:   All documents evidencing, referring to, or relating to the creation, formation, organization and/or operation of KCF Properties, including, but not limited to copies of any limited liability company agreement, operating agreement, or other governing document.

REQUEST NO. 4:    All documents evidencing, referring to, or relating to the creation, formation, organization and/or operation of Equity Pros, including, but not limited to copies of any limited liability company agreement, operating agreement, or other governing document.

REQUEST NO. 5:    All documents evidencing, referring to, or relating to the creation, formation, organization and/or operation of Mobile, including, but not limited to copies of any limited liability company agreement, operating agreement, or other governing document.

REQUEST NO. 6:    All documents identifying your present or former officers, directors, members, and employees, including but not limited to organizational charts, employment agreements, employment or personnel files, payroll records, and similar documents evidencing, referring to, or relating to any salary or other form of compensation that you paid to each identified person.

REQUEST NO. 7:    All documents evidencing, referring to, or relating to any funds that Mr. Pavlis provided to, or any investment that Mr. Pavlis made in, Mobile Corp. at any time, including, but not limited to funds he invested in 2013 and 2014, as alleged in the Verified Complaint in this action.

REQUEST NO. 8: All documents evidencing, referring to, or relating to any funds that Mr. Pavlis provided to, or any investment that Mr. Pavlis made in, Allwest at any time, including, but not limited to a $1 million investment by cashier's check in or around February 2014, and a subsequent $6 million investment made by personal check in or around May 2014, as alleged in the Verified Complaint in this action.

REQUEST NO. 9: All documents evidencing, referring to, or relating to the transfer of all or any portion of the $7 million that Mr. Pavlis invested in or otherwise provided to Allwest to any other individual or entity, including but not limited to KCF.

REQUEST NO. 10: All documents evidencing, referring to, or relating to KCF's use and/or disposition of any funds it received, directly or indirectly, from or originating with Mr. Pavlis.

REQUEST NO. 11: All documents evidencing, referring to, or relating to KCF's use and/or disposition of any funds it received from Allwest, including but not limited to all or any portion of the $7 million that Mr. Pavlis invested in or otherwise provided to Allwest in 2014.

REQUEST NO. 12: All documents evidencing, referring to, or relating to any payments, transactions, or business dealings between KCF and Allwest, including but not limited to any funding transactions or loan arrangements referenced in and/or entered into pursuant to the Funding Agreement.

REQUEST NO. 13: All documents evidencing, referring to, or relating to the repayment of any loans or other funding arrangements between KCF and Allwest, including but not limited to any review or audit of such payments performed by Joshua Hayes and/or Eide Bailly LLP, and all documents you provided to or received from Mr. Hayes and/or Eide Bailly LLP in connection with any review or audit.

REQUEST NO. 14: All documents evidencing, referring to, or relating to (i) the Promissory Notes, (ii) the original application and/or native file of the computer file(s) associated with the Promissory Notes and the creation or modification of such computer file(s), and (iii) the MD5 Hash information for each such computer file(s).

REQUEST NO. 15: All documents evidencing, referring to, or relating to (i) the KCF Note Purchase Agreements, (ii) the original application and/or native file of the computer file(s) associated with the Note Purchase Agreements and the creation or modification of such computer file(s), and (iii) the MD5 Hash information for each such computer file(s).

REQUEST NO. 16: All documents evidencing, referring to, or relating to the KCF Private Placement Memorandum, (ii) the original application and/or native file of the computer file(s) associated with the Private Placement Memorandum, and the creation or modification of such computer file(s), and (iii) the MD5 Hash information for each such computer file(s).

REQUEST NO. 17:   All documents evidencing, referring to, or relating to (i) the KCF Subscription Agreement, (ii) the original application and/or native file of the computer file(s) associated with the Subscription Agreement, and (iii) the creation or modification of such computer file(s), and (iii) the MD5 Hash information for each such computer file(s).

REQUEST NO. 18:   All documents evidencing, referring to, or relating to (i) the Funding Agreement (ii) the original application and/or native file of the computer file(s) associated with the Funding Agreement, and (iii) the creation or modification of such computer file(s), and (iii) the MD5 Hash information for each such computer file(s).

