# Exhibit D



**Theodore A. Kittila**
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C
Wilmington, Delaware 19807
Phone: (302) 257-2025
Email: tk@hfk.law

February 26, 2020

**By Email**
William E. Mahoney, Jr., Esq.
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, Pennsylvania 19103

Re: *Pavlis v. Key Commercial Finance, LLC*, et al., C.A. No. 1:18-cv-01516-CFC

Dear Bill:

I am writing to follow up on your February 4, 2020 letter and our subsequent phone calls regarding your claims that my clients' document production is deficient. For the following reasons, we dispute your arguments.

Given the large amount of Electronically Stored Information ("ESI"), my clients and yours agreed to the use of search terms—search terms which you proposed. On December 5, 2019, you provided us with your search terms and identified a number of different custodian email accounts to search. We did not challenge your search terms, but did object to the inclusion of one custodian's email account as outside of the scope, all as noted in our January 15, 2020 production letter. The search terms were run, and as I advised you during my call with you on February 14, 2020, we took a broad view of what was responsive. We produced all non-privileged, responsive documents, for a total production of 12,316 pages.

After receiving your February 4 deficiency letter, I reached out to you by phone. During our phone conference on February 14, I committed to produce certain Excel files that had been prepared by a forensic accountant, Ms. Dawn Brolin. These were produced to you on February 21, 2020, and included P&L statements, balance sheets, and general ledgers for multiple years for six separate entities. These were produced to you by email in native format so that there could be no objection regarding your ability to use the documents.

Following my call on February 14 and our mediation conference call before Judge Thynge on February 24, we continued our review of the specific categories of documents that you identified in your deficiency letter. It has now become clear to me that any complaints with respect to the adequacy of the production rest squarely with you: the search terms which you proposed apparently did not capture the categories of documents which you now claim you need.

For example, with respect to your claimed deficiency concerning **Request Nos. 1-6** (seeking documents relating to the ownership, formation, and operation of the Defendant entities, as well as documents identifying their past and present respective officers, members, and employees), not one of your search terms would pick up any of these categories of documents. In

Mr. Mahoney and Ms. Polesky
February 26, 2020
Page 2

light of the fact that you appear to be looking for operating agreements concerning the various defendant entities, the failure to include the term "operating agreement" or "LLC agreement" might explain why documents such as these did not appear in the documents that we produced. Notwithstanding the foregoing, and while outside the scope of what was agreed to, we are looking to gather a set of the operating agreements for the various defendant entities, and will endeavor to produce those.

That said, we will not re-run searches of the ESI to supplement your search for additional documents. We spent a great deal of time working through the document review based on the search terms proposed—search terms that we believe were not narrowly tailored to identify relevant documents. Nevertheless, we complied with your request in good faith, and we maintain that further demands that we search ESI are out of bounds.

With respect to your claim of deficiency with respect to **Request Nos. 9-13, 19, 24, and 30-31** (generally seeking documents relating to use and/or disposition of the funds that Mr. Pavlis invested in Allwest and/or KCF), we have proposed the Excel files which show the disposition of the funds. We believe that we have met our burden of produce relevant and responsive documents concerning this. As I noted in my call with Judge Thynge, I am checking whether there are additional work files that Ms. Brolin, the accountant who prepared these Excel files, has possession of and which can be produced.

With respect to your claim of deficiency with respect to **Request Nos. 14-18** (seeking metadata with respect to certain identified documents), we have produced all associated metadata for all documents that were identified and produced. Defendants have satisfied their production obligations.

With respect to your claim of deficiency concerning **Request No. 20** (communications referencing Mr. Pavlis, Allwest, etc.), your claim of deficiency is entirely unfounded. In running the search term "Pavlis" against our document production, there are 449 documents, and the search term "Allwest" yields 683 documents. While you claim that there appears to be an absence of documents from 2014, again, our review of the data produced shows that there were at least 513 documents with a date before January 1, 2015. Even if your claim were true (and it is not), it would hardly be surprising that documents from over 6 years ago were not readily available. We have produced all relevant and responsive documents within our possession, custody, and control.

With respect to your claim of deficiency concerning **Request No. 23** (concerning the written investment agreement referenced in the "Funding Agreement"), we have produced all responsive documents, specifically the note purchase agreements. Since this term is undefined in the Funding Agreement, further questions can be directed to Allwest's Gary Miller since we believe you are seeking discovery from him.

With respect to your claim of deficiency concerning **Request Nos. 25-26** (document evidencing or relating to any communications between KCF and Mr. Pavlis) and **Request Nos. 27-29** (documents relating to any meetings or communications between Mr. Billingsley and Mr. Pavlis), again, we dispute that there were no documents produced. For example, KCF000872 clearly relays a discussion that Mr. Justin Billingsley had with Mr. Pavlis and references a planned meeting. Specifically, the email (dated May 5, 2014) states:

Mr. Mahoney and Ms. Polesky
February 26, 2020
Page 3

> I had a very good discussion with Frank today. He will have his meeting with his attorney tomorrow at 3pm EST. I will be on the phone with him immediately after. He has invited to meet him at his home on Wed morning to take him to the bank to initiate the wire. He is very favorable.

Your statement that there are no communications is wrong. With respect to an absence of emails from Mr. Pavlis, I am advised that Mr. Pavlis did not use email in his discussions with Mr. Billingsley.

With respect to your claim of deficiency concerning **Request Nos. 33-45** (documents relating to the allegations in the Answer), again, your statement that no such documents were produced is wrong. For example, with respect to the Skeanses' defamation of Mr. Billingsley and KCF, we produced a number of documents. *See, e.g.*, KCF008119 (email forwarding letter from Don Bivens, Esq. to Mr. Darbin and Ms. Debby Skeans concerning the "spread[ing]" of "inaccurate and false accusations about Justin with respect to the status and use of investments made by Frank Pavlis"); KCF007851 (email from Ms. Skeans relaying to Mr. Bivens her conversations with "investigative reporter from the Arizona Republic"); KCF006171 (email from Ms. Skeans to Mr. Bivens seeking to clarify position with Craig Harris that "Mr. Pavlis was capable of and was making his investment decisions in 2014"); KCF006172 (email from Mr. Bivens to Ms. Skeans stating that she needs to "choose your own honest words"). Other allegations in the Answer also clearly relate to events that would not have been captured by your search terms or that may not have otherwise been memorialized in a writing.

With respect to your claim of deficiency concerning **Request No. 46** (concerning other investors), all responsive documents have been produced stemming from the search terms that you proposed.

Finally, with respect to your continuing demand for "hard copy" documents, I have spoken with Mr. Billingsley concerning these, and he has no additional documents that can be offered. If you want to test this during a deposition, Mr. Billingsley will so testify. Following the mediation conference with Judge Thynge, I spoke with Mr. Billingsley about visiting his "office"—which is in Brewster, New York. Mr. Billingsley has advised me that he works out of his master bedroom in his home. This obviously presents some difficulty in having you do a "site visit," but Mr. Billingsley is willing to accommodate you. Since there are no hard copy documents to review, we think the visit will not be fruitful.

> Very truly yours,
>
> */s/ Theodore A. Kittila* (DE Bar No. 3963)
>
> Theodore A. Kittila, Attorney at Law
> Halloran Farkas + Kittila LLP

cc:   Joelle Polesky, Esq.
      James G. McMillan, III, Esq.