

**Theodore A. Kittila**
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Phone: (302) 257-2025
Email:  tk@hfk.law

March 6, 2020

**By CM/ECF and Hand Delivery**

The Honorable Sherry R. Fallon
United States District Court for
the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re:  *Pavlis v. Key Commercial Finance, LLC,* et al., C.A. No. 1:18-cv-01516-CFC/SRF

Dear Judge Fallon:

This firm represents defendants Key Commercial Finance, LLC, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC (together, "Defendants") in the above-referenced litigation.  I am writing in response to the discovery dispute letter filed yesterday, March 5, 2020, by plaintiff Deborah S. Skeans, as Executrix of the Estate of Frank E. Pavlis ("Plaintiff" or "Skeans").  For the reasons stated, Plaintiff's motion to compel should be denied.

Plaintiff's claim that Defendants' document production is deficient is baseless.  To the contrary, Defendants have fully complied with their discovery obligations.  Unhappy that they have not found what they need to support their hyperbolic claims of fraud,[1] Skeans wants Defendants to redo their document production, which by extension would include redoing an overly burdensome and costly review of ESI data.  This is improper, disproportional, and abusive.

Moreover, despite repeated representations that Defendants do not have responsive "hard copy" documents, Skeans has insisted on haranguing counsel with accusations that this "is not credible."  If Skeans wants to test Defendants' representations, then she should conduct a deposition, not accuse counsel of making a false representation.

Finally, Plaintiff is hardly in a place to be throwing stones at Defendants' production.  Having produced a quarter of the documents that Defendants have, and having failed to follow any semblance of an e-discovery protocol, Plaintiff is going to find herself on the other end of a deficiency letter in the matter of a few days.  While Defendants remain optimistic that the meet and confer process may result in some movement, barring that, then "what is good for the goose, is good for the gander" in the terms of discovery compliance.  *Eurand, Inc. v. Mylan Pharms., Inc.*, 266 F.R.D. 79, 85-86 (D. Del. 2010).  Plaintiff's unreasonable approach should be stopped short.

---

[1] Plaintiff's unnecessary *ad hominem* attack on Justin Billingsley as "a serial fraudster" is entirely unnecessary.  The discovery process remains challenging enough without invectives being used to describe parties.

Judge Fallon
March 5, 2020
Page 2

## A. **Background Facts**.

The facts are straightforward:  On October 11, 2019, Skeans served Defendants with her First Set of Requests for Production (the "RFPs").  On November 11, 2019, Defendants timely responded to Plaintiff's RFPs with Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production of Documents (the "Responses and Objections") (Ex. A).  In the Responses and Objections, Defendants made clear that "Defendants will meet and confer with [Skeans] to derive a mutually agreeable set of search terms and protocols for the production of ESI."  Ex. A at ¶ 2, Pg. 2.  Additionally, Defendants stated, "Defendants' response to any specific request does not mean that any such category of documents in fact exists or that Defendants have any such documents in their possession, custody, or control."  *Id*. at ¶ 3, Pg. 2.

On December 7, 2019, Skeans sent over her set of search terms and her list of custodians to be used by Defendants in conducting their search of Defendants' ESI—a set of overbroad search terms that Skeans, not Defendants, proposed.  The search terms included terms such as "Allwest," a company name, which although relevant, would result in a vast number of hits.  ***Without objecting to a single search term***, Defendants ran Plaintiff's search terms against a total ESI collection of 19.48 gb of data.[2]  In fact, the only thing objected to by Defendants was the inclusion of other custodians beyond the one key custodian, Mr. Justin Billingsley.

After conducting a privilege and responsiveness review, Defendants produced a total of 12,316 pages on time on January 15, 2020, together with standard load files and associated metadata.  In comparison, Skeans produced 3,651 pages of individual PDFs, with no load file or associated metadata.  Following this production, Defendants met and conferred with counsel for Plaintiff following Skeans' February 4 deficiency letter and agreed to produce Excel spreadsheets of financial data for six separate entities (including certain non-parties) prepared by a forensic accountant.  These Excel files, which were produced in native format, included P&L statements, balance sheets, and general ledgers for multiple years for each of the entities.

Despite all of this, Plaintiff's counsel has insisted that there must be more documents.  During the course of various meet and confer calls, Defendants' counsel advised that there were no hard-copy documents to be produced since all relevant, responsive documents had been digitized.  Despite these representations, Plaintiff's counsel has called the representation "not credible" and has insisted on conducting an inspection of Mr. Billingsley's office in Brewster, New York scheduled for March 9, 2020.[3]

## B. **Defendants Have Met Their Discovery Obligations**.

Defendants have produced what they are obligated to produce.  In Defendants' February 26, 2020, letter (attached as Ex. B), Defendants offered to search for various operating agreements

---

[2] Defendants' ESI vendor advised that if all documents from the ESI production had to be reviewed, it would have totaled over 300,000 pages, or over 96,000 documents.

[3] The custodian for the documents produced has been Mr. Justin Billingsley. Defendants' counsel has advised that Mr. Billingsley works out of his home office—which happens to be his master bedroom—and that no hardcopy documents are available for inspection.  Plaintiff's counsel has not called off the site visit scheduled for March 9 despite the representations of counsel.

