# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, <br><br> *Plaintiff*, <br><br> v. <br><br> KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC <br><br> *Defendants*. | C.A. No. 1:18-cv-01516-CFC |

## DEFENDANTS' CONCISE STATEMENT OF FACTS

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (No. 3963)
James G. McMillan, III (No. 3979)
William E. Green, Jr. (No. 4864)
5801 Kennett Pike, Suite C
Wilmington, Delaware  19807
Phone:  (302) 257-2025
Fax:  (302) 257-2019
Email:  tk@hfk.law / jm@hfk.law / wg@hfk.law

Dated:  August 17, 2020         *Counsel for Defendants*

A. **The Parties.**[1]

1. Plaintiff Deborah Skeans is the Executrix of the Estate of Frank E. Pavlis. Plaintiff and her husband, Darbin Skeans, own a real estate brokerage in the Lehigh Valley area of Pennsylvania. DA-1.

2. Defendant Key Commercial Finance LLC ("KCF"), is a limited liability company organized under the laws of Delaware. Ans. ¶ 15 [D.I. 31].

3. Defendants Key Commercial Finance Properties, LLC and Mobile Agency, LLC are wholly-owned subsidiaries of KCF formed under the laws of Delaware. Ans. ¶ 16, 18 [D.I. 31].

4. Defendant Equity Pros, LLC is a wholly-owned subsidiary of KCF formed under the laws of Connecticut. Ans. ¶ 17 [D.I. 31].

B. **Frank E. Pavlis.**

5. Frank E. Pavlis ("Mr. Pavlis") died on August 24, 2018 at the age of 101. DA-2. He was the first employee of Air Products and Chemicals, Inc., and at various times served as its Chief Engineer, Treasurer, Vice President Engineering, Vice President Finance, and Vice President International/World Trade, and served

---

[1] Exhibits supporting the facts herein are contained in the Appendix to Defendants' Concise Statement of Facts, filed concurrently herewith. Citations appear in the format "DA-__."

on its Board of Directors for 28 years. DA-2. Mr. Pavlis' was a sharp and sophisticated man, and his mental acuity did not diminish with age.[2]

### C. The Skeans Introduce Mr. Pavlis to Mr. Billingsley.

6. In 2011 or 2012, the Skeans introduced Justin Billingsley to Frank Pavlis to help facilitate a three million-dollar donation by Mr. Pavlis to Plaintiff's charity, Jah-Jireh Homes of America ("Jah-Jireh").[3] Jah-Jireh built and operates an assisted living facility called Legacy Place.

7. Mr. Billingsley did not serve Mr. Pavlis in a fiduciary capacity, but acted as a financial manager or an informal advisor. DA-8 (Miller 89:11-23); DA-4 (Wyllie 39:21-40:11).

8. Mr. Billingsley also helped facilitate a loan from Mr. Pavlis to the charter school Plaintiff's grandchildren attended.[4]

---

[2] *See, e.g.*, DA-3 ("…Mr. Pavlis had never been found to have been legally or mentally incompetent by any medical professional or as a result of any legal proceeding."); DA-4 (Wyllie 47:13-14) ("he was remarkably fastidious with like his ledger for checks." DA-4 (Wyllie 47:18-19) ("he was pretty sharp, I'll tell you, for an older guy.") DA-5 (Skeans 28:11-13) ("He was a very, very organized man. He prepared for his death for a long time.")

[3] *See, e.g.*, DA-6 (Billingsley 9:2-9; 81:14-24); DA-5 (Skeans 68:4-17, 69:3-18, 71:1-4, 72:7-10, 76:2-6, 76:17-23). Deborah Skeans solicited Justin Billingsley's advice in approaching Mr. Pavlis in connection with his donation to Jah-Jireh/Legacy Place. DA-7.

[4] *See, e.g.*, DA-9; DA-5 (Skeans 139:15-140:23). Deborah Skeans' grandchildren attend Circle of Seasons Charter School. DA-5 (Skeans 37:24-38:5).

