## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBORAH S. SKEANS, Executrix of
the ESTATE OF FRANK E. PAVLIS,

            Plaintiff,

     v.

KEY COMMERCIAL FINANCE,
LLC, KEY COMMERCIAL
FINANCE PROPERTIES, LLC,
EQUITY PROS, LLC, and MOBILE
AGENCY, LLC

            Defendants.

JUSTIN BILLINGSLEY and KEY
COMMERCIAL FINANCE, LLC,

            Third-Party
            Plaintiffs,

     v.

DEBORAH S. SKEANS and DARBIN
SKEANS,

            Third-Party
            Defendants.

No. 1:18-cv-01516-CFC

## CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT
## OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In accordance with paragraphs 11(b) through 11(d) of this Court's October 31, 2019 Scheduling Order (D.I. 37), Plaintiff, Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis, asserts the following statement of facts.

**A.    Between January and May 2014, Pavlis invested $7,000,000 in Allwest**

1.    Frank E. Pavlis ("Pavlis") was first introduced to Justin Billingsley ("Billingsley") in 2012.  (A9-10.)[1]  At that time, Pavlis was a 95-year-old widower living in Allentown, Pennsylvania.[2]  Although Pavlis had accumulated significant wealth, he lived an extremely modest lifestyle.  (A7-8).

2.    Billingsley held himself out as a financial professional with extensive experience in estate planning and finance, among other areas.  (*See* A17).

3.    Throughout 2012 and 2013, Billingsley befriended Pavlis, and he became familiar with Pavlis' financial situation.  (A22-25).  Having cultivated Pavlis' friendship and trust over the course of almost two years, Billinglsey solicited Pavlis to invest in an entity known as Allwest Investments, LLC  ("Allwest").

4.    Allwest was formed in 2011 by Gary Miller, whom Billinglsey had met through their shared religious affiliation.  (A42).  Allwest was a real estate venture that purchased distressed residential properties, rehabilitated them, and either sold or rented the renovated properties for a profit.  (A44).  In early 2014, Billingsley approached Miller about working with investors.  (A43).

---

[1]  All "A" citations are references to the pages of the Appendix in Support of Plaintiff's Motion for Partial Summary Judgment.

[2]  Pavlis, born on October 29, 1916, passed away in August 2018, at the age of 101.  (A11-16).

5.     Pavlis was one of those investors.   On January 28, 2014, at Billingsley's solicitation, Pavlis signed an Allwest Subscription Agreement, under which Pavlis agreed to invest $1,000,000 in a two-year Note issued by Allwest.[3] (A52-64).   Pavlis sent Miller a check for $1,000,000, and Miller understood that Allwest was obligated to repay Pavlis' investment two years later, in 2016.  (A45). Upon depositing Pavlis' check into Allwest's bank account, Miller began deploying those funds into different Allwest real estate projects.  (A46-47).

6.     Pavlis invested an additional $6,000,000 in Allwest several months later.   On May 20, 2014, Pavlis signed another Allwest Subscription Agreement, confirming his intent to invest $6,000,000 in Allwest two-year Notes. (*See* A65-77).  Three days later, on May 23, 2014, Pavlis wrote a personal check made payable to "Allwest Investments" and Miller deposited the check in Allwest's bank account.

7.     Notably, Allwest received these funds without issuing a corresponding Note.  Indeed, it appears that neither Miller nor Billingsley even knew what the terms of the Note were or would be.  When Billinglsey e-mailed Pavlis'

---

[3]   Billinglsey presented the Subscription Agreement and Investor Questionnaire to Pavlis for his signature.  (A27, A33-34).

signed Subscription Agreement and Investor Questionnaire to Miller on May 30, 2014, he wrote:

> Please see the attached sub agreement for Frank's $6m. This is 100% of what we need Frank to sign. *Once we are together we will need to work out the terms of the note.* The note is never signed by him though as he is already subscribed to it. You are the one that signs the note and then we give Frank all the docs for his keeping.

(*See* A78) (Emphasis added.) Billingsley undertook to draft the Note on behalf of Allwest. (A48-49).

       8.    On December 1, 2014, Billingsley sent Miller a draft Allwest Promissory Note in favor of Pavlis. (*See* A79). Following revisions, Miller signed the Allwest Promissory Note on December 16, 2014. (*See* A83-85). Notably, the Note itself was dated May 20, 2014, to correspond with the $6,000,000 investment Pavlis made in May 2014. (*Id.*)

**B.**    **Billingsley Concocts A Scheme to Transfer Pavlis' Allwest Investments to KCF**

       9.    At the same time he and Miller were finalizing the $6,000,000 Allwest Note to Pavlis, Billinglsey conceived of a scheme to transfer the $7,000,000 that Pavlis had previously invested in Allwest to KCF, an entity which Billingsley effectively – albeit not legally – controlled.

10.     KCF was formed on December 10, 2014, as a limited liability company under Delaware law.   (*See* A86-87).   KCF was a "Single Member-Managed Limited Liability Company" formed by George Chadwick Self ("Self"), Billingsley's cousin.   (*See* A88-94).

