# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBORAH S. SKEANS, Executrix of
the ESTATE OF FRANK E. PAVLIS,

        Plaintiff,

    v.

KEY COMMERCIAL FINANCE,
LLC, KEY COMMERCIAL
FINANCE PROPERTIES, LLC,
EQUITY PROS, LLC, and MOBILE
AGENCY, LLC

        Defendants.

_____

JUSTIN BILLINGSLEY and KEY
COMMERCIAL FINANCE, LLC,

        Third-Party
        Plaintiffs,

    v.

DEBORAH S. SKEANS and DARBIN
SKEANS,

        Third-Party
        Defendants.

No. 1:18-cv-01516-CFC

## PLAINTIFF'S RESPONSE TO DEFENDANTS' <u>CONCISE STATEMENT OF FACTS</u>

The following is the response of Plaintiff, Deborah S. Skeans, Executrix of

the Estate of Frank E. Pavlis, to Defendants' Concise Statement of Facts (D.I. 80).

1.      Admitted.

2.      Admitted.

3.      Plaintiff denies Mobile Agency, LLC is a wholly-owned subsidiary of Key Commercial Finance, LLC ("KCF").

4.      Plaintiff denies Equity Pros, LLC is a wholly-owned subsidiary of KCF.[1]

5.      Admitted, except Plaintiff denies that Pavlis "was a sharp and sophisticated man, and his mental acuity did not diminish with age."[2]

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Denied.  Pavlis never invested any funds in KCF, and KCF did not issue any Promissory Notes to Pavlis.  As explained in Plaintiff's Opening Brief in

---

[1]      Chad Self was the sole Member of both Mobile Agency and Equity Pros.  (*See* A1-2).  All "A" citations are references to the pages of the Appendix to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment.  Self also testified that KCF diverted approximately $2,700,000 of the funds Pavlis invested in Allwest to Equity Pros.  (A92-93).

[2]      By 2014, when he was 97 years old, Pavlis had been the victim of financial phone scams. (A14-17).  As recently as 2015, he continued to take the calls even after his Power of Attorney ("POA") repeatedly told him he should not answer the phone.  (*Id*.)  Pavlis also "wrote himself a lot of reminders" (A18), and had issues with memory loss. (*See* A23).

Support of Motion for Partial Summary Judgment (D.I. 83), between February and May 2014, Pavlis invested $7,000,000 in Allwest Investments, LLC ("Allwest"), not KCF.  The evidentiary record discredits the authenticity of the KCF Notes.  The fact that KCF allegedly issued the Notes *before* KCF even existed is damning enough.  But the record evidence strongly suggests Billingsley and KCF manufactured the Notes after the fact, in order to paper over KCF's misappropriation of Pavlis' Allwest investment and prevent discovery of KCF's fraud.  For example:

- Defendants have not produced a single document to support their narrative that Pavlis merely advanced funds to Allwest on KCF's behalf.  (*See* Answer to Verified Complaint (D.I. 31) at ¶¶ 79, 81, 85; *see also* A39).  There are no contemporaneous documents suggesting that either KCF Note was presented to Pavlis or that anyone discussed the Notes with Pavlis.

- Billingsley testified he was working on the KCF Notes for months before the Notes were "issued" and there were many prior drafts of the document.  (A40-41).  KCF did not produce any drafts of the KCF Notes, nor did it produce any contemporaneous documents referencing either of the KCF Notes.

- Billingsley could not explain why KCF issued two notes for $3,000,000 and $4,000,000, respectively, when Pavlis had invested $7,000,000 in Allwest

months earlier.  (A42).  If Pavlis invested $7,000,000 on behalf of KCF, one would expect that KCF would have issued one note for the same $7,000,000.

- The Notes and corresponding Note Purchase Agreements were purportedly signed by Michael Silberman as KCF's "Executive Vice President." (*See* A49, A56, A66, A73).  Silberman never worked for KCF; according to KCF's sole Member, KCF had no officers or employees at all.  (A89).  Silberman himself has denied ever having any affiliation with KCF.  (*See* A94-96).

- In December 2014, after KCF purportedly issued the Notes, Billingsley prepared a promissory note to reflect Pavlis' May 2014 investment of $6,000,000 in Allwest.  It makes no sense for Billingsley to have prepared—and Allwest to have signed—the Allwest Note after the KCF Notes were issued.  There is no reference to this arrangement (or any explanation as to why Billingsley prepared the Allwest Note) among the many contemporaneous email communications between Billingsley and Allwest's CEO, Gary Miller.  Indeed, no such documents exist.

- Pavlis' signature on the Note Purchase Agreements is also suspect. Rather than being made part of the Agreements, the pages allegedly bearing Pavlis' signature pages make no reference to the Agreements whatsoever, nor do they bear any indicia suggesting that Pavlis knowingly signed the Agreements to purchase the Notes.  (A57, A74).  Rather, they appear to be entirely independent of the

Agreements, are in a different font than the Agreements, and purport to identify "Investors" with a title, instead of simply identifying Pavlis as the sole investor.  It also bears noting that neither Agreement had the "Form of Note" attached as an Exhibit.

