## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS,<br><br>Plaintiff,<br>v.<br>KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC<br><br>Defendants.<br><br>JUSTIN BILLINGSLEY and KEY COMMERCIAL FINANCE, LLC,<br><br>Third-Party Plaintiffs,<br>v.<br>DEBORAH S. SKEANS and DARBIN SKEANS,<br><br>Third-Party Defendants. | No. 1:18-cv-01516-CFC |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Joelle E. Polesky (ID No. 3694)
Stradley Ronon Stevens & Young, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19810
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com
*Attorneys for Plaintiff*

Dated: August 31, 2020

# **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF PROCEEDINGS.............................................1

II.    SUMMARY OF ARGUMENT.................................................................2

III.   COUNTERSTATEMENT OF FACTS.......................................................2

IV.    ARGUMENT.........................................................................................3

       A. Legal Standard......................................................................................3

       B.  The Estate has Standing to Bring this Action .........................................3

       C.  The Estate is Entitled to Summary Judgment Because
           The KCF Notes are Void *Ab Initio*.........................................................6

           1.   The Estate's Declaratory Judgment Action is Proper...................7

           2.   The KCF Notes are Void *Ab Initio* Because Defendants
                were not Legally Formed at the Time of Their Issuance.............8

       D. The Estate's Claims Were Timely Filed .................................................13

       E.  Defendants Are Not Entitled to Summary Judgment on the
           Estate's Fraud and Fraudulent Concealment Counts .............................17

       F.  The Estate is Entitled to Summary Judgment Because KCF was
           Unjustly Enriched by Pavlis' Investment................................................21

    V. CONCLUSION.........................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*ABRY Partners V, L.P. v. F & W Acquisition LLC*,
   891 A.2d 1032 (Del. Ch. 2006) ............................................................. 19

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
   666 F.2d 819 (3d Cir. 1981) ................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................ 3

*In Matter of Appraisal of Enstar Corp.*,
   1989 WL 11139 (Del. Ch. 1989) .......................................................... 19

*Big Valley Associates v. DiAntonio*,
   1995 WL 339072 (Del. Super. Ct. 1995) ............................................... 9

*Burger King Corp. v. Family Dining, Inc.*,
   426 F. Supp. 485 (E.D. Pa. 1977) .......................................................... 8

*Burns v. Goldberg*,
   210 F.2d 646 (3d Cir. 1954) ................................................................... 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................ 3

*Cerbus Intern., Ltd. v. Apollo Management, L.P.*,
   794 A.2d 1141 (Del. 2002) .............................................................. 19, 20

*Council of Unit Owners of Sea Colony East v. Carl M. Freeman
   Associates, Inc.*,
   1988 WL 130461 (Del. Super. Ct. 1988) .......................................... 16, 17

*Daniels v. Optek Tech., Inc.*,
   2012 WL 2026384 (Del. Super. Ct. 2012) ........................................... 15

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
   432 F.3d 286 (3d Cir. 2005) ................................................................... 6

1

*DCV Holdings, Inc. v. Conagra, Inc.*,
   2002 WL 508343 (Del. Super. Ct. 2002)............................................................18

*Delaware State University Student Housing Foundation v. Ambling
   Management Company*,
   556 F.Supp.2d 367 (D. Del. 2008)..................................................................7, 8

*Everwine v. Nemours Found.*,
   2006 WL 891060 (E.D. Pa. 2006) ......................................................................14

*Favata v. Seidel*,
   511 F. App'x 155 (3d Cir. 2013) ..........................................................................3

*Gaffin v. Teledyne, Inc.*,
   611 A.2d 467 (Del. 1992) ...................................................................................18

*Henderson Apartment Venture v. Miller*,
   2012 WL 2780058 (D. Nev. 2012)..........................................................9, 10, 11

*Ioegine LLC v. Interactive Media Corp.*,
   2017 WL 39563 (D. Del. 2017)............................................................................8

*ITW Global Investments Inc. v. American Indus. Partners Capital
   Fund IV, L.P.*,
   2017 WL 1040711 (Del. Super. Ct. 2017) ........................................................16

*Leber Assocs., LLC v. Entm't Group Fund, Inc.*,
   2003 WL 21750211 (S.D.N.Y. 2003)...................................................................8

