**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS,<br><br>                    Plaintiff,<br>          v.<br>KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC<br><br>                    Defendants. | No. 1:18-cv-01516-CFC |
| JUSTIN BILLINGSLEY and KEY COMMERCIAL FINANCE, LLC,<br><br>                    Third-Party Plaintiffs,<br>          v.<br>DEBORAH S. SKEANS and DARBIN SKEANS,<br><br>                    Third-Party Defendants. | |

**SUPPLEMENTAL APPENDIX TO REPLY BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

OF COUNSEL:
William E. Mahoney, Jr. (*pro hac vice*)
Spencer R. Short (*pro hac vice*
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Dated: September 8, 2020

Joelle E. Polesky (ID No. 3694)
STRADLEY RONON STEVENS
& YOUNG, LLP
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Tel: (302) 295-4856
Email: jpolesky@stradley.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **Exhibit 1** | Last Will and Testament of Frank E. Pavlis | **SA1** |
| **Exhibit 2** | Revocable Agreement of Trust of Frank E. Pavlis | **SA7** |
| **Exhibit 3** | Confirmation Regarding the Frank E. Pavlis Revocable Trust | **SA21** |
| **Exhibit 4** | April 29, 2020 Deposition of Deborah S. Skeans | **SA24** |
| **Exhibit 5** | Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories | **SA35** |

# EXHIBIT 1

**SA1**

# LAST WILL AND TESTAMENT

I, FRANK E. PAVLIS, of Lehigh County, Pennsylvania, declare this to be my Will and revoke all prior Wills and Codicils.

Paragraph FIRST:    Cremation; Tangible Personal Property; Confirmation of Beneficiary Designations.

(a)    I have selected and prepaid the Robert C. Weir Funeral Home to supply certain funeral goods and services including the local cremation of my remains, and I desire that a portion thereof be buried in the Michigan Cemetery -- Pavlis Family Plot.

(b)    I give all tangible personal property (including automobiles but not including any such property held in the Trust referred to in Paragraph SECOND) owned by me at my death and all insurance policies on such property to JAH-JIREH HOMES OF AMERICA ("JJHA" -- or its successor), if it is then in existence, for its Small House Project in Salisbury Township, Allentown, Pennsylvania.

(c)    I confirm that all of my beneficiaried financial or other assets passing to the various charitable institutions at my death shall pass to the beneficiary so designated.

Paragraph SECOND:    Residue.

I give the residue of my estate to whoever is Trustee of my Revocable Agreement of Trust dated December 2, 2002, as amended, to be held and distributed under the terms of said Agreement and all valid future amendments thereto.



EXHIBIT
D-3
4/29/2020 CG

A-205

CONFIDENTIAL

P-003904

Paragraph THIRD: Spendthrift Provision.

Until distributed, no gift or beneficial interest shall be subject to anticipation or to voluntary or involuntary alienation.

Paragraph FOURTH: Death Taxes.

All death taxes (and interest and penalties thereon) imposed as a result of my death upon any property passing under my Will shall be paid as provided in my Revocable Trust referred to in Paragraph SECOND above.

Paragraph FIFTH: Administrative Powers.

My Executor shall have the following powers in addition to those conferred by law until all property is distributed:

(a) To retain any personal property in the form in which it is received.

(b) To sell at public or private sale for cash and/or credit, to exchange, and to lease for any period of time, any personal property and to give options for such sales, exchanges or leases.

(c) To hold property unregistered or in the name of a nominee.

(d) To distribute in cash, in kind, or partly in each, and to cause any share to be composed of cash, property, or undivided fractional shares in property different in kind from any other share.

(e) To sell personal property to the Trustee of the Agreement of Trust referred to in Paragraph SECOND (or any other trust of which I am a grantor) and to borrow from any such Trustee upon terms and conditions deemed advisable, even if an Executor hereunder is also a Trustee of any such Trust.

(f) To compromise claims by or against my estate, including but not limited to tax issues and disputes, without order of court or consent of any legatee.

-2-

SA2

CONFIDENTIAL

A-206

P-003905

        (g)     To apply expenses of my estate permitted as income tax or estate tax deductions and to value my estate for estate tax purposes by any method permitted without adjusting between income and principal for any effect thereon.

        (h)     To disclaim any interest in property without court approval.

        (i)     If a corporate Executor is not then providing the applicable service, to employ accountants, agents, investment counsel (with, if deemed advisable by my Executor, discretionary authority), brokers, or a bank or trust company to perform services for and at the expense of my estate and to carry or register investments in the name of the nominee of such agent, broker, bank or trust company.  The expenses and charges for such services shall be charged against principal or income or partly against each as my Executor may reasonably determine.  My Executor is expressly relieved of any liability or responsibility whatsoever for any act or failure to act by, or for following the advice of, such accountants, agents, investment counsel, brokers, bank or trust company, so long as my Executor exercises due care in their selection.  The fact that an Executor may be a member, shareholder or employee of any accounting, investment or brokerage firm, agent, or bank or trust company so employed shall not be deemed a conflict of interest.  Any compensation paid pursuant to this subparagraph shall not affect in any manner the amount of or the right of my Executor to receive commissions as my fiduciary.

Paragraph SIXTH:     Definitions.

        (a)     The words "Executor" and "Trustee" when used in this

Will shall include all genders and the singular and plural as the context may require.

