## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBORAH S. SKEANS, Executrix
of the ESTATE OF FRANK E.
PAVLIS,

              *Plaintiff*,

        v.

KEY COMMERCIAL FINANCE,
LLC, KEY COMMERCIAL
FINANCE PROPERTIES, LLC,
EQUITY PROS, LLC, and MOBILE
AGENCY, LLC

           *Defendants*.

No. 1:18-cv-01516-CFC-MPT

## JOINT PRETRIAL ORDER

Joelle E. Polesky (ID No. 3694)
Stradley Ronon Stevens & Young, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19810
Tel: (302) 295-4856
Email: jpolesky@stradley.com

*Attorneys for Plaintiff*

July 2, 2021

Theodore A. Kittila (ID No. 3963)
William E. Green (ID No. 4864)
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Tel: (302) 257-2025
Email: tk@hfk.law; wg@hfk.law

*Attorneys for Defendants*

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure. Trial is scheduled to begin on a date to be determined by the Court. In advance of the Pretrial Conference on a date to be determined by the Court, counsel for Plaintiff Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis ("Plaintiff" or "Estate of Pavlis") and Defendants Key Commercial Finance, LLC, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC (collectively "Defendants") submit this Joint Pretrial Order governing trial of this action pursuant to Fed. R. Civ. P. 16, D. Del. LR 16.3, the Scheduling Order entered by the Court on October 31, 2019, and the Court's April 15, 2021 bench rulings.

**Counsel for Plaintiff, Plaintiff Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis:**

Joelle E. Polesky (ID No. 3694)
Stradley Ronon Stevens & Young, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19810
Tel: (302) 295-4856
Email: jpolesky@stradley.com

OF COUNSEL:

William E. Mahoney, Jr. (*pro hac vice*)
Cameron Redfern (to be admitted *pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059

**Counsel for Defendants, Key Commercial Finance, LLC, Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC:**

Theodore A. Kittila (ID No. 3963)
William E. Green (ID No. 4864)
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Tel: (302) 257-2025
Email: tk@hfk.law; wg@hfk.law

## I.   Nature of the Action

### A.   The Parties

1.      Deborah S. Skeans is the Executrix of the Estate of Frank E. Pavlis. At all relevant times until his death on August 24, 2018, Frank E. Pavlis ("Mr. Pavlis") was a resident of Allentown, Pennsylvania. Mr. Pavlis' Estate is in the process of being probated in Lehigh County, Pennsylvania.

2.      Defendant Key Commercial Finance LLC ("KCF"), is a limited liability company organized under the laws of Delaware in December 2014, with a principal place of business located at 1511 Route 22, Suite 152, Brewster, New York, 10509.

3.      Defendant Key Commercial Finance Properties, LLC is a wholly-owned subsidiary of KCF and a limited liability company formed under the laws of Delaware, with a principal place of business located at 1511 Route 22, Suite 152, Brewster, New York, 10509.

4.      Defendant Equity Pros, LLC is a limited liability company formed under the laws of Connecticut, with a principal place of business located at 1511 Route 22, Suite 152, Brewster, New York, 10509.

5.      Defendant Mobile Agency, LLC is a wholly-owned subsidiary of KCF and a limited liability company formed under the laws of Delaware, with a principal place of business located at 1511 Route 22, Suite 152, Brewster, New York, 10509.

### B.      Nature of the Case

6.      On October 1, 2018, the Estate of Pavlis filed this action against Defendants seeking a declaratory judgment that two Notes purportedly issued by KCF on September 1, 2014 (in the amount of $3 million) (the "September 1, 2014 Note") and November 1, 2014 (in the amount of $4 million) (the "November 1, 2014 Note"), respectively, are void *ab initio* (Count I) and alleging common law fraud (Count II), fraudulent concealment (Count III), conversion (Count IV), and unjust enrichment (Count V).  (D.I. 1.)

7.      On September 24, 2019, this Court denied Defendants' Motion to Dismiss the Estate of Pavlis' declaratory judgment, common law fraud, fraudulent concealment, and unjust enrichment claims, but granted the motion as to the Estate of Pavlis' conversion claim. (D.I. 30.)

8.      Defendants filed their Answer on October 8, 2019. (D.I. 31.)

9.      On October 22, 2019, KCF and Justin Billingsley ("Mr. Billingsley"), a non-party to the underlying action, filed a Third-Party Complaint against Deborah Skeans and her husband, Darbin Skeans, (together, the "Skeanses") in their individual capacities. (D.I. 35.)

10.     On December 6, 2019, the Skeanses filed a Motion to Dismiss the Third-Party Complaint, which this Court granted and dismissed the Third-Party Complaint in its entirety.[1] (D.I. 48, 77.)

11.     On August 17, 2021, the parties each filed their respective Motions for Summary Judgment. (D.I. 78, 82.) On November 2, 2020, this Court denied the Estate of Mr. Pavlis' Motion for Partial Summary Judgment. (D.I. 95.) On April 5, 2021, this Court denied Defendants' Motion for Summary Judgment. (D.I. 101.)

12.     On April 15, 2021, this Court granted the Estate of Pavlis' Motion to Supplement the Complaint to add a claim for breach of contract based on allegations that Defendants failed to return the Estate of Pavlis' $4,000,000 investment and corresponding interest when it came due on November 1, 2020, pursuant to the terms of the November 1, 2014 Note. (D.I. 102.)

13.     Defendants answered the Supplemental Complaint on April 29, 2021. (D.I. 103.)

---

[1]   To avoid potential confusion, the parties have agreed to remove the reference to the Third-Party Complaint from the caption on this Pre-Trial Order and other filings going forward.

C.      **Claims to be Litigated at Trial**

    1)      **Declaratory Judgment**

14.      The Estate of Mr. Pavlis alleges that the September 1, 2014 Note and the November 1, 2014 Notes (together, the "KCF Notes"), allegedly purchased by Mr. Pavlis pursuant to corresponding Note Purchase Agreements, are void *ab initio* because (i) at the time KCF allegedly issued them, KCF was not a validly organized and existing Delaware limited liability company, and (ii) the KCF Notes and corresponding Note Purchase Agreements were purportedly executed by a Michael Silberman, who never had an affiliation with KCF or any authority to issue the KCF Notes.  The Estate of Mr. Pavlis seeks a judgment declaring the KCF Notes void and ordering Defendants to repay, as restitution, Mr. Pavlis' full $7,000,000.

15.      Defendants state that Plaintiff is not entitled to the relief sought in Count I because:  (a) Plaintiff does not own and otherwise has no standing with respect to the September 1, 2014 Note (for $3 million) since this note transferred on death to nonparty Watchtower Bible and Tract Society (which is the real party in interest); (b) the "void *ab initio*" doctrine is not a recognized cause of action under Delaware law; (c) KCF was a *de facto* limited liability company at the time it issued both of the Notes; (d) Plaintiff is estopped from denying KCF's corporate existence; (e) Delaware law permits the delegation of a limited liability company's management duties, and the execution by

- 6 -

Silberman had no impact on the validity of the Notes; (f) Plaintiff cannot establish that Mr. Pavlis did not intend to invest in KCF; (g) Plaintiff's claim is time-barred because more than 3 years passed between the issuance of the Notes and the filing of this litigation.  Finally, Plaintiff has not stated any claims as to liability regarding Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC, and no basis to pierce the corporate veil can be established.

### 2) Fraud

16.    The Estate of Mr. Pavlis alleges that the Defendants defrauded it out of $7,000,000 by (i) misrepresenting, through Mr. Billingsley, that Mr. Pavlis was investing in Allwest Investments, LLC ("Allwest") when in reality his funds were going to KCF, (ii) orchestrating the transfer of Mr. Pavlis' $7,000,000 investment from Allwest to KCF, (iii) issuing the fraudulent KCF Notes when KCF was not yet a legal entity, and (iv) creating fraudulent documents to legitimize the scheme, including the Funding Agreement between KCF and Allwest on September 20, 2016 which purports to substantiate the misappropriation of Mr. Pavlis' Allwest investment in January 2014. The Estate of Mr. Pavlis seeks $7,000,000 in compensatory damages, in addition to punitive damages, attorneys fees, costs, and such further relief in law or equity as this Court deems just and proper.

17.    Defendants state that Plaintiff is not entitled to the relief sought in Count II because:  (a) Plaintiff does not own and otherwise has no standing with respect to the

September 1, 2014 Note (for $3 million) since this note transferred on death to nonparty Watchtower Bible and Tract Society (which is the real party in interest); (b) Plaintiff cannot establish that Mr. Pavlis did not intend to invest in KCF; (c) Plaintiff cannot establish that any documents were created fraudulently; (d) KCF was a *de facto* limited liability company at the time it issued both of the Notes; (e) Plaintiff is estopped from denying KCF's corporate existence; (f) Delaware law permits the delegation of a limited liability company's management duties, and the execution by Silberman had no impact on the validity of the Notes; (g) Plaintiff's claim is time-barred because more than 3 years passed between the issuance of the Notes and the filing of this litigation. Finally, Plaintiff has not stated any claims as to liability regarding Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC, and no basis to pierce the corporate veil can be established.

### 3) Fraudulent Concealment

18.    The Estate of Mr. Pavlis alleges that Defendants concealed their fraudulent acts by disguising their frauds as multi-year or long-term investments, obscuring the details of the alleged investments when Mr. Pavlis' representatives first began to inquire about them in 2016, and refusing to turn over documentation related to the investments. The Estate of Mr. Pavlis seeks $7,000,000 in compensatory damages, in addition to punitive damages, attorneys' fees, costs, and such further relief in law or equity as this Court deems just and proper.

19.    Defendants state that Plaintiff is not entitled to the relief sought in Count III because:  (a) fraudulent concealment is a tolling doctrine rather than a substantive cause of action; (b) to the extent fraudulent concealment constitutes a substantive cause of action, Count III is duplicative of Count II; (c) Plaintiff does not own and otherwise has no standing with respect to the September 1, 2014 Note (for $3 million) since this note transferred on death to nonparty Watchtower Bible and Tract Society (which is the real party in interest); (d) Plaintiff cannot establish that Mr. Pavlis did not intend to invest in KCF; (e) Plaintiff cannot establish that any documents were created fraudulently; (f) KCF was a *de facto* limited liability company at the time it issued the Notes (g) Plaintiff is estopped from denying KCF's corporate existence; (h) Plaintiff is not the true party in interest; (i) Plaintiff's claim is time-barred; (j) Defendants had no duty to provide information to Plaintiff in 2016, as Plaintiff was not a party to Mr. Pavlis' investments. Finally, Plaintiff has not stated any claims as to liability regarding Key Commercial Finance Properties, LLC, Equity Pros, LLC, and Mobile Agency, LLC, and no basis to pierce the corporate veil can be established.

### 4) Breach of Contract

20.    The Estate of Mr. Pavlis alleges that, pursuant to the terms of the November 1, 2014 Note related to Mr. Pavlis' purported $4,000,000 investment in KCF, all unpaid principal and accrued interest on the Note was due to the Estate of Mr. Pavlis as of November 1, 2020 and KCF's failure to return the $4,000,000 investment with

corresponding interest constitutes a breach of its terms. The Estate of Mr. Pavlis seeks $4,000,000 in compensatory damages, along with interest to be calculated pursuant to the terms of the November 1, 2014 Note and Note Purchase Agreement.

21.     Defendants state that Plaintiff is not entitled to the relief sought in Count IV under the principles of impracticability, frustration of purpose, and performance prevented by a party to the contract.

