THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH S. SKEANS, Executrix of the ESTATE OF FRANK E. PAVLIS,<br><br>Plaintiff,<br>v.<br>KEY COMMERCIAL FINANCE, LLC, KEY COMMERCIAL FINANCE PROPERTIES, LLC, EQUITY PROS, LLC, and MOBILE AGENCY, LLC<br><br>Defendants. | No. 1:18-cv-01516-CFC-MPT |

**PLAINTIFF'S OPPOSITION TO MOTION FOR
<u>PERMISSIVE INTERVENTION OF JEFFREY PETERSON</u>**

Nearly three years after this case originally commenced, and with the litigation ready for trial, an unrelated third party, Mr. Jeffrey Peterson, now attempts to interject himself into this case in an apparent effort to prejudice the parties and to prevent the final resolution of this matter once and for all. In doing so, Mr. Peterson fails to allege that his intended claims or defenses share any common connection with either the law or the facts at stake in this case. Further, Mr. Peterson's motion to intervene is untimely, as it is presented well after the close of discovery and dispositive motion practice, and after Plaintiff and Defendants submitted their Proposed Pretrial Order and made all final decisions for the trial of this matter. Finally, Mr. Peterson's motion is also procedurally improper because it lacks the

requisite components necessary to allow this Court to determine the claims or defenses Mr. Peterson intends to raise.

For these reasons, the Court should deny the Motion for Permissive Intervention (D.I. 108).

## I.     FACTUAL BACKGROUND

Plaintiff, Deborah S. Skeans as the Executrix of the Estate of Frank E. Pavlis, (the "Pavlis Estate") commenced this action against Defendants, Key Commercial Finance, LLC, Key Commercial Finance Properties, LLC, Equity Pros, LLC and Mobile Agency, LLC, on October 1, 2018 by filing a five-count Verified Complaint including claims for (i) declaratory judgment (Count I); (ii) common law fraud (Count II); (iii) fraudulent concealment (Count III); conversion (Count IV); and unjust enrichment (Count V).  (D.I. 1).

The case arises out of two investments that Mr. Pavlis made in 2014, totaling $7,000,000, in a company named Allwest Investments, LLC ("Allwest") at the direction of a "financial advisor," Justin Billingsley. (*Id*. at ¶¶ 76-82.) Unbeknownst to Mr. Pavlis, Mr. Billingsley subsequently orchestrated a scheme by which the funds Mr. Pavlis invested in Allwest were transferred to Defendant Key Commercial Finance, LLC, ("Key Commercial") which Mr. Billingsley controlled. (*Id*. at ¶¶ 83-87.)  Key Commercial then used those funds for its own purposes, including directing some of those funds to the other Defendants. (*Id*.)  In order to conceal this

scheme, Key Commercial allegedly issued two Promissory Notes (the "Key Commercial Promissory Notes") to Mr. Pavlis in September and November 2014, in order to make it appear as if Mr. Pavlis had, in fact, invested $7,000,000 in Key Commercial, rather than Allwest. (*Id.* at ¶¶ 88-112.)

On August 17, 2020, the parties each filed their respective Motions for Summary Judgment. (D.I. 78, 82.) This Court denied both motions. (D.I. 95, 101.) On January 1, 2021, Plaintiff filed a Motion for Leave to File Supplemental Complaint to add a claim for breach of contract against Defendant, Key Commercial Finance, LLC. (D.I. 96, 102.) On April 15, 2021, the Court granted the motion, docketed the Supplemental Complaint and entered a pretrial scheduling Order setting the trial of this matter to commence on August 2, 2021. (D.I. 102). On June 17, 2021, the Court cancelled the scheduled trial. (D.I. 105). The parties filed a Proposed Pretrial Order on July 2, 2021. (D.I. 106). The case is now trial-ready and the parties are awaiting new trial dates.

The attempted Intervenor, Jeffrey Peterson, is an unrelated third party who is not connected to either Plaintiff or, upon information belief, to any of the Defendants. Plaintiff does not allege that Mr. Peterson was involved in the Allwest-Key Commercial fraud scheme in any manner, or that he is otherwise related to the issues at stake in this case. The few references to Mr. Peterson in the Supplemental Complaint, *which were also included in the original Verified Complaint*, relate to

Mr. Billingsley's prior dealings with Mr. Peterson and pre-date Mr. Billingsley's involvement with Mr. Pavlis.

