# **EXHIBIT A**

```
                IN THE UNITED STATES DISTRICT COURT

                IN AND FOR THE DISTRICT OF DELAWARE


  DEBORAH S. SKEANS,                  :   CIVIL ACTION
  Executrix of the ESTATE OF          :
  FRANK E. PAVLIS,                    :
                                      :
            Plaintiff,                :
                                      :
       vs.                            :
                                      :
  KEY COMMERCIAL FINANCE,             :
  LLC,KEY COMMERCIAL FINANCE          :
  PROPERTIES, LLC, EQUITY             :
  PROS,LLC, and MOBILE                :
  AGENCY, LLC,                        :
                                      :
            Defendants.               :
  ---------------------------         :
  JUSTIN BILLINGSLEY and KEY          :
  COMMERCIAL FINANCE, LLC,            :
                                      :
            Third-Party               :
            Plaintiffs,               :
                                      :
       vs.                            :
                                      :
  DEBORAH S. SKEANS and               :
  DARBIN SKEANS,                      :
                                      :
            Third-Party               :
            Defendants                :   NO. 18-01516-CFC


                         - - -

                             Wilmington, Delaware
                             Thursday April 15, 2021
                             10:00 o'clock, a.m.
                             ***Telephone conference

                         - - -

  BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

                                   Valerie J. Gunning
                                   Official Court Reporter
```

```
 1    APPEARANCES:

 2
              STRADLEY RONON STEVEN & YOUNG LLP
 3            BY:   JOELLE E. POLESKY, ESQ.

 4
                        -and-
 5

 6            STRADLEY RONON STEVEN & YOUNG LLP
              BY:   WILLIAM E. MAHONEY, ESQ.
 7                  (Philadelphia, Pennsylvania)

 8
                    Counsel for Plaintiff Deborah S. Skeans,
 9                  Executrix to Estate of Frank Pavlis

10

11            HALLORAN FARKAS + KITTILA LLP
              BY:   THEODORE A. KITTILA, ESQ.
12                  WILLIAM E. GREEN, JR., ESQ.

13
                    Counsel for Defendants
14

15                       - - -

16
      ALSO PRESENT VIA TELEPHONE:
17
              JUSTIN BILLINGSLEY
18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2
 3              (The following telephone conference was head
 4     beginning at 10:00 a.m.)
 5
 6              THE COURT:  All right.  Good morning.  Counsel,
 7     let's have a roll call.  Let's start with the plaintiff,
 8     please.
 9              MS. POLESKY:  Good morning, Your Honor.  Joelle
10     Polesky of Stradley Ronon, and my colleague, Bill Mahoney,
11     with whom you're familiar, with also on the line.
12              MR. MAHONEY:  Good morning, Your Honor.
13              THE COURT:  Good morning.  And then for the
14     defendant?
15              MR. KITTILA:  Good morning, Your Honor.  It's
16     Ted Kittila on behalf of defendants, and I'm joined on the
17     line by Bill Green from my office and client representative
18     Justin Billingsley.
19              THE COURT:  All right.  Okay.  Well, you all are
20     aware I've denied the summary judgment, ready to move
21     forward with trial, but we still have also this pending
22     motion to supplement.  What's the defendants' position on
23     that now in light of my ruling?
24              MR. KITTILA:  Your Honor, we believe that the
25     motion to amend is too little too late.  At this point in
```