REQUEST NO. 19:   All financial records of each of the Defendants, including, but not limited to bank statements, financial audits and reviews, balance sheets, financial statements, income statements, statements of cash flow and credit card statements.

REQUEST NO. 20:   All documents evidencing, referring to, or relating to any communication between or among you and any other person or entity relating to or referencing: (a) Mr. Pavlis, (b) Allwest, (c) the Promissory Notes, (d) the KCF Note Purchase Agreements, (e) the KCF Private Placement Memorandum, (f) the KFC Subscription Agreement, (g) the Funding Agreement, or (h) any joint venture agreement between or among KCF and KCF Properties, Equity Pros, or Mobile.

REQUEST NO. 21:   All documents that refer or relate to Mr. Pavlis.

REQUEST NO. 22:   All documents evidencing, referring to, or relating to any communications between KCF and Allwest relating to Mr. Pavlis and/or any funds he invested in or otherwise provided to Allwest, KCF, or any other entity.

REQUEST NO. 22:   All documents evidencing, referring to, or relating to any funds that Mr. Pavlis loaned to, invested in, or otherwise provided to KCF, including but not limited to the "investment" referenced at paragraph 7 of the Funding Agreement.

REQUEST NO. 23:   All documents evidencing, referring to, or relating to any agreements between KCF and Mr. Pavlis, including but not limited to the "written investment agreement" referenced at paragraph 7 of the Funding Agreement.

REQUEST NO. 24:   All documents evidencing, referring to, or relating to the current disposition of any funds that Mr. Pavlis loaned to, or invested in, with or through, KCF, Allwest, or any other entity.

REQUEST NO. 25:   All documents evidencing, referring to, or relating to any communications between KCF and Mr. Pavlis.

REQUEST NO. 26:   All documents that you provided to or received from Mr. Pavlis.

REQUEST NO. 27:   All documents evidencing, referring to, or relating to any meetings or communications between Justin Billingsley and Mr. Pavlis

11

REQUEST NO. 28: All documents evidencing, referring to, or relating to the dates of any meetings or communications between Justin Billingsley and Mr. Pavlis, including calendars, day planners, credit card statements, and expense statements.

REQUEST NO. 29: All documents evidencing, referring to, or relating to the dates of any meetings or communications between Justin Billingsley and any person or entity relating to Mr. Pavlis, including calendars, day planners, credit card statements, and expense statements.

REQUEST NO. 30: All documents evidencing, referring to, or relating to any joint venture agreement(s) between KCF and KCF Properties, Equity Pros, or Mobile, and/or the transfer of any funds from KCF to one or more of its subsidiaries or any other person or entity.

REQUEST NO. 31: All documents evidencing, referring to, or relating to the transfer or movement of any funds from KCF to KCF Properties, Equity Pros, and/or Mobile or any other person or entity.

REQUEST NO. 32: All documents that refer or relate to any allegation contained in the Verified Complaint in this action.

REQUEST NO. 33: All documents referring to, or relating to, or supporting the allegations in paragraph 26 of your Answer to the Verified Complaint ("Answer") that (i) Deborah and Darbin Skeans repeatedly insisted that Mr. Billingsley meet with Mr. Pavlis because the Skeanses wanted Mr. Billingsley to persuade Mr. Pavlis to invest in their personal business ventures — specifically (1) a $500,000 investment in a real estate transaction for the private school attended by the Skeanses' grandchildren, and (2) a more than $4 million investment in the Skeanses' senior assisted living facility business, (ii) Mr. Pavlis invested more than $4.5 million with the Skeanses, (iii) the Skeanses were present at most or all of Mr. Billingsley's meetings with Mr. Pavlis, and (iv) the Skeanses ultimately turned against Mr. Billingsley and KCF because Mr. Billingsley decided not to partner with the Skeanses.

REQUEST NO. 34: All documents referring to, or relating to, or supporting the allegations in paragraph 26 of your Answer that that the Skeanses made it impossible for Mr. Pavlis to get a return on his investment in KCF because they publicly defamed Mr. Billingsley and KCF and interfered with KCF's prospective business relations.