Judge Fallon
March 5, 2020
Page 3

relating to the Defendant-entities even though Skeans' search terms did not include any terms that would have pulled in any such documents. In a follow-up meet and confer call the next morning, Plaintiff's counsel made clear that offers such as this would not be enough: Plaintiff wants Defendants to conduct a new search for "all documents"—which by definition is overbroad.

The Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") in this District provides that "Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information." The scope of discovery is not absolute, as the Court "must consider the expense, burden and hardship imposed upon the responding party when crafting its order." *Frontier Communications Corporation v. Google, Inc.,* 2014 WL 12606321, at *2 (D. Del. Feb. 3, 2014) (citing *Medicis Pharm. Corp., et al. v. Actavis Mid Atlantic LLC*, 282 F.R.D. 395, 397 (D. Del. Apr. 30, 2012) ("[A] court must also 'limit the ... extent of discovery otherwise allowed by these rules' if it finds that 'the burden or expense of the proposed discovery outweighs its likely benefit.'")). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco v. U.S. Army*, 795 F.3d 178, 194 (D.C. Cir. 2015).

Here, Skeans, *not Defendants*, proposed the search terms to be applied to the ESI data set, and Defendants did not object. Having proposed the search terms, the demand that Defendants continue to produce documents even though the search terms did not yield the results that Skeans wanted does not mean that Defendants need to keep running other search terms over and over again. Where a party has suggested search terms, the court should limit the responding party's search of ESI to those search terms, since such a search is proportional to the needs of the case. *See, e.g.*, *T.D.P v. City of Oakland*, 2017 WL 3026925, at *5 (N.D. Cal. July 17, 2017) (denying motion to compel where "search terms [suggested by plaintiff] should adequately capture anything that is relevant to this case and responsive to the plaintiff's substantive request"). With Skeans having proposed the search terms, and Defendants having agreed to run those, Skeans' disappointment with the results does not mean that Skeans gets a do-over, subjecting Defendants to a costly re-do. "Courts expect parties to reach practical agreement on search terms, date ranges, key players and the like." *The Case for Cooperation*, 10 SEDONA CONF. J. 215, 223 (2009). *See also Pyle v. Selective Insurance Co. of America*, 2016 WL 5661749, at *2 (W.D. Pa. Sep. 30, 2016) ("Among the items about which the court expects counsel to 'reach practical agreement' without the court having to micro-manage e-discovery are 'search terms, date ranges, key players and the like.'") (quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010).

Moreover, courts have denied motions to compel where additional search terms "were not likely to yield responsive or proportional information." *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2017 WL 4391707, at *6 (S.D. Cal. Oct. 3, 2017). *See also Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, 2018 U.S. Dist. LEXIS 82007, at *8 (N.D. Cal. May 15, 2018) (denying motion to compel and stating that "there is a sufficient basis to find that the ESI search terms at issue are overbroad and not proportional to the needs of the case"); *Tcv VI, L.P. v. Tradingscreen Inc.*, 2018 WL 3575987, at *3 (Del. Ch. July 24, 2018) (holding that producing party did not have to produce documents that contained none of the agreed search terms) *aff'd*, *Buhannic v. Morris, Nichols, Arsht & Tunnell LLP*, 204 A.3d 1264 (Del. 2019).

Judge Fallon
March 5, 2020
Page 4

## C.  Defendants Have Addressed Each of Plaintiff's Requests.

In the letter to the Court, Skeans purports to narrow down her list of deficient documents to seven bullet-point categories.  Skeans Ltr. at 2.  But this list of seven topic areas spans multiple document requests, forcing Defendants to go through its entire ESI collection to produce "all documents."  Furthermore, Defendants have already addressed each of these categories in their February 26, 2020 letter.  *See* Ex. B.

Concerning bullet-point one (seeking "[a]ny documents related to the ownership, formation, operating, and leadership of the Defendant entities"), Defendants offered to attempt to locate operating agreements for the various entity-Defendants (*see* Ex. B at p. 2), but this was not satisfactory to Plaintiff.

Concerning bullet-point two ("[a]ny notes, private placement memoranda, subscription agreements, and note purchase agreements or amendments"), Plaintiff already has each of these documents.  In fact, she attached the notes, the note purchase agreements, the subscription agreement, and the private placement memorandum to the Complaint—documents that she admitted that she received from prior counsel for Defendants.

Concerning bullet-point three ("complete financial documents"), Defendants produced spreadsheets tracking all expenses prepared by a forensic accountant.  While Defendants offered to obtain certain work papers of the accountant, this too was rejected in favor of the "we want all documents" approach taken by Skeans.

Finally, concerning the remaining four bullet points, Defendants addressed each and every one of these in their February 26 letter (Ex. B) showing that Defendants had met their discovery obligations.  *See* Ex. B at 2 (addressing discovery requests for metadata in response to Request Nos. 14-18); *id.* at 2 (addressing request for "written investment agreement" in response to Request Nos. 23); *id.* at 2 (addressing request for communications between KCF and Mr. Pavlis with respect in response to Request Nos. 25-26); *id.* at 2-3 (addressing documents evidencing meetings between Billingsley and Pavlis in response to Request Nos. 27-29).

For the reasons stated herein, the motion to compel should be denied.

Respectfully,

*/s/ Theodore A. Kittila* (DE Bar No. 3963)

Theodore A. Kittila, Attorney at Law
Halloran Farkas + Kittila LLP

Enclosures

cc:     Joelle E. Polesky, Esq
        William E. Mahoney, Esq.
        James G. McMillan, III, Esq.