3

### D. Mr. Pavlis' Investment in KCF.

9. In 2014, Mr. Pavlis invested $7,000,000 in KCF. On September 1, 2014, KCF issued a Convertible Promissory Note in the amount of $3,000,000 to Mr. Pavlis (the "September 1, 2014" Note). DA-10 at 1. The September 1, 2014 Note matured on September 1, 2019, and includes a conversion feature whereby the debt converts to equity in KCF if a change of control occurred or if KCF obtained equity financing. *Id.* at 3-4.

10. On November 1, 2014, KCF issued a Convertible Promissory Note in the amount of $4,000,000 to Mr. Pavlis (the "November 1, 2014 Note"). DA-11 at 1. The November 1, 2014 Note has the same conversion features as the September 1, 2014 Note, and matures on November 1, 2020. *Id.* at 3-4. Mr. Pavlis executed a Note Purchase Agreement for both Notes. DA-12 at 8, DA-13 at 8.

11. In 2014, Mr. Pavlis was competent to make his own investment decisions and decisions regarding his finances.[5]

12. At all relevant times, Mr. Pavlis was represented by legal and investment professionals.[6] Mr. Pavlis told Mr. Billingsley that he was keeping his advisers informed. DA-6 (Billingsley 67:13-16; 67:23-68:3).

---

[5] DA-14 at 1 ("…Mr. Pavlis was capable of and was making his own investment decisions in 2014." *See also*, DA-3 at 4 ("Plaintiff admits that, in her lay opinion, Mr. Pavlis had capacity to sign the 'Assignment of Note.'").

[6] Ed Lentz was Frank Pavlis' longtime attorney. DA-5 (Skeans 39:10-12). *See also*, DA-15 Ltr. From Edward J. Lentz, Esq. to Frank Pavlis, Mar. 6, 2015, (referencing

4

13. The Key Commercial Finance, LLC Confidential Private Placement Memorandum dated August 1, 2014 (the "PPM") sets forth KCF's business model and the risks of investing in a start-up company. DA-16 at 1, 6-9. The PPM states that "[t]he Company is engaged primarily in the development of an online platform for facilitating real estate transactions between the Company's customers and sellers of residential real estate." DA-16 at 9. The platform was a way to locate, source, and originate off-market houses through individuals driving around with their mobile devices. DA-6 (Billingsley 160:15-161:17). KCF's intent was to sell the developed platform to a large player in the real estate industry. DA-6 (Billingsley 136:18-137:1). "[KCF] was a technology company looking to provide a real estate service." DA-6 (Billingsley 162:15-16).

14. Mr. Pavlis negotiated the terms of his investment in KCF over a period of months. DA-6 (Billingsley 40:20-41:4; 41:10-13; 58:19-22; 59:1-12). "[Mr. Pavlis] was interested in owning a portion of the company[;]" he "was very interested in that note converting to equity and then earning a portion of the company that did everything that we wanted to do." DA-6 (Billingsley 209:13-23). "He wanted more of a VC, venture capital, type participation in the – in being able to

---

"the real estate investments that you made that I did not necessarily agree with"); DA-5 (Skeans 9:11-15) ("…Frank had a trust with Glenmede. Ed Lentz I knew was his attorney. Susan Mucciarone was the person in charge of Frank."); DA-6 (Billingsley 66:15-67:2) ("…there was several layers of professional expertise involved that I felt I could trust in the lineup.").

5

earn more than what is put here." DA-6 (Billingsley 207:14-20). Mr. Pavlis believed the real estate industry was ripe for disruption through technology. DA-6 (Billingsley 137:7 – 10; 210:14-19).

15. The Skeans were contemporaneously aware of Mr. Pavlis' investments in KCF with Mr. Billingsley. DA-6 (Billingsley 36:21-37:8; 38:11-19; 39:10-16); DA-4 (Wyllie, 69:8-11); DA-17 ("As we have discussed a few times, Franks investment is with Key Commercial Finance and always has been.")