11.     Self and Billingsley first discussed forming KCF *after* Self moved from North Carolina to New York in late November 2014.[4]   (A102-03).   Self also prepared KCF's formation documents after he arrived in New York.   (A110-12).

12.     KCF's Operating Agreement made clear that the "management of the business is invested in the Member."   (A90 at ¶ 4.1).   Self was KCF's sole Member.   (A94).   As such, only Self had the authority to make management decisions on KCF's behalf.

13.     The Operating Agreement also authorized Self, as its sole Member, *"to execute and deliver . . . (c) all promissory notes, loans, security agreements, and other similar documents, and (d) all other instruments of any other kind relating to the Company's affairs, whether like or unlike the foregoing."* (*Id.*) (Emphasis added.)   Self also applied for and received an Employer Identification Number ("EIN") from the Internal Revenue Service ("IRS") on December 10, 2014.

---

[4]   Self moved to New York from North Carolina on November 27, 2014.  (A105, 107).

(*See* A 117-18).  Thus, only Self had the authority to execute promissory notes on behalf of KCF.

14.    At the time he formed KCF, Self was unaware of any funding that had been secured for the entity, and Billinglsey did not indicate that he had lined up any funding for KCF.[5]  (A108-09).  However, within days of KCF's formation, Billingsley approached Miller with a proposition.  Despite having just signed the Allwest Note confirming its $6,000,000 indebtedness to Pavlis, Miller and Billingsley engaged in a discussion regarding an alternative scheme.  Billinglsey presented Miller with two options for moving forward with their relationship — either honor the Notes Allwest issued to Pavlis (and continue to pay Billingsley his consulting fee) or transfer Pavlis' investment funds to KCF.  (A50-51; *see also* A119-21).

15.    Miller responded:  "The funds we are holding will only be sent to [KCF] once a [joint venture] is in place and we complete the operating agreement with Frank and provide [sic] sign by all parties."  (*Id.*)  Inexplicably, Miller began transferring Pavlis' Allwest investment funds to KCF by late December 2014, without any "operating agreement" with Pavlis – indeed, without any documentation

---

[5]   Self never met, spoke with, or corresponded with Pavlis.  (A101).  Self also knew nothing about Pavlis' investments with Allwest until Allwest began transferring Pavlis' funds to KCF in late December 2014.  (A105-06).

indicating that Pavlis was aware of or approved the transfer of his Allwest investment to KCF.

16.    Between December 2014 and May 2018, Allwest transferred $6,000,000 of Pavlis' investment funds to KCF.  (*See* A122-23; *see also* A124-29.) Allwest also transferred to KCF title to six properties, valued at roughly $1,000,000, that Allwest had purchased with Pavlis' funds.  (*See* A122-23.)

### C.    Billingsley Fabricates KCF Notes to Pavlis to Paper Over KCF's Misappropriation of Pavlis' Funds

17.    KCF has produced two Convertible Promissory Notes (together with corresponding Note Purchase Agreements) that KCF allegedly issued to Pavlis in September and November 2014.

18.    The first Note purports to have been issued by KCF on September 1, 2014 (the "September Note").  (*See* A130-47.)  On its face, the September Note relates to a $3,000,000 investment that Pavlis allegedly made in KCF.  (*Id.*) The term of the Note is five years – meaning that Pavlis would not be repaid until he was almost 102 years old – and it was to pay eight percent (8%) interest annually. (*Id.*)  However, the interest was not payable until the Note matured in 2018.  (*Id.*)

19.    The second KCF Note purports to have been issued on November 1, 2014.  (the "November Note").  (*See* A148-65).  The November Note is identical

to the September Note, except (i) it relates to an alleged $4,000,000 investment that Pavlis made in KCF, and (ii) its term is *six years*, meaning that KCF did not have to repay Pavlis any principal or interest until November 2020, when Pavlis would have been 103 years old.  (*Id.*)

      20.    Both the KCF Notes and their corresponding Note Purchase Agreements purport to be signed on behalf of KCF by Michael Silberman[6] ("Silberman") as its "Executive Vice President."  Silberman was never an employee of KCF, and he was never authorized to sign any Notes on its behalf.  Self, KCF's sole member, never made Silberman Executive Vice President of KCF, and he never heard of anyone referring to him as such.  (A115-16.)  Silberman had no role whatsoever at KCF.  (A114).

---

[6] In 2014, Silberman was a co-founder and Executive Vice President of Mobile Corp. ("Mobile").  (*See* A166 (Silberman's signature block identifies him as Mobile's Co-Founder and "Executive VP/CFO"); (*see also* A113-14). Billingsley knew Silberman because he worked for Mobile, and he held several positions during his tenure there, including serving as its President.  (A24-25).

21.    It is unclear how Silberman's name came to be on the KCF Notes and Note Purchase Agreements.  What is clear, however, is that Silberman never had authority to sign anything on behalf of KCF.

STRADLEY RONON
STEVENS & YOUNG, LLP

/s/ Joelle E. Polesky
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah*
*S. Skeans, Executrix of the*
*Estate of Frank E. Pavlis*

OF COUNSEL:

William E. Mahoney, Jr. (*pro hac vice*)
Spencer R. Short (*pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120


Dated: August 17, 2020

9