- • Neither the KCF Notes nor any related documents were among Pavlis' papers, despite the fact that he kept all of his financial documents in his apartment.  Rather, the only document found among his papers and files was the Allwest Subscription Agreement and Investor Questionnaire relating to Pavlis' initial $1,000,000 investment in Allwest.[3]

In sum, there is no contemporaneous evidence suggesting KCF ever issued either the September or the November Notes to Pavlis.

10.     Denied.  Plaintiff incorporates by reference paragraph 9 above.

11.     Admitted.

12.     Admitted.   Plaintiff admits that Pavlis was represented by Edward Lentz, his Estate's attorney, and that investment professionals at Glenmede Trust managed the bulk of Pavlis' investment assets.   However, Plaintiff denies any implication that either Lentz or his Glenmede Trust advisors were

---

[3]     *See* A158-59; *see also* A97-100 at ¶ 2.

contemporaneously made aware of any investments Pavlis allegedly made with KCF.

13.    Plaintiff denies that the KCF "Confidential Private Placement Memorandum" ("PPM") was ever issued to Pavlis.  The record evidence suggests the document is fraudulent and was not prepared until June 2018.   First, the *PPM makes no refence at all to any offering of notes*.  It speaks solely to an alleged offering of 10,000,000 "Class A Shares of the Company." (*See* DA-16 at 1).  Plainly, this PPM did not disclose any risks associated with the purchase of Promissory Notes.

Second, there is no contemporaneous documentation suggesting anyone provided the PPM to Pavlis.[4]  Moreover, the PPM's "Executive Summary" states that KCF "is *primarily engaged in the development of an online platform* for facilitating real estate transactions between the Company's customers and sellers of real estate." (*Id*. at 9)  (emphasis added).  However, KCF's Operating Agreement, signed four months later on December 10, 2014, provides:  "The purpose of the Company is to provide financing or other capital-related investment advice whether by assisting homeowners with capitalization on equity through sale/equity brokering or the investing opportunities and offers." (*See* A161 at ¶ 1.6).   That the Operating

---

[4] *See* A97-100 at ¶¶ 2-3, 5.

Agreement makes no mention at all of the development of an "on-line platform" clearly suggests the PPM was created *after* December 2014, when KCF's business purpose evolved from providing "financing or other capital-related investment advice" to developing an online platform.

Third, the PPM allegedly was delivered to Pavlis at the same time he purportedly signed a KCF "Subscription Agreement" dated August 18, 2014. (*See* A168-79). This signature page (along with Pavlis' signature) was *copied* from the Allwest Investor Questionnaire that Pavlis signed in January 2014. (*See* A88). Billingsley simply attached a copy of that signature page to the KCF Subscription Agreement and then signed his own name to it.

Finally, there is no indication that the Subscription Agreement or PPM existed before June 2018, when an attorney sent drafts to Billingsley. (*See* A193-205). The KCF Subscription Agreement is *identical* to the June 2018 draft, except for (i) the effective date, (ii) the identification of the parties to the agreement, and most significantly, (iii) the signature page.[5]

---

[5]    It also bears noting that Billingsley never provided a copy of either the Subscription Agreement or the PPM until June 29, 2018, shortly after he received the draft on June 19, 2018. (*See* A206-08).

14.    Denied.   Apart from Billingsley's self-serving testimony, there is no evidence that Pavlis negotiated "the terms of his investment in KCF over a period of months," or at all.

15.    Denied.   The Skeans were unaware of any of Pavlis' alleged investments in KCF until November 19, 2016, when Billingsley first provided Plaintiff with a copy of the September 2014 Note (but not the November Note).  (*See* A209-227).   Even then, Plaintiff did not suspect foul play, as Billingsley was a supposed confidante (A159), and because Billingsley continued to misrepresent the nature of Pavlis' investments.[6]

16.    Admitted, except Plaintiff does not admit the September 1, 2014 Note was or is a valid instrument.  To the extent it was provided to Pavlis in 2014, it was void *ab initio*.

17.    Admitted, except Plaintiff does not admit the November 1, 2014 Note was or is a valid instrument.  To the extent it was provided to Pavlis in 2014, it was void *ab initio*.

18.    Admitted.

---

[6]    *See* A228-29 (stating the Allwest investment document "was simply a mistaken doc due to it never being executed.  Don't remember all the details but think it was just discarded and never completed.").

- 8 -

19.    Denied, except Plaintiff admits she became Pavlis' POA in March 2016.

20.    Denied.

21.    Plaintiff admits the letter was not sent, but she denies drafting the letter. (*See* A156).

22.    Denied.

STRADLEY RONON
STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

OF COUNSEL:

William E. Mahoney, Jr. (*pro hac vice*)
Spencer R. Short (*pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

*Attorneys for Plaintiff, Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis*

Dated: August 31, 2020

- 9 -