*LVI Group Investments, LLC v. NCM Group Holdings, LLC*,
   2018 WL 1559936 (Del. Ch. 2018) ....................................................................21

*Marsh v. Lizza*,
   2018 WL 831865 (Pa. Super. Ct. 2018) ...............................................................5

*Mimm v. Van Guard Dealer Services, LLC*,
   2014 WL 718150 (D. Del. 2014)...........................................................................8

*Masimo Corporation v. Kiani*,
   962 F.Supp.2d 661 (D. Del. 2013).....................................................................14

*Toll Bros., Inc. v. Township of Readington*,
   555 F.3d 131 (3d Cir. 2009) ............................................................................4, 6

*Trustees of the Peninsula Annual Conference of the Methodist
 Church, Inc. v. Spencer,*
 183 A.2d 588 (Del. Ch. 1962) ...............................................................9

*U.S. Fidelity & Guaranty Co. v. Koch,*
 102 F.2d 288 (3d Cir. 1939) .................................................................7

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
 860 A.2d 312 (Del. 2004) ............................................................14, 15

*Washington House Condominium Association of Unit Owners v.
 Daystar Sills, Inc.,*
 2017 WL 3412079 (Del. Super. Ct. 2017) ........................................15

*Whittington v. Dragon Group L.L.C.,*
 2008 WL 4419075 (Del. Ch. 2008) ...................................................16

## Statutes

6 *Del. C.* § 18-201 ..................................................................................9

10 *Del. C.* § 3701 ...................................................................................4

20 Pa. C.S.A. § 101, *et seq.*..................................................................4

20 Pa. C.S.A. § 3373 .............................................................................5

42 Pa. C.S.A. § 8302 .............................................................................5

28 U.S.C. § 2201(a) ...............................................................................7

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action on October 1, 2018.  (D.I. 1).  On November 20, 2018, Defendants filed their Motion to Dismiss the Complaint.  (D.I. 23.)  On September 24, 2019, this Court denied the Motion to Dismiss claims for declaratory judgment, common law fraud, fraudulent concealment, and unjust enrichment.  (D.I. 30).  Defendants subsequently filed their Answer.  (D.I. 31).

On October 22, 2019, KCF and Justin Billingsley, a non-party to the underlying action, filed a Third-Party Complaint against Deborah and Darbin Skeans (the "Skeanses") individually, which the Skeanses moved to dismiss. (D.I. 35 & 48).  On July 15, 2020, this Court dismissed the Third-Party Complaint in its entirety.  (D.I. 77).  Discovery closed on April 30, 2020.  On August 17, 2020, Plaintiff filed a Partial Motion for Summary Judgment as to Counts I and V of its Complaint.  (D.I. 82).  The same day, Defendants filed their Motion for Summary Judgment.  (D.I. 78).  Plaintiff now files this Response in Opposition to Defendants' Motion for Summary Judgment.

1

## II.    __SUMMARY OF ARGUMENT__

1.     There are numerous issues of material fact such that summary judgement in Defendants' favor is inappropriate.

2.     As set forth in Plaintiff's Motion for Partial Summary Judgment, the KCF Notes are void *ab initio*, as (i) KCF did not exist either as a *de jure* or a *de facto* entity when the Notes purportedly were issued, and (ii) there is no evidence KCF engaged in any pre-formation activity.

3.     As the duly appointed Executrix of the Pavlis Estate, Plaintiff has standing to assert her claims, none of which seek to recover on the Notes themselves.

4.     The evidence demonstrates that none of Plaintiff's claims are time-barred or, at a minimum raises questions of fact as to when the claims accrued, rendering summary judgment inappropriate.

5.     Plaintiff's claim of unjust enrichment is fully supported by the evidence.

6.     To the extent KCF diverted any of Pavlis' investment to affiliated entities, those entities should remain in the case.[1]

---

[1]     In particular, Defendant Equity Pros, LLC, should remain a party to this action, as KCF diverted approximately $2,700,000 of Pavlis' funds to it. (*See* Counterstatement at ¶ 4, n.1).

### III.   COUNTERSTATEMENT OF FACTS

Plaintiff incorporates by reference her Response to Defendants' Concise Statement of Facts ("Counterstatement").