        (b)     Paragraph headings of this Will are for reference only

and shall not affect the meaning, construction or effect of this Will.

Paragraph SEVENTH:     Executor.

        (a)     I appoint DEBORAH S. SKEANS and THE

GLENMEDE TRUST COMPANY Executors.

        (b)     My Executor shall not be required to post security in

any jurisdiction.

-3-

SA3

A-207

CONFIDENTIAL

(c)     Any Executor serving hereunder shall be compensated solely on an hourly basis (and in accordance with any writing relating thereto executed during my lifetime if such a writing exists).

Executed        ~~August 17~~        , 2016.

_____ (SEAL)
FRANK E. PAVLIS

SIGNED by FRANK E. PAVLIS as his Will, in our presence, who at his request, in his presence and in the presence of each other have signed as witnesses:

_____

_____
Lisa M. Mallinac

– 4 –

SA4

A-208

P-003907

COMMONWEALTH OF PENNSYLVANIA        :

                                         : SS

COUNTY OF LEHIGH                    :


       I, FRANK E. PAVLIS, Testator, whose name is signed to the attached or foregoing

instrument, having been duly qualified according to law, do hereby acknowledge that I signed

and executed the instrument as my Last Will; that I signed it willingly; and that I signed it as my

free and voluntary act for the purposes therein expressed.


                                               _____
                                               FRANK E. PAVLIS


Sworn to and acknowledged before me this  17th  day of  August        , 2016.


                                             _____
                                             Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kathleen Piccolo, Notary Public
Upper Saucon Twp., Lehigh County
My Commission Expires June 16, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

-5-

SA5

A-209

P-003908

COMMONWEALTH OF PENNSYLVANIA       :
                                           : SS

COUNTY OF LEHIGH                         :

We, _Edward J. Lentz_ and _Lisa M Mallimaci_ , the witnesses whose names are signed to the attached or foregoing instrument, being duly qualified according to law, do depose and say that we were present and saw FRANK E. PAVLIS, the Testator, sign and execute the instrument as his Last Will and Testament; that he signed willingly and that he executed it as his free and voluntary act for the purposes therein expressed; that each of us in the hearing and sight of the Testator signed the Will as witnesses; and that to the best of our knowledge the Testator was at that time eighteen (18) or more years of age, of sound mind and under no constraint or undue influence.

_[signature]_

Sworn to and acknowledged before me this _17th_ day of _August_ , 2016.

_[signature]_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kathleen Piccolo, Notary Public
Upper Saucon Twp., Lehigh County
My Commission Expires June 16, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

-6-

A-210

CONFIDENTIAL

P-003909

# **<u>EXHIBIT 2</u>**

**SA7**

REVOCABLE AGREEMENT OF TRUST

I, FRANK E. PAVLIS, of Lehigh County, Pennsylvania, am transferring to myself and/or THE GLENMEDE TRUST COMPANY, as Trustee(s) (hereinafter "Trustee"), the property described in the attached Schedule, and I direct Trustee to hold said property and all other property added to this Trust by me or by others (hereinafter called "principal"), in Trust, and to distribute the principal and to pay the net income as follows:

Paragraph FIRST:   Lifetime Provisions; Living Trust For My Sole Benefit.

During my lifetime, I direct Trustee:

(a)     To pay the net income at least quarterly to me and to accumulate and add to principal as much of the net income as I may so direct.

(b)     To pay to me all or any part of the principal at anytime as often as I may direct.

(c)     If I am incapacitated, to apply directly for my benefit, as much of the net income and principal as my Trustee, in my Trustee's sole discretion, deems advisable for my welfare, comfort, support or for any other reason whatsoever.  The receipt of any payee of a payment for my benefit shall be a complete discharge to my Trustee.  Any net income not so distributed shall be accumulated and added to principal.

Paragraph SECOND: Powers Retained; Right to Amend or Revoke.

I shall have the following powers, exercisable whenever and as often as I may wish:

**SA7**

**SA8**

(a) To add other property to this Trust upon acceptance by my Trustee. In addition, other persons may add property to this Trust subject to such acceptance.

(b) To direct and control the retention, purchase or sale of stocks, bonds, securities and all other assets at any time forming a part of this Trust during my lifetime or until my incapacity. In following such directions, my Trustee shall be without liability to anyone for any act, matter, or thing done or omitted to be done by my Trustee, or from any loss in acting timely and correctly upon or in accordance with my instructions.

(c) To revoke or amend this Agreement of Trust (and/or any Memorandum or Exhibit hereto), in whole or in part, at any time or times, by written instrument, other than a Will, lodged with my Trustee; provided that the duties, powers and liabilities of my Trustee shall not be substantially increased without my Trustee's written consent.

Paragraph THIRD: Settlement of My Estate.