### 5) Unjust Enrichment

22.     The Estate of Mr. Pavlis alleges that Defendants improperly and fraudulently obtained possession of Mr. Pavlis' $7,000,000 investment in Allwest, without Mr. Pavlis' knowledge or consent, and Defendants continue to maintain control over the funds and to use them for their own purposes without any legally justifiable basis for doing so. The Estate of Mr. Pavlis seeks $7,000,000 as restitution.

23.     Defendants state that Plaintiff is not entitled to the relief sought in Count V because Plaintiff cannot establish the elements of unjust enrichment and because the parties' relationship is governed by contract.  Additionally, Plaintiff does not own and otherwise has no standing with respect to the September 1, 2014 Note (for $3 million) since this note transferred on death to nonparty Watchtower Bible and Tract Society (which is the real party in interest).

II.     **Jurisdiction**

24.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

25.     This Court also has jurisdiction over the Estate of Mr. Pavlis' request for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgment Act.

III.    **Facts**

     A.     **Joint Statement of Uncontested Facts**

26.     Mr. Pavlis died on August 24, 2018 at the age of 101. (D.I. 80 ¶ 5, D.I. 88 ¶ 5).  Mr. Pavlis was the first employee of Air Products and Chemicals, Inc., and at various times served as its Chief Engineer, Treasurer, Vice President Engineering, Vice President Finance, and Vice President International/World Trade, and served on its Board of Directors for 28 years.  (D.I. 80 ¶ 5, D.I. 88 ¶ 5).

27.     Mr. Pavlis was first introduced to Mr. Billingsley in 2012 by Deborah Skeans and her husband, to help facilitate a donation by Mr. Pavlis to Jah-Jireh Homes of America – Allentown ("Jah-Jireh"), a non-profit entity that the Skeanses helped create and which developed a facility where Mr. Pavlis and other elderly individuals eventually lived .  (D.I. 80 ¶ 6, D.I. 88 ¶ 6).  At the time, Mr. Pavlis was a 95 year old widower living in Allentown, Pennsylvania.  (*See* D.I. 84 ¶ 1, D.I. 87 pg. 2.)

28. Throughout 2012 and 2013, Mr. Billingsley befriended Mr. Pavlis and acted as a financial manager to him, during which time Mr. Billingsley became familiar with Mr. Pavlis' financial situation. (*See* D.I. 80 ¶ 7, D.I. 84 ¶ 3, D.I. 87 pg. 3, D.I. 88 ¶ 7.)  Mr. Billingsley did not serve Mr. Pavlis in a fiduciary capacity, but acted as a financial manager or informal advisor.  (D.I. 80 ¶ 7, D.I. 88 ¶ 7).  Mr. Billingsley also helped facilitate a loan from Mr. Pavlis to the charter school the Skeanses grandchildren attended.  (D.I. 80 ¶ 8, D.I. 88 ¶ 8).

29. Based on the relationship Mr. Billingsley developed with Mr. Pavlis, among other investment opportunities, Mr. Billingsley discussed with Mr. Pavlis an investment in an entity known as Allwest Investments, LLC ("Allwest"). (*See* D.I. 84 ¶ 4, D.I. 87 pg. 3.)

30. Allwest was formed in 2011 by Gary Miller ("Mr. Miller"), who Mr. Billingsley met through their shared religious affiliation. Allwest was a real estate venture that purchased distressed residential properties, rehabilitated them, and either sold or rented the renovated properties for a profit. In early 2014, Mr. Billingsley approached Mr. Miller about working with investors. (*See* D.I. 84 ¶ 5, D.I. 87 pg. 3.)

31. Mr. Pavlis was one of those investors. On January 28, 2014, Mr. Pavlis signed an Allwest Subscription Agreement, under which Mr. Pavlis agreed to invest $1,000,000 in a two-year note issued by Allwest. (*See* D.I. 84 ¶ 5, D.I. 87 pg. 3.)

- 12 -

32.    In 2014, Mr. Pavlis was competent to make his own investment decisions and decisions regarding his finances.  (D.I. 80 ¶ 11, D.I. 88 ¶ 11).

33.    On February 20, 2014, Mr. Pavlis gave Mr. Billingsley a cashier's check for $1,000,000 that Mr. Billingsley sent to Allwest. (*See* D.I. 102 ¶ 144, D.I. 103 ¶ 144.)

34.    Mr. Pavlis invested an additional $6,000,000 in Allwest several months later. On May 20, 2014, Mr. Pavlis signed another Allwest Subscription Agreement, confirming his intent to invest $6,000,000 in Allwest two-year Notes. Three days later, on May 23, 2014, Mr. Pavlis wrote a personal check made payable to "Allwest Investments" and Miller deposited the check in Allwest's bank account. (*See* D.I. 84 ¶ 6, D.I. 87 pg. 4.)

35.    Allwest received these additional funds without issuing a corresponding promissory note. (*See* D.I. 84 ¶ 7, D.I. 87 pg. 4.)

36.    On December 1, 2014, Mr. Billingsley sent Mr. Miller a draft Allwest Promissory Note in favor of Mr. Pavlis. Following revisions, Mr. Miller signed the Allwest Promissory Note on December 16, 2014. (*See* D.I. 84 ¶ 8, D.I. 87 pg. 4.)

37.    On December 10, 2014, George Chadwick Self filed a certificate of formation for Defendant Key Commercial Finance LLC, a single member-managed limited liability company under Delaware law. (*See* D.I. 84 ¶ 10, D.I. 87 pg. 5.)

38.    According to KCF's Operating Agreement, "management of the business [was] invested in the Member," Mr. Self. (*See* D.I. 84 ¶ 12, D.I. 87 pg. 6.)

39.     Between December 2014 and May 2018, Allwest transferred $6,000,000 of Mr. Pavlis' investment funds to KCF. (*See* D.I. 84 ¶ 16, D.I. 87 pg. 8.) Allwest also transferred KCF title to six properties valued at roughly $1,000,000, that Allwest had purchased with Mr. Pavlis' funds. (*Id.*)

40.     KCF purportedly issued the KCF Notes to Mr. Pavlis.  The KCF Notes purportedly were accompanied by corresponding Note Purchase Agreements. (*See* D.I. 84 ¶ 17, D.I. 87 pg. 9.) The KCF Notes are dated September 1, 2014 and November 1, 2014, respectively. (*Id.*)

41.     The first Note is dated September 1, 2014. On its face, the September 1, 2014 Note relates to a $3,000,000 investment that Mr. Pavlis allegedly made in KCF. (*See* D.I. 84 ¶ 18, D.I. 87 pg. 9.) The September 1, 2014 Note matured on September 1, 2019. (D.I. 80 ¶ 9, D.I. 88 ¶ 9.)

42.     The second Note is dated November 1, 2014. On its face, the November 1, 2014 Note relates to a $4,000,000 investment that Mr. Pavlis allegedly  made in KCF. (*See* D.I. 84 ¶ 19, D.I. 87 pg. 9.) The November 1, 2014 Note matured on November 1, 2020. (D.I. 102 ¶ 175, D.I. 103 ¶ 175)

43.     On September 19, 2017, Mr. Pavlis signed an Assignment of Note, which transferred Mr. Pavlis' interests in the September 1, 2014 Note to "Frank E. Pavlis TOD Watchtower Bible and Tract Society of New York."  (D.I. 80 ¶ 16, D.I. 88 ¶ 16).  The

- 14 -

September 1, 2014 Note was transferred directly to Watchtower Bible and Tract Society upon Mr. Pavlis' death and is not part of the Estate. *Id.*

44.     Jah-Jireh is also a beneficiary of Mr. Pavlis' Will.

45.     Both the KCF Notes and their corresponding Note Purchase Agreements bear the signature of Michael Silberman as its "Executive Vice President." (*See* D.I. 84 ¶ 20, D.I. 87 pg. 10.)

46.     Mr. Self, KCF's sole Member, never made Mr. Silberman Executive Vice President of KCF, and he never heard of anyone referring to Mr. Silberman as such. (*See* D.I. 84 ¶ 20, D.I. 87 pg. 10.)

**B.     Plaintiff's Statements of Contested Facts to be Litigated at Trial**

47.     Following Mr. Pavlis' $7,000,000 investment in Allwest, Mr. Billingsley developed a scheme to transfer the $7,000,000 that Mr. Pavlis previously invested in Allwest to KCF, an entity which Mr. Billingsley controlled. (*See* D.I. 84 ¶ 9.)

48.     Mr. Billingsley and Mr. Self first discussed forming KCF after Mr. Self moved from North Carolina to New York in late November 2014. (*See* D.I. 84 ¶ 11.) Mr. Self also prepared KCF's formation documents after he arrived in New York. (*Id.*)

49.     Mr. Self, as Key Commercial's sole Member, was the only person with authority to execute promissory notes on its behalf. (*Id.* at ¶ 13.)

50.     Michael Silberman was never an employee of Key Commercial and he was never authorized to sign any promissory notes on its behalf. Mr. Silberman had no role whatsoever at Key Commercial. (*Id*. ¶ 15.)

51.     Just after KCF's formation, Mr. Billingsley approached Mr. Miller with the idea of transferring Mr. Pavlis' $7,000,000 investment in Allwest to KCF. (*Id*. at ¶ 14.)

52.     Mr. Miller agreed to transfer Mr. Pavlis' $7,000,000 investment to KCF and in December 2014, Mr. Miller began doing so without any documentation indicating Mr. Pavlis was aware of or approved the transfer of his Allwest investment to KCF. (*Id*. at ¶ 15.)

53.     At no time did Mr. Pavlis authorize the transfer or re-direction of his Allwest investment to KCF or any other entity. (D.I. 102 ¶ 86.) Nor was Mr. Pavlis made aware that his Allwest investment had been commandeered by KCF and Mr. Billingsley. (*Id*.)

54.     Apart from the Allwest Subscription Agreement relating to Mr. Pavlis' $1,000,000 investment in early 2014, neither Allwest, KCF, nor Mr. Billingsley ever provided Mr. Pavlis with any documentation reflecting his investments in Allwest or the subsequent transfer of his investment to KCF. (*Id*. at ¶ 87.)

55.     KCF never provided Mr. Pavlis with the KCF Notes or Note Subscription Agreements, nor did it provide him with any other documents relating to any purported investments in KCF. (*Id*. ¶ 113.)

56.     Any existing documents purporting to legitimize an investment by Mr. Pavlis in KCF were fraudulently created by Mr. Billingsley to substantiate the transfer of Mr. Pavlis' Allwest investment to KCF and were not presented to, or authorized by Mr. Pavlis. (*Id*. at ¶¶ 100-104, 113-127.)

57.     At the time the Notes were issued and the Note Purchase Agreements signed, Key Commercial was not a validly organized and existing Delaware limited liability company. (*Id*. at ¶ 150.)

58.     To date, KCF has not returned any amount of Mr. Pavlis' $4,000,000 investment pursuant to the terms of the November 1, 2014 Note, which required KCF to do so by November 1, 2020. (*Id*. at 181.)

**C.     Defendants' Statements of Contested Facts to be Litigated at Trial**

59.     Defendant KCF, is a limited liability company organized under the laws of Delaware.  Ans. ¶ 15 [D.I. 31].

60.     Defendants Key Commercial Finance Properties, LLC and Mobile Agency, LLC are wholly-owned subsidiaries of KCF formed under the laws of Delaware.  Ans. ¶ 16, 18 [D.I. 31].

61.     Defendant Equity Pros, LLC is a limited liability company formed under the laws of Connecticut.  Ans. ¶ 17 [D.I. 31].

62.     Mr. Pavlis' was a sharp and sophisticated man, and his mental acuity did not diminish with age.

- 17 -

63.     In 2014, Mr. Pavlis invested $7,000,000 in KCF.  On September 1, 2014, KCF issued the September 1, 2014 Note, a Convertible Promissory Note in the amount of $3,000,000 to Mr. Pavlis.  The September 1, 2014 Note matures on September 1, 2019, and includes a conversion feature whereby the debt converts to equity in KCF if a change of control occurred or if KCF obtained equity financing.