## II.  ARGUMENT

### 1. Mr. Peterson's Claims Do Not Arise Out of Any Common Questions of Law or Fact at Stake in This Case.

The Federal Rules of Civil Procedure set forth the requirements for permissive intervention by providing "[o]n timely motion, the court may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  There is no applicable federal statute permitting Mr. Peterson's intrusion into this case.  Thus, he may only proceed by asserting a common question of law or fact.   Mr. Peterson fails to do so.

In this case, Plaintiff brings claims against Defendants for declaratory judgment, common law fraud, fraudulent concealment, breach of contract and unjust enrichment arising out of Key Commercial's scheme to defraud Mr. Pavlis by transferring $7,000,000 from Allwest to Key Commercial.  The case is limited to the narrow circumstances surrounding Mr. Pavlis' investment, the subsequent transfer of Mr. Pavlis' funds from Allwest to Key Commercial, and the creation of the Key Commercial Promissory Notes.

Conversely, Mr. Peterson appears to intend to raise a defamation claim against

Plaintiff and/or to move to strike[1] certain allegations from the Supplemental Complaint. However, Mr. Peterson cannot bring these claims because he fails to allege any common law or facts his claims share with those at issue in this litigation. *See e.g., NCAA Collegiate Athletic Assn. v. Gov. of N.J.*, 520 Fed.Appx. 61, 63 (3d Cir. 2013) (affirming denial of motion to intervene where intervenor's claims had no common question of law or fact with the issues at stake in the litigation); *see also Islamic Soc. of Basking Ridge v. Twp. of Bernards*, 681 Fed.Appx. 110, 112 (3d Cir. 2017) (same). Mr. Peterson does not allege any connection he has with the Plaintiff, any of the Defendants, or any of their claims or defenses whatsoever. Instead, Mr. Peterson merely alleges a generalized connection to non-party, Mr. Billingsley.[2] Further, Mr. Peterson's proposed defamation claim would be legally deficient, as it is well settled that allegations contained in pleadings are absolutely privileged and cannot form the basis of a defamation claim. *See e.g., Carroll v. ABM Janitorial*

---

[1] Although Mr. Peterson references his intention to file a Motion to Strike, the docket reflects that he has not done so.

[2] Ironically, Mr. Billingsley tried to join this case by way of a Third Party Complaint in October 2019 in order to raise his own defamation claim. (D.I. 35). However, the Court dismissed the Third Party Complaint in its entirety after determining that Mr. Billingsley was an improper third party plaintiff and his defamation-related claims, which were joined by Key Commercial, "in no way depend[ed] on the outcome of the underlying action." (D.I. 76, 77.) Mr. Peterson cannot now raise similar claims by simply re-packaging them in a motion to intervene. *See e.g., In re: Syntax-Brillian Corp.*, 2016 WL 5662074, at *11 (D. Del. 2016) (denying motion to intervene that attempted to "resurrect issues decided…years ago").

*Servs.-Mid-Atlantic, Inc.*, 970 F.Supp.2d 292, 300 (D. Del. 2013) ("In Delaware, an absolute privilege attaches to all statements made in the course of judicial proceedings…including…the drafting and filing of pleadings."); *see also Wolk v. Teledyne Indus., Inc.*, 475 F.Supp.2d 491, 508 (E.D. Pa. 2007) ("Under [ ] Pennsylvania law…, the absolute privilege protecting judicial proceedings applies and bars all libel and defamation actions based on statements in pleadings, other court filings, and judicial orders and opinions."). Additionally, even if the allegations in the Supplemental Complaint that Mr. Peterson challenges are deemed immaterial or impertinent pursuant to Federal Rule 12(f), as Mr. Peterson suggests, his request to strike the allegations is not part of the record. Moreover, such a motion is/would be untimely. *See e.g., Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615, 617 (D. Del. 1976) (denying motion to strike "in the interest of insuring a fair and efficient trial," where it was filed several months after the challenged pleading was filed).

### 2. The Motion to Intervene is Untimely.

In addition to Mr. Peterson's failure to allege any common question, Mr. Peterson's intrusion into this litigation is also too late for this Court to permit. "A motion to intervene, whether of right or by permission, must be timely under the terms of Rule 24." *Choike v. Slippery Rock Univ.*, 297 Fed.Appx. 138, 140 (3d Cir. 2008) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982));

*see also* Fed. R. Civ. P. 24(b)(3) (stating that the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.") In determining whether a motion to intervene is timely, courts must consider (1) how far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which the resulting delay might cause to the other parties, and (3) the reason for the delay. *Id*. Timeliness of a motion to intervene is "measured from the point at which the applicant knew, or should have known, of the risk to its rights." *Id*. at 141. "[T]he critical inquiry is: what proceedings of substance on the merits have occurred." *Id*.