1   time, Your Honor, I just think that it's a complete change
2   in their strategy on how they've been prosecuting this case.
3              Just very quickly, Your Honor --
4              THE COURT:  Well, that's all right.  I mean, I
5   just wanted to know your position.
6              MR. KITTILA:  Yes.
7              THE COURT:  You don't want to try the case and
8   have them present in front of a jury completely inconsistent
9   positions.  You don't want to make an issue of that.
10             MR. KITTILA:  Well stated, Your Honor.  I
11  suppose looking at it that way, if that's what they want to
12  do, I think that they're entitled to do it.
13             We opposed it, Your Honor.  We spent so much
14  money on this case leading up to this point on this, so --
15             THE COURT:  And I'm going to get to that.  I'm
16  going to get to that, but I needed -- in all seriousness, I
17  often wonder, you know, sometimes defense attorneys, they
18  want to get rid of what I see as low hanging fruit, which as
19  a former trial lawyer I think would be great to have in
20  front of a jury.  I seriously do mean it.
21             Do you oppose this motion to supplement?  If you
22  don't oppose it, I will grant it, and then we'll be in front
23  of a jury and they'll be struck with it.
24             MR. KITTILA:  Your Honor, I have Mr. Billingsley
25  on the phone and if he speaks up now and tells me that I'm

```
 1   out on a limb, I would withdraw my motion for them to amend.
 2              Justin, am I okay with that?
 3              MR. BILLINGSLEY:  Yes, Ted.  I completely trust
 4   your judgment on this entirely.
 5              MR. KITTILA:  Okay.  So we withdraw the motion,
 6   the opposition.
 7              THE COURT:  Okay.  So, in other words, you
 8   withdraw the opposition and I will just let it go forward
 9   and then you can argue what you want in front of a jury.
10              MR. KITTILA:  Yes, Your Honor.
11              THE COURT:  Okay.  Well, then, I'm going to
12   grant the motion and let them supplement.
13              All right.  So then we need to set the case for
14   trial.  How soon, the defendants, will you be ready to try
15   the case?
16              MR. KITTILA:  Your Honor, I'm going to trial
17   next week on another matter.  We probably would be ready to
18   go as early as June.
19              THE COURT:  Okay. All right.  Plaintiff, then,
20   let's talk about a June trial date.  I'm not sure I can fit
21   one in actually.  I can't do June.  What about July?
22   Actually, I can't do July.  I'm scheduled every week in July
23   for trial.  I can put us down for August.
24              How long of a trial, from the defendants' point
25   of view, how long do you think the trial will be?
```

```
 1                    MR. KITTILA:  Your Honor, I think a maximum of
 2       three days would be what it would take.  That's kind of my
 3       view on it, and August is wide open, Your Honor, for a
 4       trial.
 5                    THE COURT:  Okay.  How about plaintiffs?  How
 6       many days do you think it will take?
 7                    MR. MAHONEY:  Yes.  I think three days is wildly
 8       optimistic, Your Honor.  I think it's a five-day trial, but
 9       any week in August is fine by us.
10                    THE COURT:  All right.
11                    MS. POLESKY:  Your Honor, I'm sorry.  Joelle
12       Polseky.
13                    I actually have conflicts Monday, March 9th and
14       Friday, March 13th.
15                    THE COURT:  Do you mean August?
16                    MS. POLESKY:  Yes, I'm sorry.  Sorry.  I'm
17       looking at my calendar, so I'm assuming that everybody else
18       can see what I'm staring at.  I apologize.
19                    THE COURT:  That's all right. All right.  Let's
20       do August 2nd.
21                    MR. KITTILA:  That works, Your Honor, from
22       defendants' standpoint.
23                    THE COURT:  All right.  Okay.  Now, I want to
24       say something.  I need a little bit of background here from
25       the plaintiff.  As I understand it, there are two
```

```
 1    essentially beneficiaries of this trust at the end of the
 2    day.  Is that right?
 3              MR. KITTILA:  Your Honor, effectively, there's
 4    one beneficiary.
 5              THE COURT:  Who is the beneficiary?
 6              MR. KITTILA:  It is the Watchtower organization.
 7              THE COURT:  The Watchtower?
 8              MR. KITTILA:  Yes.  And forgive me.
 9    Mr. Billingsley probably knows better than I, but it is a
10    religious organization based in New York.
11              THE COURT:  All right.  How big is it?  Do they
12    have counsel?
13              MR. KITTILA:  Do they have their own counsel?
14    They do.  They have in-house counsel.
15              THE COURT:  And is that counsel fully apprised
16    of what's going on in this case?
17              MR. KITTILA:  He is.
18              THE COURT:  And your understanding is that all
19    of the proceeds of the trust that's at issue here are going
20    to go to this Watchtower organization?
21              MR. KITTILA:  That is my understanding, Your
22    Honor, yes.
23              THE COURT:  Here's what I'm concerned about.
24    This case first came to my attention with the filing of a
25    massive brief and supporting documents to support a
```