REQUEST NO. 35: All documents referring to, or relating to, or supporting the allegations paragraph 49 of your Answer that Jeffrey Peterson and Michael Silberman (Mobile Corp.'s Chief Financial Officer) dealt directly with Mr. Pavlis.

REQUEST NO. 36: All documents evidencing, referring to, or relating to the allegations in paragraph 51 of your Answer that Justin Billingsley did not solicit any investments in Mobile Corp. and that he did not receive commissions from Mobile Corp.

REQUEST NO. 37: All documents evidencing, referring to, or relating to the allegations in paragraph 71 of your Answer that Mr. Pavlis understood and was excited about Mobile Corp.'s business model, its prestigious board of directors, and high profile investors and advisors, including Howard Dean (former governor of Vermont, former head of the Democratic National Committee, and U.S. Presidential candidate), Dennis Burke (former U.S. Attorney for the District of Arizona), Alan Bersin (former Assistant Secretary of the U.S. Department of Homeland Security), and Marco Lopez (Senior Advisor to Mexican billionaire Carlos Slim).

REQUEST NO. 38: All documents evidencing, referring to, or relating to the allegations in paragraph 77 of your Answer that Mr. Pavlis rejected the Allwest investment documents in favor of an investment in KCF, at the urging of Deborah and Darbin Skeans.

REQUEST NO. 39: All documents evidencing, referring to, or relating to the allegations in paragraph 78 of your Answer that when Mr. Pavlis advised his brokers that he wanted to liquidate certain assets to make the investment in KCF, Mr. Pavlis' brokers from Glenmede traveled to Allentown to meet Mr. Pavlis to discuss the investment in KCF with Mr. Pavlis and to verify Mr. Pavlis' capacity, soundness of mind, and understanding of the investment in KCF.

REQUEST NO. 40: All documents evidencing, referring to, or relating to the allegations in paragraph 78 of your Answer that after Justin Billingsley explained the investment to Mr. Pavlis' banker, Mr. Pavlis' banker met privately with Mr. Pavlis to confirm Mr. Pavlis' capacity, will, and intent, after which he approved the transaction.

REQUEST NO. 41: All documents evidencing, referring to, or relating to the allegations in paragraph 79 of your Answer that although Mr. Pavlis made payments to Allwest, his investment was based on an agreement with KCF.

REQUEST NO. 42: All documents evidencing, referring to, or relating to the allegations in paragraph 81 of your Answer that Mr. Pavlis understood that he was investing in KCF, and that his investment was to be used to fund Allwest's real estate development business.

REQUEST NO. 43: All documents evidencing, referring to, or relating to the allegations in paragraph 83 of your Answer that there was no loan relationship between KCF and Allwest.

REQUEST NO. 44: All documents evidencing, referring to, or relating to the allegations in paragraph 85 of your Answer that (i) Mr. Pavlis initially invested in KCF's real estate business, and (ii) Mr. Pavlis later agreed that KCF would continue to further its goal of developing a digital platform and related tools, which ultimately became RealtyProClub.com, RentalProClub.com, and BuyEveryHome.com.

REQUEST NO. 45: All documents evidencing, referring to, or relating to the allegations in paragraph 85 of your Answer that KCF and its subsidiaries developed digital platform(s) and related tools, but were unable to sell them because of the interference of and the untrue and defamatory statements made by Deborah and Darbin Skeans.

REQUEST NO. 46: All documents evidencing, referring to, or relating to (i) any investors in KCF other than Mr. Pavlis, (ii) any promissory or other notes, note purchase agreements, private placement memoranda, or subscription agreement that KCF has issued to or entered into with any person or entity other than Mr. Pavlis, and (iii) any payment or repayment of funds by KCF to any such person or entity.

STRADLEY RONON STEVENS
& YOUNG, LLP

 /s/ Joelle E. Polesky
Joelle E. Polesky (ID No. 3694)
1000 North West Street, Suite 1279
Wilmington, DE 19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah S. Skeans,*
*Executrix of the Estate of Frank E. Pavlis*

OF COUNSEL:

William E. Mahoney, Jr.
Spencer R. Short
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

Dated: October 11, 2019

4291974v.1