### E. Mr. Pavlis' Estate Plan.

16. Plaintiff admits that upon Mr. Pavlis' death, the September 1, 2014 Note "did not go into the estate. It went directly to the beneficiary," Watchtower Bible and Tract Society of New York ("Watchtower"). DA-5 (Skeans 84:2-9). On September 19, 2017, Mr. Pavlis signed an Assignment of Note, which transferred Mr. Pavlis' interests in the referenced note to "Frank E. Pavlis TOD Watchtower Bible and Tract Society of New York, Inc."[7]

17. Under Mr. Pavlis' Will, the November 1, 2014 Note passes to Watchtower as part of the residue of the Estate. "Watchtower is the beneficiary of everything, including the note." DA-5 (Skeans 141:16-17). The November 1, 2014

---

[7] DA-3 at 2; D-18 at 1. *See also*, DA-5 (Skeans 59:12-24) ("Q: Why did you not include the $3 million note in the list of estate assets? A: Because that note had a TOD assignment on it at Ed Lentz's request.").

Note will transfer automatically to Watchtower when the estate is closed. DA-5 (Skeans 142:18-19).

18. Plaintiff's charity, Jah-Jireh, is also beneficiary of Mr. Pavlis' Will. DA-19 at 1.

### F. Plaintiff is Barred from Legacy Place.

19. In March 2016, Plaintiff became Mr. Pavlis' power of attorney and sought documents from Mr. Billingsley pertaining to Mr. Pavlis' assets. DA-6 (Billingsley 247:12-20). Mr. Billingsley was apprehensive and skeptical of Plaintiff's authority as Mr. Pavlis' power of attorney. DA-6 (Billingsley 248:1-18; 266:10-14). The Skeans had a keen interest in Mr. Pavlis' money. DA-6 (Billingsley 40:4-6; 248:6-18); DA-4 (Wyllie 70:17-21; 110:21-111:2). Mr. Billingsley also viewed Plaintiff as a business competitor who was threatened by the platform KCF was building with Mr. Pavlis' capital. DA-6 (Billingsley 248:10-13).

20. Moreover, Plaintiff had become "volatile and erratic" at this time. DA-6 (Billingsley 266:8-14). Plaintiff's temperament was displayed in her contentious relationship with the Board and staff of Jah-Jireh, and she was temporarily barred from the premises of Legacy Place. DA-5 (Skeans 104:15-107:15; 119:2-121:12); DA-6 (Billingsley 80:15-21; 82:14-24; 83:18-22); DA-4 (Wyllie 129:12-19). Plaintiff demanded the composition of the Jah-Jireh board be changed, complained

7

of being slandered by Legacy Place staff (DA-18 at 1), and accused a Jah-Jireh board member of trying to defraud Mr. Pavlis. DA-16 at 1; DA-5 (Skeans 123:14-125:12).

21. Ms. Skeans attempted to have Mr. Pavlis sign a letter, purportedly from Mr. Pavlis, expressing concern in his investment. DA-21. Mr. Pavlis did not sign the letter and it was not sent. DA-5 (Skeans 152:19-22).

22. Prospective buyers of KCF's platform were deterred by Plaintiff's comments as they appeared in the Arizona Republic. DA-6 (Billingsley 211:3-5; 277:14-18; 311:21-312:18; 347:15-23; 352:18-21).

Dated: August 17, 2020           **HALLORAN FARKAS + KITTILA LLP**

*/s/ Theodore A. Kittila*
Theodore A. Kittila (Nol. 3963)
James G. McMillan, III (No. 3979)
William E. Green, Jr. (No. 4864)
5801 Kennett Pike, Suite C/D
Wilmington, DE  19807
Phone: (302) 257-2025
Email:  tk@hfk.law / jm@hfk.law /
            wg@hfk.law