### IV.   ARGUMENT

#### A.   Legal Standard

Defendants cannot meet their Rule 56 burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013) (internal citation omitted).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986)).  Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over the moving party's. *Id*. at 255.

#### B.   The Estate has Standing to Bring this Action

The Defendants contend Plaintiff lacks standing to pursue claims "related" to the Notes KCF allegedly issued to Pavlis in September and November 2014.  The fundamental error in this argument is that Plaintiff, as Executrix of Pavlis'

Estate, is *not* seeking to enforce or seek recovery on the Notes themselves.[2]  Rather,

Plaintiff is seeking to redress the harm Pavlis suffered as a result of KCF's failure to

issue valid Notes or, in the alternative, KCF's fraudulent actions in misappropriating

Pavlis' Allwest investment.

To establish standing, a plaintiff (i) must have suffered an "concrete,

particularized injury-in-fact," (ii) that is "fairly traceable to the challenged action of

the defendant"; and (iii) "a favorable decision likely would redress the injury." *Toll*

*Bros., Inc. v. Township of Readington,* 555 F.3d 131, 138 (3d Cir. 2009).

Ms. Skeans, as Executrix, is entitled to bring this action on behalf of

Pavlis, the decedent.  The Pennsylvania Decedents, Estates, and Fiduciaries Code

("Estates Code") sets forth all rights and duties of personal representatives of estates

administrated within Pennsylvania.[3]  *See* 20 Pa. C.S.A. § 101, *et seq.*  Pursuant to

the Estates Code, all causes of action predating the decedent's death survive as set

forth in the Pennsylvania Survival Act.  *Id.* at § 3371.  The Survival Act provides,

"[a]ll causes of action or proceedings, real or personal, shall survive the death of the

---

[2] Even if Plaintiff were to assert a breach of contract claim, she would have every right to do so in connection with the November 2014 Note, which remains part of the Estate.

[3] Pennsylvania law applies because Pavlis was a Pennsylvania resident at the time of death and his will has been administrated pursuant to Pennsylvania law. However, Delaware law related to the rights and duties of administrators and survival actions is substantially similar.  *See* 10 *Del. C.* § 3701.

plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."  42 Pa. C.S.A. § 8302.  "An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive." 20 Pa. C.S.A. § 3373.

A survival action is not an independent cause of action, but a continuation of a cause of action that accrued prior to the decedent's death.  *Marsh v. Lizza*, 2018 WL 831865, at *3 (Pa. Super. Ct. 2018).  The fact that recovery under a surviving claim will pass to a party outside the estate, does not impact the personal representative's right to bring the action.  *Burns v. Goldberg*, 210 F.2d 646, 650 (3d Cir. 1954) (applying Pennsylvania law and explaining a survival action should not be impacted because part of the recovery "may ultimately pass to the [beneficiary] through the operation of the laws of succession.").  This is because the survival action seeks to redress an "invasion of the interest of the decedent," not an interest of the Estate or personal representative.  *Id*.  Here, Plaintiff's causes of action arise out of injuries Pavlis suffered while he was living, and those claims survive his death and rest with Plaintiff, as his Executrix.  Plaintiff has the same right to pursue those claims as Pavlis had.

Second, the Estate has set forth a sufficiently concrete and particularized injury-in-fact – the loss of Pavlis' $7,000,000 investment.  To

5

establish the requisite standing to seek relief, a plaintiff must show that it "suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical." *Toll Bros., Inc. v. Township of Readington,* 555 F.3d 131, 138 (3d Cir. 2009). The "injury-in-fact requirement is not Mount Everest." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) (stating the injury-in-fact requirement is meant to be "very generous, requiring only allegations of some specific, identifiable trifle of injury.")).

There is nothing "premature or unduly speculative"[4] about Plaintiff's damages or her standing to assert claims to recover those damages. KCF orchestrated a fraudulent scheme to divert Pavlis' $7,000,000 Allwest investment to itself and its affiliated entities. As legal representative of the Estate, Plaintiff is entitled to pursue the Estate's claims arising out of KCF's actionable conduct.

### C.  The Estate is Entitled to Summary Judgment Because the KCF Notes are Void *Ab Initio*

As argued in her Motion for Partial Summary Judgment,[5] Plaintiff is entitled to summary judgment on Count I of the complaint seeking this Court's

---

[4]  *See* D.I. 79 at 8.