Upon my death, my Trustee may make such payments from the principal of the Trust, prior to its division, as my Trustee deems desirable to facilitate the settlement of my estate, and in the exercise of this power my Trustee may pay, in whole or in part, any or all of (i) my legally enforceable debts, (ii) my funeral and burial expenses and (iii) administration expenses in connection with my estate, even though they do not relate to property subject to this Trust. Neither the personal representatives of my estate nor any beneficiary of my estate shall be required to reimburse my Trustee for any such expenditures. However, no property which would be otherwise exempt from

**SA8**

**SA9**

inclusion in my estate for death tax purposes shall be used to make any payments

hereunder, and, notwithstanding any other provision of my Will or this Trust, no

payment under this Paragraph THIRD (or under Paragraph SEVENTH in regard to Death

Taxes) shall be made from any funds (or the income therefrom or the proceeds of any

reinvestment thereof) held in any qualified retirement plan, individual retirement account, or

annuity contract or custodial account described in Section 403(b) of the Internal Revenue

Code, or from any distributions from any such plan, contract or account.

Paragraph FOURTH: Distribution of Principal.

Upon my death, I direct my Trustee:

(a)   To distribute all articles of personal or household use

which are then owned by this Trust, including automobiles, and all insurance on that

property, to such persons as may be listed in a memorandum signed by me which

refers to this Trust and which may be amended from time to time.  In default of such

memorandum, or to the extent it does not effectively dispose of all such articles of

personal or household use, I direct that such items be sold on such terms and

conditions as Trustee deems advisable; the proceeds of sale shall be added to the

principal passing under this Paragraph FOURTH.

(b)   To distribute the entire remaining principal to the

charitable organizations then described in Sections 170 and 2055 (if the federal estate

tax remains in effect) of the Internal Revenue Code that are reflected on Exhibit "A"

of this Trust (such Exhibit is attached hereto and made a part hereof) in the shares, and

if applicable, for the purposes set forth therein; such Exhibit must be signed by me and

refer to this Agreement of Trust and may be amended from time to time.

**SA9**

**SA10**

Paragraph FIFTH:   Disclaimer.

If any person otherwise entitled to take hereunder (or such person's legal representative) files a written disclaimer, in whole or in part, with respect to any provision of this Trust with my Trustee within the period allowed by Section 2518 of the Internal Revenue Code, such person (i) shall be treated as having predeceased me for purposes of holding or distributing the disclaimed share, and (ii) shall not participate in any decision to pay or apply the income or principal of the disclaimed share to or for the benefit of any person hereunder, but such person shall not be treated as having predeceased me for purposes of holding, distributing or participating in any such decision under any provision to which the disclaimer does not extend.

Paragraph SIXTH:   Spendthrift Provision.

Until distributed, no gift or beneficial interest shall be subject to anticipation or to voluntary or involuntary alienation.

Paragraph SEVENTH:   Death Taxes.

All federal, state and other death taxes (and interest and penalties thereon) payable because of my death on any property then held under this Trust or on any insurance proceeds or other death benefits payable directly to my Trustee hereunder or on any property passing under my Will, but not otherwise, shall be paid out of the principal passing under Paragraph FOURTH prior to any division thereof as though they were administration expenses.  None of those taxes on the above property shall be charged against any other bequest or trust hereunder or any beneficiary, and no property which would be otherwise exempt from inclusion in my estate for death tax purposes shall be used to pay any death taxes under this paragraph.  This paragraph shall not apply to

**SA10**

**SA11**

generation-skipping taxes.

Paragraph EIGHTH: Administrative Powers.

My Trustee shall have the following powers in addition to those conferred by law until all property is distributed:

(a)     To retain any real or personal property (including stock of any corporate Trustee or of a company controlling it) in the form in which it is received.

(b)     To sell at public or private sale for cash and/or credit, to exchange, and to lease for any period of time, any real or personal property and to give options for such sales, exchanges, or leases.

(c)     To purchase all forms of property, including but not limited to stocks, bonds, notes and other securities (including stock of any corporate Trustee or of a company controlling it), common trust funds, insurance and real estate, or any variety of real or personal property, without being confined to so-called legal investments and without regard for the principle of diversification.

(d)     To purchase securities at a premium or discount and to charge such premium or credit such discount to principal or income.

(e)     To exercise any option arising from the ownership of any investment; to join in any recapitalization, merger, reorganization, liquidation, dissolution, consolidation or voting trust plan affecting any investment; to delegate powers with respect thereto; to deposit securities under agreements and pay assessments; to subscribe for stock and bond privileges; and generally to exercise all rights of security holders.

(f)     To hold property unregistered or in the name of a nominee.

(g)     To mortgage, divide, alter, repair and improve real property and generally to exercise all rights of real estate ownership.

(h)     To distribute in cash, in kind, or partly in each, and to cause any share to be composed of cash, property, or undivided fractional shares in property different in kind from any other share.

(i)     To compromise claims by or against the trust fund, including but not limited to tax issues and disputes, without order of court or consent of any party in interest and without regard for the effect of such compromise on any interest hereunder.

**SA12**

(j)     To borrow money and to pledge any real or personal property as security for the repayment thereof.

(k)     To buy real and personal property from the personal representatives of my estate, and to lend money to them upon such terms and conditions as my Trustee deems advisable, even if any of my personal representatives is also a Trustee of this Trust.

(l)     With respect to a principal share of the Trust vesting in a beneficiary who, in the opinion of my Trustee, is incapacitated by reason of age or illness (mental or physical) when such share vests in him or her:  to hold the share during his or her incapacity and to invest the share and all accumulations thereon; to apply so much of the income and principal as my Trustee deems advisable for such beneficiary's benefit for any reason without considering other funds available to him or her; and to deliver the balance of principal and income to the beneficiary at such time as he or she gains capacity.  In addition, at any time to pay the entire share to a Custodian or to the guardian of the estate of the incapacitated beneficiary to hold for his or her benefit.  The receipt of a guardian, Custodian, or such other person as may be selected by my Trustee to receive a distribution under this subparagraph shall be a full and complete discharge to my Trustee.