64.     On November 1, 2014, KCF issued the November 1, 2014 Note, a Convertible Promissory Note in the amount of $4,000,000 to Mr. Pavlis.  The November 1, 2014 Note has the same conversion features as the September 1, 2014 Note, and matures on November 1, 2020.  Mr. Pavlis executed a Note Purchase Agreement for both KCF Notes.

65.     At all relevant times, Mr. Pavlis was represented by legal and investment professionals.  Mr. Pavlis told Mr. Billingsley that he was keeping his advisers informed.

66.     Mr. Pavlis negotiated the terms of his 2014 investment in KCF over a period of months.  Mr. Pavlis was interested in owning a portion of the company, and was interested in the note converting to equity.  Mr. Pavlis acted as an angel investor, and believed the real estate industry was ripe for disruption through technology.

67.     The Key Commercial Finance, LLC Confidential Private Placement Memorandum dated August 1, 2014 (the "PPM") sets forth KCF's business model and the risks of investing in a start-up company.  The PPM states that "[t]he Company is engaged primarily in the development of an online platform for facilitating real estate

- 18 -

transactions between the Company's customers and sellers of residential real estate." The platform was a way to locate, source, and originate off-market houses through individuals driving around with their mobile devices. KCF's intent was to sell the developed platform to a large player in the real estate industry.

68. KCF deployed Mr. Pavlis' investment and built the online platform as set forth in the PPM.

69. Plaintiff was contemporaneously aware of Mr. Pavlis' investments in KCF with Mr. Billingsley.

70. In March 2016, Plaintiff became Mr. Pavlis' power of attorney and sought documents from Mr. Billingsley pertaining to Mr. Pavlis' assets. Based on Plaintiff's increasingly erratic behavior, Mr. Billingsley was apprehensive and skeptical of Plaintiff's authority as Mr. Pavlis' power of attorney. The Skeanses had a keen interest in Mr. Pavlis' money. Mr. Billingsley also viewed Plaintiff as a business competitor who was threatened by the platform KCF was building with Mr. Pavlis' capital.

71. Plaintiff was volatile and erratic in this timeframe. Plaintiff's temperament was displayed in her contentious relationship with the Board and staff of Jah-Jireh, and she was temporarily barred from the premises of Legacy Place, the senior living facility operated by Jah-Jireh where Mr. Pavlis resided. Plaintiff demanded the composition of the Jah-Jireh board be changed, complained of being slandered by Legacy Place staff, and accused a Jah-Jireh board member of trying to defraud Mr. Pavlis.

72.     Plaintiff's conduct—to include her pursuit of this litigation—undermined KCF's ability to effectively market and sell the developed platform to a large player in the real estate industry or to otherwise monetize the platform developed with Mr. Pavlis' investment.

73.     Under Mr. Pavlis' Will, the November 1, 2014 Note will pass to the Watchtower Bible and Tract Society of New York as residue when the estate is closed.

## IV.     Issues of Law to be Litigated at Trial

### A.     Plaintiff's Statement of Issues of Law to be Litigated[2]

74.     Whether the September 1, 2014 and November 1, 2014 Notes are void *ab initio* because they were issued by KCF before it was a validly formed legal entity and whether the doctrines of *de facto* formation or corporation by estoppel cure KCF's failure to lawfully form prior to issuing the KCF Notes. (Authorities as set forth by Plaintiff in D.I. 83 and D.I. 93.)

75.     Whether KCF committed fraud by misrepresenting, through Mr. Billingsley, that Mr. Pavlis was investing in Allwest when in reality his funds were going to KCF, orchestrating the transfer of Mr. Pavlis' $7,000,000 investment from Allwest to KCF, issuing the fraudulent KCF Notes when KCF was not yet a legal entity, and creating fraudulent documents purporting to legitimize the misappropriation of Mr.

---

[2] Plaintiff reserves the right to supplement the law cited herein in support of any forthcoming motions, including but not limited to any motions for judgment as a matter of law.

Pavlis' Allwest investment. *See e.g.*, *XComp, Inc. v. Ropp*, 2002 WL 1753168, at \*2-3 (Del. Ch. 2002) (affirming judgment in favor of appellee based on determination that appellant was financially insolvent at the time it issued three promissory notes to appellee, that it knew of its precarious financial situation and of the exceedingly risky and speculative nature of appellee's investment, and yet intentionally failed to disclose those facts, and that appellee relied upon those nondisclosures when he made the investment).

76.     Whether KCF fraudulently concealed its unlawful actions by disguising its frauds as multi-year or long-term investments, obscuring the details of the alleged investments when Mr. Pavlis' representatives first began to inquire about them in 2016, and refusing to turn over documentation  related to the investments. *See e.g., Jernigan Capital Operating Co., LLC v. Storage Partners of KOP, LLC*, 2020 WL 7861334, at \*6-7 (Del. Ch. 2020) (granting judgment in favor of plaintiff on fraud claim where defendants made misrepresentations in connection with the issuance of promissory notes).

77.     Whether KCF breached the November 1, 2014 Note by failing to return Mr. Pavlis' $4,000,000 investment along with the corresponding interest by November 1, 2020.  *See e.g.*, *Hensel v. U.S. Electronics Corp.*, 262 A.2d 648, 650-52 (Del. 1970) (granting judgment in favor of plaintiff on claim for breach of promissory note where defendant failed to pay plaintiff when note became due and payable); *Wells Fargo Bank,*

*NA v. Strong*, 2016 WL 2620505, at *2 (Del. Super. Ct. 2016) (granting judgment in favor of plaintiff and holding that defendant breached promissory note by non-payment).

78.     Whether KCF was unjustly enriched through its receipt and retention of Mr. Pavlis' $7,000,000 investment in Allwest without Mr. Pavlis' knowledge or consent of the transfer of his funds to KCF, and without any lawful basis for its actions in obtaining the funds. (Authorities as set forth by Plaintiff in D.I. 83 and D.I. 93.)

79.     Whether any other issues of law may be necessary to resolution of the parties' motions *in limine*.

**B.     Defendants' Statement of Issues of Law to be Litigated[3]**

80.     Whether Plaintiff has standing to pursue the claims asserted.

a.   Standing requires a plaintiff to demonstrate: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Reybold Venture Group, XI-A LLC v. Delaware Dept. of Educ.*, 947 F. Supp. 2d 430, 436 (D. Del. 2013). To have standing, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself

_____

[3] Defendants reserve the right to supplement the law cited herein in support of any forthcoming motions, including but not limited to any motions for judgment as a matter of law.

among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added). Standing requires that the plaintiff "personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982).

b. Upon Mr. Pavlis' death on August 24, 2018, the September 1, 2014 Note transferred by operation of law to Watchtower Bible and Tract Society.. Under Pennsylvania law, securities titled "TOD" or "transfer on death" transfer immediately by operation of law to the named beneficiary on death, and are not an asset of a decedent's testamentary estate. *See, e.g, Fortunato v. CGA Law Firm,* 2017 WL 3129825, at *1 (M.D. Pa. July 24, 2017) (noting that accounts designated "transfer on death" pass outside the will and are not included in residue of estate); *Estate of Young v. Louis,* 202 A.2d 117, 124 (Pa. Super. 2018) (affirming summary judgment where estate lacked standing to bring suit over assets that passed outside the will); *see also, e.g.,* 20 Pa. Stat. and Const. Stat. Ann. §§ 6407, 6409.

c. Under the terms of Mr. Pavlis' Will, the November 1, 2014 Note passed to Watchtower Bible and Tract Society as residue of the Estate. The injury-in-fact requirement for standing requires a plaintiff to allege an injury that is both "concrete and particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1545 (2016); *see also, e.g.*, *Jackson Nat. Life Ins. v. Ligator*, 949 F. Supp. 200, 207- 208 (S.D.N.Y. 1996) (dismissing fraud claims as premature and unduly speculative).

81.    Whether the relief Plaintiff seeks would inequitably divest nonparty Watchtower Bible and Tract Society of its property interest in the September 1, 2014 Note.  A person must be joined as a party "if that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i); *Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 707 (3d Cir. 1940) (holding that Rule 19 is applicable to declaratory judgment actions).

82.    Whether Plaintiff's application of the "void *ab initio*" doctrine creates an actionable basis for a declaratory judgment.  In the cases cited by Plaintiff, the "void *ab initio*" doctrine arises in the nature of an affirmative defense against an entity-plaintiff that seeks to enforce a contract of questionable validity, rather than as an affirmative cause of action.  Neither party has identified a case where the "void *ab initio*" doctrine has been asserted as a cause of action.  Moreover, "A declaratory judgment is inappropriate solely to adjudicate past conduct."  *Del. State Univ. Housing Found. v. Ambling Mgmt*. Co., 556 F. Supp. 2d 367, 374 (D. Del. 2008).

83.    Whether KCF was a *de facto* limited liability company at the time it issued the Notes.  *See, e.g.*, *Ioengine LLC v. Imation Corp.*, 2017 WL 39563, at *4 (D. Del. Jan. 4, 2017); *Big Valley Assoc. v. DiAntonio*, 1995 WL 339072, at *2 (Del. Super. May 10, 1995); *Grunstein v. Silva*, 2009 WL 4698541, at *18 (Del. Ch. Dec. 8, 2009).

84.    Whether Plaintiff is estopped from denying KCF's corporate existence. *Leber Associates, LLC v. Entm't Grp. Fund, Inc.*, 2003 WL 21750211, at *11-12 (S.D.N.Y. July 29, 2003) (examining Delaware law and estopping party from disclaiming existence of Delaware LLC); *Fulton v. Fulton*, 106 A.3d 127, 132-34 (Pa. Super. 2017) (holding that executor "stood in the shoes of [d]ecedent"); *In re Estate of Farren*, 131 A.2d 817, 832 (Del. Ch. 2016) ("An executor or administrator generally 'stands in [the] decedent's shoes and has no greater or other rights or powers than the decedent would have had if living.'") (quoting *Pierce v. Higgins*, 531 A.2d 1221, 1226 (Del. Fam. Ct. 1987)); 8 Fletcher Cyclopedia of the Law of Private Corporations § 3910 (Sept. 2019) ("a person who contracts or otherwise deals with a body of people as a corporation thereby admits they are a corporation, and is estopped to deny their incorporation in an action against such a person based upon or arising out of the contract or course of dealing.")

85.    Whether Delaware law permits the delegation of a limited liability company's management duties, to include the issuance of the Notes.  "[A] member or manager of a limited liability company has the power and authority to delegate to one

or more other persons any or all of the member's or manager's ... rights, powers and duties to manage and control the business and affairs of the limited liability company." 6 *Del. C.* § 18-407.

86.    Whether Plaintiff can establish unjust enrichment.  *LVI Grp. Invs., LLC v. NCM Hldgs., LLC*, 2019 WL 7369198, at *31 (Del. Ch. Dec. 31, 2019) (setting forth elements of unjust enrichment).   Under both Delaware and Pennsylvania law, an unjust enrichment claim is barred where—as here—the parties' relationship is governed by contract.  *See, e.g., Narrowstep, Inc. v. Onstream Media Corp*., 2010 WL 5422405, at *16 (Del. Ch. Dec. 22, 2010); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).  Whether Plaintiff's fraud claims provide an adequate remedy at law, precluding unjust enrichment.  *E.g., Johnson v. Preferred Professional Ins. Co.,* 91 A.3d 994, 1017 (Del. Super. 2014) (contrasting the elements of common law fraud with the elements of equitable fraud).  *See, also*, *Metcap Securities LLC v. Pearl Senior Care, Inc*., 2009 WL 513756, *9 (Del Ch. Feb 27, 2009) (citing Restatement of Restitution § 112 to deny unjust enrichment claim where benefit was conferred officiously); Restatement of Restitution § 112 ("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution.").