Accordingly, where proceedings have advanced through discovery and the pretrial phases it is too late to permissively intervene. *See e.g., id.* at 141-42 (affirming denial of motion to intervene where discovery was completed and intervenor knew or should of known about his right to intervene for at least 11 months prior to filing); *see also Donovan v. United Steelworkers of America, AFL-CIO*, 721 F.2d 126, 127 (3d Cir. 1983) (affirming denial of motion to intervene where it was filed thirteen months after complaint and "[a]ll of the pre-trial work was complete at that time and the case was already scheduled for trial"); *Cole v. Danberg*, 2014 WL 293425, at *2 (D. Del. 2014) (denying motion to intervene as untimely where there was only one month remaining before the discovery deadline and the dispositive motion deadline had lapsed).

Every significant event in this case, apart from the upcoming trial, has already occurred. Plaintiff filed its Verified Complaint nearly three years ago. The final discovery deadline was April 30, 2020 and Plaintiff and Defendants filed their respective dispositive motions one year ago. Most significantly, Plaintiff and Defendants prepared and filed a complete Proposed Pretrial Order, setting forth the claims to be tried and the expected witnesses and exhibits to be presented, over a month ago. All that remains is the trial in this matter.

Despite the passage of these case events, Mr. Peterson now seeks to interject himself into this case at the eleventh hour. However, the well settled caselaw makes clear that this Court must deny Mr. Peterson's request in order to avoid undue prejudice and delay to Plaintiff and Defendants. Mr. Peterson attempts to overcome his untimeliness by arguing that he was "for the first time drawn into this action" on April 15, 2021, when Plaintiff filed the Supplemental Complaint. However, each and every allegation related to Mr. Peterson—including all of the specific paragraphs Mr. Peterson calls to this Court's attention—*were included in Plaintiff's Verified Complaint, which was filed on October 1, 2018*. (D.I. 1 at ¶¶ 31-34, 39, 42, 44, 51, 61.) Further, Mr. Peterson has been aware of the allegations contained in the Verified Complaint since at least October 3, 2018. *See* October 3, 2018 Email from Mr. Peterson to Plaintiff's Counsel, attached as Exhibit A. Plainly, Mr. Peterson has had almost three years to intervene but waited until the eve of the previously

scheduled trial date of August 2, 2021 in order to unduly prejudice Plaintiff and delay the final resolution of this case. Because Mr. Peterson's delay is wholly unjustified, his motion to intervene must be denied as untimely.

### 3. The Motion to Intervene is Procedurally Improper.

In addition to its numerous other defects, the Motion to Intervene is also procedurally defective because it lacks the components required by the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure provide that motions to intervene "must state the grounds for intervention and *be accompanied by a pleading that sets out the claim or defense for which intervention is sought*." Fed. R. Civ. P. 24(c) (emphasis added). Mr. Peterson completely overlooked half of his filing obligations by filing only a motion, without including any proposed pleading. This defect leaves Plaintiff unable to discern Mr. Peterson's intended claims or defenses and requires this to Court blindly permit Mr. Peterson to intrude in this case, without demonstrating any substantial basis for doing so. Mr. Peterson's failure to submit the required pleading warrants this Court's rejection of his motion. *See Gaskin v. Commonwealth of Pa.*, 197 Fed.Appx. 141, 143-44 (3d Cir. 2006) (intervenor's failure to submit a pleading along with her motion to intervene resulted in a rejection of the motion entirely).

## III. CONCLUSION

For all the foregoing reasons, the Court should deny the Motion for Permissive Intervention.

|  | STRADLEY RONON STEVENS & YOUNG, LLP |
|---|---|
|  | */s/ Joelle E. Polesky* |
|  | Joelle E. Polesky (ID No. 3694) |
|  | 1000 N. West Street, Suite 1200 |
|  | Wilmington, DE  19801 |
|  | Tel: (302) 295-4856 |
|  | Fax: (302) 295-4801 |
|  | Email: jpolesky@stradley.com |
| OF COUNSEL: | *Attorneys for Plaintiff, Deborah S. Skeans, Executrix of the Estate of Frank E. Pavlis* |
| William E. Mahoney, Jr. (*pro hac vice*) |  |
| Cameron M. Redfern (*pro hac vice*) |  |
| Stradley Ronon Stevens & Young LLP |  |
| 2005 Market Street, Suite 2600 |  |
| Philadelphia, PA 19103 |  |
| Tel: (215) 564-8059 |  |
| Fax: (215) 564-8120 |  |

Dated:  August 4, 2021

5124503