1  preliminary injunction that really had no basis under Third
2  Circuit law.  It was accompanied by a motion for expedited
3  discovery that my recollection of the paperwork when I was
4  looking at it, it was more than a foot.  I mean, it was
5  ridiculous how much paperwork was attached to it.
6            What I'm concerned about is that there's
7  litigation -- essentially, this trust is like a carcass that
8  allows it to be the subject of predatory behavior that
9  nobody is checking what's going on here, that there's
10 nothing really to stop the lawyering, whatever else is
11 supporting this litigation effort.  I am very troubled by
12 that.  I was very troubled by it when I heard argument about
13 the original preliminary injunction, the motion to expedite,
14 and I don't know what the jury is going to do in this case.
15           But that kind of concern, for instance, if there
16 were a defense verdict I think would have to be addressed,
17 and what bothers me the more I thought about it was just,
18 you know, you've got an executrix which, you know, have got
19 some personal ties to this, to the underlying dispute as far
20 as I can tell, and as I say, I just don't really see the
21 checking on the lawyering.  And I'm not saying I've made
22 definitive judgments, don't get me wrong, but I am really
23 concerned and folks need to be mindful of that.
24           And I don't know.  Maybe we should require
25 somebody from the Watchtower organization to be present

```
 1    during the trial and to be present during the pretrial
 2    conference, because I want to make sure that they fully
 3    appreciate where -- I mean, at the end of the day, you know,
 4    there's a lot of money being spent here.  Especially if
 5    there's no verdict for the plaintiffs, this trust took a
 6    hit.
 7              So I think maybe we ought to have the -- you
 8    know, and I think I have limited authority here because I
 9    mean I recognize that Watchtower is not a party and at the
10    same time I just am troubled by, like, well who is checking
11    this?
12              So if you are telling me that Watchtower is
13    fully apprised of what's going on, I mean, are they involved
14    in discussions?
15              MR. MAHONEY:  I'm sorry, Your Honor.  Go ahead.
16              THE COURT:  No.  That's okay.
17              MR. MAHONEY:  I was just on the phone with them
18    Tuesday.  They have been fully apprised all along, Your
19    Honor.
20              THE COURT:  And they know how much money has
21    been spent by the trust on legal fees to date?
22              MR. MAHONEY:  They do.
23              THE COURT:  Okay.  Well, I think maybe you ought
24    to have a representative of Watchtower present at the
25    pretrial conference.  Let's set the date for that.
```

1               MS. POLESKY: Your Honor, while we're looking
2      for dates, this is Joelle Polseky. I believe I saw a recent
3      order that the Court has resumed in-person trials. Is it
4      fair at this point unless things change or another emergency
5      order occurs that for the pretrial conference and the trial,
6      we should anticipate being in the courtroom?
7               THE COURT: Yes, we should. Thanks for asking
8      that. I appreciate it. Yes, it will be in person.
9               MS. POLESKY: Okay.
10              THE COURT: In fact, the way I look at it, the
11     only way we're not going to trial August 2nd would be --
12     there is some possibility. Let's say three of the other
13     judges have jury trials scheduled for that day. If that
14     happened -- let me look at the calendar. And right now
15     there are two other -- there are two other jury trials
16     scheduled for August 2nd. I know the Chief Judge is trying
17     to get us in a position that we could do three trials in the
18     building at the same time, so we'll have to see.
19              The remaining weeks of August, there's not a
20     week that doesn't have four trials scheduled. And I just
21     know what my calendar looks like in the fall because we've
22     been pushing back everything because of Covid, so I think
23     our best bet is August 2nd, but -- well, everything in
24     Covid, you know, requires conditional rulings I guess when
25     it comes to scheduling.

```
 1                We'll plan on August 2nd.  Let me give you a
 2   pretrial date.  Sorry about this.  I'm looking at some dates
 3   here.
 4                All right.  Let's do a pretrial on July 14th,
 5   and then I need then you to get me the pretrial order and
 6   the jury instruction proposal, any voir dire I'm going to
 7   need on June 23rd.  And we're back to hard copies, folks.  I
 8   mean, I know that is confusing, too.  So I do need two hard
 9   copies of every filing.  We're back to the old rule in
10   addition to the electronic filing.  All right?
11                MR. MAHONEY:  Your Honor, would you also like
12   motions in limine by the 3rd of June?
13                THE COURT:  Well, they are part of the pretrial
14   order, so the answer is yes.  And I'm sure that Delaware
15   counsel for both sides are very well experienced and in
16   addition to being very good attorneys, so they'll help you
17   out to handle that.  All right.
18                Any other questions?
19                MR. MAHONEY:  None from plaintiff.
20                MR. KITTILA:  Nothing from defendants, Your
21   Honor.  Thank you.
22                THE COURT:  Okay.  Well, thank you, all.  I will
23   see you then at the pretrial conference.  Take care.
24                (Counsel respond, "Thank you, Your Honor.")
25                (Telephone conference concluded at 10:21 a.m.)
```

# **EXHIBIT B**

# Theodore Kittila

| | |
|---|---|
| **From:** | Justin Billingsley <jcbillin9@gmail.com> |
| **Sent:** | Monday, February 14, 2022 12:03 PM |
| **To:** | Theodore Kittila; William E. Green |
| **Subject:** | FW: Resolution |

**From:** Richard Moake <richard.d.moake@gmail.com>
**Date:** Wednesday, February 9, 2022 at 9:26 PM
**To:** jcbillin9@gmail.com <jcbillin9@gmail.com>
**Subject:** Resolution

Dear Justin,

I hope last Sunday's daily text scripture (Proverbs 3:32) and paragraph 8 of this week's congregation Watchtower Study Article #49 (based on Leviticus 19:11-13) will motivate you to set matters straight with Jehovah's organization.

Your brother,

Rick Moake
--
*Richard D. Moake*