[5]  *See* D.I. 83, which Plaintiff incorporates by reference.

4688128v.1

declaration that the KCF Notes are void *ab initio*.  Defendants' arguments to the contrary misapply the relevant law and facts.

### 1.     <u>The Estate's Declaratory Judgment Action is Proper</u>

First, Defendants contend this Court lacks the power to grant Plaintiff a declaratory judgment that the KCF Notes were void *ab initio.*  They are wrong. Federal courts have jurisdiction to issue declaratory judgments pursuant to the Federal Declaratory Judgment Act:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relationship of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  Declaratory relief "has the advantage of escaping the technicalities" associated with other remedies, "thus enabling the substantive goal to be reached in the speediest and most inexpensive form."  *U.S. Fidelity & Guaranty Co. v. Koch*, 102 F.2d 288, 290 (3d Cir. 1939).  Whether to grant declaratory relief is vested in the court's discretion.  *Delaware State University Student Housing Foundation v. Ambling Management Company*, 556 F.Supp.2d 367, 373 (D. Del. 2008).

A declaratory judgment is proper where a declaration would "strongly affect present behavior, have present consequences and resolve a present dispute."

*ACandS, Inc. v. Aetna Cas. & Sur. Co*., 666 F.2d 819, 823 (3d Cir. 1981).  While it is true that a "declaratory judgment is inappropriate *solely* to adjudicate past conduct," *Delaware State*, 556 F.Supp.2d at 374 (emphasis added), courts routinely permit declaratory actions where a previously entered into contract has a present impact upon the parties.  *See  Mimm v. Van Guard Dealer Services*, *LLC*, 2014 WL 718150, at *4 (D. Del. 2014) (holding that Defendant's declaratory judgment counterclaim seeking declaration that a past contract remained valid and enforceable must survive summary judgment); *Burger King Corp. v. Family Dining, Inc*., 426 F. Supp. 485, 487 (E.D. Pa. 1977) (addressing declaratory judgment action in which plaintiff sought declaration that previously agreed upon contract was no longer enforceable and stating "[a] request for declaratory relief is appropriate in a case such as this where the primary question is whether such a [contract] termination has occurred.").

Plaintiff has a clear right to seek a declaration that the KCF Notes were allegedly issued well before any good faith effort was made to create KCF as a legal entity and, as a result, were void *ab initio.*

### 2.  The KCF Notes are Void *Ab Initio* Because Defendants were not <u>Legally Formed at the Time of their Issuance.</u>

A business entity may not enter into a legally binding contract prior to its legal, or *de jure*, existence. *See Ioegine LLC v. Interactive Media Corp*., 2017

8

WL 39563, at *3-4 (D. Del. 2017) (explaining that a Delaware LLC is created only where there is technical compliance with all mandatory formation requirements); *see also* 6 *Del. C.* § 18-201 (providing that "a limited liability company is formed at the time of filing the initial certificate of formation in the office of the Secretary of State.").[6] Where an LLC executes a contract prior to its legal existence, the contract is deemed void *ab initio*. *See Henderson Apartment Venture v. Miller*, 2012 WL 2780058, at *8 (D. Nev. 2012) (applying Delaware law and finding contract void because entity had not achieved formal LLC status prior to execution of contract).

Defendants cannot make use of either the doctrine of *de facto* corporation or corporation by estoppel to overcome their failure to legally form prior to issuing the KCF Notes. The existence of a *de facto* LLC requires (1) a special act or general law under which the LLC may lawfully exist; (2) a *bona fide attempt* to organize under the law and colorable compliance with the statutory requirements; and (3) actual use or exercise of corporate powers in pursuance of such law or attempted organization. *See Trustees of the Peninsula Annual Conference of the Methodist Church, Inc. v. Spencer*, 183 A.2d 588, 592 (Del. Ch. 1962).

---

[6] Defendants' note that § 18-201(d) permits members to enter into LLC agreements before the certificate of formation is filed. *See* D.I. 79 at 10, n.2. However, where an LLC agreement is executed prior to technical compliance with all legal formation requirements, it becomes effective as of the date of legal formation. 6 *Del. C.* § 18-201(d).