Paragraph NINTH:  Administrative Provisions.

(a)     A beneficiary's incapacity shall be determined solely by my Trustee.  The incapacity of a beneficiary who is also a Trustee shall be determined solely by the other Trustee.  No Trustee who is also a beneficiary hereunder, if incapacitated in the opinion of the other Trustee, shall participate in any decision to apply income or principal for his or her benefit.

(b)     No Trustee hereunder (except me) shall participate in any discretionary decision to pay income or principal to or for the benefit of himself or herself or any individual whom he or she is legally obligated to support.

(c)     The receipt of any payee of a payment for the benefit of an incapacitated beneficiary shall be a complete discharge to my Trustee.

**SA12**

**SA13**

Paragraph TENTH: Life Insurance.

To the extent that my life insurance policies are made payable to this Trust:

(a)     My Trustee is not required to pay premiums or charges on life insurance policies. My Trustee may settle disputes under such policies, but is not required to sue on such policies unless my Trustee holds funds hereunder out of which my Trustee may be reimbursed against all expenses of suit, including legal fees.

(b)     I release the life insurance companies from any responsibility to see to the execution of the trusts created by this Agreement of Trust or the application of the proceeds of the policies.

(c)     I reserve all rights now or hereafter vested in me under the life insurance policies subject hereto, including but not limited to the right to receive the proceeds of any policies which may mature and be payable before my death, the right to change beneficiaries, to borrow on the policies, to surrender policies and receive the cash value thereof, to assign and pledge the policies for any loan, and to receive the dividends and all other payments available to the insured.

Paragraph ELEVENTH: Definitions.

(a)     The words "Trustee" and "Custodian" when used in this Agreement of Trust shall include all genders and the singular and plural as the context may require.

(b)     The words "incapacitated" and "incapacity" when used in this Agreement of Trust shall refer to an inability to use funds by reason of age or illness (mental or physical). A person shall be considered incapacitated

**SA13**

hereunder if he or she has not attained age twenty-one (21).

(c)     Paragraph headings in this Agreement of Trust are used for reference only and shall not affect the meaning, construction or effect of this Agreement of Trust.

(d)     All references in this Agreement of Trust to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended or reenacted, and all corresponding provisions of any subsequent federal tax laws, and all regulations thereunder.

Paragraph TWELFTH: Custodian.

(a)     I appoint such individual or corporation (including a fiduciary serving hereunder) as is designated in writing by my Trustee as Custodian for any beneficiary hereunder who has not attained age twenty-one (21) at the time an interest is distributable outright to him or her, such appointment to be made under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act then in effect in:

1.     The jurisdiction in which I am domiciled at death, or

2.     The jurisdiction in which the beneficiary is domiciled, or

3.     The jurisdiction of an existing Uniform Act custodianship for the minor.

The selection among the foregoing shall be made by my Trustee, in my Trustee's absolute discretion.

(b)     If the applicable Uniform Act in the governing

**SA15**

jurisdiction permits the postponement of distribution to an age beyond age twenty-one (21) if so directed in the governing instrument, I hereby direct that distribution shall be postponed until the maximum age permissible under the Uniform Act.

Paragraph THIRTEENTH: Trustee.

(a)     Upon the first of the following events to occur:

1.     Such time as I am incapable of serving as Trustee as attested to in writing by my personal physician or other qualified medical authority, or

2.     My resignation as Trustee, or

3.     My death,

my corporate Trustee named above shall serve as sole Trustee hereunder (and if not previously accomplished shall retitle all assets in its name as sole Trustee).

(b)     Except as provided above, assets may be titled in this Trust in the name of either Trustee or both Trustees; provided, however, that the corporate Trustee shall not be held responsible for or have liability in connection with any assets titled solely in my name as Trustee, or have responsibility or liability for investment losses incurred on assets held in a sub-account designated unmanaged or passive, (but at my death, incapacity or resignation, such assets shall be retitled by my corporate Trustee in its name and at such point, my corporate Trustee's responsibilities shall commence as to those assets).

(c)     No Trustee taking office shall be liable in any way for the acts or omissions of any Trustee prior to such Trustee's assumption of office and shall have no duty to review the performance of a Trustee prior to that time.

**SA15**

**SA16**

(d)      Any corporate Trustee or Custodian serving hereunder shall receive compensation for its services hereunder in accordance with a fee agreement entered into between it and me during my lifetime, or if there is no such agreement, the corporate Trustee or Custodian shall receive compensation in accordance with its Schedule of Fees in effect from time to time during the period in which its services are performed.

(e)      My Trustee(s) shall not post security in any jurisdiction.

Paragraph FOURTEENTH:Situs; Applicable Law.

This Trust has been accepted by my Trustee in the Commonwealth of Pennsylvania; its situs shall be in that Commonwealth, and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of that Commonwealth.

Executed            $12/2/$            , 2002.