87.    Whether Plaintiff can establish facts supporting her common law fraud or fraudulent concealment counts, and whether Count III (fraudulent concealment) is duplicative of Count II (common law fraud).  *Johnson v. Preferred Professional Ins.*

*Co.*, 91 A.3d 994, 1017 (Del. Super. 2014) ("common law fraud and intentional misrepresentation [fraudulent concealment] are essentially the same things"); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000) (setting forth elements of common law fraud); *MacQueen v. Union Carbide Corp.*, 2018 WL 279122 at *3 (Del. Ch. June 6, 2018) (setting forth elements of fraudulent concealment); *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 591 (Pa. Super. 2013) (setting forth elements of common law fraud); *L & W Supply Corp. v. Amin*, 2017 WL 10988478, at *6 (Pa. Super. Jan. 13, 2014) (holding that fraud must be proven by clear and convincing evidence); *Ellison v. Lopez*, 959 A.2d 395, 398 (Pa. Super. 2008), *appeal denied*, 968 A.2d 233 (Pa. 2009) (same); *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) (dismissing fraud claims and holding that "[p]redictions about the future cannot give rise to actionable common law fraud."); *WyPie Invs., LLC v. Homschek*, 2018 WL 1581981, at *8 (Del. Super. Mar. 28, 2018) (stating that it is "well settled in Delaware" that predictions about the future cannot give rise to actionable common law fraud).

88.     Whether the principles of impracticability or frustration of purpose discharge Defendants' duty of performance of the November 1, 2014 Note, and whether Plaintiff prevented or otherwise interfered with KCF's duty to perform the terms of the November 1, 2014 Note.  Restatement (Second) of Contracts §§ 261, 263, 265 (1981); Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware 19.19.

89.   Whether Plaintiff's claims are time-barred.

a.   Fraud claims.  If Delaware law applies to Plaintiff's fraud claims (Counts I, II, and III), she had three years from each of September 1, 2014 and November 1, 2014 to bring her action.  10 *Del. C.* § 8106.  If Pennsylvania law applies, then Plaintiff had two years to assert fraud claims. 42 Pa. Stat. and Const. Stat. Ann. § 5524(7).

b.   Unjust enrichment.  Under Delaware law, "[t]he analogous statute of limitations for a claim of unjust enrichment is three years." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 336 n.11 (D. Del. 2017).  Pennsylvania law applies a four-year statute of limitation for unjust enrichment. 42 Pa. Stat. and Cons. Stat. Ann. § 5525; *see also Sevast v. Kakouras*, 915 A.2d 1147 (Pa. 2007).

90.   Any other issues of law which may be necessary for the resolution of the parties' motions *in limine*.

## V.   **Witnesses**

91.   Plaintiff's list of witnesses that may be called to testify at trial is attached as Exhibit "A".  Defendants' list of witnesses that may be called to testify at trial is attached as Exhibit "B".   Any witness not listed will be precluded from testifying, absent good cause shown.

## I.   Testimony by Deposition

92.    Plaintiff's list of deposition designations is attached as Exhibit "C".  Also included in Exhibit "C" are Defendants' additional designations to the testimony offered by Plaintiff.

93.    Defendants' list of deposition designations is attached as Exhibit "D". Also included in Exhibit "D" are Plaintiff's additional designations to the testimony offered by Defendants.

94.    If a party designates deposition testimony, and the other party counter-designates, all deposition testimony will be read in chronological order.

95.    The parties agree that irrelevant and redundant material, such as objections, colloquy between counsel, long pauses, and requests to have the court reporter read back a question, shall be eliminated when the transcript is read at trial.

96.    The parties may offer some or all of the deposition testimony set forth in their designations during trial. If a party decides to offer less than all of the designated testimony for a witness at trial, the opposing party may use such dropped testimony as counter-designations to the extent the usage of such testimony in such a manner is otherwise consistent with the applicable Federal Rules of Evidence or Federal Rules of Civil Procedure. A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented on at trial.  Deposition testimony may

otherwise be introduced at trial to the extent such testimony is admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

97.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent and admissible for such purpose.

## II.     **Exhibits**

### A.     **Trial Exhibits**

98.     Joint trial exhibits will be identified with JTX numbers, starting with JTX1. The joint exhibit list is attached as Exhibit "E".  This list includes all exhibits to which neither party objects.

99.     To the extent not included in the list of Joint Trial Exhibits, Plaintiff's trial exhibit list is attached as Exhibit "F". Plaintiff identified her exhibits with PTX numbers, starting with PTX1. Exhibit "F" also includes Defendants' objections to Plaintiff's trial exhibits and Plaintiff's responses to those objections.

100.    To the extent not included in the list of Joint Trial Exhibits, Defendants' trial exhibit list is attached as Exhibit "G". Defendants identified their exhibits with DTX numbers, starting with DTX1. Exhibit "G" also includes Plaintiff's objections to Defendants' trial exhibits and Defendants' responses to those objections. .

101.  The descriptions of documents in Exhibits "E" through "G" are for convenience of the parties and the Court only, and do not constitute admissions about the content or admissibility of the document described, or other aspects of the documents.

102.  A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

103.  Each party may use an exhibit that is list on the other party's exhibit list to the same effect as though it were listed on its own exhibit list, subject to objections. Any exhibit, once admitted, may be used by either party. The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence. In other words, a party does not waive its objections to an exhibit by including that exhibit on its own exhibit list.

104.  The parties agree that any date listed on an exhibit list is provided for convenience only and is neither evidence nor an admission of the date of the document, and that failing to list a date on an exhibit list is neither evidence nor an admission of whether the document is dated.

105.  Legible photocopies of documents may be offered and received into evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right

of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

106.   The parties have agreed that they will not pre-exchange or identify exhibits or demonstratives to be used with any witness on cross examination. Subject to and in addition to the above, binders containing copies of exhibits for planned use during direct examination or cross examination of a witness shall be exchanged at the beginning of the direct examination or cross examination of the witness. A party shall not be precluded from using a document for cross examination for the sole reason that it was not provided before cross examination of the witness.

107.   Subject to other provisions of this Order, no party shall be permitted to offer as evidence any exhibit not present on its exhibit list absent good cause shown or by agreement of the parties, except that documents, deposition transcripts, or portions thereof, or other items, not specifically identified herein or offered into evidence, may still be used at trial for purposes of cross examination, impeachment, or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

108.   No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit

- 32 -

number. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

109.   Exhibits not objected to will be received by the operation of the Final Pretrial Order without need for additional foundation testimony, provided they are shown to a witness.

110.   On or before the first day of trial, counsel will deliver to the Courtroom Deputy as completed AO Form 187 exhibit list for each party.

## B.   Demonstrative Exhibits

111.   The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side via e-mail or FTP site. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5" x 11" copies of the exhibits.

112.   Plaintiff's demonstrative exhibits will be identified by numbers prefixed with "PDX." Defendants' demonstrative exhibits will be identified by numbers prefixed with "DDX."

113.   This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits

or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

114.   If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand.

### C.   Trial Disclosure Schedule

#### i.   Opening Statements

115.   The parties will exchange demonstratives to be used in opening statements by 7:00 p.m. two nights before opening statements. The parties will provide any objections to such demonstratives by 12:00 noon on the day before opening statements. The parties shall meet and confer on any objections no later than 3:00 p.m. the day before opening statements. If any of the demonstratives change after the deadline or after the parties confer, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

#### ii.   Witnesses

116.   By 7:00 p.m. two days prior to each day of trial, the parties shall disclose by e-mail a list of witnesses that the party intends to call for direct examination, the order the party expects to call the witnesses, and the method of testimony (i.e., live or by deposition). For each witness, the party must identify in the e-mail any exhibits (including demonstratives) it intends to use with that witness. For any witnesses

presented by deposition, the party must include all designations and counter-designations of the testimony, and any exhibits to be introduced during the deposition testimony. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

117.   All witnesses listed may be called by the parties in their respective cases-in-chief.  The parties reserve the right to elicit and introduce testimony from any witness called by the other party at trial.  The parties further reserve the right to call or introduce testimony from any or all of the identified witnesses and any additional witnesses as rebuttal witnesses.

118.   Any objections to a witness, deposition designation, or exhibits will be provided no later than 8:30 p.m. two nights before the intended testimony or use of an exhibit. The parties shall then meet and confer on the objections. If good faith efforts to resolve the objections fail, the party objecting shall bring its objections to the Court's attention prior to the witness being called to the witness stand.

### iii.    Closing Statements

119.   The parties will exchange demonstratives to be used in closing statements by 7:00 p.m. the night before closing statements. The parties will provide any objections to such demonstratives by 9:00 p.m. that night. The parties shall meet and confer on any objections no later than 10:00 p.m. the night before closing statements. If any of the demonstratives change after the deadline or after the parties confer, the

party intending to use the demonstrative will promptly notify the opposing party of the change(s). If good faith efforts to resolve the objections fail, the party objecting shall bring its objections to theCourt's attention prior to the start of the trial day.

### iv.      Miscellaneous Disclosure Requirements

120.   By 7:00 p.m. one day before the party that is presenting its case-in-chief expects to rest, its counsel shall provide to counsel for the other party an estimate of when it expects to rest.

121.   Four days before the first day of trial  the parties shall make available for inspection any physical exhibits to be used at  trial, labeled with an exhibit number, whether such physical exhibits will be admitted into evidence or used as demonstratives. For purposes of clarity, such physical exhibits do not include document trial exhibits, boards, blow-ups, or graphical demonstratives, which are subject to the disclosure provisions above.

## III.   Plaintiff's Statement of Intended Proofs

122. Plaintiff's statement of intended proof at trial is limited to the issues for which Plaintiff bears the burden of proof at trial, and does not address the proof that Plaintiff may choose to present in rebuttal to the defenses that Defendants may present. Plaintiff's statement is based upon the current status of the case and the Court's current rulings. Plaintiff reserves the right to revise this statement based on Defendants' statement of intended proof or any further decisions or orders of the Court.  Plaintiff

incorporates by reference its statement of contested facts and issues of law contained in Sections III.B. and IV.A, *supra,* respectively. The following statements are not exhaustive, and Plaintiff reserves the right to prove any matter identified in their pleadings or interrogatory responses.

123. At trial, Plaintiff intends to establish, through its presentation of evidence that:

> a.    The September 1, 2014 and November 1, 2014 Notes are void *ab initio* because they were issued by KCF before it was a validly formed legal entity. KCF therefore owes the Estate of Mr. Pavlis $7,000,000 in restitution.

> b.    KCF committed fraud by misrepresenting, through Mr. Billingsley, that Mr. Pavlis was investing in Allwest Investments when in reality his funds were going to KCF, orchestrating the transfer of Mr. Pavlis' $7,000,000 investment from Allwest to KCF, issuing the fraudulent Notes when KCF was not yet a legal entity, and creating  fraudulent documents purporting to legitimize the misappropriation of Mr. Pavlis' Allwest investment, thereby causing the Estate of Mr. Pavlis $7,000,000 in damages.