9

A mere intention to form an LLC, without substantial action to that effect, does not warrant *de facto* LLC status. *See Big Valley Associates v. DiAntonio*, 1995 WL 339072, at *3 (Del. Super. Ct. 1995). Where there is no evidence an LLC made a bona fide attempt to comply with the requisite Delaware formation requirements prior to execution of a contract, no *de facto* LLC exists and any contract the LLC purportedly signed before its legal creation is void. *See Henderson*, 2012 WL 2780058, at *8 (holding contract executed by entity purporting to be an LLC was void because the entity made no efforts to legally form prior to execution); *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, 2003 WL 21750211, at *10 (S.D.N.Y. 2003) (applying Delaware law and determining an entity that failed to file, or even draw up formation documents, prior to execution of agreement was not *de facto* LLC).

Here, there is no evidence anyone made a bona fide attempt to organize KCF under Delaware law before it allegedly issued the Notes. As set forth more fully in Plaintiff's Opening Brief in Support of Motion for Partial Summary Judgment, KCF's sole member did not even contemplate an entity that would become KCF until December 2014, and neither he nor anyone else took any steps to comply with the Delaware LLC statute prior to that point. (*See* D.I. 83).

Similarly, Defendants' invocation of "corporation by estoppel" is unavailing. Under the corporation by estoppel doctrine, "a person who contracts or

10

otherwise deals with an entity as a corporation thereby admits that the entity is a corporation, and is estopped to deny its incorporation in an action arising out of the contract or course of dealing." *Henderson*, 2012 WL 2780058, at *7. However, because estoppel originates in equitable principles, it "does not apply when it would be inequitable to apply it or where equitable principles do not require its application, as in the case of fraud." *Id*. The estoppel rule does not apply in the case of fraud "where the recognition of a pretended corporation is itself brought about by false representations that it is incorporated." *Id*. (*citing Int'l Sport Divers Assoc., Inc. v. Marine Midland Bank, N.A*., 25 F.Supp.2d 101, 110-11 (W.D.N.Y. 1998) (holding corporation by estoppel was inapplicable because party to the contract had represented it was a corporation and erroneously labeled itself as a "Connecticut corporation" in the contract, when it knew it was not)).

Where a party is ignorant of a business entities' lack of legal formation, and there is an "absence of equal means of knowledge" of the fact that legal formation has not been achieved, the party is not estopped from denying a corporation's existence to void premature contracts. *See Henderson*, 2012 WL 2780058, at *7 (holding that corporation by estoppel did not apply, and contract was void, where defendant did not know plaintiff was not legally formed at the time of contract and plaintiff had represented to defendant that it was legally formed when it was not).

There is no credible evidence that Pavlis received the Notes, much less evidence that he was aware KCF was not a legal entity in September and November 2014, when the KCF Notes allegedly issued. (*See* Counterstatement ¶¶ 9-10.)  To the contrary, the Notes themselves contain the very lies upon which Plaintiff seeks a declaration that they are void.  Both Notes and Note Purchase Agreements specifically state KCF was a Delaware limited liability company at the time of issuance – it was not.  Both Notes are purportedly signed by Michael Silberman, as KCF's "Executive Vice President" – he was not.  And according to Defendants, KCF issued the Notes only after providing Pavlis with a Private Placement Memorandum ("PPM") and having him sign a Subscription Agreement in August 2014 – it did not.

To the contrary, there is no evidence KCF ever issued a PPM or Subscription Agreement relating to any Notes, and the evidence clearly shows that Pavlis never signed the Subscription Agreement.  (*Id.* at ¶ 13.)  Rather, Billingsley attached a signature page from an entirely different document – the Investor Questionnaire that Pavlis signed in connection with his Allwest investment – and Defendants now are trying to pass that off as a legitimate document.  (*Id.*)  Finally, there is compelling evidence that both documents were created in June 2018 in a continuing attempt to mislead Plaintiff and paper over KCF and Billingsley's fraudulent conduct.  (*Id.*)

Finally, Defendants' argument that KCF itself is bound by the Notes as a result of "pre-formation activities" misses the point entirely.   Plaintiff is not seeking to enforce the Notes.   Quite the opposite; Plaintiff is seeking to have the Notes declared void because they were allegedly issued by an entity that was neither a *de jure* nor a *de facto* legal entity.   Moreover, there is no evidence the Notes were issued by any KCF "promoters."   To the extent Defendants contend Billingsley or Silberman acted on behalf of the yet-to-be conceived of (much less formed) KCF, there is no evidence either individual had any authority to act on behalf of KCF.   The only person who had that authority was Chad Self, KCF's sole Member.   And he knew nothing of the alleged Notes until years later. (D.I. 84 at ¶ 14).