In the presence of:

_____                    _____(SEAL)
                                                           FRANK E. PAVLIS

                                                           Received and Accepted:

_Veronica L. Moyer_                          _____(SEAL)
                                                           FRANK E. PAVLIS, TRUSTEE

Attest:                                      THE GLENMEDE TRUST COMPANY, Trustee

_____   By: _____
                                                           GLENN A. DEIBERT
                                                           VICE PRESIDENT

**SA17**

COMMONWEALTH OF PENNSYLVANIA        :

                                         :     SS

COUNTY OF *Lehigh*                        :

       On the *2nd* day of *December* , 2002,

before me, a Notary Public, personally appeared FRANK E. PAVLIS, and in due form

of law acknowledged the above instrument to be his act and deed and desired that the

same might be recorded as such.

       WITNESS my hand and notarial seal.

*Kathleen Piccolo*
_____
Notary Public

Notarial Seal
Kathleen Piccolo, Notary Public
Upper Saucon Twp., Lehigh County
My Commission Expires June 16, 2006
Member, Pennsylvania Association Of Notaries

**SA17**

SA18

<u>SCHEDULE</u>

$1.00

**SA19**

**EXHIBIT "A" TO REVOCABLE AGREEMENT OF TRUST CREATED BY FRANK E. PAVLIS ON** *12/2/* **, 2002**

This is the Exhibit referred to in Paragraph FOURTH (b) of the above Trust.  I direct Trustee to distribute the following shares (or amounts) of the principal referred to in Paragraph FOURTH (b) to such of the following charitable organizations (or their successors) as are in existence at my death, provided that each such organization must then be an organization described in Sections 170 and 2055 (if the federal estate tax remains in effect) of the Internal Revenue Code:

    1.    The lesser of Twenty five (25%) percent thereof or One Million ($1,000,000) Dollars to UNIVERSITY OF MICHIGAN SCHOOL OF ENGINEERING, Ann Arbor, Michigan;

    2.    The lesser of Thirty-five (35%) percent thereof or One Million Five Hundred Thousand ($1,500,000) Dollars to MICHIGAN TECHNOLOGICAL UNIVERSITY, COLLEGE OF CHEMICAL ENGINEERING, Houghton, Michigan.

    3.    The balance thereof to WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., Brooklyn, New York;

    4.    If at my death any of these organizations (or its successor) is not in existence or is not described in Section 170 and, if applicable, Section 2055 of the Internal Revenue Code, as amended, the share distributable to it shall be distributed

**SA19**

**SA20**

proportionately to such of the other organization(s) as meet these requirements, or, if none of them does, to such one or more similar organization(s) as meet these requirements as the Trustee shall select.

Executed on ____ 12/2/ ____ , 2002

Witness:

_____

*Veronica L. Moyer*

_____
FRANK E. PAVLIS

Receipt Acknowledged:

_____
FRANK E. PAVLIS, TRUSTEE

THE GLENMEDE TRUST COMPANY, Trustee

By:_____
GLENN A. DEIBERT
VICE PRESIDENT

EXHIBIT "A"

**SA20**

# EXHIBIT 3

**SA21**

## CONFIRMATION REGARDING THE
## FRANK E. PAVLIS REVOCABLE TRUST

Attached is a copy of a 2014 Amendment in Full to Exhibit "A" of my Revocable

Agreement of Trust dated December 2, 2002, as amended.  I, FRANK E. PAVLIS, hereby

ratify and confirm that Exhibit in all respects.  However, I acknowledge that I may make future

lifetime gifts, in cash or in kind, to the charitable organizations listed on the attached amended

Exhibit "A", and any gifts that I make in the future to the Universities referred to in section 1

or 2 of the attached Exhibit shall be considered an advancement against their respective shares

or amounts thereunder, and the amounts the Universities receive at my death shall be reduced

accordingly.

This will also confirm to my co-Trustee, The Glenmede Trust Company, that, at this

time, I do not wish to transfer any assets of the Trust to Fidelity Investments or any other

financial institution.  However, I may instruct my co-Trustee to distribute assets in cash or in

kind to the Universities described on the attached Exhibit "A" as an advancement against their

bequests set forth on that Exhibit (or to Watchtower as a charitable gift during my lifetime).

Executed on _March 31_ , 2016.

Witness:

_____

_____

_____
FRANK E. PAVLIS

Receipt Acknowledged:

_____
FRANK E. PAVLIS, TRUSTEE

THE GLENMEDE TRUST COMPANY,
TRUSTEE

By: _____

**SA21**

**SA22**

2014 AMENDMENT IN FULL TO EXHIBIT "A" TO
REVOCABLE AGREEMENT OF TRUST CREATED BY FRANK E. PAVLIS
ON DECEMBER 2, 2002, AS AMENDED

This is the Exhibit referred to in Paragraph FOURTH (b) of the above Trust, and I

revoke all prior Exhibit "A's" (including those Exhibits that I signed on December 2,

2002 and on July 19, 2006, despite the reference to the 2006 Exhibit in my First Trust

Amendment dated August 13, 2008). I direct Trustee to distribute the following shares

(or amounts) of the principal referred to in Paragraph FOURTH (b) to such of the

following charitable organizations (or their successors) as are in existence at my death,

provided that each such organization must then be an organization described in Sections

170 and 2055 (if the federal estate tax remains in effect) of the Internal Revenue Code:

1.     The lesser of Fifteen (15%) percent thereof or One Million

($1,000,000) Dollars to the DEPARTMENT OF CHEMICAL ENGINEERING IN THE

SCHOOL OF ENGINEERING AT THE UNIVERSITY OF MICHIGAN, Ann Arbor,

Michigan;

2.     The lesser of Forty-five (45%) percent thereof or Three Million

($3,000,000) Dollars to the PAVLIS HONORS COLLEGE AT MICHIGAN

TECHNOLOGICAL UNIVERSITY, Houghton, Michigan.