> c.    KCF fraudulently concealed its unlawful actions by disguising its frauds as multi-year or long-term investments, obscuring the

details of the alleged investments when Mr. Pavlis' representatives first began to inquire about them in 2016, and refusing to turn over documentation related to the investments, thereby causing the Estate of Mr. Pavlis $7,000,000 in damages.

      d.    KCF's failure to return Mr. Pavlis' $4,000,000 investment, with applicable interest, by November 1, 2020 pursuant to the terms of the November 1, 2014 Note, constitutes a breach thereof. KCF therefore owes the Estate of Mr. Pavlis $4,000,000 in compensatory damages.

      e.    KCF was unjustly enriched through its receipt and retention of Mr. Pavlis' $7,000,000 investment in Allwest without Mr. Pavlis' knowledge or consent of the transfer of his funds to KCF, and without any lawful basis for its actions in obtaining the funds. KCF therefore owes the Estate of Mr. Pavlis $7,000,000 in restitution.

## IV.   Defendants' Statement of Intended Proofs

124.  Defendants intend to prove any matters for they bear the burden of proof as outlined in Section I.C. above, as well those matters outlined in their statements of contested facts and issues of law set forth in Sections III.C. and IV.B, above. Defendant reserves the right to present evidence in rebuttal to the evidence Plaintiff presents, as well as the right to prove any matter identified in the Answer, the affirmative defenses asserted therein, and their interrogatory responses.

V.      **Motions** ***in Limine***

    A.      **Plaintiff's Motions** ***in Limine***

        1.      **Motion** ***in Limine*** **to Preclude Defendants from**
           **Challenging the Validity of the November 1, 2014**
           <u>**Key Commercial Note and Note Purchase Agreement**</u>

Throughout this litigation, Defendants have admitted time and time again that the September 1, 2014 and November 1, 2014 Notes and Note Purchase Agreements allegedly issued by Key Commercial Finance, LLC (collectively, the "Key Commercial Notes") were validly issued by Key Commercial and that Key Commercial is "bound" by their terms. Having made these binding judicial admissions, Defendants should now be precluded from arguing or offering evidence to the contrary at the upcoming trial of this matter.

A party's assertion of fact in a pleading is a judicial admission by which it is bound throughout the course of the proceeding. *See Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, at *6 (D. Del. 2006). "If factual matters in issue have been judicially admitted, they are binding on the tendering party." *Id*. (citing *Parilla v. IAP Worldwide Servs., VI, Inc*., 368 F.3d 269, 275 (3d Cir. 2004)); *see also Noslanic v. Mutso*, 2017 WL 4322411, at *3 (M.D. Pa. 2017) (citing *Glick v. White Motor Co*., 458 F.2d 1287 (3d Cir. 1972) ("[W]here a party offers deliberate, clear and unequivocal facts in a complaint, those assertions are binding on the party and have the effect of withdrawing a factual issue from contention."). Where a party has made

repeated admissions of fact throughout its pleadings and motions, "[i]t would be patently unfair and judicially inefficient" to allow the party's defense to be a "moving target" at trial and thus, contrary evidence should be precluded. *Id*. (granting motion *in limine* precluding party from arguing or presenting evidence at trial controverting its judicial admission).

Over and over again, Defendants have asserted that (i) Mr. Pavlis and Key Commercial validly executed the Key Commercial Notes , (ii) Mr. Pavlis was fully aware of his investment in Key Commercial, and (iii) the Key Commercial Notes were legitimate and proper in all respects. Consider the following admissions contained in the Defendants' pleadings and other court filings:

- The September 1, 2014 Note and the November 1, 2014 Note are "valid." (Defendants' Answer to the Supplemental Complaint, D.I. 103, at ¶ 93, 98.)

- "Mr. Pavlis' investments were legitimate and properly documented." (*Id*. at ¶ 118.)

- Mr. Pavlis had capacity, soundness of mind, will, intent to execute and understanding of the Notes and Note Purchase Agreements (*Id*., ¶ 79.)

- At the time Mr. Pavlis executed the Key Commercial Notes and Note Purchase Agreements he was competent to make his own investment decisions, represented by legal and investment professionals, and had negotiated the terms thereof over

a period of months. (Statement of Facts in Support of Defendants' Motion for Summary Judgment, D.I. 80, at ¶¶ 9-12, 14.)

- "**KCF is bound by the terms of the Notes**…" (Opening Brief in Support of Defendants' Motion for Summary Judgment, D.I. 79 at 12.) (emphasis added).

- "KCF has not disclaimed the Notes, and accepted the benefits of the Note Purchase Agreements by issuing the Notes, and is therefore bound by their terms." (Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, D.I. 86, at 12.)

Defendants' clear and unequivocal assertions that (i) the Key Commercial Notes represent legitimate investments by Mr. Pavlis in Key Commercial,  (ii) Key Commercial accepted the benefits of the Key Commercial Notes,  and (iii) Key Commercial is therefore "bound by their terms" constitute binding judicial admissions. It is patently unfair to permit Defendants to raise contrary evidence or present contradictory arguments in an effort to now argue that Key Commercial is not bound by the admittedly valid terms of the Key Commercial Notes.  Accordingly, this Court should grant Plaintiff's motion *in limine* to preclude Defendants from making arguments and presenting evidence that contradict Defendants' express judicial admissions regarding the factual validity and binding effect of the Key Commercial Notes.

Word Count:  624

### Defendants' Answer to Plaintiff's Motion *in Limine* re: Breach of Contract

- 41 -

Plaintiff's Motion in Limine to Preclude Defendants from Challenging the Validity of the Key Commercial Notes and Note Purchase Agreements should be denied.  Plaintiff's motion is directly contrary to her prior theory that Mr. Pavlis was defrauded, and adopts Defendants' position that the Notes are valid.  Oddly, Plaintiff seeks to use the fact that Mr. Pavlis knowingly invested in KCF to bar Defendants from presenting any defenses to her newly-asserted breach of contract claim.

Throughout this multi-year, vendetta-driven litigation, Plaintiff has expended the remaining assets of the Pavlis Estate pursuing the factually and legally implausible theory that Mr. Pavlis was defrauded by Defendants and that the Key Commercial Notes are "void *ab initio*."[4]  Defendants have consistently presented evidence and argument that Mr. Pavlis invested in KCF knowingly, and that the Notes were validly issued to him.  Plaintiff now seeks to prevent Defendants from presenting any defenses to her new breach of contract claim.  (Notably, the relief Plaintiff seeks in her motion in limine would *not* prevent Defendants from presenting evidence that Plaintiff is not entitled to relief on the breach of contract claim under the principles of impracticability, frustration of purpose, or performance prevented by a party to the contract.)

---

[4] The void *ab initio* doctrine is an equitable affirmative defense that Plaintiff has attempted to transform into a cause of action.

Plaintiff should be required to present and prove her inconsistent theories of the case to the jury, namely:  that Mr. Pavlis was a victim of fraud and that the Notes are void *ab initio*, while at the same time, Mr. Pavlis was *not* defrauded and KCF issued valid Notes that are legally enforceable against Defendants.  Defendants should be permitted to present defenses to all of Plaintiff's claims.

To the extent the Court entertains Plaintiff's motion—*and it should not*—the Court should impose a reciprocal obligation barring Plaintiff from presenting argument and evidence that Mr. Pavlis was defrauded or that the Notes are void *ab initio.*  "[I]n the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016).  Based on the relief sought by Plaintiff's motion, it would be patently unfair to permit Plaintiff to present evidence to the jury that Mr. Pavlis was defrauded or that the Notes were not validly issued.

For the foregoing reasons, Plaintiff's Motion in Limine to Preclude Defendants from Challenging the Validity of the Key Commercial Notes and Note Purchase Agreements should be denied.

Word Count:  395

### Plaintiff's Reply in Support of Motion *in Limine* to Preclude Defendants from  Challenging the Validity of the November 1, 2014 Key Commercial Note and Note Purchase Agreement

In their Response, Defendants admit that they have "consistently presented evidence and argument that Mr. Pavlis invested in KCF knowingly, and that the Notes

were validly issued to him."   Having re-affirmed (yet again) their position that the November 1, 2014 KCF Note was valid and binding, it follows that Defendants should be precluded disavowing its position at trial.

Defendants attempt to draw a false equivalency between (i) Plaintiff's right to pursue alternative theories of recovery and (ii) their argument that, despite their repeated admissions that the KCF Notes are binding, valid, and enforceable, the KCF Notes now are somehow *not* binding, valid, or enforceable.   The Defendants cannot have it both ways.  The Plaintiff has every right to argue that the Notes were fraudulent.  The Plaintiff also has every right to argue that, even if the jury disagrees, it must accept Defendants' own version of events and find that the November 1, 2014 Note is valid, binding, and enforceable.

Incredibly, Defendants contend that "Plaintiff is not entitled to relief on the breach of contract claim under principles of impracticability, frustration of purpose, or performance prevented by a party to the contract."  There is no evidence whatsoever to suggest that Mr. Pavlis did anything to interfere with KCF's performance.  Defendants should be precluded from simultaneously arguing (i) Plaintiff cannot recover under any fraud theory because the Note was valid and binding, and (ii) Plaintiff cannot recover for KCF's breach of that same valid and binding Note.  Plaintiff's motion should be granted.

Word count:  249

**2.    Motion *in Limine* to Preclude Defendants' Affirmative Defenses Related to Deborah and/or Darbin Skeans' Alleged Interference with Defendants' Business, Defamation, and Breach of Covenant of Good Faith and Fair Dealing, <u>and All Evidence in Support Thereof</u>**

Defendants raised numerous affirmative defenses in their Answer to the Supplemental Complaint related to non-parties, Deborah S. Skeans and/or her husband, Darbin Skeans in their individual capacities (collectively, the "Skeanses"). Plaintiff moves *in limine* to preclude these defenses and all evidence in support thereof as improper affirmative defenses to Plaintiff's claims—in particular to its breach of contract claim—and because they are barred by the law of the case doctrine.

Defendants mischaracterize their contentions that the Skeanses interfered with Defendants' prospective business relations, defamed the Defendants, and breached the covenant of good faith and fair dealing as affirmative defenses. However, the Third Circuit has explained that an "affirmative defense" is:

> [A] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. A *response to plaintiff's claim* which attacks the plaintiff's legal right to bring an action, as opposed to attacking the truth of [the] claim.

*Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994) (a defense is a "reason in law or fact why the plaintiff should not recover" and is "put forward to diminish plaintiff's cause of action or defeat recovery.") Affirmative defenses, unlike third party claims, are defenses raised by defendants vis-

- 45 -

à-vis plaintiffs.  Conversely, third party claims are claims raised by defendants against **non-parties** who are **liable to defendants** for all or part of plaintiff's claim.  *See* Fed. R. Civ. P. 14(a).

Here, Defendants mischaracterized claims they have against the Skeanses as affirmative defenses raised against Plaintiff, the Estate of Mr. Pavlis.  However, Defendants do not assert that Plaintiff—the Estate of Mr. Pavlis—or, Mr. Pavlis himself, engaged in any conduct that interfered with Defendants' businesses, defamed Defendants, or breached any covenant of good faith and fair dealing.  Even if Defendants' claims against the Skeanses were true, they would not diminish the Estate of Mr. Pavlis' entitlement to recovery in this case.  Thus, Defendants' claims related to the Skeanses constitute third party claims, not affirmative defenses.  The Defendants should therefore be precluded from raising them as such at trial.

The law of the case doctrine further requires the Court preclude these "affirmative defenses" and any evidence in support thereof because Defendant, Key Commercial Finance LLC filed a Third Party Complaint raising these exact claims against the Skeanses that the Court dismissed in its entirety (D.I. 77). The law of the case doctrine "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (quotations omitted); *see also* James W. Moore et al., Moore's Federal Practice, ¶ 0.404 [1] (2d ed. 1995) ("A decision on an issue of law made at one stage of a case becomes a *binding*

*precedent* to be followed in successive stages of the same litigation.") The doctrine is intended to "promote finality, consistency, and judicial economy." *Id*. Reconsideration of a previously decided issue is only "appropriate in certain circumstances, including when the record contains new evidence" that is not "substantially similar" to prior evidence. *Id*. (quotations omitted).