In short, even if one were to entertain the fiction that KCF issued the Notes in 2014, the evidence overwhelmingly demonstrates they were and remain void *ab initio*.   Defendants have no credible basis to argue otherwise.

### D.    The Estate's Claims Were Timely Filed

Whether this Court applies Delaware law or Pennsylvania law,[7] Plaintiff has set forth sufficient facts demonstrating her claims are timely.   At the

---

[7] Counts I, II, and III sound in fraud are either subject to a two-year statute of limitations under Pennsylvania law, or a three-year statute of limitations under Delaware law.  Count V sets forth an unjust enrichment claim with either a four-year statute of limitations under Pennsylvania law, or a three-year statute of limitations under Delaware law.

very least, there are genuine issues of fact regarding the time this cause of action

accrued and whether any tolling doctrines serve to toll its running.  A cause of action

"accrues" for purposes of determining the relevant statutory limitations period "at

the time of the wrongful act."  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d

312, 319 (Del. 2004).  However, even after a cause of action accrues, the "running"

of the limitations period is tolled in certain circumstances.  *Id*.  Delaware law[8]

recognizes three circumstances in which a limitations period may be tolled:

> First, under the doctrine of inherently unknowable
> injuries, the statute of limitations will not run "where it
> would be practically impossible for a plaintiff to discover
> the existence of a cause of action." Second, under the
> doctrine of fraudulent concealment, tolling is appropriate
> "when a defendant has fraudulently concealed from a
> plaintiff the facts necessary to put him on notice of the
> truth." Third, under the doctrine of equitable tolling, the
> statute will not run "while a plaintiff has reasonably relied
> upon the competence and good faith of a fiduciary."

*Ausikaitis on behalf of Masimo Corporation v. Kiani*, 962 F.Supp.2d 661, 674 (D.

Del. 2013) (quoting *Tyson Foods Consol. S'holder Litig.*, 919 A.2d 563, 584-85

(Del. Ch. 2007)).  Where one of these exceptions exists, the statute of limitations

begins to run only "upon the discovery of facts 'constituting the basis of the cause

---

[8] Pennsylvania and Delaware law are essentially identical. *See Everwine v. Nemours Found.*, 2006 WL 891060, at *3 (E.D. Pa. 2006) (noting the absence of a material difference between Pennsylvania, Delaware, and New Jersey laws related to equitable tolling).

14

of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts." *Wal-Mart Stores*, 860 A.2d at 319.

Under the inherently unknowable injury exception, the statute will not run where plaintiff shows no objective or observable factors existed that would have put the plaintiff on inquiry notice of an injury. Instead, the plaintiff must be "blamelessly ignorant" of both the wrongful act and the resulting harm." *Tyson Foods,* 919 A.2d at 584-85. Further, equitable tolling applies even in the absence of actual concealment until the investor "knew or had reason to know of the facts constituting the wrong." *Id*. (citing *In re Dean Witter Partnership Litig*., 1998 WL 442456, at *6 (Del. Ch. 1998)).

Most applicable here is the fraudulent concealment doctrine, pursuant to which the statute of limitations may be disregarded when a defendant has fraudulently concealed the facts necessary to put the plaintiff on inquiry notice. *Id*. Plaintiff must show that: (1) the defendant "acted in an affirmative manner to conceal the cause of action from Plaintiff[]," and (2) the defendant knew about the alleged wrong." *Washington House Condominium Association of Unit Owners v. Daystar Sills, Inc*., 2017 WL 3412079, *18 (Del. Super. Ct. 2017). The "affirmative act" showing requires a plaintiff to allege an "actual artifice" by the defendant that "either

prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth." *Tyson Foods Inc.,* 919 A.2d at 585.