3.     The balance thereof to WATCHTOWER BIBLE AND TRACT

SOCIETY, Brooklyn, New York;

**SA22**

**SA23**

4.      If at my death any of these organizations (or its successor) is not in existence or is not described in Section 170 and, if applicable, Section 2055 of the Internal Revenue Code, as amended, the share distributable to it shall be distributed proportionately to such of the other organization(s) as meet these requirements, or, if none of them does, to such one or more similar organization(s) as meet these requirements as the Trustee shall select.

Executed on _____August 1_____, 2014

Witness:

_____                    _____
                                                                    FRANK E. PAVLIS

_Karen Young_                                              Receipt Acknowledged:

                                                                    _____
                                                                    FRANK E. PAVLIS, TRUSTEE

                                                                    THE GLENMEDE TRUST COMPANY,
                                                                    TRUSTEE

                                                                    By: _____

EXHIBIT **SA23**

# <u>EXHIBIT 4</u>



Deposition of:
# Deborah S. Skeans

*April 29, 2020*

In the Matter of:

# Skeans v. Key Commercial Fnance, LLC et al.

Veritext Legal Solutions
800-462-2233 | calendar-de@veritext.com |

```
                                              Page 1

 1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE
 2
                         - - -
 3
     DEBORAH S. SKEANS,           :   CIVIL ACTION
 4   Executrix of the ESTATE      :   NUMBER
     OF FRANK E. PAVLIS,          :   1:18-cv-01516-
 5              Plaintiff,        :   CFC
               v.                 :
 6   KEY COMMERCIAL FINANCE,      :
     LLC, KEY COMMERCIAL          :
 7   FINANCE PROPERTIES, LLC,     :
     EQUITY PROS, LLC, and        :
 8   MOBILE AGENCY, LLC,          :
               Defendants.        :
 9
                         - - -
10
             Wednesday, April 29, 2020
11
                         - - -
12
13          Oral deposition of DEBORAH S.
14   SKEANS, taken remotely via Zoom, at 222 North
15   28th Street, Allentown, Pennsylvania  18104,
16   beginning at 9:32 a.m., reported
17   stenographically by Cheryl L. Goldfarb, a
18   Registered Professional Reporter, Notary
19   Public, and an approved reporter of the United
20   States District Court.
21                       - - -
22
             VERITEXT LEGAL SOLUTIONS
23             MID-ATLANTIC REGION
          1801 Market Street - Suite 1800
24        Philadelphia, Pennsylvania  19103
```

**SA26**

Page 2

```
 1   A P P E A R A N C E S :
 2
 3           STRADLEY RONON STEVENS & YOUNG, LLP
             BY:   WILLIAM E. MAHONEY, JR., ESQUIRE
 4                 CAMERON REDFERN, ESQUIRE
             2005 Market Street, Suite 2600
 5           Philadelphia, Pennsylvania  19103
             215.564.8000
 6           wmahoney@stradley.com
             credfern@stradley.com
 7           Representing the Plaintiff
             (Via Zoom)
 8
 9
             HALLORAN FARKAS & KITTILA, LLP
10           BY:   WILLIAM E. GREEN, JR., ESQUIRE
                   THEODORE A. KITTILA, ESQUIRE
11           5801 Kennett Pike, Suite C
             Wilmington, Delaware  19807
12           302.257.2011
             wg@hfk.law
13           tk@hfk.law
             Representing the Defendants
14           (Via Zoom)
15
                              - - -
16
17   A L S O   P R E S E N T :
18
             DARBIN SKEANS (Via Zoom)
19
             JUSTIN BILLINGSLEY (Via Zoom)
20
21                            - - -
22
23
24
```

**SA27**

```
                                               Page 3
 1                    I N D E X
 2                      - - -
 3   WITNESS:  DEBORAH S. SKEANS
 4   QUESTIONED BY:                        PAGE:
 5        MR. GREEN
 6                      - - -
 7               E X H I B I T S
 8   NUMBER     DESCRIPTION           MARKED FOR ID
 9
     D-1      Deborah Skeans, CCIM, MAI        16
10            Biography
11   D-2      Frank Edward Pavlis obituary     29
              in Morning Call
12
     D-3      Last Will and Testament          40
13            P-003904 through 003909
14   D-4      E-mail dated November 5, 2012    73
              P-000266
15
     D-5      Assignment of Note and           82
16            Convertible Promissory Note
              for $3 million, P-000092
17            through 000099
18   D-6      Two-page handwritten document    86
              P-000065 and 000066
19
     D-7      Letter dated March 6, 2015       88
20            P-000086
21   D-8      E-mails dated from September 26  92
              through October 1, 2017
22            P-001975 through 001977
23   D-9      E-mail dated July 14, 2016       112
              and attachment, KCF003845
24            through 003849
```

```
                                              Page 4

  1                     E X H I B I T S

  2     NUMBER    DESCRIPTION              MARKED FOR ID

  3
        D-10      E-mails dated July 14 and 18,      122
  4               2016 with attachment,
                  KCF003872 through 003876
  5
        D-11      E-mail dated September 17,         134
  6               2013, P-000561 through 000563

  7     D-12      E-mail dated June 8, 2014          139
                  P-000843
  8
        D-13      E-mail dated March 27, 2018        149
  9               P-002617 and 002618

 10                        - - -

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24
```