Courts routinely preclude the admission of evidence and arguments at trial where, as here, they had previously rejected the same arguments. *See Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood LLC*, 2020 WL 1140907, at *2 (D. Del. 2020) (granting motion *in limine* precluding "arguments that [were] a rehash of arguments considered and rejected" in the Court's ruling on a prior motion); *see also Deluxe Bldg. Sys., Inc. v. Constructamax, Inc*., 2013 WL 5179077, at *5 (D.N.J. 2013) (granting motion *in limine* precluding evidence on an issue the Court previously rejected); *Bradford v. UPMC*, 2008 WL 191706, at *1 (W.D. Pa. 2008) (same).

In its Third Party Complaint, Key Commercial asserted claims against the Skenses for defamation, injurious falsehood, false light, invasion of privacy, and tortious interference with prospective economic advantage. (Dkt. 35.) Following the Skenses' Motion to Dismiss, the Court dismissed the Third Party Complaint in its entirety. (Dkt. 77.) This decision constitutes binding precedent and is the law of the case. No new evidence has arisen since this Court's dismissal of the Third Party Complaint that permits this Court to overlook the law of the case doctrine. Accordingly,

the Court should preclude Defendants' "affirmative defenses" related to the Skeanses' alleged interference with prospective business relations, defamation of the Defendants, and breach of the covenant of good faith and fair dealing, and all evidence in support thereof.

Word Count:  744

### Defendants' Answer to Plaintiff's Motion in Limine re: Affirmative Defenses

Plaintiff's Motion in Limine to Preclude Defendants' Affirmative Defenses Related to Deborah and/or Darbin Skeans' Alleged Interference with Defendants' Business, Defamation, and Breach of the Covenant of Good Faith and Fair Dealing and All Evidence in Support Thereof should be denied because:  (a) the Supplemental Complaint added a breach of contract claim, thus the law of the case doctrine is inapplicable, and (b) Defendants' affirmative defenses are directed to Plaintiff in her capacity as Mr. Pavlis' power of attorney and Executrix of the Pavlis Estate, rather than in her personal capacity.

Plaintiff recently introduced a contract claim into this case via the Supplemental Complaint.  The affirmative defenses at issue pertain to Defendants' liability under the November 1, 2014 Note, as alleged in Count IV.  *See* Answer to Supplemental Complaint [D.I. 103] at Aff. D. 3, 6, 7, 8.  Throughout the course of this multi-year litigation, Plaintiff had previously rejected pursuing a breach of contract claim.  *See, e.g.,* Plaintiff's Opposition to Summary Judgment [D.I. 102] at 3-4 ("…Plaintiff, as

Executrix of Pavlis' Estate, is *not* seeking to enforce or seek recovery on the Notes themselves.") (emphasis in original). Now that Plaintiff has reversed course and *is* "seeking to enforce or seek recovery on the Notes themselves," the law of the case doctrine cannot apply to bar Defendants' affirmative defenses to her new contract claim. *Id.*

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Electron, Inc.*, 123 F.3d 111, 116 (3d. Cir. 1997). The Supplemental Complaint did not become the operative pleading until April 15, 2021. The Court has resolved no issues pertaining to the contract claim or the affirmative defenses thereto. Rather, Plaintiff's motion is based on the Court's dismissal of the Third-Party Complaint, which was dismissed in part on the grounds that the "action against KCF [was] based on *allegations of fraud* perpetrated against Pavlis in 2014." Report and Recommendation on Motion to Dismiss Third-Party Complaint [D.I. 76] at 9 (emphasis added). "Under no construction of the allegations in the [Third-Party Complaint] could Mr. and Ms. Skeans, the third-party defendants, be liable for all or a portion of any potential judgment against KCF for the *alleged fraud* that KCF perpetrated against Pavlis." *Id.* at 10 (emphasis added).

But this is now more than a fraud case—this is now also a breach of contract case. The Court's dismissal of the Third-Party Complaint thus has no bearing on affirmative

defenses to the new contract claim, which was not part of the case when the Third-Party Complaint was dismissed.  Each of the affirmative defenses at issue is a "matter asserted […] which, assuming [the breach of contract claim] to be true, constitutes a defense to it."  *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav.*, F.S.B., 28 F.3d 376, 393 (3d Cir. 1994).

Separately, the affirmative defenses are directed to Ms. Skeans in her capacity as Mr. Pavlis' power of attorney and Executrix of the Estate.  At all times relevant to the affirmative defenses, Plaintiff has stood in the shoes of Mr. Pavlis and the Estate.  Just as Mr. Pavlis' conduct is imputable to the Estate, Plaintiff's conduct should be imputed to the Estate.  *See, e.g.*, *Fulton v. Fulton*, 106 A.3d 127, 132-34 (Pa. Super. 2017) (affirming lower court holding that complaint was barred by laches where lower court imputed decedent's delay to executor who "stood in the shoes of [d]ecedent"); 20 Pa. Stat. and Const. Stat. Ann. § 3373; *In re Estate of Farren*, 131 A.2d 817, 832 (Del. Ch. 2016) ("An executor or administrator generally 'stands in [the] decedent's shoes and has no greater or other rights or powers than the decedent would have had if living.'") (quoting *Pierce v. Higgins*, 531 A.2d 1221, 1226 (Del. Fam. Ct. 1987)).

For these reasons, Plaintiff's Motion in Limine to Preclude Defendants' Affirmative Defenses Related to Deborah and/or Darbin Skeans' Alleged Interference with Defendants' Business, Defamation, and Breach of the Covenant of Good Faith and Fair Dealing and All Evidence in Support Thereof should be denied.

Word Count:  687


**B.**     **Defendants' Motions *in Limine*.**

**1.**     **Defendants' Motion *in Limine* No. 1.**

Defendants hereby move *in limine* to exclude irrelevant and prejudicial evidence of Mr. Billingsley's alleged conduct pertaining to LoanGo and Mobile Pro Corporation (later Mobile Corp.), to include evidence of the allegations and proceedings before the Securities Division of the Arizona Corporation Commission referenced in the Supplemental Complaint at paragraphs 31 through 75 and other places therein (the "Arizona Evidence").  Defendants seek to exclude testimony and extrinsic evidence pertaining to Arizona Evidence, specifically a December 17, 2014 newspaper article[5] (the "Republic Article"), which is among Plaintiff's proposed trial exhibits.

The Arizona Evidence has no bearing on the claims in the case.  Mr. Billingsley, LoanGo, and Mobile Corp. are not parties to this action, Plaintiff does not seek relief related the Arizona Evidence, it is remote in time, and does not share the same facts or governing legal principles as this case.  Additionally, the Republic Article largely pertains to conduct alleged acts undertaken by persons other than Mr. Billingsley and

---

[5]  Craig Harris, *Once-high-flying Quepasa chief Jeff Peterson under fire as $9M gone in online startups*, The Republic, Dec. 14, 2017 (available at: https://www.azcentral.com/story/news/local/arizona-investigations/2017/12/14/once-high-flying-quepasa-chief-jeff-peterson-under-fire-from-investors-in-startups/662692001/, last visited Jun. 7, 2021).

the defendants in this action.  The Arizona Evidence has no tendency to make a fact of

consequence in determining the action any more or less probable, and is thus irrelevant.

Fed. R. Evid. 401.   Any probative value of the Arizona Evidence is substantially

outweighed by the danger of unfair prejudice, confusing the issues, and misleading the

jury.  Rule 403 provides:

> The court may exclude relevant evidence if its probative value is
> substantially outweighed by a danger of one or more of the following:
> unfair prejudice, confusing the issues, misleading the jury, undue delay,
> wasting time, or needlessly presenting cumulative evidence.

"A district court is accorded a wide discretion in determining the admissibility of

evidence under the Federal Rules.  Assessing the probative value of [the proffered

evidence], and weighing any factors counseling against admissibility is a matter first for

the district court's sound judgment under Rules 401 and 403…."   *Sprint/United*

*Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).  Rule 403 "requires an 'on-

the-spot balancing of probative value and prejudice, potentially to exclude as unduly

prejudicial some evidence that already has been found to be factually relevant.'"   *Id.*

(citing 1 S. Childress & M. Davis, *Federal Standards of Review* § 4.02, p. 4–16 (3d

ed.1999)).

Evidence is "unfairly prejudicial" for purposes of Rule 403 if the evidence has an

undue tendency to suggest a decision on an improper basis, or if the evidence "appeals

to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or

otherwise "may cause a jury to base its decision on something other than the established

propositions in the case." *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* P 403(03), at 403-15 to 403-17 (1978)).

Here, the allegations pertaining to Billingsley, LoanGo, and Mobile Corp., especially those set forth in the Supplemental Complaint under the headers "LoanGo: Billingsley's First Fraud," and "Mobile Corp:  Billingsley's Schemes Become More Ambitious," are appeals to arouse the jury's sense of horror, provoke its instinct to punish, or base its decision on something other than the claims at issue or the established facts and law.  Supplemental Complaint, ¶¶ 30-76.  The Republic Article is similarly inflammatory and prejudicial, and because it is an out of court statement offered in evidence to prove the truth of the matter asserted therein, it is inadmissible hearsay not subject to any exception or exclusion.  Fed. R. Evid. 801, 803.

Moreover, the allegations set forth in Paragraphs 31-75 under the header "LoanGo: Billingsley's First Fraud," constitute inadmissible character evidence by which Plaintiff seeks to smear Mr. Billingsley as a "serial fraudster," in order to prove that Billingsley acted in accordance with that character in his dealings with Mr. Pavlis.  Supplemental Complaint, ¶¶ 1, 30.   Evidence supporting these allegations is impermissible under Rule 404(b), which provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See e.g., U.S. v. Johnson,* 626

- 53 -

F.R.D. 410, 419 (D. Del. 2009) (barring admission of evidence related to an SEC civil lawsuit under Fed. R. Evid 404(b)).

The Court should bar the Arizona Evidence as irrelevant, unfairly prejudicial, and as inadmissible character evidence.  The Republic Article should also be barred as inadmissible hearsay.

Word Count:  742.

### **Plaintiff's Response in Opposition to Defendants' Motion *in Limine* No. 1.**

Defendants' Motion *in Limine* No. 1 improperly and prematurely seeks to preclude three categories of evidence based on Federal Rule of Evidence 403, despite the Third Circuit's well-established caselaw holding that pretrial preclusion of evidence based on Rule 403 is an extreme measure that is rarely warranted.

Rule 403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  It is well-settled that "[e]vidence should be excluded under 403 only sparingly" and the balance "should be struck in favor of admissibility."  *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994).  The Third Circuit has "stressed that pretrial Rule 403 exclusions should rarely be granted," noting that:

> [e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage....However, a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. **Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper**.

*In re Paoli Railroad Yard PCB Litig*., 916 F.2d 829, 859 (3d Cir. 1990) (emphasis added). For this reason, courts routinely reject motions *in limine* based on Rule 403. *See e.g., Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., 2018 WL 6629705 (D. Del. 2018) (denying motion *in limine* because it would be too "difficult to conduct a Rule 403 analysis in abstract" and "would be premature to exclude Defendants' purportedly responsive evidence.").