The question of whether tolling is warranted is fact-intensive. *Daniels v. Optek Tech., Inc*., 2012 WL 2026384, at *4 (Del. Super. Ct. 2012). Thus, courts are understandably reluctant to decide whether a tolling doctrine is applicable as a matter of law on a motion for summary judgment. *See, e.g., Whittington v. Dragon Group L.L.C*., 2008 WL 4419075, at *6 (Del. Ch. 2008); *Council of Unit Owners of Sea Colony East v. Carl M. Freeman Associates, Inc*., 1988 WL 130461, at *1 (Del. Super. Ct. 1988).

Here, the record is replete with evidence that KCF and Billingsley fabricated the KCF Notes and related PPM, Subscription Agreement, and Note Purchase Agreements well after 2014. There are no contemporaneous documents even remotely suggesting Pavlis intended or understood that his $7,000,000 investment in Allwest was actually an investment in the then-nonexistent KCF, as Defendants contend. (*See* Counterstatement at ¶ 9.) Given the amount of the investment and the parties involved, one would expect to see some clear articulation and documentation of an agreement to this highly unusual "arrangement" whereby Pavlis was advancing millions of dollars to one entity (Allwest) on behalf of a completely different entity. And yet, there is not a single reference to this fabulist narrative among any of the contemporaneous documents, including the many emails

16

between Billingsley and Gary Miller, the CEO of Allwest.  Certainly there is no document signed by Pavlis agreeing to this arrangement.  (*Id.*)

Defendants would have us believe that Pavlis was a "sharp and sophisticated man" whose "mental acuity did not diminish with age" and who "negotiated the terms of his investment in KCF over a period of months.  ((D.I. 80 at ¶¶ 5, 14.)  And yet, they also expect us to believe such an individual would not have a single draft, note, or other document (i) confirming the arrangement up front before he gave a single dollar to Allwest or (ii) reflecting his months-long "negotiations" over the KCF Notes and related documents.  At a minimum, these contradictory positions raise significant questions of fact as to whether Pavlis ever knew anything about the KCF Notes.

The evidence is also clear that Plaintiff did not reasonably become aware of any potential issue relating to Pavlis' investment until at the earliest November 2016, when Billingsley first provided her with a copy of the September Note.  (Counterstatement at  ¶ 15).  Prior to that point, she was of the belief Pavlis had invested in Allwest, which was consistent with the fact that the Allwest Subscription Agreement was the only document in Pavlis' possession.  (*Id.*)

Given the foregoing, it is astounding Defendants would suggest that there are no issues of material fact.  Indeed, the record strongly suggests Pavlis was defrauded, KCF and Billlinglsey actively misled Pavlis and Plaintiff alike, and

17

Plaintiff's claims did not accrue until November 2016, at the earliest. (*Id.* at ¶¶ 9-10, 13-15). Defendants are not entitled to summary judgment on any claims.

### E. Defendants are Not Entitled to Summary Judgment on the Estate's Fraud and Fraudulent Concealment Counts

Defendants are not entitled to summary judgment on Plaintiff's common law fraud or fraudulent concealment claims because there exist genuine issues of material fact. Under Delaware law,[9] the elements of common law fraud include: "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damages to the plaintiff as a result of such reliance." *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). "Fraud does not consist merely of overt misrepresentation, but may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak." *Id.* (internal quotations omitted). The elements of fraudulent concealment are substantially similar to those of common law fraud under Delaware law. *See DCV Holdings, Inc. v. Conagra, Inc.*, 2002 WL 508343, at *9 (Del. Super. Ct. 2002).

---

[9] As outlined by Defendants, Pennsylvania law is substantially similar regarding the elements of a cause of action for common law fraud. (*See* D.I. 79 at 18.)

In fraud cases, a defendant's knowledge that its misrepresentation was false is often proven by circumstantial evidence. *See ITW Global Investments Inc. v. American Indus. Partners Capital Fund IV, L.P.*, 2017 WL 1040711, at *8 (Del. Super. Ct. 2017). Thus, where the non-movant adduces sufficient circumstantial evidence to demonstrate a genuine dispute, summary judgment must be denied. *See ABRY Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1051, 1064 (Del. Ch. 2006) (considering circumstantial evidence, including the motive and opportunity of defendant to misrepresent facts, to reach conclusion that summary judgment was not appropriate). When a "disputed fact is related to motive, intention, or another subjective matter, summary judgment is ordinarily inappropriate." *In Matter of Appraisal of Enstar Corp.*, 1989 WL 11139, at *6 (Del. Ch. 1989) (denying summary judgment because the record demonstrated disputed facts as to whether plaintiff engaged in fraud). Further, "[i]f a matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate." *Cerbus Intern., Ltd. v. Apollo Management, L.P.*, 794 A.2d 1141, 1150 (Del. 2002).