**SA29**

```
                                              Page 5

 1              DEPOSITION SUPPORT INDEX

 2

 3   DIRECTION TO WITNESS NOT TO ANSWER

 4   Page    Line        Page    Line

 5     51   20-23         131     4-9

 6    132    4-7          145   22-23

 7

 8

 9   REQUEST FOR PRODUCTION OF DOCUMENTS

10   Page    Line    Description

11   (None)

12

13

14   STIPULATIONS

15   Page    Line

16   (Pursuant to Federal Rules of Civil Procedure)

17

18

19   QUESTIONS MARKED

20   Page    Line    Question

21    130   17-19    "Well, sure.  Now, this is a

22                    member of the board that you

23                    don't want to talk about?"

24
```

**SA30**

DEBORAH S. SKEANS

```
                                              Page 6

  1                          - - -

  2                  DEBORAH S. SKEANS, after having

  3          been first duly sworn, was examined and

  4          testified as follows:

  5                          - - -

  6                  THE WITNESS:  I do.

  7                  THE COURT REPORTER:  Thank you

  8          very much.

  9                          - - -

 10                     EXAMINATION

 11                          - - -

 12   BY MR. GREEN:

 13          Q.      Good morning, Ms. Skeans.

 14          A.      Good morning.

 15          Q.      I'm going to go over the general

 16   ground rules.  I know you have watched at least

 17   three depositions.

 18                  Have you ever been deposed

 19   before?

 20          A.      Yes.

 21          Q.      When was that?

 22          A.      I think about ten years ago,

 23   there was a -- a matter in our office and there

 24   was a deposition.  And then about a year ago,
```

**SA31**

DEBORAH S. SKEANS

Page 7

```
 1   there was a commission dispute in our office
 2   with one of our agents, and I believe I spoke
 3   at that deposition.  I was certainly there.
 4           Q.      So was that two different
 5   depositions?
 6           A.      Two different ones.  One was ten
 7   years ago.  One was last year.
 8           Q.      Ten years ago, what was the case
 9   about?
10           A.      We had an agent in our office,
11   in our real estate office, that was a partner.
12   And he and another agent left our office.  And
13   there was a dispute about files.  And so there
14   was a deposition.  It never went to trial.  It
15   was resolved.  But there was a deposition in
16   that matter.
17           Q.      Got it.  Okay.  So you've done
18   this before and you know the general ground
19   rules?
20           A.      I believe so.
21           Q.      You're under oath.
22           A.      Yes.
23           Q.      You have to answer verbally.  We
24   have to try not to speak over each other.  The
```

DEBORAH S. SKEANS

```
                                         Page 8
 1    court reporter has to take down everything you

 2    say.

 3                 If I ask a question and you

 4    don't understand it, please let me know.  If

 5    you answer, I will assume you understand the

 6    question.

 7                 Do you understand so far?

 8         A.      Yes, I do.

 9         Q.      We can take breaks when you

10    want.  But if I've asked a question, I need to

11    you answer it before we take a break.

12                 Is there anything that would

13    prevent you from testifying truthfully today?

14         A.      No.

15         Q.      Are you on any medications that

16    could affect your ability to testify?

17         A.      No.

18         Q.      Did you do anything in

19    preparation for this deposition?

20         A.      I looked over a couple of pages

21    of my notes.

22         Q.      What notes are these?

23         A.      They were my original note when

24    I met -- when I was made power of attorney.  I
```

**SA33**

DEBORAH S. SKEANS

Page 60

1      Q.        Understood.  The $3 million note

2  is still in the litigation, though, yes?

3                MR. MAHONEY:  I'm sorry, Bill.

4       Finish your question.  I'm sorry.

5                MR. GREEN:  Oh, sure.

6  BY MR. GREEN:

7      Q.        The $3 million note is still a

8  subject of this litigation, though, yes?

9                MR. MAHONEY:  I'll object to the

10      extent it calls for a legal conclusion.

11                Deb, you can give your view.

12      A.        In my under -- to my

13  understanding, yes, it is.

14  BY MR. GREEN:

15      Q.        Does Watchtower know about this

16  litigation?

17      A.        Yes.

18      Q.        How does Watchtower know about

19  this litigation?

20      A.        They have been -- I informed

21  Watchtower of the difficulties I was having to

22  secure information concerning the monies that

23  were due them under the Will.  And they were

24  aware of our hiring of counsel.  They were

**SA34**

DEBORAH S. SKEANS

Page 61

1    aware of our preparation for litigation.

2         Q.        Was there anybody in particular

3    at Watchtower you spoke with?