The evidence Defendants seek to preclude is both relevant and likely to be highly probative of several issues at stake in this case. This case involves claims of fraud and fraudulent concealment which require Plaintiff to prove, *inter alia*, that the Defendants, through their agent Justin Billingsley, engaged in a scheme to misrepresent the basis of Frank E. Pavlis' investments and to conceal the subsequent fraudulent transfer to Defendants. Mr. Billingsley's involvement in other parallel and overlapping fraud schemes involving Loan Go and Mobile Corporation, and the Securities Division of Arizona Corporation Commission's regulatory action against Mr. Billingsley, is directly probative of Mr. Billingsley's intentional pattern of fraudulent conduct. Mr. Billingsley

was at all times acting as Defendants' agent in all interactions with Mr. Pavlis. Accordingly, this evidence is admissible as evidence of Defendants' (through their agent Mr. Billingsley) motive, intent, preparation, common plan and/or absence of mistake. *See* Fed. R. Evid. 404(b)(2).

The Arizona Republic article that Defendants also seek to preclude merely summarizes the same relevant and probative facts, including an express discussion of Mr. Billingsley's improper conduct as it relates to Mr. Pavlis. As such, it is similarly admissible as an exception to the hearsay rule as evidence of Defendants' motive, intent and plan. *See* Fed. R. Evid. 803(3). The article is also relevant because it, and the circumstances surrounding its publication, provided the Plaintiff notice of Mr. Billingsley's questionable conduct.

Moreover, evidence related to Mobile Pro Corporation, in addition to being probative of Defendants' intent and common plan, is direct evidence of the fraudulent creation of the September 1, 2014 and November 1, 2014 Key Commercial Promissory Notes—an issue that is central to Plaintiff's case. Among other things, the signature that appears on the Key Commercial Notes and related documents purports to be that of Michael Silberman, a fellow officer at Mobile Pro who never worked for Key Commercial. Simply put, evidence relating to Mobile Pro is inextricably intertwined with and part of Plaintiff's fraud claims.

Because this evidence is unequivocally relevant and highly probative, it is admissible so long as it overcomes the Rule 403 balancing test.  Plaintiff argues that it does, while Defendants argue it does not.  It is to too early for this Court to properly assess and balance the probative nature and any potential prejudicial effect of this evidence.  Accordingly, the Court cannot make a proper Rule 403 assessment at this premature stage.   Thus, as the Third Circuit suggests, this Court should deny Defendants' Motion *in Limine* No. 1.

Word Count: 720 words.

### **Defendants' Reply in Support of Motion *in Limine* No. 1.**

The Arizona Evidence is irrelevant, unfairly prejudicial, and constitutes inadmissible character evidence.  Fed. R. Evid. 402, 403, 404(b).  No claim in this case arises out of alleged conduct in Arizona.  Any probative value of the Arizona Evidence is substantially outweighed by its prejudicial value.  Fed. R. Evid. 403.  Moreover, Mr. Billingsley's character is not an element of any of Plaintiff's claims, but Plaintiff seeks to inaccurately suggest that Mr. Billingsley has the character of a "serial fraudster" and acted in conformity with that character trait in his dealings with Mr. Pavlis.   *Id*.  Additionally, the Arizona Republic article is inadmissible hearsay not subject to any exception or exclusion.  Fed. R. Evid. 801, 803.

This is the appropriate time to determine the admissibility of Arizona Evidence.  *In re Paoli Railroad Yard PCB Litigation* is procedurally distinguishable because the

expert evidence at issue there was excluded at the summary judgment stage rather than at a pretrial conference.  916 F.2d 829, 854 (3d Cir. 1990).  Moreover, the passage on which Plaintiff relies is arguably dicta because the reviewing court noted that "it is not clear that the court actually excluded any opinions under Rule 403."  *Id.* at 859.

The Arizona Evidence appeals to the jury's sympathies, arouses a sense of horror, provoke the instinct to punish, and may cause the jury base its decision on something other than the claims at issue or the established facts and law.  *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980).  The Arizona Evidence must be excluded.

Word Count:  250

## 2. **Defendants' Motion *in Limine* No. 2.**

Defendants move *in limine* to bar any use by Plaintiff's counsel during opening or closing statements of the following prejudicial phrases and characterizations set forth in the Supplemental Complaint, specifically, the terms and phrases: "elder abuse" (Supplemental Complaint ¶ 1), "serial fraudster" (*id.* at ¶¶ 1, 30), "fraudulent scheming" (*id* ¶ 31), and "[Billingsley] beguiled and fleeced retirees in Arizona."  (*Id.* ¶ 47).

The phrase "elder abuse" is prejudicial and is likely to confuse or mislead the jury.  Both Pennsylvania and Delaware have comprehensive statutory schemes to address and mitigate "elder abuse,"[6] but Plaintiff uses the phrase in the Supplemental

---

[6] The preamble to the Pennsylvania Older Adults Protective Services Act ("OAPSA") states, in relevant part, that "it is declared the policy of the Commonwealth of Pennsylvania that older adults who lack the capacity to protect themselves and are at

Complaint not to denote a regulatory infraction, identify specific conduct, or to assert a cause of action, but rather as a rhetorical flourish to appeal to the jury's sympathies or provoke its instinct to punish. *E.g., Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* P 403(03), at 403-15 to 403-17 (1978)). Plaintiff should not be permitted to use the phrase "elder abuse."

Along similar lines, the mischaracterization of Billingsley as a "serial fraudster" is prejudicial and is likely to confuse or mislead the jury. The allegations set forth in Paragraphs 31-75 of the Supplemental Complaint that purport to form the basis for the characterization of Billingsley as a "serial fraudster" involve a regulatory action to enforce Arizona state securities laws (the Arizona Evidence, as defined in Defendants' Motion *in Limine* No. 1), whereas this action involves a private cause of action under

---

imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare." 35 P.A. § 10225.102. OAPSA provides for administrative and criminal penalties for violations. 35 P.A. § 10225.706(a)-(b).

Similarly, Delaware's civil elder abuse statute, 6 *Del. C.* § 2583, provides for sentencing enhancements for crimes against vulnerable adults (11 *Del. C.* § 1105(c)), and has an Adult Protective Services statute (31 *Del. C.* § 3901, *et seq.*). The Delaware Attorney General has implemented a Senior Protection Initiative "comprised of prosecutors, police, and social services representatives promote awareness regarding elder abuse, neglect, and financial exploitation." Available at: *https://attorneygeneral.delaware.gov/executive/senior-protection-initiative/* (last visited Jun. 1, 2021). Although there is no Delaware common law cause of action for "elder abuse," courts have commented that abusive conduct directed to an elder may constitute a claim for intentional infliction of emotional distress. *See, e.g.*, *Arunachalam v. Pazuniak*, 2016 WL 748005, at *7 (D. Del. 2016) (granting motion to dismiss "elder abuse" count).

Delaware or Pennsylvania law alleging common law fraud and breach of contract. Those proceedings involve different facts, different parties, and different legal rubrics, and as such, are likely to confuse or mislead the jury, as discussed in Defendants' Motion *in Limine* No. 1.

For the same reasons, references to Billingsley's alleged "fraudulent scheming" (Supplemental Complaint ¶ 31) and "beguil[ing] and fleec[ing] retirees in Arizona" (*id.* ¶ 47) should not be permitted in front of the jury. The probative value of these phrases is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

Word Count: 563.

### Plaintiff's Response in Opposition to Defendants' Motion *in Limine* No. 2

Defendants' Motion *in Limine* No. 2, which seeks to preclude Plaintiff from utilizing certain phrases to describe Defendants' conduct, is inappropriate for many of the same reasons stated in response to Defendants' Motion *in Limine* No. 1, and because it impermissibly seeks to control Plaintiff's decision-making about how Plaintiff presents its case.

As stated in response to Defendants' Motion *in Limine* No. 1, the Third Circuit has repeatedly stated that "[e]vidence should be excluded under 403 only sparingly" and the balance "should be struck in favor of admissibility." *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994). The Third Circuit has "stressed that pretrial Rule 403 exclusions

should rarely be granted" and explained "[p]reciptious Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." *In re Paoli Railroad Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

The entire basis for Defendants' Motion *in Limine* No. 2 is Rule 403.  Notably, Defendants do not assert that any of the phrases that Defendants seek to prelude Plaintiff from utilizing would be irrelevant.  Instead, Defendants incorrectly argue, and without any support conclude, that "[t]he probative value of these phrases is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury."  As the Third Circuit makes clear, it is impossible for this Court to conduct a Rule 403 balancing test at this early stage, prior to gaining an understanding of the full probative value and prejudicial effect of these phrases.  To do so would be "unfair and improper."  *In re Paoli Railroad Yard PCB Litig.*, 916 F.2d at 859.  Indeed, when confronted with issues related to the use of certain phrases and characterizations, as are presented here, courts routinely deny motions *in limine. See e.g., Johns Hopkins Univ. v. Alcon Labs. Inc.*, 2018 WL 4178159, at *7-8 (D. Del. 2018) (denying motion *in limine* that sought to preclude party from using certain characterizations and stating that courts should "hesitate to limit testimony or evidence by terminology rather than substance.").

Moreover, matters of "argument and strategy," as opposed to evidence, should not be precluded from trial.  *See e.g.*, *U.S. v. McGill*, 2016 WL 48214 (E.D. Pa. 2016) (denying motion *in limine* to bar the use of inflammatory language because the use of

- 61 -

such language was a matter of "argument and strategy," that "depending on the nature of the defense that [defendant] puts on at trial…may not present any danger of prejudice."). Here, Defendants seek to impermissibly control the way that Plaintiff argues its case by requiring only neutral descriptions of the Defendants. This type of restriction is not a proper basis for a motion *in limine* and is not within Defendants' control.

Accordingly, the Court should deny Defendants' Motion *in Limine* No. 2 should as improper and premature.

Word Count: 471

### <u>Defendants' Reply in Support of Motion *in Limine* No. 2.</u>

Tellingly, Plaintiff fails to defend the specific inflammatory and prejudicial phrases that Defendants seek to exclude from her opening and closing statements: "elder abuse," "serial fraudster," "fraudulent scheming," and "[Billingsley] beguiled and fleeced retirees in Arizona." These phrases are patently prejudicial and should not be used in presentations to the jury.

The phrase "elder abuse" arises in various legal and lay contexts, has severe negative connotations, and is thus likely to confuse or mislead the jury. It has no probative value to this case, as there is no suggestion that Mr. Pavlis was ever a victim of "elder abuse" as contemplated by Pennsylvania or Delaware legal frameworks, or that Mr. Billingsley or Defendants had any role in such hypothetical abuse.

The phrase "serial fraudster" is similarly prejudicial, as it refers to proceedings that involved different facts, different parties, and different legal rubrics, and as such, are likely to confuse or mislead the jury.  The phrases "serial fraudster," "beguiled and fleeced retirees in Arizona," and "fraudulent scheming" are plainly objectionable as prejudicial, as they have no bearing on the claims or issues at stake in this litigation, but rather allude to the impermissible Arizona Evidence addressed in Defendants' Motion in Limine No. 1.

Plaintiff should not be permitted to use these phrases before the jury as they have no probative value but are rhetorical *ad hominem* smears to prejudicially disparage Mr. Billingsley's character and confuse the jury.  Fed. R. Evid. 403.

WORD COUNT:  240

### 3.    **Defendants' Motion *in Limine* No. 3.**

Defendants hereby move to exclude evidence pertaining to Defendants' subjective motivation for the breach of contract alleged in Count IV.

The November 1, 2014 Note at issue in Count IV is a contract, the terms of which provide that "[t]his Note and all actions arising out of or in connection with this Note shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to the conflicts of law provisions of the State of Delaware, or of any other state."  Nov. 1, 2014 Note.