As noted above, there is considerable evidence KCF engaged in fraud and fraudulent concealment of material facts relating to Pavlis' Allwest investment and KCF's misappropriation of those funds. Among other things:

- Defendants have not produced a single document to support their narrative that Pavlis merely advanced funds to Allwest on KCF's behalf. There are

19

no contemporaneous documents suggesting that either KCF Note was presented to Pavlis or that anyone discussed the Notes with Pavlis.  (*See* Counterstatement at ¶ 9).

- The Notes and corresponding Note Purchase Agreements were purportedly signed by Silberman as KCF's "Executive Vice President."  Silberman never worked for KCF; according to KCF's sole Member, KCF had no officers or employees at all.  Silberman himself has denied ever having any affiliation with KCF.  (*Id.*)

- In December 2014, after KCF purportedly issued the Notes, Billingsley prepared a promissory note to reflect Pavlis' May 2014 investment of $6,000,000 in Allwest.  It makes no sense for Billingsley to have prepared—and Allwest to have signed—the Allwest Note *after* the KCF Notes were issued.  There is no reference to this arrangement among the many contemporaneous email communications between Billingsley and Allwest's CEO, Gary Miller.  (*Id.*)

- Pavlis' alleged signatures on the Note Purchase Agreements is also suspect.  The signatures appear to be entirely independent of the Agreements, are in a different font than the Agreements, and purport to identify "Investors" with a title, instead of simply identifying Pavlis as the sole investor.  It also bears noting that neither Agreement had the "Form of Note" attached as an Exhibit.  (*Id.*)

- Neither the KCF Notes nor any related documents were among Pavlis' papers, despite the fact that he kept all of his financial documents in his apartment.

20

Rather, the only document found among his papers and files was the Allwest Subscription Agreement and Investor Questionnaire relating to Pavlis' initial $1,000,000 investment in Allwest.  (*Id.*)

- The evidence confirms the PPM and Subscription Agreement that KCF produced are fraudulent and were created years after the fact. (*Id.* at ¶ 13).

Given the many factual issues arising out of KCF's conduct, and the clear suggestion of fraud and fraudulent concealment, summary judgment is inappropriate.

## F.   The Estate is Entitled to Summary Judgment Because KCF was Unjustly Enriched by Pavlis' Investment

Finally, Defendants contend they are entitled to summary judgment on Plaintiff's unjust enrichment claim, asserting that the alleged existence of a contract governing the parties' relationship.  Defendants again ignore the central thrust behind Plaintiff's claims –the KCF Notes and Note Purchase Agreements are, at best, void and unenforceable, but given the evidence, almost certainly fraudulent. Typically, "[i]f a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiffs' rights and any claim of unjust enrichment will be denied." *LVI Group Investments, LLC v. NCM Group Holdings, LLC*, 2018 WL 1559936, at *16 (Del. Ch. 2018).  However, when a plaintiff alleges "it is the [contract] itself, that is the unjust enrichment, the existence of the contract

21

does not bar the unjust enrichment claim." *Id*.  Thus, where a contract arises from "Defendants' fraud, the existence of the contract does not bar the unjust enrichment claim." *Id*.

Given that the evidence overwhelmingly suggests KCF never issued the Notes and related documents to Pavlis, Defendants are not entitled to summary judgment.

22

## V.        <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff requests the Court deny Defendants' Motion for Summary Judgment and grant her Motion for Partial Summary Judgment for the reasons set forth at length therein.

STRADLEY RONON
STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Fax: (302) 295-4801
Email: jpolesky@stradley.com

*Attorneys for Plaintiff, Deborah
S. Skeans, Executrix of the Estate
of Frank E. Pavlis*

OF COUNSEL:

William E. Mahoney, Jr. (*pro hac vice*)
Spencer R. Short (*pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

Dated: August 31, 2020