4         A.        Initially, the attorney at the

5    charitable planning office was Erna Neufeld,

6    N-e-u-f-e-l-d.  Erna, unfortunately, passed

7    away from cancer a couple years ago.  And then

8    Christine Benham became the attorney that

9    primarily handled Frank's estate.  And Attorney

10   Rick Moake at Watchtower has been in

11   communication with me.  And I spoke very

12   briefly to one other attorney at Watchtower

13   during this whole period, and his name was John

14   Miller.

15        Q.        I guess I'll start at the end.

16                  What did you tell John Miller

17   about this litigation?

18        A.        John Miller and I had a phone

19   call.  And I was very concerned about the

20   conduct of Mr. Billingsley.  But I felt that it

21   was inappropriate to file litigation against a

22   Brother.  And we talked about that issue.

23        Q.        Why was it inappropriate to file

24   litigation against a Brother?

# **<u>EXHIBIT 5</u>**

**SA35**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS, *Plaintiff,* v. KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC, *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| JUSTIN BILLINGSLEY and KEY COMMERCIAL FINANCE, LLC, *Third-Party Plaintiffs,* v. DEBORAH S. SKEANS and DARBIN SKEANS, *Third-Party Defendants.* | ) ) ) ) ) ) ) ) ) ) |

C.A. No. 1:18-cv-01516-CFC

### DEFENDANTS KEY COMMERCIAL FINANCE, LLC'S REPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT KEY COMMERCIAL FINANCE, LLC

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules"), and the Scheduling Order entered in this matter on October 31, 2019 (the "Scheduling Order"), Defendant Key Commercial Finance, LLC ("KCF" or "Defendant") responds and objects to Plaintiff's First Set of Interrogatories Directed to Defendant Key Commercial Finance, LLC (the "Interrogatories," each an "Interrogatory") as follows:

### GENERAL OBJECTIONS

1.      Defendant objects to the Interrogatories, including any instruction or definition therein, to the extent that such Interrogatories, read alone or in connection with the instructions

1

**SA35**

To the best of Mr. Billingsley's memory, Mr. Billingsley (on behalf of KCF) and Mr. Pavlis met privately to discuss his investment in KCF in the living room of Mr. Pavlis' apartment in Allentown, Pennsylvania.

Prior to Mr. Pavlis making the initial $1 million investment with Allwest, on February 19, 2014, Mr. Pavlis, at the insistence of Mr. Billingsley, spoke with both his personal counsel (Ed Lentz, Esq.) and his investment advisors at Glenmede to discuss the investment. These conversations took place over a period of several weeks prior to the trip to the Wells Fargo branch.

On February 19, 2014, Mr. Billingsley traveled with Mr. Pavlis to the Wells Fargo branch in Allentown, Pennsylvania. Although Mr. Pavlis had been willing to write a check for the amount and not travel to the Wells Fargo branch to perform a wire, Mr. Billingsley insisted that the amount be wired from a branch so that adequate vetting could take place by Mr. Pavlis' personal banker.

While at the Wells Fargo branch on February 19, 2014, Mr. Pavlis met separately with his personal banker for approximately 1 hour to discuss the suitability of the investment. The personal banker was also assessing Mr. Pavlis' capacity to make the decision regarding the investment and approved Mr. Pavlis' investment based on his determination that Mr. Pavlis' had the ability to make the investment and understand the consequences of his actions. The $1 million investment was made into Allwest.

With respect to the $6 million investment, Mr. Pavlis wrote a $6 million check for investment in Allwest. Mr. Pavlis wrote the $6 million check on or about May 23, 2014. Mr. Billingsley sent the check from Allentown to Gary Miller at Allwest from a UPS store in Allentown, Pennsylvania.

To the best of Mr. Billingsley's memory, after Mr. Pavlis approved the transfer of the Allwest investments in the late summer and early fall of 2014 to KCF, the Promissory Notes and

## SA37

the Note Purchase Agreements were prepared.  Mr. Pavlis signed the Note Purchase Agreements on the dates noted in handwriting on the documents.

9.      Identify (i) the individual(s) who created, drafted, prepared and/or revised the Note Purchase Agreements, and (ii) when the Note Purchase Agreements were drafted, prepared and/or revised.

**ANSWER (i):** Subject to the General Objections, Defendant answers as follows:  Defendant objects to this interrogatory as vague and ambiguous to the degree that the question implies that the Note Purchase Agreement were revised or to the degree that the terms "created, drafted, [or] prepared" differs in any material manner.  Subject to the General Objections, Defendant answers as follows:  To the best of Mr. Billingsley's memory, Jeff Peterson and Justin Billingsley prepared the Note Purchase Agreements, and other draft note purchase agreements were prepared for prospective investors.  To the best of Mr. Billingsley's memory, the Note Purchase Agreements were based on forms prepared by Wilson Sonsini Goodrich & Rosati for Mobile Corporation.

**ANSWER (ii):** Subject to the General Objections, Defendant answers as follows:  Defendant refers to its answer in Interrogatory No. 8.

10.      State whether Michael Silberman signed the Note Purchase Agreements on behalf of KCF.  If so, please state:

g.   Whether Mr. Silberman's signature was an original signature or if it was electronically produced;

h.   The date upon which Mr. Silberman signed each of the Note Purchase Agreements;

i.   In what capacity Mr. Silberman signed the Note Purchase Agreements on behalf of KCF;

j.   Whether Mr. Silberman was employed or affiliated with KCF at the time of his signature, and if so, state his official role or title;

10

SA37