Under Delaware law, "[p]roving a breach of contract claim does not depend on the breaching party's mental state." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442(Del. Ch. 2012), *rev'd on other grounds sub nom., Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund,* 68 A.3d 665 (Del. 2013); *see also NACCO Indus., Inc. v. Applica*, Inc., 997 A.2d 1, 35 (Del. Ch. 2009) (noting Delaware's recognition of efficient breach); *Hifn, Inc. v. Intel Corp.*, 2007 WL 2801393, at *13 (Del. Ch. 2007) ("[T]o the extent that [plaintiff] is contending that [defendant's] subjective motivations for wanting out of the contract give rise to an inference that it acted in bad faith, that argument fails under settled law."); *see generally Restatement (Second) of Contracts* ch. 16, introductory n. (1981) ("The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach. 'Willful' breaches have not been distinguished from other breaches....")

Under Third Circuit precedent, motive or mental state is irrelevant to an alleged breach of contract. *See, e.g., Argush v. LPL Financial, LLC*, 759 Fed. Appx. 121, 126 (3d Cir. 2018) (applying New Jersey law to affirm order barring evidence of defendant's "planning and motive" for alleged breach of employment contract). Even if evidence of a defendant's planning and motive have some bearing on a plaintiff's breach of

contract claims, "any probative value would be substantially outweighed by a risk of confusing the issues and misleading the jury." *Id.* (citing Fed. R. Evid. 403 and 402).

Accordingly, under Third Circuit precedent, Plaintiff should not be permitted to introduce facts showing that Defendants had a culpable mental state with respect to any alleged breach of the November 1, 2014 Note, because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.

The evidence in this case that is potentially probative of a culpable mental state includes evidence pertaining to:

- the timing of the formation of defendant Key Commercial Finance, LLC ("KCF");

- the circumstances surrounding the transfer of Mr. Pavlis' funds from Allwest to KCF;

- any evidence purporting to show that the November 1, 2014 Note was fraudulently induced or fraudulently executed;

- any evidence purporting to show that documents "were fraudulently created by Mr. Billingsley to substantiate the transfer" of Mr. Pavlis' Allwest investment to KCF, "and were not presented to, or authorized by Mr. Pavlis."  Supplemental Complaint at ¶¶ 100-104, 113-127.

- 65 -

The prejudice here arises from the introduction of a culpable mental state as motivation for Defendants' alleged failure to perform its obligations under the November 2014 Note.  Under Delaware and Third Circuit precedent, such evidence is not probative of Defendants' obligations under, or performance of, the November 2014 Note, and only serves to mislead or confuse the jury and suggest a decision on an improper or emotional basis.  *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (holding that evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one") (citing Fed. R. Evid. 403, Advisory Committee's Note).

For the foregoing reasons, evidence of Defendants' mental state for the breach of contract alleged in Count IV should be barred as irrelevant and unfairly prejudicial under Federal Rules of Evidence 402 and 403.

Word Count:  668.

### Plaintiff's Response in Opposition to Defendants' Motion *in Limine* No. 3

Defendants' Motion *in Limine* No. 3 improperly seeks to preclude relevant and highly probative evidence that is at the core of Plaintiff's case.  Defendants argue that the evidence they seek to preclude is irrelevant to Plaintiff's breach of contract claim—a contention Plaintiff contests—and thus, should be precluded from the case entirely.  Yet, Defendants completely overlook the fact that this evidence is wholly relevant and highly probative to Plaintiff's four other causes of action.  Because Plaintiff is entitled to

present all relevant and probative evidence in support of its claims, the Court should deny Defendants' Motion *in Limine* No. 3.

Plaintiff is entitled to present all relevant and probative evidence at the upcoming trial. The Federal Rules of Evidence provide that "[e]vidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Where evidence is relevant, it may only be precluded if "its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. at 403. Defendants fail to make any argument in support of Motion *in Limine* No. 3 that the evidence they seek to preclude is irrelevant and/or that its probative value is outweighed by any of the listed factors as it relates to Plaintiff's fraud, fraudulent concealment, declaratory judgment and unjust enrichment claims.

Indeed, Defendants lack any argument to that effect. At trial, Plaintiff will assert five separate legal claims against the Defendants. In addition to its breach of contract claim, Plaintiff will bring claims for fraud and fraudulent concealment. In support of these claims, Plaintiff will present evidence demonstrating that Key Commercial Finance, through its agents, Mr. Billingsley and George Chadwick Self, perpetrated a fraud on Mr. Pavlis by (i) orchestrating a scheme to re-direct his $7,000,000 investment in Allwest Investments to Key Commercial Finance, and (ii) by fraudulently concealing

- 67 -

its conduct by subsequently fabricating the Promissory Notes and related documents.

Plaintiff will also bring a cause of action for declaratory judgment based on the void *ab initio* doctrine and unjust enrichment.  In support of these claims, Plaintiff will present evidence demonstrating that the Key Commercial Promissory Notes were never valid instruments because they were issued well before Key Commercial Finance ever existed as a legal entity.

All of the evidence that Defendants seek to preclude in Motion *in Limine* No. 3 is directly relevant and highly probative to these causes of action.  Specifically, the timing of the formation of Key Commercial Finance, LLC is the central issue at stake in Plaintiff's declaratory judgment cause of action.   Moreover, the circumstances surrounding the transfer of Mr. Pavlis' funds from Allwest to KCF, evidence showing that the November 1, 2014 Note was fraudulently induced and executed, and evidence showing that Mr. Billinglsey fraudulently created documents to substantiate the transfer of Mr. Pavlis' Allwest investment to KCF, are directly and centrally related to Plaintiff's fraud, fraudulent concealment and unjust enrichment claims.  Put simply, Defendants have absolutely no basis to preclude the entirety of Plaintiff's evidence that is necessary and probative to its case.

Defendants provide no legal support for their apparent argument that evidence must be precluded where it is not specifically relevant and or probative to one of Plaintiff's claims, even where the same evidence is directly relevant and highly

probative to numerous other claims at issue in the case.  In fact, the opposite is plainly true.  Courts within the Third Circuit routinely permit the presentation of evidence that is relevant to one issue in a case, while it is irrelevant to others.  *See e.g, Toscano v. Case*, 2013 WL 5333206, at *1 (D.N.J. 2013) (permitting evidence that was "entirely irrelevant" for one purpose because it was relevant to another); *see also Piontek v. I.C. System*, 2009 WL 1044596, at *1 (M.D. Pa. 2009) (determining that certain evidence was "irrelevant if offered to prove motive" but relevant to "negate Plaintiff's claim for emotional damages" and thus, admissible).

Accordingly, the Court should deny Defendants' Motion *in Limine* No. 3 because it improperly seeks to preclude relevant and probative evidence without making any showing that such evidence is unfairly prejudicial, confusing, misleading, or needlessly cumulative.

Word Count: 719

## **Defendants Response in Support of Motion in Limine No. 3.**

Under Third Circuit precedent, Plaintiff should not be permitted to introduce evidence showing that Defendants had a culpable mental state with respect to any alleged breach of the November 1, 2014 Note, because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  *Argush v. LPL Financial, LLC*, 759 Fed. Appx. 121, 126 (3d Cir. 2018) (barring evidence of defendant's "planning and motive" for alleged

- 69 -

breach of contract and noting that "any probative value would be substantially outweighed by a risk of confusing the issues and misleading the jury.").

The fact that the prejudicial mental-state evidence is the same evidence that Plaintiff seeks to admit as evidence of fraud is due solely to Plaintiff's late election to add a contract claim to this case. The evidence at issue is not merely irrelevant, it is unfairly prejudicial. "Proving a breach of contract claim does not depend on the breaching party's mental state." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442 (Del. Ch. 2012), *reversed on other grounds sub nom, Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund,* 68 A.3d 665 (Del. 2013).

The risk of confusing the issues and misleading the jury is palpable. The evidence that Plaintiff seeks to introduce to support her fraud claims unfairly prejudices Defendants' defense of her contract claim and should be excluded.

Word Count:  239

## VI.   Discovery

125.     Each party has completed discovery.

## VII.   Number of Jurors

126.   There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel

in the courtroom, continuing by meeting with jurors individually and addressing any challenges for cause, and concluding with peremptory strikes.

## VIII.  Proposed *Voir Dire*

127.   The parties' proposed *voir dire* is attached as Exhibit "H".

## IX.   Proposed Jury Instructions

128.   The parties' proposed jury instructions are attached as Exhibit "I".

## X.   Length of Trial

129.   This case is currently scheduled for a 5-day jury trial beginning at 9:30 a.m. on a day to be determined by the Court, with subsequent trial days beginning at 9:30 a.m.  Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m.

130.   The Court will determine the appropriate length of time to be given to each side.

131.   The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom, or at the end of the day after the jury has been dismissed. The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when  such motions will be heard and whether the Court wishes to receive briefing.

132.   The order of presentation of evidence will be as follows:

a. Opening statements (Plaintiff first, followed by Defendants);

b. Plaintiff's presentation of evidence of issues for which Plaintiff bears the burden of proof;

c. Defendants' presentation of evidence rebutting Plaintiff's presentation, and Defendants' presentation of evidence on issues for which Defendants bear the burden of proof;

d. Plaintiff's presentation of evidence rebutting Defendants' presentation of evidence on issues for which Defendants bear the burden of proof; and

e. Closing arguments (Plaintiff first, followed by Defendants, followed by Plaintiff's rebuttal).

## XI. Amendment of Pleadings

133. There are no pending motions to amend the pleadings. The pleadings shall be deemed to be amended to conform to the evidence adduced at trial pursuant to Federal Rule of Civil Procedure 15(b).

## XII. Additional Matters

134. The parties respectfully submit the following agreed-upon matters for the Court's consideration:

### 1) Jury Notes

135.   The parties agree that jurors be permitted to write notes during the presentations of the parties and that jurors be permitted to bring these notes into the deliberation room.  The parties propose that jurors be instructed not to exchange or share their notes with other jurors (though they may discuss the contents of their notes) and that the juror's notes be collected  by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

### 2) Handling of Confidential Information at Trial

136.   The parties do not anticipate requesting that the Courtroom be sealed during any portion of the trial.

137.   The parties agree to follow the provisions in the Stipulated Protective Order (D.I. 56) regarding the confidentiality of exhibits used at trial. Insofar as  the Stipulated Protective Order restricts the dissemination and use of "Confidential Information," such restrictions shall not apply to the introduction of evidence at trial.

## XIII. Settlement

138.   The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement. It was determined that the matter could not be resolved at this juncture by settlement.

## XIV.  Order to Control Course of Action

139.   This order controls the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

140.   The parties reserve the right to seek leave to supplement or amend this final pretrial order based on subsequent events or by agreement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the

subsequent course of the action, unless modified by the Court to prevent manifest

injustice.


DATED: _____          _____

                                  United States District Judge


Approved as to form and substance:

STRADLEY RONON STEVENS & YOUNG, LLP          HALLORAN FARKAS + KITTILA LLP

/s/ *Joelle e. Polesky*                      /s/ *Theodore A. Kittila*
Joelle E. Polesky (ID No. 3694)              Theodore A. Kittila (ID No. 3963)
1000 N. West Street, Suite 1200              William E. Green (ID No. 4864)
Wilmington, DE 19810                         5801 Kennett Pike, Suite C/D
Tel: (302) 295-4856                          Wilmington, Delaware 19807
Email: jpolesky@stradley.com                 Tel: (302) 257-2025
                                             Email: tk@hfk.law; wg@hfk.law


*Attorneys for Plaintiff*                    *Attorneys for Defendants*

OF COUNSEL:
William E. Mahoney, Jr. (*pro hac vice*)
Cameron Redfern (to be admitted *pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8059
Fax: (215) 564-8120

Dated:  July 2, 2021

5064651